Tony M. Diab (SBN 277343)
(tdiab@shb.com)
SHOOK, HARDY & BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California 92614
Telephone: 949.475.1500
Facsimile:  949.475.0016

Attorneys for Plaintiff
TELESIGN CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELESIGN CORPORATION, | ) Case No. _____ |
| | ) |
| PLAINTIFF, | ) **COMPLAINT FOR PATENT** |
| v. | ) **INFRINGEMENT** |
| | ) |
| TWILIO, INC., | ) **JURY TRIAL DEMANDED** |
| | ) |
| DEFENDANT. | ) |
| _____ | ) |

    Plaintiff TeleSign Corporation brings this Complaint for patent infringement against Defendant Twilio, Inc. as follows:[1]

---

[1] Citations to Exhibits that refer to URLs are to true and accurate copies of those URLs as of the date visited. Headings are included for readability; the allegations under any given heading are not intended to relate solely to that heading and vice versa. All allegations may be applicable to any Section, Count, or request.

1

COMPLAINT FOR PATENT INFRINGEMENT

## I.  Introduction and Parties

1.     Plaintiff TeleSign is a California corporation, duly authorized to do business in the State of California, with its principal place of business in Marina Del Rey, California.

2.     TeleSign is an industry leader in Internet security and user authentication. TeleSign is one of the fastest-growing technology companies in North America, sells to some of the top websites in the world, and is a market leader in two-step-verification technology.

3.     TeleSign helps its customers secure billions of end-user accounts worldwide and prevent registration fraud.

4.     The technology offered by TeleSign gives businesses the ability to connect a unique identity with every account to verify new registrations and authenticate users. TeleSign helps businesses detect suspicious users and better protect their existing user base from account compromise.  TeleSign is trusted by some of the world's largest companies to help prevent fraudulent accounts and stop account takeovers.

5.     As explained herein, Twilio has harmed TeleSign while benefiting from making, selling, offering to sell, and/or using TeleSign's patented technologies, and inducing others to infringe TeleSign's patent rights without TeleSign's permission.

6.     On information and belief, Defendant Twilio is a Delaware corporation with its principal place of business in San Francisco, California.  Twilio maintains its principal place of business at 645 Harrison Street, San Francisco, California 94107 and can be served at 548 Market Street #14510, San Francisco, California 94104.

7.     Twilio is reportedly part of the so-called "unicorn club" of companies that are valued at over $1 billion.  *See* Exhibit 1.[2]

---

[2] http://www.forbes.com/sites/alexkonrad/2015/05/04/twilio-joins-unicorn-ranks/#205dd3907bf1 (last accessed March 26, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

## II. TeleSign I

8.     TeleSign has asserted three patents against Twilio (Patent Nos. 7,945,034; 8,462,920 and 8,687,038), in Case No. 2:15-cv-03240-PSG-SS ("TeleSign I"), which was filed in this Court on April 30, 2015 and assigned to the Honorable Phillip Gutierrez.

## III.    Jurisdiction and Venue

9.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including §§ 271 and 281.  Thus, this Court has original jurisdiction under 28 U.S.C. § 1338(a).

10.    Further, because the United States Patent No. 9,300,792 issued just after 12:00 AM ET on March 29, 2016, this Court has subject-matter jurisdiction.[3]

11.    Twilio is subject to personal jurisdiction in this district.  On information and belief, Twilio is responsible for acts of infringement occurring in the Central District of California (as, for example) alleged in this Complaint, has delivered or caused to be delivered infringing products or services in the Central District of California, has induced persons in this district to infringe TeleSign's patents, is doing business in this district, recruits personnel from this district, employs employees from this district, seeks to employ persons from this district, advertises and markets its products and services in this district, seeks to sell its products and services to residents of this district (including via its website at www.twilio.com), hosts seminars or shows in this district, and did not contest personal jurisdiction in TeleSign I.

12.    Venue is proper in this Court under 28 U.S.C. §§ 1400(b), 1391(b) and 1391(c).

---

[3] *See, e.g.*, *Cerro Wire Inc. v. Southwire Co.*, 777 F. Supp. 2d 1334, 1337 (N.D. Ga. 2011) ("Considering the arguments presented by both parties, the Court is persuaded that Cerro's approach [applying "absolute time"] is correct and holds that the '024 Patent was issued just after 12:00 a.m. EDT on July 6, 2010, and thus Cerro's Complaint was filed after the Patent issued. Therefore, the Court has subject matter jurisdiction over this declaratory judgment action. Further, the Court finds that this action is the first-filed case regarding the parties' dispute over the '024 Patent.").

3

COMPLAINT FOR PATENT INFRINGEMENT

13.    At least because Twilio is subject to personal jurisdiction in this district, it is deemed to be a resident of this district; thus, venue is proper in this Court under 28 U.S.C. §§ 1400(b), 1391(b) and 1391(c).

14.    Moreover, TeleSign is headquartered in the Central District of California, where the harm from Twilio's infringement has been and is being felt.

15.    In TeleSign I, Twilio moved to transfer the case, but this Court found that venue was proper.  *See* TeleSign I, ECF No. 75, pp. 4-7 (Order Denying Defendant's Motions to Dismiss).

## IV.    U.S. Patent No. 9,300,792

16.    United States Patent No. 9,300,792 (the "'792 Patent," "Asserted Patent") is entitled "Registration, Verification and Notification System."

17.    Just after 12:00 AM ET on March 29, 2016, the '792 Patent issued from U.S. Patent Application Serial No. 14/678,815 (the '815 Application), which had published as United States Publ. No. 2015/0215889 (the '889 Publication) on July 30, 2015.

18.    A copy of the Issue Notification for the '792 Patent is attached as Exhibit 2.

19.    A copy of United States Publ. No. 2015/0215889 is attached as Exhibit 3.

20.    TeleSign owns the right, title, and interest in the '815 Application, the '889 Publication, and the '792 Patent.

21.    Each claim of the '792 Patent is presumed valid and enforceable.

22.    Each claim of the '792 Patent is valid and enforceable.

23.    U.S. Patent Nos. 8,462,920 and 8,687,038 (asserted in TeleSign I) are referred to herein as "Parent Patents" to the '792 Patent.

