Tony M. Diab (SBN 277343)
(tdiab@shb.com)
SHOOK, HARDY & BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California 92614
Telephone:  949.475.1500
Facsimile:   949.475.0016

Attorneys for Plaintiff
TELESIGN CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELESIGN CORPORATION,<br><br>          PLAINTIFF,<br><br>v.<br><br>TWILIO, INC.,<br><br>          DEFENDANT. | Case No. 2:16-cv-2106-PSG-SS<br><br>**RESPONSE TO TWILIO'S *EX PARTE* APPLICATION (ECF No. 18) REGARDING TWILIO'S REQUEST FOR AN EXTENSION TO FILE A RESPONSIVE PLEADING**<br><br>Honorable Philip S. Gutierrez |

## TELESIGN'S RESPONSE IN OPPOSITION TO TWILIO'S *EX PARTE* APPLICATION

**Issues:**

1) Is a 30-day extension for a team of presumptively six attorneys of a 900-attorney law firm to respond to a Complaint that alleges patent infringement of one patent with a specification identical to that of two patents in a related litigation filed almost a year ago the type of "extraordinary relief" *ex parte* applications are reserved for in this District?

2) Is a defendant entitled to such a 30-day extension even if the plaintiff has alleged that it is being irreparably harmed and despite the case's infringement allegations being directed to the same or similar products in a prior case, the defendant receiving a courtesy copy of the complaint minutes after filing, receiving detailed reasons why 30 days does not appear appropriate, providing only vague bases for the extension request, and rejecting an offer of a one-week extension to Answer if Defendant would agree to not use Plaintiff's offer against it?

Under threat of a fees motion, Twilio tried to compel TeleSign to agree to a 30-day extension without providing specifics justifying the extension in view of the prejudice to TeleSign beset by extending the proceedings one month. TeleSign did not object to an extension in the original case, but here, with the cases being related and for the reasons stated below, Twilio's motion for an extension of time should be denied.

### A. Statement of Facts.

1. This patent litigation involves one patent, a patent that shares a common specification with two other patents filed in a related case, No. 15-3240-PSG-SS ("TeleSign I"), which was filed on April 30, 2015.

2. Six attorneys were of record for Twilio in TeleSign I.

3. During the course of TeleSign I, Twilio became well acquainted with TeleSign's infringement theories, particularly in view of TeleSign's detailed infringement contentions, served on Twilio on December 11, 2015. Those contentions spanned over 400 pages, 168 of which related to the two patents that share an identical specification to the instant patent in suit.

4. Twilio learned of the claims of the patent-in-suit from TeleSign I. The claims that issued in the '792 patent (the patent asserted in this case) were publicly published on July 30, 2015. On February 22, 2016 TeleSign provided express notice of the allowed claims. ECF No. 1 at ¶ 53. Thus, by all rights, Twilio has known for

months about the types of allegations, accused products, and infringement theories applicable to the '792 patent.

5. Twilio's products accused of infringement in this case are the same or similar to those in TeleSign I. *Compare* ECF No. 1, p. 9, ¶ 63 *with* Diab Decl., Exhibit A.

6. The '792 patent issued on March 29, 2016.

7. TeleSign provided a courtesy copy of the Complaint to counsel for Twilio a few minutes after filing; thus Twilio has had more than the full time allowed by the Rules to respond. *See* Diab Decl., ¶ 2.

8. The parties are competitors (ECF No. 1 at § V), and that competition appears to only be increasing, causing irreparable harm to TeleSign.

9. Twilio is represented by Cooley LLP, which reports having 900 lawyers (https://www.cooley.com/about); six were of record in TeleSign I.

**B.    Twilio's request for an extension.**

TeleSign concedes that extensions are routinely granted to respond to Complaints, including time to investigate allegations. And when TeleSign I began, we granted such a request, event after it followed a delay of service. Although TeleSign filed its original complaint in TeleSign I on April 30, 2015 and an amended Complaint on July 15, 2015, TeleSign agreed that Twilio did not have to respond until August 12, 2015. TeleSign I, ECF No. 16. But this request is different. The allegations, products, and theories are similar enough to TeleSign I that an extension is not necessary or justified.

