1    COOLEY LLP
     THOMAS J. FRIEL, JR. (80065)
2    (TFRIEL@COOLEY.COM)
     REUBEN H. CHEN (228725)
3    (RCHEN@COOLEY.COM)
     CARRIE J. RICHEY (270825)
4    (CRICHEY@COOLEY.COM)
     3175 Hanover Street
5    Palo Alto, CA  94304-1130
     Telephone:  (650) 843-5000
6    Facsimile:  (650) 849-7400

7    WAYNE O. STACY (pro hac vice)
     (WSTACY@COOLEY.COM)
8    380 Interlocken Crescent Suite 900
     Broomfield, CO  80021
9    Telephone:  (720) 566-4000
     Facsimile:  (720) 566-4099
10
     Attorneys for Defendant
11   Twilio Inc.

12                    UNITED STATES DISTRICT COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14

15   TELESIGN CORPORATION,            Case No. 2:16-cv-02106-PSG-SS

16              Plaintiff,            **TWILIO'S NOTICE OF
                                      MOTION AND MOTION TO
17        v.                          DISMISS COMPLAINT;
                                      MEMORANDUM OF POINTS
18   TWILIO INC.,                     AND AUTHORITIES**

19              Defendant.            Date:      August 1, 2016
                                      Time:      1:30 p.m.
20                                    Dept.:     880

21                                    Honorable Philip S. Gutierrez

22                                    JURY TRIAL DEMANDED

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO                                        MOTION TO DISMISS
                                                 2:16-CV-02106-PSG-SS

1

**TABLE OF CONTENTS**

2
                                                                                                **PAGE**

3   I.    INTRODUCTION ................................................................................................ 1

4   II.   FACTUAL BACKGROUND ............................................................................... 2

          A.   This is TeleSign's second litigation against Twilio ................................... 2
5
          B.   The '792 patent ....................................................................................... 3
6
          C.   TeleSign's definition of "Accused Technologies" ................................... 3
7
          D.   TeleSign's direct infringement allegations ............................................... 3

8         E.   TeleSign's doctrine of equivalents allegations ........................................ 5

          F.   TeleSign's indirect infringement allegations ........................................... 5
9
    III.  LEGAL STANDARD ......................................................................................... 6
10
          A.   Direct infringement ................................................................................ 6
11
          B.   Indirect infringement .............................................................................. 7

12  IV.   ARGUMENT....................................................................................................... 7

          A.   TeleSign does not adequately plead direct infringement......................... 7
13
               1.   TeleSign's single paragraph does not plead infringement by
14                       the doctrine of equivalents............................................................. 7

15             2.   TeleSign's broad definition of "Accused Technologies" does
                         not inform Twilio of what products or services are accused.......... 8
16
               3.   TeleSign's factual support does not contain enough detail to
17                       accuse any Twilio product or service of infringement ................. 10

          B.   TeleSign does not adequately plead indirect infringement.................... 11
18
               1.   TeleSign does not plead plausible facts to show that Twilio's
19                       customers directly infringe ......................................................... 11

20             2.   TeleSign does not plead plausible facts to show that Twilio
                         knew its customers' use of its products infringed ....................... 13
21
               3.   TeleSign does not plausibly show that Twilio intended to
22                       induce infringement .................................................................... 14

          C.   TeleSign's complaint opens the doors to unfettered discovery ............. 15
23
    V.    CONCLUSION ................................................................................................ 16

24

25

26

27

28

**TABLE OF AUTHORITIES**

PAGE

**Cases**

*Asghari-Kamrani v. USAA*,
No. 2:15cv478, 2016 WL 1253533 (E.D. Va. Mar. 22, 2016).............................9, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................*passim*

*Atlas IP, LLC v. Exelon Corp.*,
No. 15 C 10746, 2016 WL 2866134 (N.D. Ill. May 17, 2016)..............................10

*Atlas IP LLC v. Pac. Gas & Elec. Co.*,
No. 15-CV-05469-EDL, 2016 WL 1719545 (N.D. Cal. Mar. 9, 2016)...........10, 11

*Automated Transaction Corp. v. Bill Me Later, Inc.*,
No. 09–61903–CIV, 2010 WL 1882264 (S.D. Fla. May 11, 2010).........................8

*Bell Atl. Corp.v. Twombly*,
550 U.S. 544 (2007)................................................................................*passim*

*Bender v. LG Elecs. U.S.A., Inc.*,
No. C 09-02114 JF (PVT), 2010 WL 889541
(N.D. Cal. Mar. 11, 2010)..................................................................................9, 10

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ...............................................................................6

*Bonutti Skeletal Innovations LLC v. Smith & Nephew, Inc.*,
No. 12-cv-1111, 2013 WL 6058472 (D. Del. Nov. 18, 2013) ................................13

*Delphix Corp. v. Actifo, Inc.*,
No. C 13-4613 RS, 2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ........................12

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) ..................................................................7, 11, 13