24.    In TeleSign 1, Twilio moved on the pleadings to find the Parent Patents invalid under 35 U.S.C. § 101 as purportedly directed to patent-ineligible subject matter.  This Court denied that motion, finding that at least claim-construction was necessary. TeleSign I, ECF No. 123.  TeleSign disclosed a copy of Twilio's Section 101 motion to the Patent Office before it granted that '792 Patent.  The Patent Office considered

4

Twilio's Section 101 motion (Exhibit 4), but still allowed the Application (Exhibit 5) and granted the '792 Patent.

25.     The Patent Office granted the '792 Patent well after the Supreme Court decided *Alice* on June 19, 2014.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

26.     The claims of the '792 Patent do not recite a mathematical algorithm.

27.     The claims of the '792 Patent do not recite a fundamental economic or longstanding commercial practice.

28.     In the 2005 or 2006 timeframe, the state of the art was such that performing the steps recited in the claims of the '792 Patent was not conventional or routine.  For example, it was not routine to receive a user's telephone number via a computing interface, send a verification code via SMS (short message service) to the user, receive a submitted verification via the computing interface, verify the telephone if the submitted verification code was the same as the communicated verification code, complete a registration based on the received information and the verified telephone number, maintain a record of notification events associated with actions that require acknowledgement by a user, transmit a message to the telephone number upon receiving an indication of an occurrence of an established notification event, and receiving from the user an acknowledgement of an action associated with the established notification event.

29.     In the 2005 or 2006 timeframe, one of ordinary skill in the art would not have known to receive a user's telephone number via a computing interface, send a verification code via SMS (short message service) to the user, receive a submitted verification via the computing interface, verify the telephone if the submitted verification code was the same as the communicated verification code, complete a registration based on the received information and the verified telephone number, maintain a record of notification events associated with actions that require

COMPLAINT FOR PATENT INFRINGEMENT

acknowledgement by a user, transmit a message to the telephone number upon receiving an indication of an occurrence of an established notification event, and receiving from the user an acknowledgment of an action associated with the established notification event.

30.    The recited implementation by a computing system is integral to the claimed invention.

31.    The claimed solution in the '792 Patent is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

32.    Adhering to the routine, conventional functioning of the prior art would foster problems that the '792 Patent prevents.

33.    The '792 Patent does not broadly and generically claim 'use of the Internet' to perform an abstract business practice.

## V. <u>TeleSign and Twilio are Competitors.</u>

34.    Twilio offers technology that is similar to TeleSign's technology.

35.    For example, TeleSign offers two-factor authentication technology (*see* Exhibit 6) as so too does Twilio (*see* Exhibit 7[4]).  TeleSign offers technology to prevent fraudulent website registrations (*see* Exhibit 8[5]) as does Twilio (*see* Exhibit 9[6]).

36.    Twilio and TeleSign directly compete for customers and potential customers. For example, in 2015, Twilio began increasing publicity of its phone verification services in direct competition with TeleSign.  *See* TeleSign I, ECF No. 24-12, ¶ 28.

37.    TeleSign and Twilio market their products using the same channels.  *Id.*, ¶ 29.

38.    TeleSign and Twilio regularly meet or interact with the same customers and potential customers on sales calls and during in-person meetings.  *Id.*

---

[4] https://www.twilio.com/authy (last accessed March 16, 2016).
[5] https://www.telesign.com/products/phone-id/ (last accessed March 24, 2016).
[6] https://www.twilio.com/docs/tutorials/walkthrough/account-verification/ruby/rails (last accessed March 27, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

39.     Actual or potential customer(s) have considered and/or are considering using TeleSign or Twilio to provide multiple solutions.  *Id.*, ¶ 36.

40.     Twilio has told customer(s) or potential customer(s) it was developing technology intended to offer the same features as TeleSign's technology.  *Id.*, ¶ 31.

41.     Customer(s) or potential customer(s) have compared prices of TeleSign's technology to prices of Twilio's technology.  *Id.*, ¶¶ 42-43.

42.     TeleSign has suffered price erosion, lost customers, lost goodwill and other harm due to Twilio's competition and infringement of one or more of TeleSign's patented technologies.

43.     Media reports and third parties consider Twilio and TeleSign competitors and providers of similar technologies, such as SMS technology (*see* Exhibit 10[7]) and 2FA technology (*see* Exhibit 11[8]).

44.     Customers and potential customers consider Twilio and TeleSign competitors. *See* Exhibit 39 at pp. 334-335.[9]

45.     On information and belief, Twilio has developed and or implemented plans to take customers and/or market share from TeleSign.

46.     TeleSign sought a preliminary injunction in TeleSign I due to harm caused by Twilio's infringement of U.S. Patent No. 7,945,034.  *See* TeleSign I, ECF No. 23.

## VI.    **Twilio's Prior Knowledge of the '792 Patent and its related Application.**

47.     Twilio had received a copy of TeleSign's original complaint in TeleSign I on or about April 30, 2015.  TeleSign I, ECF No. 79 at ¶ 29.

48.     On information and belief, Twilio had actual notice of the '815 application on or near April 30, 2015, when it was served with the Complaint in TeleSign I, particularly given that the Parent Applications and the '792 Patent share a

---

[7] https://www.quora.com/What-are-the-product-comparisons-of-global-SMS-vendors-such-as-Nexmo-Twilio-and-TeleSign (last accessed March 15, 2016).
[8] https://developer.salesforce.com/page/SMS-2FA (last accessed March 15, 2016).
[9] https://news.ycombinator.com/item?id=9299005 (last accessed March 28, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

substantially similar specification and are related by parent/child relationships.

49.    On information and belief, Twilio had actual notice of the '889 Publication as of its publication date of July 30, 2015.