When TeleSign requested an explanation for the extension, Twilio's counsel offered only: "We will need time to investigate and prepare a response. Your complaint is long and includes many new allegations." Twilio next "demand[ed]" a same-morning meet-and-confer, indicated its intent to file a motion, and "possibly **a fee request** for the motion." TeleSign provided 13 reasons why a 30-day extension seemed unnecessary in this case. *See* Diab Decl., Exhibit B. One of those reasons

was that Twilio used certain of TeleSign's compromises and opening concession positions against TeleSign in TeleSign I, including when moving for a stay. Twilio's reason for requesting an extension turned on its need to purportedly investigate TeleSign's allegations. Thus, TeleSign offered a one-week extension if Twilio was going to actually Answer and would agree to not use TeleSign's lack-of-opposition against TeleSign. For example, if Twilio was going to merely refile an improper-venue motion similar to ECF No. 25 in TeleSign I, then that would not require an extension. Twilio rejected our proposal. *Id.* During a meet-and-confer, Twilio would not provide any more detail beyond needing to investigate if the Complaint complied with *Twombly* and *Iqbal*. During the call, counsel for Twilio expressly threatened a fees motion if we would not agree.

### C. In this case, on these facts, a 30 day extension is not necessary, and is not justified by *ex parte* application.

"The law on ex parte applications is well-established in the Ninth Circuit: In order to justify *ex parte* relief, the moving party must establish (1) that its cause will be irreparably prejudiced if the underlying motion is heard according to the regular noticed motions procedure, and (2) that it is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect. TeleSign I, ECF No. 41, citing *Mission PowerEng'g v. Cont'l Cas. Co.,* 833 F. Supp 488, 492 (C.D. Cal 1995). Twilio did not argue that either criterion has been met.

Twilio has not shown that it will be irreparably prejudiced. Twilio's counsel is capable of investigating TeleSign's pleading in the time allotted by the Rules. Twilio has time to admit or deny the allegations and preserve its defenses. And based on Twilio's familiarity with the facts and legal issues from TeleSign I; the overlap associated with the asserted patent in this case sharing a specification with two patents in TeleSign I; the notice of at least related infringement contentions provided on December 11, 2015 (spanning over 168 pages regarding patents with the same specification); Twilio's earlier notice of the claims of the '792 patent; TeleSign's providing of a courtesy copy of the Complaint to counsel for Twilio a few minutes

after filing; the parties being competitors and the irreparable harm being caused to TeleSign; and Twilio being represented by a large law firm and team; a 30-day extension is not warranted.

Twilio's main argument is that it needs time to confirm that TeleSign's Complaint satisfies the applicable pleading standards. ECF No. 18 at p. 2 ("The Supreme Court recently abolished Form 18 pleading for direct infringement."). Although that argument may be applicable to a bare-bones complaint, the implication that our direct-infringement allegations might not comply with the pleadings standards is in tension with Twilio's argument that TeleSign's Complaint is very detailed. Twilio's argument actually shows that it has time to respond because that argument turns on the Complaint itself. Twilio makes a merits argument about how certain of its products may or may not be used. That is something to be resolved during the case. A sufficiency-of-pleadings analysis, however, takes pleaded allegations as true—thus, that analysis does not require an investigation as to whether the allegations are true or not. Twilio has time to analyze the Complaint in this regard. Any extra time needed would stem from Twilio neglecting to diligently respond to TeleSign's complaint.

### D. Twilio's legal authority is distinguishable.

Twilio cites two cases to support its argument that extensions to answer are "routinely" granted. ECF No. 18, at 3:5 (*citing Mullen v. Surtshin, et al.*, 2008 U.S. Dist. LEXIS 111398, No. 03-3676 (N.D. Cal. Aug. 13, 2008), ECF No. 75; *Jamul Action Comm. v. Chaudhuri*, No. 13-1920 (E.D. Cal. Nov. 20, 2015), ECF No. 119).