*E.I. DuPont De Nemours & Co. v. Heraeus Holding GmbH*,
No. 11-cv-773, 2012 WL 4511258 (D. Del. Sept. 28, 2012)..................................14

*Elan Microelectronics Corp. v. Apple, Inc.*,
No. C 09–01531 RS, 2009 WL 2972374 (N.D. Cal. Sept. 14, 2009) ....................15

### TABLE OF AUTHORITIES
### (continued)

PAGE

*FootBalance Sys. Inc. v. Zero Gravity Inside, Inc*.,
   No. 15-CV-1058 JLS (DHB), 2016 WL 903681
   (S.D. Cal. Feb. 8, 2016) ........................................................................ 9

*Global-Tech Appliances, Inc. v. SEB S.A*.,
   131 S. Ct. 2060 (2011) .................................................................... 7, 13

*Intellectual Ventures I LLC v. Bank of Am., Corp*.,
   No. 13-cv-358, 2014 WL 868713 (W.D.N.C. Mar. 5, 2014) ................ 13

*Legare v. Lee*,
   No. EDCV1500833JVSAFM, 2016 WL 633863
   (C.D. Cal. Feb. 17, 2016) ...................................................................... 7

*Macronix Int'l Co. v. Spansion Inc*.,
   4 F. Supp. 3d 797 (E.D. Va. 2014) ........................................................ 8

*Memory Integrity, LLC v. Intel Corp*.,
   No. 15-CV-00262, 2015 WL 4251026 (D. Or. July 13, 2015) ........ 14, 15

*Prism Techs., LLC v. AT&T Mobility, LLC*,
   No. 8:12CV122, 2012 WL 3867971 (D. Neb. Sept. 6, 2012) ........... 9, 10

*Proxyconn Inc. v. Microsoft Corp*.,
   No. SACV 11–1681 DOC (ANx), 2012 WL 1835680
   (C.D. Cal. May 16, 2012) ...................................................................... 6

*Rembrandt Patent Innovations LLC v. Apple Inc*.,
   No. 14-cv-05093, 2015 WL 8607390 (N.D. Cal. Dec. 13, 2015) ........... 6

*Sinohui v. CEC Entm't, Inc*.,
   No. EDCV142516JLSKKX, 2016 WL 2743458
   (C.D. Cal. May 11, 2016) .................................................................... 15

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ............................................................ 2, 6

*Straight Path IP Grp., Inc. v. Vonage Holdings Corp*.,
   No. 14-cv-502, 2014 WL 1266623 (D.N.J. Mar. 26, 2014) ................. 14

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

MOTION TO DISMISS
2:16-CV-02106-PSG-SS

**TABLE OF AUTHORITIES**
**(continued)**

PAGE

*Unisone Strategic IP, Inc. v. Life Tech. Corp.*,
    No. 13-cv-1278, 2013 WL 5729487 (S.D. Cal. Oct. 22, 2013) ........................ 14, 15

*Versata Software, Inc. v. Cloud9 Analytics, Inc.*,
    No. 12-cv-925, 2014 WL 631517 (D. Del. Feb. 18, 2014) ..................................... 13

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009) .......................................................................... 7, 14

**Statutes**

35 U.S.C. § 271 ............................................................................................................ 5, 8

**Other Authorities**

Fed. R. Civ. P.
    8 ...................................................................................................................... 15
    12 ....................................................................................................................... 6
    26 ..................................................................................................................... 16
    84 ....................................................................................................................... 6

1  **TO ALL PARTIES HEREIN AND THEIR COUNSEL OF RECORD:**

2      PLEASE TAKE NOTICE that on August 1, 2016, at 1:30 p.m. or as soon

3  thereafter as the matter may be heard before the Honorable Philp S. Gutierrez in

4  Courtroom 880 of the United States District Court for the Central District of

5  California, Western Division, located at 255 East Temple Street, Los Angeles,

6  California, 90012-3332, Twilio moves under FRCP 12(b)(6) to dismiss TeleSign's

7  complaint.  This motion is made following the conference of counsel pursuant to

8  L.R. 7-3 that took place on May 13, 2016.

9                              **MOTION**

10      Twilio moves pursuant to FRCP 12(b)(6) to dismiss TeleSign's entire

11  complaint.  This motion is based on this notice and memorandum of points and

12  authorities filed simultaneously, the pleadings, the record and other papers on file in

13  this action, and upon such further evidence or argument as may be presented to the

14  Court.

15  Dated:  May 23, 2016                    Respectfully Submitted:

16                                          COOLEY LLP
                                            THOMAS J. FRIEL, JR. (80065)
17                                          REUBEN H. CHEN (228725)
                                            CARRIE J. RICHEY (270825)
18                                          WAYNE O. STACY (*pro hac vice*)

19

20                                          */s/ Wayne O. Stacy*
21                                          WAYNE O. STACY