50.    On information and belief, Twilio was aware of TeleSign's '815 application as a result of its diligence and investigation in TeleSign I.

51.    On information and belief, Twilio learned of TeleSign's patent family regarding the patents asserted in TeleSign I, which included the Parent Patents.  In learning of the TeleSign's patent family, Twilio would have learned and had actual notice of the '815 application.

52.    On information and belief, Twilio's diligence in TeleSign I would have provided Twilio with actual notice of TeleSign's '889 Publication as of its publication date.

53.    Twilio received a copy of the pending, published claims when TeleSign filed them as exhibits on February 22, 2016, in opposition to a motion filed by Twilio in TeleSign I.  *See* Exhibit 12.

54.    TeleSign also filed documents in TeleSign I, received by Twilio and submitted to the Patent and Trademark Office, which show that TeleSign's '792 Patent was granted after the Examiner considered Twilio's Motion for Judgment on the Pleadings and Twilio's *inter partes* review requests for the Parent Patents, and the related prior art.  *See* Exhibits 5, 13, and 14.

55.    TeleSign provided the complete prosecution history filings for the '815 application to Twilio on March 8, 2016, including the pending claims and the Notice of Publication from the Patent and Trademark Office stating that the application was published as Publ. No. 2015/0215889.  *See* Exhibits 12 and 14.

56.    The claims of the '792 Patent did not change during prosecution of the '815 Application.

57.    The claims in Publ. No. 2015/0215889 (Exhibit 3), published on July 30, 2015,

COMPLAINT FOR PATENT INFRINGEMENT

are identical to the issued claims in Patent No. 9,300,792 (*see* Exhibits 2 and 12).

58.     In summary, after Twilio received the TeleSign I complaint, on information an belief, it would have analyzed the patent families of Parent Patents in TeleSign I, learned of the '815 Application and the '889 Publication, and monitored the Application's examination process by the Patent Office, including the Notices of Allowance (*e.g.*, Exhibit 5) that would have confirmed that the claims allowed were the same as the claims as filed, and the Issue Notification (Exhibit 2), which would have given notice to Twilio that '792 Patent's was going to issue on March 29, 2016.

59.     Finally, by and through service of this Complaint or communicating a copy of it to Twilio, Twilio received actual notice.

60.     Thus, Twilio has and has had actual notice of the '815 Application, the '889 Publication, and the '792 Patent, including before the filing of this Complaint.

## VII.   COUNT I - Twilio Directly Infringes the '792 Patent.

61.     The paragraphs above are incorporated by reference herein.

62.     On information and belief, Defendant Twilio has directly infringed the '792 Patent and, unless enjoined, will continue to do so, by making, using, offering for sale, selling and/or importing products and services claimed by the '792 Patent.

63.     On information and belief, Twilio directly infringes the claims of the '792 Patent by making, using, selling, offering to sell and/or importing at least the following Twilio products or services (alone or in combination with each other): Authy, Twilio's "2FA" technology, multi-factor authentication or "MFA," "2FA powered by SMS," "Authy OneTouch," "Authy 2FA App," "Authy OneCode," "Authy SoftToken," "Authy Phone Intelligence," "Authy 2FA," "Authy Authentication," "Authy Verification," "Authy Mobile and Desktop," and "Authy REST API," the Twilio.com account portal, "Twilio SMS," "Twilio Voice," the Twilio API, and registration technology (hereafter collectively referred to as the "Accused Technologies").

9

64.     On information and belief, Twilio is making, using, selling, offering to sell
and/or importing technology similar to the above-mentioned products and services but
not known to TeleSign.  If that is the case, such related technology is also within the
scope of "Accused Technologies."

65.     On information and belief, Twilio makes, uses, sells, offers for sale, and/or
imports in the United States the Accused Technologies, including through its website
at www.twilio.com (Exhibit 15)[10] as indicated by, for example, the "Two-Factor
Auth" and "Authy" links/descriptors as shown below:



---

[10] https://www.twilio.com/ (last accessed March 15, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

*See* Exhibit 15.

66.    Claim 1 of the '792 Patent is directed to a verification and notification method implemented by a computing system, the method comprising: receiving, from a user, information via a computing interface presented to the user as a result of an attempt by the user to access a service, the received information including a telephone number associated with the user; verifying the telephone number by: establishing a short message service (SMS) connection with the user using the received telephone number; communicating a verification code to the user through the SMS connection; receiving, via the computing interface, a submitted verification code that is entered by the user; and verifying the telephone number if the submitted verification code is the same as the communicated verification code; completing a registration of the user based on the received information and verified telephone number, wherein the completed registration enables the user to access the service; maintaining a record of one or more notification events associated with actions that require acknowledgement by the user;

COMPLAINT FOR PATENT INFRINGEMENT

upon receiving an indication of an occurrence of an established notification event, transmitting a message addressed to the verified telephone number indicating the occurrence of the notification event; and receiving, from the user, an acknowledgement of an action associated with the established notification event.

67.    Twilio provides verification technology as illustratively shown below:

**POWERFUL 2FA PROTECTION FOR EVERYONE**



**VERIFY USERS AT REGISTRATION**

Confirm devices are in the user's possession and get device details to identify risky registration.

*See* Exhibit 16.[11]

68.    Twilio explains that phone numbers will be "verified through SMS messaging," as shown below:

---

[11] https://www.authy.com/product/ (last accessed March 16, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

Two-Factor Authentication

Add an extra layer of protection to your account, with a verification code sent via SMS or voice call.

○ Disabled
Do not require a verification code.

○ Once Per Computer
Trust computers and only ask for verification code every 30 days.

○ Every Log-In
We'll always ask for a verification code.

Once this feature is enabled, you will be ask to verify the phone number where you will receive your verification code. Phone numbers may be verified through SMS messaging or voice calls. If you are having trouble verifying your phone number with one method, try the other.