In *Mullen*, due to a routing error, the defendants did not request representation from the California Attorney General's office until 12 days before a response was due. *See Mullen*, No. 03-3676, ECF No. 59, filed July 30, 2008. In *Jamul*, an amended complaint added thirteen federal and tribal defendants, in personal and official capacities, and some defendants named in the original and amended complaints had not been served. *See Jamul Action Comm.*, ECF No. 116, filed Nov. 13, 2015.

And in the case cited by Twilio regarding prejudice, ex parte relief was denied. *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995). The plaintiff in *Mission Power* moved ex parte for the return of privileged papers, but "[did] not establish that plaintiff will be irreparably prejudiced" by the normal motion schedule. *Id.*, at 493. Courts have denied such extension requests, for example "to secure a just and inexpensive determination." *See e.g., USA Video Tech. Corp. v. Time Warner, Inc., et al.*, No. 06-239 (E.D. Tex. Sept. 8, 2006), ECF No. 51, p. 1.

Twilio has a history of requesting extensions or delaying the case. Beyond Twilio requesting additional time to respond to TeleSign's original complaint (which TeleSign agreed to), Twilio sought (via ex parte application) an additional 30 days to prepare its opposition to TeleSign's preliminary-injunction motion (which was denied—TeleSign I, ECF No. 41); sought a second extension, also via ex parte application (which was also denied, TeleSign I, ECF No. 65). Despite TeleSign serving infringement contentions (early), Twilio never served invalidity contentions; and even though TeleSign agreed to provide its final terms for construction, Twilio refused (TeleSign I, ECF No .122). TeleSign respectfully submits that Twilio is likely to continue to seek extensions or delays that are inconsistent with Rule 1.

### E. Twilio's threat of fees.

TeleSign perceives Twilio's counsel to be engaging in an unnecessarily high level of confrontation that is impeding litigating this case consistent with Rule 1. Twilio is not entitled to an extension. TeleSign provided detailed and good-faith bases explaining why a 30-day extension was not appropriate. *See* Diab Decl., Exhibit B. In return, TeleSign received threats instead of reasons, with Twilio's counsel opening the meet-and-confer with "This will be a short call." *See* Diab Decl., ¶ 5. TeleSign perceives this demeanor to persist for the duration of the litigation if left unchecked. If we roll over under threat of a fees motion for merely expecting compliance with the Federal Rules of Civil Procedure, Twilio's counsel will be emboldened to repeat this behavior.

### F. Twilio abused the *ex parte* rule.

This Court's Standing Order notices litigants that "Ex Parte applications are only for extraordinary relief. Sanctions may be imposed for misuse of Ex Parte applications." *Standing Order*, P 7 (*citing Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995); *see also, Liang v. Trong Van Nguyen*, No. 08-cv-8211-PSG-JCx, 2009 U.S. Dist. LEXIS 18203, *9 (C.D. Cal. Feb. 26, 2009) ("Defendants are hereby warned that further misuse of ex parte applications will result in the imposition of sanctions."). Requesting a 30-day extension to Answer on these facts is not the sort of extraordinary relief contemplated.[1]

### Conclusion.

TeleSign, not Twilio, has had to expend unnecessary time and effort responding to a motion that should not have been brought. TeleSign is aware of the frustration this Court has expressed regarding the interaction between the parties. TeleSign respectfully submits that although we do not think any extension is warranted, we did make a proposal that included one-week extension, and are not the ones who took a hardline here. We should not face threats of and have to prepare to defend fees motions for seeking compliance with the Federal Rules of Civil Procedure in this circumstance.

Dated: April 8, 2016        Signed: /s/ Tony M. Diab

    Tony M. Diab (SBN 277343)
    (tdiab@shb.com)
    Shook, Hardy & Bacon L.L.P.
    5 Park Plaza, Suite 1600
    Irvine, California 92614
    Telephone: 949.475.1500
    Facsimile: 949.475.0016
    Attorneys for Plaintiff
    TELESIGN CORPORATION

---

[1] Twilio failed to serve its Ex Parte Application "by personal delivery or facsimile" (Standing Order, P 7), but in this situation, TeleSign was not harmed.