22                                          Attorneys for Twilio Inc.

23

24

25

26

27

28

1 **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.    INTRODUCTION**

3    TeleSign filed a 41-page, 163-paragraph complaint.  But length does not make
4 a complaint sufficient.  By coining a term, "Accused Technologies," TeleSign lumps
5 19 different Twilio products into its infringement allegations without making a
6 plausible case against any single product.  TeleSign goes even further with its coined
7 term and accuses any possible combination of these 19 different products of
8 infringement—while refusing to specifically identify the accused combinations.  And
9 to further compound the vagueness of its sweeping definition of "Accused
10 Technologies," TeleSign throws in a catch-all provision that accuses any similar
11 technology Twilio **might** have, whether known to TeleSign or not.  (Dkt. No. 1 at
12 ¶¶ 63-64.)  In other words, TeleSign is trying to use its complaint to accuse every
13 piece of Twilio's technology—whether named, unnamed, known, or unknown.  And,
14 in the process, TeleSign is opening virtually unlimited discovery into Twilio's
15 products and business.

16    While broad infringement accusations are not necessarily fatal, broad
17 allegations are fatal when not properly supported by pleaded facts.  In *Iqbal* and
18 *Twombly*, the Supreme Court warned against plaintiffs that fail to plead enough facts
19 to plausibly support the causes of action.  Any debate about whether these Supreme
20 Court cases apply to patent infringement complaints was eliminated in December
21 2015 when Form 18 was abolished.  Accordingly, TeleSign is required to plead facts
22 that state a claim that is plausible on its face for each of the 19 accused products and
23 each accused combination.  TeleSign fails to do so.

24    In 163 paragraphs, TeleSign never sets forth facts for an infringement case
25 against a single product—much less 19 products and unnamed product combinations.
26 The length of TeleSign's complaint comes from TeleSign's mixing and matching
27 screenshots from different Twilio products and services.  TeleSign does not even
28 allege that these separate products and services can be or ever have been combined.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

1  TeleSign's lack of pleaded facts leaves Twilio to guess about infringement theories

2  and leaves Twilio with no way to effectively answer the complaint.

3      As the Ninth Circuit held in *Starr*, a complaint must provide sufficient

4  allegations of underlying facts to give fair notice and to enable the opposing party to

5  defend itself effectively.  TeleSign's complaint does not come close to meeting this

6  standard.  Instead, TeleSign tries to keep every infringement option available and

7  every discovery avenue open through an over-inclusive, vague complaint.  TeleSign

8  should not be permitted to lump all possible allegations together using its coined

9  "Accused Technologies" term.

10     TeleSign has the power to remedy its deficient complaint.  But it has refused to

11 amend in any way.  Accordingly, the Court should dismiss TeleSign's original

12 complaint and give TeleSign an opportunity to amend.  The Court should order

13 TeleSign to (1) identify specifically each product and combination of products that it

14 accuses of infringement and (2) allege underlying facts for each identified product

15 (and any accused combination of products) that support a reasonable inference of

16 infringement.  With a focused complaint, Twilio will have the ability to effectively

17 defend itself, and both parties will know the proper scope of discovery.  In particular,

18 a focused complaint will help the parties avoid the fights regarding discovery breadth

19 that occurred in the previous TeleSign suit.

20     District courts across the country are requiring more from patent plaintiffs now

21 that Form 18 has been abolished.  This Court should require more of TeleSign.

22 **II.    FACTUAL BACKGROUND**

23      **A.    This is TeleSign's second litigation against Twilio**

24     This is the second patent case TeleSign has filed against Twilio.  In *TeleSign I*,

25 TeleSign asserted three patents.  In this suit, *TeleSign II*, TeleSign is asserting a

26 different patent, but one that is closely related to two patents asserted in *TeleSign I*.

27 *TeleSign I* is currently stayed pending the conclusion of three petitions for *inter*

28 *partes* review (IPR) filed by Twilio.  (*TeleSign I*, Dkt. No. 124.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

1    Notably, TeleSign filed its original case before Form 18 was abolished and

2    filed this case after Form 18 was abolished.

3    **B.    The '792 patent**

4    TeleSign asserts U.S. Patent No. 9,300,792 ("the '792 patent"), which issued

5    on March 29, 2016—the day after TeleSign filed its complaint.  (Dkt. No. 1 at ¶ 10.)

6    The '792 patent is a continuation-in-part of two of the patents asserted in *TeleSign I*.

7    (*Id*. at ¶ 23; Dkt. No. 10 at 1.)  TeleSign's complaint references only claim 1 of the

8    '792 patent.  (Dkt. No. 1 at ¶ 66; Dkt. No. 10 at cl. 1.)

9    **C.    TeleSign's definition of "Accused Technologies"**

10   TeleSign coined a term—"Accused Technologies"—that sweeps in 19 separate

11   Twilio products and services.  (Dkt. No. 1 at ¶ 63.)  TeleSign also included the phrase

12   "alone or in combination with each other" to broaden the definition beyond

13   individual products.  (*Id*.)  TeleSign further defined "Accused Technologies" to

14   include Twilio's products and services "similar to the above-mentioned products and

15   services but not known to TeleSign."  (Dkt. No. 1 at ¶ 64.)