*See* Exhibit 17.[12]

69.    Twilio requires subsequent verification processes in connection with the Accused Technologies.  For example, Twilio states, "[w]hen changing the phone number you are using for two factor authentication, you will have to…go through the verification process again," as shown below:

When changing the phone number you are using for two factor authentication, you will have to first delete the old phone number. Then go through the verification process again to add a new phone number. This step is prompted and required if you have two factor authentication enabled on your Account.

*See* Exhibit 18.[13]

70.    Twilio provides notifications to prevent unauthorized access at logon and/or to prevent fraud relating to a transaction/event, as shown below:

---

[12] https://www.twilio.com/help/faq/twilio-basics/what-happens-when-i-enable-two-factor-authentication (last accessed March 16, 2016).
[13] https://www.twilio.com/help/faq/twilio-basics/how-do-i-change-the-phone-number-i-want-to-use-for-two-factor-authentication (last accessed March 16, 2016).

13

COMPLAINT FOR PATENT INFRINGEMENT



**SAFELY ALLOW ACCESS AT LOGON**

Prevent unauthorized access by securely authenticating the user with a second factor that is connected to the device.

**STEP UP AUTHENTICATION FOR HIGH-VALUE TRANSACTIONS**

Prevent fraud during open sessions with re-authentication that confirms the transaction/event is authorized.

*See* Exhibit 16.

## Register User Activities

Optionally you can register some of the activities that your user do on your application. This helps us to identify fraudulent behaviours.
For example if you register that a user reset his password and then he tries to change his phone with Authy we can know that something weird is happening.

*See* Exhibit 19.[14]

71.    Twilio provides notifications and states, for example, that a code will be sent to a phone "on every login" or be required "every 30 days," as shown below:

There are two different levels you can set for two factor authentication. You may choose to require both your password and the six-digit security code sent to your phone on every login or trust the computer you sign in with and be required to enter the six-digit security code once every 30 days while Twilio remembers your computer for the rest of the month.

*See* Exhibit 17.

72.    Twilio receives information from a user as claimed, including a telephone number associated with the user.

73.    For example, Twilio receives a cellphone number, as shown below:

---

[14] https://docs.authy.com/totp.html (last accessed March 16, 2016).

COMPLAINT FOR PATENT INFRINGEMENT



*See* Exhibit 20.[15]

74.    In another example, Twilio receives a phone number as a backup for a primary phone, as shown below:



*See* Exhibit 21.[16]

---

[15] https://www.authy.com/tutorials/ (last accessed March 16, 2016).
[16] https://www.authy.com/tutorials/enable-two-step-verification-dropbox/ (last accessed March 16, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

75.    Twilio receives a phone number "to get a user set up," as shown in another example below:

> All Authy needs to get a user set up for your application is the email, phone number and country code. In order to do two-factor authentication, we need to make sure we ask for these things at the point of sign up.

*See* Exhibit 22.[17]

76.    As still another example, Twilio receives a phone number as shown below:

> 1. The user begins the registration process by entering his/her data, including a phone number, into a signup form

*See* Exhibit 23.[18]

77.    Twilio verifies the telephone number as claimed, by establishing a short message service (SMS) connection, communicating a verification code, receiving a submitted verification code and verifying the telephone number if the submitted verification code is the same as the communicated verification code.

78.    Twilio verifies telephone numbers as claimed, as illustrated in the examples provided above and below.

---

[17] https://www.twilio.com/docs/tutorials/walkthrough/two-factor-authentication/php/laravel (last accessed March 27, 2016).

[18] https://www.twilio.com/docs/tutorials/walkthrough/account-verification/python/flask#0 (last accessed March 16, 2016).

16

COMPLAINT FOR PATENT INFRINGEMENT

79.    In one example, Twilio "[g]et account verification," including an SMS option, as shown below:



*See* Exhibit 20.

80.    In another example, Twilio states it will "[v]erify your phone," as shown below:



17

COMPLAINT FOR PATENT INFRINGEMENT

*See* Exhibit 24.[19]

81.     Twilio provides an SMS connection as claimed, by, for example, providing for "route connectivity" as shown below:



*See* Exhibit 7.

82.     Twilio communicates and receives a code as claimed, for example as shown below and in other examples:



*See* Exhibit 25.[20]

---

[19] https://www.authy.com/tutorials/enable-2-step-verification-gmail/ (last accessed March 16, 2016).
[20] https://www.twilio.com/help/faq/twilio-basics/what-do-i-do-if-i-lose-my-phone-or-cant-sign-in-with-two-factor-authentication-enabled-on-my-account/screenshot_6_26_13_2_08_pm-2 (last accessed March 15, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

1

2

3

4

5

6

7

8



**AUTHY ONECODE**

A one-time verification code is sent to your device via SMS (or an automated voice call). All you have to do is enter the code. Recommended for users who don't have the Authy app.

**HERE'S HOW IT WORKS**

**Step 1**  Authy sends you a text

**Step 2**  If a threat is detected, Authy will alert you via text

**Step 3**  Connect fearlessly

9

*See* Exhibit 26.[21]

10

11

12

13

14

15

16

17

18



19

*See* Exhibit 27.[22]

20

21

22

23

24

25



26

27

28

---

[21] https://www.authy.com/product/options/ (last accessed March 16, 2016).
[22] https://www.authy.com/tutorials/add-2-factor-authentication-facebook/ (last accessed March 16, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

1

*See* Exhibit 21.

2

3

4

5

**SENDING A TOKEN ON ACCOUNT CREATION**

6

Once the user has an `authyId`, we can actually send a verification code to that user's mobile phone.

7

8

When our user is created successfully via the form we implemented for the last story, we send a token to the user's mobile phone to verify their account in our controller.

9

10

*See* Exhibit 9 at p. 112.

11



12

13

14

15

16

17

18

19

20

*See* Exhibit 28.[23]

21

83.    Twilio verifies as claimed (*e.g,*, if the submitted verification code is the same as

22

the communicated verification code).  For example, Twilio performs validation as

23

shown below:

24

25

26

27

[23] https://www.twilio.com/docs/tutorials/walkthrough/two-factor-authentication/node/express (last accessed March 27, 2016).