16   **D.    TeleSign's direct infringement allegations**

17   TeleSign asserts that the "Accused Technologies" directly infringe.  (Dkt. No.

18   1 at ¶ 65.)  TeleSign never separately accuses an individual Twilio product of

19   infringement.  TeleSign never separately accuses a combination of specific products

20   of infringement.

21   Paragraphs 65-95 of the complaint contain TeleSign's direct infringement

22   allegations.  TeleSign accuses Twilio of both literal infringement and infringement

23   under the doctrine of equivalents.

24   TeleSign mixes and matches screenshots from Twilio's website describing

25   different products and services to allege infringement.  In pleading infringement of a

26   single claim (claim 1), TeleSign mixes and matches evidence from 10 different

27   products.  TeleSign never asserts that these products are used together, sold together,

28   or otherwise related for infringement purposes.  The bullets below illustrate how

1    TeleSign failed to plead infringement by a single product.

2         &bull;   For the claim element "provides verification technology," TeleSign
3              points to the Authy product. (*Id*. at ¶ 67.)

4         &bull;   To allege that Twilio verifies phone numbers "through SMS
5              messaging," TeleSign points to, not a product that Twilio sells, but
6              rather an optional Twilio account setting that allows Twilio users to add
7              2FA to their Twilio accounts. (*Id*. at ¶ 68.)

8         &bull;   To allege that Twilio provides notifications to a user to prevent
9              unauthorized access, TeleSign points to three separate products: Authy,
10             the Twilio 2FA account setting, and Authy's REST API. (*Id*. at ¶¶ 69-
11             70.) TeleSign never pleads that these products are somehow combined.

12        &bull;   To allege that Twilio "receives information from a user as claimed,"
13             TeleSign points to Authy, using screenshots for Authy on a desktop,
14             Authy's app for a mobile device, and Authy for Dropbox. (*Id*. at ¶¶ 73-
15             76.)

16        &bull;   To allege that Twilio "verifies the telephone number as claimed,"
17             TeleSign points to Authy for Gmail. (*Id*. at ¶¶ 78-81.)

18        &bull;   To allege that Twilio "communicates and receives a code," TeleSign
19             points to Authy OneCode and Twilio's account setting to enable 2FA.
20             (*Id*. at ¶ 82.)

21       TeleSign does not name any specific combinations of products. Nor does
22   TeleSign include any factual information at all for several of the technologies that
23   TeleSign specifically incorporated into the "Accused Technologies" definition. For
24   example, TeleSign does not plead any facts for the following accused products:
25   "multi-factor authentication or 'MFA,'" "2FA powered by SMS," "Authy Phone
26   Intelligence," "Twilio SMS," "Twilio Voice," "the Twilio API," and "registration
27   technology." This last term is particularly troubling because it does not even
28   correspond to a Twilio product.

1    Similarly, TeleSign does not plead any facts showing that any accused
2    products are combined by Twilio or its customers to form an infringing combination.

3    **E.    TeleSign's doctrine of equivalents allegations**

4    TeleSign's infringement allegations under the doctrine of equivalents are
5    contained in a single, two-line paragraph.   These allegations are against all 19
6    products covered by the term "Accused Technologies" and all unnamed combinations
7    of the 19 products.   In particular, TeleSign states:  "Twilio is liable as a direct
8    infringer under 35 U.S.C. § 271(a), including liable under the 'doctrine of
9    equivalents.'"  (Dkt. No. 1 at ¶ 95.)

10    **F.    TeleSign's indirect infringement allegations**

11    TeleSign alleges two theories of indirect infringement against all 19 products
12    and combinations covered by the "Accused Technologies" term.   First, TeleSign
13    alleges that Twilio's customers directly infringe the '792 patent (for every product
14    and combination covered by the term "Accused Technologies") as single actors.
15    (Dkt. No. 1 at ¶¶ 101-02).  TeleSign does not identify any Twilio customers, or which
16    of the 19 products those customers allegedly use.   Similarly, TeleSign does not
17    identify any customer who combined the Twilio products in an infringing way.
18    Second, TeleSign alleges (again for every product and combination covered by the
19    term "Accused Technologies") that Twilio and its customers jointly infringe the '792
20    patent, with all steps of the process attributable to Twilio's customers.  (*Id.* at ¶¶ 103-
21    21.)   Again, TeleSign pleads no details about which customer and which of the
22    products are allegedly involved.

23    To support its allegations that Twilio had the specific intent to encourage
24    customers' infringement, TeleSign relies on another mishmash of screenshots from
25    Twilio's website.  (Dkt. No. 1 at ¶¶ 122-139.)   These screenshots, which are a
26    combination of references to Twilio's account setting to enable 2FA and to Authy,
27    include instructions or FAQ answers.  TeleSign does not match evidence for a single
28    product across the sole asserted claim.