28

20

COMPLAINT FOR PATENT INFRINGEMENT



## THE VERIFICATION FORM

This page actually has two forms, but we'll focus on the first one first. It has only a single field for the verification code, which we'll submit to the server for validation.

*See* Exhibit 9 at p. 116.

*See* Exhibit 28.

84.     Twilio completes a registration of the user based on the received information and verified telephone number as claimed.

85.     For example, Twilio states "To use our Services, you will be asked to create an account. As part of the account creation process, you'll be asked to provide your email address, create a password, and verify that you're a human being by providing a telephone number to which we'll send you a verification code to enter into the form. Until you apply for an account, your access to our Services will be limited…," as shown below:

COMPLAINT FOR PATENT INFRINGEMENT

**3. Your Account(s)**

To use our Services, you will be asked to create an account. As part of the account creation process, you'll be asked to provide your email address, create a password, and verify that you're a human being by providing a telephone number to which we'll send you a verification code to enter into the form. Until you apply for an account, your access to our Services will be limited to what is available to the general public. When registering an account, you must provide true, accurate, current and complete information about yourself as requested during the account creation process. You must also keep that information true, accurate, current and complete after you create your account. You may also create multiple accounts as well as sub-accounts.

*See* Exhibit 29.[24]

86.     In another example, Twilio states "you will have to…go through the verification process again to add a new phone number," as shown below:

When changing the phone number you are using for two factor authentication, you will have to first delete the old phone number. Then go through the verification process again to add a new phone number. This step is prompted and required if you have two factor authentication enabled on your Account.

*See* Exhibit 18; *see also* Exhibit 9.

87.     Twilio maintains a record of one or more notification events as claimed.

88.     For example, Twilio describes logon, high-value transactions, sensitive data and transactions, "given action[s]," and "different levels" of authentication as shown below:



**SAFELY ALLOW ACCESS AT LOGON**

Prevent unauthorized access by securely authenticating the user with a second factor that is connected to the device.

**STEP UP AUTHENTICATION FOR HIGH-VALUE TRANSACTIONS**

Prevent fraud during open sessions with re-authentication that confirms the transaction/event is authorized.

---

[24] https://www.twilio.com/legal/tos (last accessed March 15, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5

**PROTECT ACCESS**

Provide quick, safe access to sensitive data and processing.



**PROTECT TRANSACTIONS**

Reduce fraud and prevent account takeovers.

6

*See* Exhibit 16.

7

8    **Custom Actions**
9    You can pass `action=` and `action_message=` (optional) to send a code that is only valid for the given action.
     This is useful if you require codes to perform different actions on your app, for example, you can pass
     `action=login&action_message="Login code"` when sending a login code.
10   When using this option you **have to** pass the same `action` when verifying the code.

11

12   *See* Exhibit 19.

13
14   There are two different levels you can set for two factor authentication. You may choose to
     require both your password and the six-digit security code sent to your phone on every login
15   or trust the computer you sign in with and be required to enter the six-digit security code
16   once every 30 days while Twilio remembers your computer for the rest of the month.

17

18   *See* Exhibit 17.

19   89.    Twilio (or its customers) may also maintain records of events such as when
     their end users requests products and services.

20
21   90.    Twilio, upon receiving an indication of an occurrence of an established
     notification event, transmits a message as claimed.

22
23   91.    For example, Twilio transmits a message as shown below and as described in
     other examples herein:

24
25
26
27
28
                                              23
                     COMPLAINT FOR PATENT INFRINGEMENT



*See* Exhibit 26.

92.    Twilio receives an acknowledgement from the user as claimed.

93.    For example, Twilio describes the verification code or token that a user enters, as shown below:



COMPLAINT FOR PATENT INFRINGEMENT

*See* Exhibit 25.

## Verifying a token

To verify a token simply pass in the token that the user entered and the authy id of the user (which should have stored in your database when you registered the user above). Authy will use HTTP status codes for the response.

*See* Exhibit 19.

94.    Over one million unique Authy users existed by August 2014.  *See* Exhibit 30 ("The Meteoric Rise of 2FA").[25]

95.    Twilio is liable as a direct infringer under 35 U.S.C. § 271(a), including liable under the "doctrine of equivalents."

## VIII.  COUNT II - Twilio Actively Induces Infringement of the '792 Patent.

96.    The paragraphs above are incorporated by reference herein.

97.    Twilio is liable for induced infringement under 35 U.S.C. § 271(b).

98.    Twilio's customers directly infringe the '792 Patent as single actors by making, using, selling, offering and/or importing one or more of the Accused Technologies. Twilio knowingly induces its customers' infringement and possesses specific intent to encourage their infringement.  Twilio knows of the '792 Patent at least by way of this Complaint and knows that its induced acts constitute patent infringement.  Further, Twilio knew of the claims of the '792 Patent prior to the issuance of the '792 Patent as described herein.

99.    Alternatively or additionally, Twilio and its customers directly infringe the '792 Patent with all steps being attributable to Twilio's customers.  Twilio knowingly induces its customers' infringement and possesses specific intent to encourage their infringement.  Twilio knows of the '792 Patent at least by way of this Complaint and knows that its induced acts constitute patent infringement.  Further, Twilio knew of

---

[25] https://www.authy.com/blog/the-meteoric-rise-of-two-factor-authentication (last accessed March 15, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

the claims of the '792 Patent prior to the issuance of the '792 Patent as described herein.

100.   Twilio specially intends and relies on others using its Accused Technologies and seeks to have developers and customers use its API (for example) to build applications.  TeleSign I, ECF No. 51 at ¶ 3 ("Twilio shares its groundbreaking cloud application programming interface ("API") with the world so that software developers around the globe can build new and complex communications systems.").

## VIII(A). Direct Infringement

101.   As so-called "single actors" (in the case law), Twilio's customers are direct infringers when they perform the same or similar steps that Twilio performs and as described in connection with Count I (Section VII), including by their making, using, selling, offering for sale and/or importing one or more of the Accused Technologies.