## III. LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.v. Twombly*, 550 U.S. 544, 570 (2007)). A pleaded claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 at 678. In the Ninth Circuit, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### A. Direct infringement

Prior to the December 2015 amendments to the Federal Rules of Civil Procedure, a complaint in a patent infringement case had only to meet the requirements of Form 18. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012). Form 18 required only "(1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages." *Bill of Lading*, 681 F.3d at 1334. The 2015 amendments abolished Form 18. Fed. R. Civ. P. 84; *Rembrandt Patent Innovations LLC v. Apple Inc*., No. 14-cv-05093, 2015 WL 8607390, at *2 (N.D. Cal. Dec. 13, 2015). Because TeleSign's complaint was filed March 28, 2016, well after the amendments took effect on December 1, 2015, TeleSign cannot rely on Form 18. Accordingly, TeleSign must plead infringement under the Supreme Court standard in *Iqbal/Twombly* and the Ninth Circuit standard in *Starr*. *Starr*, 652 F.3d at 1216; *see also Proxyconn Inc. v. Microsoft Corp*., No. SACV 11–1681 DOC (ANx), 2012 WL 1835680, at *2 (C.D.

Cal. May 16, 2012); *Legare v. Lee*, No. EDCV1500833JVSAFM, 2016 WL 633863, at *3 (C.D. Cal. Feb. 17, 2016).

### B. Indirect infringement

Pleaded claims of indirect infringement must also meet the *Iqbal/Twombly* standard. To state a claim of induced infringement, a plaintiff must allege (1) direct infringement by a third party, (2) that the alleged infringer intended to induce the third party's infringement, and (3) that the alleged infringer knew of the patent **and** knew that the induced acts constituted patent infringement. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). To show intent to induce infringement, "the mere knowledge of possible infringement will not suffice." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). The Supreme Court clarified that induced infringement "requires knowledge that the induced acts constitute patent infringement," not just knowledge that a product is being used. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011).

## IV. ARGUMENT

### A. TeleSign does not adequately plead direct infringement

TeleSign has obscured its infringement allegations behind a coined term, "Accused Technologies," that encompasses all possible Twilio technologies both individually and when used in any possible combination. TeleSign's pleading is an attempt to keep all infringement options open and to make discovery of every Twilio product relevant. TeleSign had the responsibility and opportunity to specifically identify accused products and combinations and then to plead sufficient facts to support the infringement allegations. TeleSign shirked that responsibility—leaving Twilio with no way to effectively defend itself against such poorly-defined allegations.

#### 1. TeleSign's single paragraph does not plead infringement by the doctrine of equivalents

TeleSign's entire allegation of infringement under the doctrine of equivalents

("DOE") consists of a single sentence: "Twilio is liable as a direct infringer under 35 U.S.C. § 271(a), including liable under the 'doctrine of equivalents.'" (Dkt. No. 1 at ¶ 95.) This single sentence allegedly covers all 19 products and combinations that fall under TeleSign's "Accused Technologies" term.

TeleSign refused to identify which individual products or combination of products it is accusing under the DOE. Similarly, TeleSign failed to provide a single fact related to its DOE allegations for any product. Twilio has no way to effectively defend itself against these infringement allegations.

Recognizing the harm to defendants, courts have struck complaints for just this type of insufficient pleading on the doctrine of equivalents. For example, in *Macronix*, the court dismissed bare bones DOE infringement allegations, holding that a plaintiff must plead DOE infringement under the *Twombly/Iqbal* standard and cannot "merely assert[] liability under that doctrine in a bare bones, conclusory form." *Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 804 (E.D. Va. 2014). And in *Automated Transaction*, the court pointed to a defendant's need to defend itself from DOE allegations as justification for dismissing a complaint. The court expressly stated that "the two different theories of infringement must be included in a pleading to properly inform the alleged infringer of what it must defend." *Automated Transaction Corp. v. Bill Me Later, Inc.*, No. 09–61903–CIV, 2010 WL 1882264, at *2 (S.D. Fla. May 11, 2010).

Paragraph 95 of TeleSign's complaint cannot support a pleading of infringement under the DOE under the *Twombly/Iqbal* standard, which requires factual support that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 at 678.

### 2. TeleSign's broad definition of "Accused Technologies" does not inform Twilio of what products or services are accused

TeleSign defines "Accused Technologies" to include 19 separate products, any possible combination of those products, and any similar technology, whether known

or unknown to TeleSign.  (Dkt. No. 1 at ¶¶ 63-64; *see also* Section II.C above.)

Even when addressing complaints filed before the Supreme Court's abrogation of Form 18, courts dismissed complaints that contained allegations that encompassed a defendant's entire business and left the defendant with no meaningful notice as to how it allegedly infringes.  *See Prism Techs., LLC v. AT&T Mobility, LLC*, No. 8:12CV122, 2012 WL 3867971, at *5 (D. Neb. Sept. 6, 2012); *see also FootBalance Sys. Inc. v. Zero Gravity Inside, Inc.*, No. 15-CV-1058 JLS (DHB), 2016 WL 903681, at *4 (S.D. Cal. Feb. 8, 2016).