102.   For example, on information and belief, Twilio customers receive a telephone number from an end user through a computing interface, use one or more of the Accused Technologies, such as Authy, to text or have a verification code texted to a user and checked that a corresponding response matches the verification code to verify a telephone number, complete the registration of a user based on the verified telephone number, keep a record (or uses Twilio to keep a record) of events users are to be notified of, sending a message to the user when one of those events occurs (including by using one or more of the Accused Technologies, such as Twilio SMS), and receive a user's acknowledgement (including by using one or more of the Accused Technologies, such as Twilio SMS).  Additional details are provided in the allegations below, including those regarding Twilio's intent to induce customer infringement.

103.   Alternatively or additionally, Twilio and its customers directly infringe the '792 Patent with all steps being attributable to Twilio's customers.  The same or similar steps as described in connection with Count I (Section VII) would still be performed,

including by making, using, selling, offering for sale and/or importing one or more of the Accused Technologies.

104.    For example, on information and belief, Twilio's customers receive a telephone number from an end user through a computing interface, have Twilio text a verification code to a user and check that a corresponding response matches the verification code to verify a telephone number (using one or more of the Accused Technologies, such as Authy and/or Twilio SMS), complete the registration of a user based on the verified telephone number, keep a record (or have Twilio keep a record) of events users are to be notified of, have Twilio send a message to the user when one of those events occurs (including by using one or more of the Accused Technologies, such as Twilio SMS), and receive a user's acknowledgement (including from Twilio by using one or more of the Accused Technologies, such as Twilio SMS).  Additional details are provided in the allegations below, including those regarding Twilio's intent to induce customer infringement.

105.    Thus, in some cases, the performance of all or part of the claims in the '792 Patent is attributable to Twilio's customers or performed at the direction and control of Twilio's customers.

106.    In short, Twilio's customer essentially contract out certain claimed steps to Twilio.

107.    As an example, on information and belief, Twilio's customers use Twilio's technology or services to verify a telephone number.  In these cases, the use of the claimed technology is attributable to Twilio's customers.

108.    Twilio makes commitments or obligations to its customers such that Twilio cannot unilaterally refuse to provide its products or services.

109.    Twilio promises to provide 60 days' written notice to its customers prior to terminating or suspending its services.   *See* Exhibit 32, §14.2. [26]

---

[26] https://www.twilio.com/legal/service-level-agreement (last accessed March 15, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

110.   Similarly, Twilio's prior Terms of Service, in effect prior to February 1, 2016, also promised to provide Twilio's customers 60 days' written notice before changes in service (§ 2.5) or non-renewal (§ 7.1), and 180 days' written notice before termination of Twilio's services (§ 7.2).  *See* Exhibit 31.[27]  This is relevant to Twilio inducing the claims of the '792 Patent as they existed since the publication of the '889 Publication.

111.   Twilio's Terms of Service require Twilio's customers to indemnify Twilio for certain activity, indicating that the activity is attributable to Twilio's customers.

112.   For example, customers must "defend, indemnify and hold Twilio and its affiliates harmless against any actual or threatened claim, loss, liability, proceeding, third-party discovery demand, governmental investigation or enforcement action arising out of or relating to your activities under these Terms or your acts or omissions in connection with the provision of Your [Customer] Application, including, without limitation, any intellectual property claims relating to the Your [Customer] Application,"  as shown below:

**12. Indemnification**

You will defend, indemnify and hold Twilio and its affiliates harmless against any actual or threatened claim, loss, liability, proceeding, third-party discovery demand, governmental investigation or enforcement action arising out of or relating to your activities under these Terms or your acts or omissions in connection with the provision of Your Application, including, without limitation, any intellectual property claims relating to the Your Application and any violation by you or your End Users of the terms of Section 6 (Restrictions) ("Claim"). We and our affiliates will cooperate as fully as reasonably required in the defense of any Claim, at your expense. We reserve

*See* Exhibit 29 at p. 285.

113.   Similarly, Twilio's prior Terms of Service also required customers to indemnify Twilio.  *See* Exhibit 31, § 8.1.  This is relevant to Twilio inducing the claims of the '792 Patent as they existed since the publication of the '889 Publication.

114.   Twilio's Service Level Agreement promises customers that Twilio will provide its services, thus performing steps at the direction and control of Twilio's Customers.

115.   For example, Twilio promises its API will be available 99.95% of the time in a month.  *See* Exhibit 32, §1.

---

[27] https://www.twilio.com/legal/tos/archive/2014 (last accessed March 15, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

116.    If Twilio does not meet this goal, its customers are eligible for service credits as a remedy.

117.    Twilio has made other promises or statements of uptime rates in connection with Accused Technologies, as shown below:

**AUTHY & TWILIO: A YEAR OF TRANSFORMATION**

• Lastly, we continue to maintain a 99.999% uptime rate!

*See* Exhibit 33.[28]

118.    As another example, Twilio states that a customer's application "tells Twilio" to send a text message, as shown below:

When a user tries to log in, your app tells Twilio to send that person a voice or text message with a security pin

*See* Exhibit 34.[29]

119.    The Accused Technologies is used by "over 10,000 websites and mobile apps."

Authy Two-factor Authentication (2FA) is trusted by over 10,000 websites and mobile apps.

*See* Exhibit 7.

120.    Twilio admits that:  "Twilio shares its groundbreaking cloud application programming interface ("API") with the world so that software developers around the

---

[28] https://www.authy.com/blog/authy-twilio-a-year-of-transformation (last accessed March 15, 2016).
[29] https://www.twilio.com/elements/two-factor-authentication (last accessed March 15, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

globe can build new and complex communication systems." TeleSign I, ECF No. 55-1 at ¶ 3.

121.   Twilio admits that it routes SMS messages for its customers. TeleSign I, ECF No. 55-1 at ¶ 24 ("Twilio is one of many companies that route SMS messages for its customers.").