In *Prism Technologies*, the plaintiff accused "various wireless products and data services that implement authentication systems and methods for controlling access to protected computer resources as claimed in the [patents-in-suit]" and then specifically named only two of the defendant's products.  2012 WL 3867971, at *1. The court found that the plaintiff's broad identification of the accused products was insufficient because the defendant could not know what was accused of infringement. *Id.* at *5.  Naming a few exemplary accused products did not save the complaint.  *Id.*

And in *Bender v. LG Electronics*, the plaintiff accused a laundry list of the defendants' products "by way of example and without limitation."  *Bender v. LG Elecs. U.S.A., Inc*., No. C 09-02114 JF (PVT), 2010 WL 889541, at *2 (N.D. Cal. Mar. 11, 2010).  The court found that this broad list of products "has not put Defendants on notice as to what products or parts are subject to the infringement claim." *Id.* at *3.

Here, TeleSign identified a laundry list of Twilio's products and services. (Dkt. No. 1 at ¶ 63.)  To compound the broadness of its allegations, TeleSign adds a catch-all provision including any Twilio product or service that might be similar to any of the products TeleSign identified.  (*Id.* at ¶ 64.)  A court recently dismissed a complaint containing a similar catch-all provision that encompassed a defendant's "login and authentication technology" without any explanation of how additional technology might infringe.  *Asghari-Kamrani v. USAA*, No. 2:15cv478, 2016 WL

1253533, at *2 (E.D. Va. Mar. 22, 2016). Like the plaintiffs in *Prism Technologies* and *Bender*, TeleSign has accused essentially Twilio's entire business and given Twilio no notice of what TeleSign accuses. And like the plaintiff in *Asghari-Kamrani*, TeleSign has included a catch-all that could reach any Twilio product. Twilio cannot meaningfully respond to infringement allegations directed to an unknown combination of products.

### 3.    TeleSign's factual support does not contain enough detail to accuse any Twilio product or service of infringement

TeleSign included a mishmash of screenshots from different Twilio products as the factual basis for its direct infringement complaint. (Dkt. No. 1 at ¶¶ 65-95; *see also* Section II.D above.) There is not enough factual support in TeleSign's allegations to plead a plausible infringement claim for any single one of the named Twilio products, much less all 19.

Courts have recently addressed this type of insufficient pleading. For example, in *Atlas*, the court held that where a complaint "recites only some of the elements of the sole asserted claim, and provides only a threadbare description of the alleged abilities of the accused device," the *Twombly/Iqbal* standard has not been met and the complaint fails to state a claim. *Atlas IP LLC v. Pac. Gas & Elec. Co*., No. 15-CV-05469-EDL, 2016 WL 1719545, at *3 (N.D. Cal. Mar. 9, 2016). The complaint in *Atlas* provided only sketchy descriptions of how the accused product met the patent claims. *Id*. at *4. And the complaint omitted one claim element entirely. *Id*. at *5. Similarly, the court in another Atlas case dismissed a complaint with prejudice where the plaintiff had amended the complaint twice but still did not allege that the accused product met every element of the example claim. *Atlas IP, LLC v. Exelon Corp*., No. 15 C 10746, 2016 WL 2866134, at *5-6 (N.D. Ill. May 17, 2016).

Here, TeleSign does not provide factual support for the elements of the single asserted claim across a single Twilio product. TeleSign mixes and matches screenshots indiscriminately as its factual support for the claim elements. See

Section II.D above.  Just as in the *Atlas* cases, TeleSign's complaint is insufficient.

For several of the products it lists—"multi-factor authentication or 'MFA,'" "2FA powered by SMS," "Authy Phone Intelligence," "Twilio SMS," "Twilio Voice," "the Twilio API," and "registration technology"—TeleSign includes no factual information at all.  And, for one of the claim elements, "maintain[ing] records of events," TeleSign alleges only that Twilio **may** also maintain records, citing no facts at all.  (Dkt. No. 1 at ¶ 89.)  Like the *Atlas* complaints, TeleSign's complaint lacks sufficient factual support to plausibly state a claim of direct infringement.

### B.    TeleSign does not adequately plead indirect infringement

TeleSign's induced infringement claim lacks adequate factual support to state a claim under the *Twombly/Iqbal* standard.   TeleSign was required to plead facts sufficient to support an allegation that (1) Twilio's customers directly infringe, (2) Twilio intended to induce its customers' infringement, and (3) Twilio knew of the '792 patent **and** knew that its customers' acts constituted patent infringement.  *DSU*, 471 F.3d at 1306.  TeleSign was required to plead facts sufficient to support all three elements for **each** of the 19 accused products and services (and any accused combinations) encompassed in its definition of "Accused Technologies."  It failed to do so.

#### 1.    TeleSign does not plead plausible facts to show that Twilio's customers directly infringe

Direct infringement by another is required for induced infringement.  *DSU*, 471 F.3d at 1306.  But TeleSign does not, for any of the 19 products included in its definition of "Accused Technologies," adequately plead direct infringement by Twilio's customers.