## VIII(B).  Specific Intent

122.   The paragraphs above are incorporated by reference here.

123.   Twilio has known and knows it induces its customers' infringement and possesses specific intent to encourage their direct infringement.

124.   In the face of the knowledge of the '792 Patent alleged herein (including in Section VI), on information and belief, Twilio encourages, instructs and recommends that its customers make, use, sell, offer to sell and/or import the Accused Technologies, and on information and belief, Twilio's customers follow such instructions and recommendations, and thereby directly infringe the '792 Patent.

125.   Twilio advertises and provides support for its customers to make, use, sell, offer to sell and/or import Twilio's Accused Technologies.

126.   Twilio markets to its customers to make, use, or otherwise benefit from the Accused Technologies.

127.   For example, Twilio recommends and encourages its customers to verify accounts using one or more of the Accused Technologies (such as Authy and Twilio SMS) "[w]hen a new user signs up for your application…[t]here are many layers of security you can put in place…one of the best is account verification via SMS," as shown below:



ACCOUNT VERIFICATION WITH AUTHY

COMPLAINT FOR PATENT INFRINGEMENT

*See* Exhibit 35.[30]

128.   Twilio recommends and encourages its customers to perform account verification "[b]efore a registration is fully completed," and to "complete" registration, as shown above.  *See also* Exhibit 9.

129.   Twilio recommends and encourages its customers to implement one or more of the Accused Technologies (as shown below, using Twilio 2FA and Twilio SMS for example) to "[s]trengthen or replace a username and password":



*See* Exhibit 36.[31]

---

[30] https://www.twilio.com/docs/tutorials/walkthrough/account-verification/python/flask (last accessed March 15, 2016).

[31] https://www.twilio.com/use-cases/two-factor-authentication (last accessed March 15, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

130.    Twilio recommends and encourages its customers to "[a]dd strong authentication to your app with second-factor passwords sent to a user's phone via SMS or Voice for an extra layer of security," as shown below:



*See* Exhibit 37.[32]

131.    Twilio recommends and encourages its customers to "make it harder for evildoers to compromise a user account by also validating something a user has, like a mobile phone," and use "Two Factor Authentication (2FA)" because it "helps keep you [sic] user accounts secure," as shown below:



*See* Exhibit 22 at p. 204.

---

[32] https://www.twilio.com/use-cases (last accessed March 15, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

132.    Twilio recommends and encourages its customers to "secure your apps with two-factor auth," and to "[a]dd two-factor auth to any app," as shown below:



*See* Exhibit 37.

133.    Twilio recommends and encourages its customers to verify a user's mobile phone, for example as shown below:



*See* Exhibit 28 at p. 277.

COMPLAINT FOR PATENT INFRINGEMENT



*See* Exhibit 36.

134.   Twilio recommends and encourages, in a video from Twilio's Signal conference available online, to "[m]ake sure your 2-FA enrollment process is complete before enabling 2-FA or your user will be locked out," as shown below:

135.   Twilio recommends and encourages its customers to receive information from a user as claimed, including a telephone number associated with an end user of a

customer's program or application, for example, as shown below, including

instructing customers in a tutorial to "make sure" to ask for a user's phone number:

Learn to implement two-factor
authentication (2FA) in your web app with
Twilio-powered Authy. 2FA helps further
secure your users' data by validating more
than just a password. This tutorial will show
you the code to make it happen.

**START TUTORIAL**

*See* Exhibit 22 at p. 204.

All Authy needs to get a user set up for
your application is the email, phone
number and country code. In order to do
two-factor authentication, we need to
make sure we ask for these things at the
point of sign up.

*See* Exhibit 22 at p. 210.

136.   Twilio recommends and encourages its customers to verify a telephone number

and complete registration as claimed.  For example, Twilio recommends and

encourages its customers to verify accounts "[b]efore a registration is fully

COMPLAINT FOR PATENT INFRINGEMENT

completed," in order to "complete" registration.  *See* Exhibit 35.  As shown in other examples, Twilio recommends and encourages its customers to complete registrations as claimed, including incident to using an "SMS verification token" that was "sent out to the user's phone":

> When a new User signs up for our website, we call this controller, which handles saving our new User to the database as well as registering the User with Authy.

*See* Exhibit 9 at p. 098.

> Once there is an Authy user ID associated with our user model, we can request that an SMS verification token be sent out to the user's phone. Authy

*See* Exhibit 22 at p. 222.

137.   Twilio recommends and encourages its customers to maintain a record of one or more notification events as claimed (*e.g.*, confirming a transaction), for example as shown below:

> Recommended for implementing 2FA at login or to confirm a transaction. Delivers the most streamlined, strong-authentication process.

COMPLAINT FOR PATENT INFRINGEMENT

*See* Exhibit 7.

138.   Twilio recommends and encourages its customers to use Accused Technologies, and to make, use, sell, offer to sell and/or import Accused Technologies, including, for example, by recommending and encouraging its customers to "build with" and "integrate" Accused Technologies into Twilio's customers' applications, as shown below:

> This whitepaper walks you through the reasons why trying to build your own 2FA solution from scratch is expensive, time consuming and very risky. The document talks about the challenges of development through maintaining, operating and supporting two-factor authentication in your application. Finally we cover how building a 2FA solution requires security development expertise.

> But buying software can often limit your control over the user experience and the integration into your application logic. That's why exposing two-factor authentication as a cloud API service gives you the best of both worlds. You have a fully featured 2FA API to integrate into your application, but the complex security code and infrastructure is managed for you.

*See* Exhibit 38.[33]



*See* Exhibit 7.

139.   Given Twilio's amount of knowledge of the '792 Patent's claims as described herein, Twilio's maintaining availability of its encouragement, recommendations, and instructions to its customers to make, use, sell, or offer the Accused Technologies

---

[33] https://www.authy.com/resources/buy-and-build-2fa-whitepaper/ (last accessed March 21, 2016).

COMPLAINT FOR PATENT INFRINGEMENT

indicates Twilio's affirmative intent to cause its customers to directly infringe the claims of the '792 Patent.