TeleSign first alleges that Twilio's customers are "single actor" direct infringers.  (Dkt. No. 1 at ¶¶ 101-02.)  TeleSign does not name customers and does not indicate which of the 19 products are allegedly used by the customer in an infringing way.  *See Atlas IP*, 2016 WL 1719545, at *3.  Instead, TeleSign uses its

broad "Accused Technologies" definition and refers back to its insufficient allegations of direct infringement. (*Id.* at ¶ 103.)

TeleSign includes a few screenshots, some from the Authy service acquired by Twilio (*id.* at ¶¶ 117, 119) and one screenshot from an old version of Twilio's website that appears to be for the option to add 2FA to a Twilio account (*id.* at ¶ 118). But for many of the products listed in paragraph 63 of the complaint—including "multi-factor authentication or 'MFA,'" "2FA powered by SMS," "Authy Phone Intelligence," "Twilio SMS," "Twilio Voice," "the Twilio API," and "registration technology"—the complaint says nothing at all about any Twilio customer's alleged direct infringement.

Even the allegations TeleSign actually makes are based "on information and belief." Use of "on information and belief" creates an "inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree." *Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014). TeleSign simply lists all elements of claim 1 of the '792 patent and alleges that Twilio's customers perform all of the steps using "one or more of the Accused Technologies." (Dkt. No. 1 at ¶ 102.) These bare allegations do not support a pleading of direct infringement by Twilio's customers. *Iqbal*, 566 U.S. at 678.

TeleSign also alleges that Twilio and its customers are joint infringers and that Twilio acts at the "direction and control" of its customers. (Dkt. No. 1 at ¶ 105.) TeleSign again makes these allegations based "on information and belief." (Dkt. No. 1 at ¶¶ 104, 107, 124.) But TeleSign alleges only that "all or part of the claims" is either "attributable to Twilio's customers or performed at the direction and control of Twilio's customers." (*Id.* at ¶ 105.) These bare allegations do not identify what steps TeleSign alleges are performed by Twilio and what steps are performed by Twilio's customers. Nor do the screenshots for Authy and the Twilio 2FA option from Twilio's website (*id.* at ¶¶ 117-119) save the indirect infringement allegations. At

1   most, TeleSign alleges that Twilio has lots of customers (*id*. at ¶ 119) and that a

2   customer's app can tell Twilio to send a verification message (*id*. at ¶ 118).

3         These statements do not support an allegation that Twilio's customers actually

4   do infringe.  Where a plaintiff has "simply identified the accused products and

5   generically alleged that their use somehow infringes the asserted patents," the

6   plaintiff fails to state a claim of induced infringement.  *Versata Software, Inc. v.*

7   *Cloud9 Analytics, Inc*., No. 12-cv-925, 2014 WL 631517, at *4 (D. Del. Feb. 18,

8   2014) *report and recommendation adopted*, 2014 WL 1091751 (D. Del. Mar. 14,

9   2014).

10               **2.    TeleSign does not plead plausible facts to show that Twilio**
                 **knew its customers' use of its products infringed**

11

12        Even if TeleSign's bare allegations were enough to show that Twilio's

13  customers infringe, TeleSign does not plead sufficient facts to show that Twilio knew

14  its customers performed infringing acts.  Indirect infringement requires that the

15  accused infringer know of the patent and know that a third party's use of the accused

16  infringer's product infringed.  *Global-Tech Appliances*, 131 S. Ct. at 2068; *DSU*, 471

17  F.3d at 1306.  "Knowledge that a product is being used by a customer is not the same

18  as knowledge that the customer is using the product in an infringing manner."

19  *Intellectual Ventures I LLC v. Bank of Am., Corp*., No. 13-cv-358, 2014 WL 868713,

20  at *5 (W.D.N.C. Mar. 5, 2014); *see also Bonutti Skeletal Innovations LLC v. Smith &*

21  *Nephew, Inc*., No. 12-cv-1111, 2013 WL 6058472, at *1 n.5 (D. Del. Nov. 18, 2013)

22  (dismissing induced infringement claim).

23        To support an inference that Twilio knew that its customers' use infringed the

24  '792 patent, TeleSign had to plead plausible facts for each of the 19 products (and

25  combinations) listed in its definition of "Accused Technologies."

26        The complaint includes no factual information regarding Twilio's alleged

27  knowledge that its customers' use of Twilio's products and services infringed.  (Dkt.

28  No. 1 at ¶¶ 140-153.)  For example, there is no factual information in the complaint

about how the sale or use of Twilio's products relates to the '792 patent's claims. *See E.I. DuPont De Nemours & Co. v. Heraeus Holding GmbH*, No. 11-cv-773, 2012 WL 4511258, at *7 (D. Del. Sept. 28, 2012) (dismissing induced infringement allegations). TeleSign does not name a single product in the section of its complaint that addresses Twilio's knowledge of infringing use. And TeleSign again pleads even these allegations "on information and belief." (Dkt. No. 1 at ¶¶ 145-49, 152-53.)