## VIII(C). Knowledge

140.    The paragraphs above are incorporated by reference here.

141.    Twilio has known of the '792 Patent and that Twilio's induced acts constitute infringement.

142.    Twilio knows of the '792 Patent at least by way of this Complaint, has known of the claims of the '792 Patent (as explained in Section VI).

143.    Twilio has known since the publication of the '889 Publication that the induced acts (including those explained in as explained in Section VIII(B)) would constitute infringement of the claims recited therein, which are the same as the claims of the '792 Patent).

144.    Twilio also knows, since service of this Complaint, that the induced acts constitute infringement (as explained in Section VIII(B)) of the '792 Patent.

145.    On information and belief, Twilio became aware that it would be liable for potentially infringing the claims of the '889 Publication if they were to issue in a granted patent, decided to continue its actions and continue making available the aforementioned illustrative recommendations, encouragements, and instructions, and then the claims of the '889 Publication did issue in the '792 Patent.

146.    On information and belief, despite this awareness, Twilio continued to provide tutorials, sample code, API(s), demonstrations, instructional videos, customer service and support, and events such as conferences and demonstrations, including those cited herein, with the knowledge that the activities encouraged by Twilio would directly infringe TeleSign's patent claims.

147.    On information and belief, Twilio continued and continues to market and instruct its customers to use, make, sell, offer for sell and/or import Accused Technologies with the knowledge that these activities would directly infringe

COMPLAINT FOR PATENT INFRINGEMENT

TeleSign's patent claims.

148.   On information and belief, Twilio also continued to provide its services and technologies, used at the direction and control of Twilio's customers, to infringe TeleSign's patent claims with the knowledge that these activities would directly infringe TeleSign's patent claims.

149.   On information and belief, Twilio has not discontinued activities including those described herein that induce its customers to directly infringe TeleSign's patent claims.

150.   Twilio has actively induced the aforementioned illustrative acts with knowledge of the patent claims and knowledge of the infringement by Twilio's customers.

151.   Twilio intended its customers to infringe the '792 Patent.

152.   On information and belief, Twilio knew that its customers' acts, which it induced, constituted direct infringement of the claims of the '792 Patent.

153.   On information and belief, Twilio knew it had induced and continues to induce acts that constitute infringement of TeleSign's '792 Patent.

## IX.   **Willful Infringement**

154.   The paragraphs above are incorporated by reference herein.

155.   On information and belief, Twilio's infringement of the '792 Patent is willful.

156.   On information and belief, Twilio has had knowledge of the '792 Patent (including actual knowledge) as described above, including in Section VI.

157.   On information and belief, Twilio acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, the '792 Patent, and the objectively-defined risk was either known to Twilio or so obvious that it should have been known to Twilio.

158.   For example, as explained in Section VI, Twilio was aware of TeleSign's pending patent application, its published claims, and the Notice of Allowance indicating those claims would issue as the '792 Patent, as alleged above and was

COMPLAINT FOR PATENT INFRINGEMENT

aware of TeleSign's patent family and TeleSign's allegations regarding Twilio's two-factor authentication technology in TeleSign I—but, on information and belief, did not avoid or discontinue its infringement of the '792 Patent.

159.    Twilio knew of the objectively high risk of infringement of TeleSign's '792 Patent given Twilio's analysis in TeleSign I.

160.    Twilio was aware that its motion for judgment on the pleadings was denied, regarding the alleged invalidity Parent Patents in the same patent family as the '792 Patent, in TeleSign I.  *See* TeleSign I, ECF No. 123.

161.    The '792 Patent issued despite the Patent Office's consideration of additional prior art and Twilio's Section 101 patent-ineligibility motion—further indicating that the '792 Patent was duly issued and will remain valid.

162.    Despite TeleSign I and service of this Complaint, on information and belief, Twilio continues to convey or make available the information contained in this Complaint and corresponding exhibits.

## X. <u>**PRAYER FOR RELIEF**</u>

154.    TeleSign demands trial by jury for all issues so triable by a jury.

WHEREFORE, TeleSign respectfully requests this Court to:

A.    Enter judgment for TeleSign that Twilio has infringed and is infringing one or more claims of the '792 Patent;

B.    Enter judgment for TeleSign that Twilio has actively induced infringement and is actively inducing infringement of one or more claims of the '792 Patent;

C.    Enter judgment for TeleSign that Twilio has willfully infringed and is willfully infringing one or more claims the '792 Patent;

D.    Issue a preliminarily injunction enjoining Twilio (including its officers, directors, employees, agents, customers and all persons acting in concert with them) from infringing the '792 Patent;

COMPLAINT FOR PATENT INFRINGEMENT

E.    Issue a permanent injunction enjoining Twilio (including its officers, directors, employees, agents, customers and all persons acting in concert with them) from infringing the '792 Patent;

F.    Order that Twilio pay compensatory damages to TeleSign for Twilio's infringement of the '792 Patent, including but not limited to, damages for lost profits and in no event less than a reasonable royalty;

G.    Award damages based TeleSign's provisional rights under 35 U.S.C. § 154(d);

H.    Find this to be an exceptional case, award TeleSign treble damages due to Twilio's deliberate and willful conduct, and order Twilio to pay TeleSign's costs of suit and attorneys' fees;

I.    Award TeleSign interest and costs under 35 U.S.C. § 284;

J.    Award TeleSign pre-judgment interest; and

K.    Order such other relief as the Court deems appropriate.


Dated:  March 28, 2016          Signed:*/s/ Tony M. Diab*

Tony M. Diab
(tdiab@shb.com)
Shook, Hardy & Bacon L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California 92614
Telephone:  949.475.1500
Facsimile:   949.475.0016

COMPLAINT FOR PATENT INFRINGEMENT

[This page intentionally left blank.]

COMPLAINT FOR PATENT INFRINGEMENT

[This page intentionally left blank.]

COMPLAINT FOR PATENT INFRINGEMENT