### 3. TeleSign does not plausibly show that Twilio intended to induce infringement

TeleSign, again pleading "on information and belief," relies on instructions and support pages from Twilio's website for only two of the at least 19 products and services it identified as "Accused Technologies" to allege that Twilio intended to induce others' infringement of the '792 patent. (Dkt. No. 1 at ¶¶ 123-138.) To show intent to induce infringement, "the mere knowledge of possible infringement will not suffice." *Vita-Mix Corp.*, 581 F.3d at 1328.

Courts have dismissed complaints where the plaintiff cited extensively to instructions on a defendant's website but did not plausibly show that the defendant intended to induce infringement through those instructions. *See Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*, No. 14-cv-502, 2014 WL 1266623, at *2 (D.N.J. Mar. 26, 2014). For example, one court dismissed a complaint because an allegation that "Defendant provides instruction, technical support, and training" for the use of its product was insufficient to plead affirmative intent to induce infringement. *Unisone Strategic IP, Inc. v. Life Tech. Corp.*, No. 13-cv-1278, 2013 WL 5729487, at *3 (S.D. Cal. Oct. 22, 2013); *see also Memory Integrity, LLC v. Intel Corp.*, No. 15-CV-00262, 2015 WL 4251026, at *2 (D. Or. July 13, 2015) (same).

Here, TeleSign identifies screenshots describing and advertising Authy as support for its allegations of intent. (Dkt. No. 1 at ¶¶ 127-28, 131, 133, 135-38.) These screenshots either advertise Authy and the option to add 2FA to a Twilio

account or describe setting up two-factor authentication.  (*See*, *e.g.*, *id*. at ¶ 135 ("Learn to implement two-factor authentication (2FA) in your web app with Twilio-powered Authy").)  But these are only instructions on how to use Twilio's own products.  They do not show that Twilio intended its customers to use the products in an infringing manner, which would be required to adequately state a claim of induced infringement.  *Unisone*, 2013 WL 5729487, at *3; *Memory Integrity*, 2015 WL 4251026, at *2.  TeleSign does not link these instructional screenshots to Twilio's alleged intent to induce infringement.

And TeleSign's instructional screenshots are only for Authy and the Twilio 2FA option.  TeleSign includes no factual support for the majority of the products in its "Accused Technologies" definition; for example, "multi-factor authentication or 'MFA,'" "2FA powered by SMS," "Authy OneCode," "Authy SoftToken," "Authy Phone Intelligence," "Twilio SMS," "Twilio Voice," "the Twilio API," and "registration technology."  TeleSign's insufficient allegations of intent do not state a claim for induced infringement.

## C.    TeleSign's complaint opens the doors to unfettered discovery

TeleSign appears to be saying "there may or may not be infringement, we need further discovery to find out."  *Elan Microelectronics Corp. v. Apple, Inc*., No. C 09–01531 RS, 2009 WL 2972374, at *4 (N.D. Cal. Sept. 14, 2009).  But Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

Allowing TeleSign's complaint to stand would give TeleSign license to virtually unlimited discovery on Twilio's entire business, including products for which TeleSign identifies no factual support and products in the catch-all "similar" products.  Because every product would be accused, all discovery would arguably be relevant.  Through an unsupported pleading, TeleSign would avoid the new discovery limits regarding proportionality.  The December 1, 2015 amendments to the Federal Rules emphasize the parties' and the court's responsibility to consider the needs of

the case and whether the extent of the discovery is proportional to the case. *Sinohui v. CEC Entm't, Inc*., No. EDCV142516JLSKKX, 2016 WL 2743458, at *3 (C.D. Cal. May 11, 2016) (denying motion to compel discovery); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee notes (2015). To avoid discovery abuses, the Court should require TeleSign to amend its complaint and specifically identify the accused products and plausible facts.

## V.    CONCLUSION

None of TeleSign's infringement allegations satisfy the *Twombly/Iqbal* standard. TeleSign does not include factual support for each separate Twilio product or service that it alleges infringes the '792 patent. Nor does TeleSign include the required factual support for each separate Twilio product or service for which it alleges Twilio induces its customers' infringement. Twilio requests that this Court dismiss TeleSign's entire complaint without prejudice and order TeleSign to re-file an amended complaint that identifies which Twilio products and specific product combinations it alleges infringe its patent, as well as a plausible factual basis for each product or combination.

Dated:  May 23, 2016.                     Respectfully Submitted:

                                          COOLEY LLP
                                          THOMAS J. FRIEL, JR. (80065)
                                          WAYNE O. STACY (*pro hac vice*)
                                          REUBEN H. CHEN (228725)
                                          CARRIE J. RICHEY (270825)
                                          DENA CHEN (286452)


                                          */s Wayne O. Stacy*
                                          Wayne O. Stacy (*pro hac vice*)

                                          Attorneys for Defendant
                                          Twilio Inc.