Gary Miller (*pro hac vice*)
(gmiller@shb.com)
Jesse Camacho (*pro hac vice*)
(jcamacho@shb.com)
Mary Jane Peal (*pro hac vice*)
(mpeal@shb.com)
Tony M. Diab (SBN 277343)
(tdiab@shb.com)
SHOOK, HARDY & BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California 92614
Telephone:  949.475.1500
Facsimile:   949.475.0016

Attorneys for Plaintiff
TELESIGN CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELESIGN CORPORATION,<br><br>              Plaintiff,<br><br>v.<br><br>TWILIO, INC.,<br><br>              Defendant. | Case No. 2:16-cv-02106-PSG-SS<br><br>**TELESIGN'S OPPOSITION TO TWILIO'S MOTION TO DISMISS**<br><br>Date:   August 1, 2016<br>Time:  1:30 PM<br>Crtm:  880<br><br>**Honorable Philip S. Gutierrez** |

This brief responds to Twilio's motion (ECF No. 34) to dismiss TeleSign's original complaint.  All emphasis in quotations herein has been added unless otherwise indicated.

# TABLE OF CONTENTS

I.    SUMMARY .............................................................................................1

II.   LEGAL STANDARDS ...........................................................................3

      A.    Standard for pleading direct infringement. ............................................3

      B.    Standard for pleading indirect-infringement (inducement). ................4

III.  TELESIGN'S DIRECT-INFRINGEMENT ALLEGATIONS ARE
      SUFFICIENT............................................................................................5

      A.    Telesign's complaint adequately states a claim for relief for
            direct patent infringement. ........................................................5

            1.    The complaint includes sufficient allegations of
                  underlying facts to give fair notice and to enable Twilio
                  to defend itself effectively. ..................................................6

            2.    Taken as true, TeleSign's factual allegations plausibly
                  suggest an entitlement to relief. ................................................10

      B.    Responses to other Twilio arguments. ..................................10

            1.    Referring to "similar" products is not fatal. ............................10

            2.    The scope of TeleSign's allegations are commensurate
                  with Twilio's pervasive infringement......................................13

            3.    Miscellaneous (setting the record straight).............................15

IV.   TELESIGN'S INDUCEMENT ALLEGATIONS ARE SUFFICIENT .......15

      A.    The Court should find as it did when Twilio made a similar
            motion in *TeleSign I*:  the complaint's allegations are sufficient. ......15

      B.    TeleSign's underlying direct-infringement allegations are
            sufficient...................................................................16

      C.    TeleSign has adequately pleaded knowledge. ..................18

      D.    TeleSign has adequately pleaded specific intent. ..............18

V.    TELESIGN IS NOT REQUIRED TO PLEAD DETAILS ON DOCTRINE OF EQUIVALENTS. ................................................................19

VI.    CONCLUSION. ..........................................................................20

| Exhibit to TeleSign's Request for Judicial Notice | |
| --- | --- |
| Exhibit A | Twilio's Amendment No. 1 to Form S-1 Registration Statement |

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akamai Techns., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) (en banc)................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................1, 3, 5, 7, 9, 10, 20

*Audio MPEG, Inc. et al. v. HP Inc.*,
   No. 15-0073 (E.D. Va. July 1, 2016), ECF No. 159..................................7

*Automated Transaction Corp. v. Bill Me Later, Inc.*,
   No. 09-61903, 2010 U.S. Dist. LEXIS 46101 (S.D. Fla. May 11, 2010).................20

*Avago Technologies General IP (Singapore) PTE Ltd. V. ASUStek Computer, Inc., et al.*,
   No. 15-4525, 2016 U.S. Dist. LEXIS 55655 (N.D. Cal. April 25, 2016)...............11

*Beco Dairy Automation, Inc. v. Global Tech Sys.*,
   No. 12-1310, 2015 U.S. Dist. LEXIS 130503 (E.D. Cal. Sept. 28, 2015)..............13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................1, 3, 5, 7, 10, 20

*Bender v. LG Electronics U.S.A., Inc.*,
   No. C 09-02114 JF (PVT), 2010 U.S. Dist. LEXIS 33075, 2010 WL 889541 (N.D. Cal. Mar. 11, 2010)...................................................................7, 11, 12

*Clifton v. Pearson Educ., Inc.*,
   No. 11-3640, 2012 U.S. Dist. LEXIS 61569 (N.D. Cal. May 2, 2012)..................15

*Commil USA, LLC v. Cisco Sys.*,
   135 S. Ct. 1920 (U.S. 2015)..........................................................5

*Elan Microelectronics Corp. v. Apple, Inc.*,
   2009 U.S. Dist. LEXIS 83715 (N.D. Cal. Sept. 14, 2009) ..........................14, 15

*Erfindergemeinschaft UroPep GbR v. Eli Lilly and Comp., et al.*,
   No. 15-1202, 2016 U.S. Dist. LEXIS 55197 (E.D. Tex. April 26, 2016)................7

*Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017 (9th Cir. 2013) ....................3

*Grecia v. VUDU, Inc.*,
   No. 14-775, 2015 U.S. Dist. LEXIS 16256 (N.D. Cal. Feb. 9, 2015) ..............17, 18

*InCom Corp. v. Walt Disney Co.*,
   No. 15-3011-PSG-MRWx, 2016 U.S. Dist. LEXIS 71319 (C.D. Cal. Feb. 4, 2016) ...................................................................1, 3, 7, 11

*Info. Planning & Mgmt. Serv. v. Dollar Gen. Corp.*,
   2016 U.S. Dist. LEXIS 883 (E.D. Va. Jan. 5, 2016) ...................................................20

*Intellicheck Mobilisa, Inc. v. Wizz Sys., LLC*,
   No. 15-3666, 2016 U.S. Dist. LEXIS 7290 (W.D. Wash. Jan. 20, 2016) ...............................19

*Labyrinth Optical Techs., LLC v. Fujitsu Am., Inc.*,
   No. 13-0030, 2013 U.S. Dist. LEXIS 188873 (C.D. Cal. Aug. 21, 2013)................................5

*Levitt v. Yelp!*,
   765 F.3d 1123 (9th Cir. Cal. 2014)......................................................................................4, 6

*MIS Scis. Corp. v. RPost Communs. Ltd.*,
   No. 14-376-VC, 2016 U.S. Dist. LEXIS 70892 (N.D. Cal. May 18, 2016) .......................8, 11

*Mortg. Grader, Inc. v. Costco Wholesale Corp.*,
   89 F. Supp. 3d 1055 (C.D. Cal. Jan. 12, 2015) .......................................................................5

*Nalco Co. v. Turner Designs, Inc.*,
   73 F. Supp. 3d 1096 (N.D. Cal. 2014) ..................................................................................17

*Nu-You Technologies, LLC v. Eltoweissy et al.*,
   No. 15-3434 (N.D. Tex. July 5, 2016), ECF No. 37, p. 3......................................................14

*Prism Technologies, LLC v. AT&T Mobility, LLC*,
   No. 12-122, 2012 WL 3867971, 2012 U.S. Dist. LEXIS 126630 (D. Neb. Sept. 6, 2012).........
   .....................................................................................................................................12, 13

*Probatter Sports, LLC v. Sports Tutor, Inc.*,
   No. 05-1975, 2015 U.S. Dist. LEXIS 92107 (D. Conn. July 15, 2015) ................................20

*R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission & Processing Sys.
   Patent Litig.)*, 681 F.3d 1323 (Fed. Cir. 2012) ...........................................................4, 5, 18

*Symantec Corp. v. Veeam Software Corp.*,
   No. 12-700, 2012 U.S. Dist. LEXIS 75729 (N.D. Cal. May 31, 2012)..................................12

*Symbol Technologies, Inc. v. Hand Held Products, Inc.*,
   No. 03-102, 2003 U.S. Dist. LEXIS 21002 (D. Del. Nov. 14, 2003)....................................13

*Teashot LLC v. Green Mt. Coffee Roasters, Inc.*,
   No. 12-189, 2014 U.S. Dist. LEXIS 14841 (D. Colo. Feb. 6, 2014)...............................19, 20

*TeleSign Corp. v. Twilio, Inc.*,
   No. 15-3240-PSG-SS (*TeleSign I*) (C.D. Cal. Oct. 16, 2015), ECF No. 75 ..........................15,
   ...........................................................................................................................16, 17, 18, 19

*Textile Network, Inc. v. California Webbing Mills, Inc.*,
   No. 15-1756 (D. Colo. Feb. 23, 2016), ECF No. 37.............................................................20

TELESIGN'S OPPOSITION TO
TWILIO'S MOTION TO DISMISS

*Uniloc USA, Inc., et al. v. Avaya Inc., et al.*,
    No. 15-1168 (E.D. Tex. May 13, 2016), ECF No. 48.............................................13

*W. Mining Council v. Watt*, 643 F.2d 618 (9th Cir. 1981).............................................3

**STATUTES**

35 U.S.C. § 271(a) .............................................................................................................5

**OTHER AUTHORITIES**

Rule 8 .............................................................................................................1, 2, 7, 10, 11

Rule 12(b)(6).................................................................................................1, 12, 13, 14

TELESIGN'S OPPOSITION TO
TWILIO'S MOTION TO DISMISS

# I.    SUMMARY

In this case, TeleSign asserts one patent against Twilio.  The patent has only two independent claims and relates to authentication, one of Twilio's three core services offered.[1]  Twilio argues that TeleSign's complaint should be dismissed under Rule 12(b)(6) because, despite naming specific products and mapping Twilio's use to at least claim 1, the complaint does not allege underlying facts that support an infringement inference for every possible *combination* of those products.[2]  But that level of detailed factual pleading is not required, particularly because the services are functionally similar and the parties dispute whether the technologies named in the complaint are separate.  Although TeleSign used product names based on Twilio's publicly-available information, TeleSign contends that the infringing aspects of the identified technologies are not materially different.[3]  Whether the products function or are used materially differently is a substantive dispute.  Resolving such a substantive dispute by a purely procedural motion is improper.  Neither *Twombly*, nor *Iqbal*, nor Rule 8 compels the granular level of detail Twilio demands in a case such as this, involving related products with similar functionality.

Rather, TeleSign need only state a claim to relief that is plausible on its face. This Court recently addressed a motion to dismiss direct-patent-infringement allegations in *InCom v. Disney*.[4]  Applying *Twombly*, the Court found the complaint sufficient because:[5]

---

[1] ECF No. 1-15, p. 158.

[2] ECF No 34 at 2:12-16.

[3] Even Twilio is inconsistent in counting the accused products.  Twilio initially characterized the number of products as only "nine" in its extension request (ECF No. 18 at 1:8; 1:22-25; 2:1; and 2:9), but now says 19 throughout its motion (ECF No. 34).

[4] *InCom Corp. v. Walt Disney Co.*, No. 15-3011-PSG-MRWx, 2016 U.S. Dist. LEXIS 71319, *2, 8 (C.D. Cal. Feb. 4, 2016).

[5] *Id.* at *7-8.

- the complaint at issue did more than name a product and baldly conclude that it infringes the patent;

- the plaintiff attached the patents in suit and described how its Attendance Tracking System uses RFID technology and ID badges to track human presence in large volumes;

- the plaintiff asserted that prior to its invention, such technology was unavailable because RFID did not work effectively near human beings;

- the plaintiff then named products developed, manufactured and used by the defendants which, like the plaintiff's system, track human presence in large volumes;

- the plaintiff had stated a plausible claim for direct infringement by specifically identifying Defendants' products and alleging that they perform the same unique function as Plaintiff's patented system.

As applied here, TeleSign's complaint does more than name a product and baldly conclude that it infringes the patent:

- TeleSign attached the patent-in-suit.[6]

- TeleSign describes the '792 patent in the context of claim 1 as being directed to a specific verification and notification method implemented by a computing system, and describes that method with particularity.[7]

- TeleSign explains that prior to its invention, in the 2005 or 2006 timeframe, the state of the art was such that performing the steps recited in the claims of the '792 Patent was not conventional or routine.[8]

- TeleSign named specific products developed or used by Twilio which, like TeleSign's patented method and system, perform a verification and notification process.[9]

---

[6] ECF Nos. 10 and 1-3.
[7] ECF No. 1 at ¶ 66.
[8] ECF No. 1 at ¶¶ 28-29.

TELESIGN'S OPPOSITION TO
                                                         TWILIO'S MOTION TO DISMISS

Thus, TeleSign has stated a plausible claim for direct infringement by specifically identifying[10] Twilio's products or services and alleging that they perform the same unique function as TeleSign's patented system.[11]

## II.    LEGAL STANDARDS

### A.    Standard for pleading direct infringement.

As stated in *InCom*:[12]

> A motion to dismiss under Rule 12(b)(6) tests whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a Rule 12(b)(6) motion, the court must accept the facts pleaded in the complaint as true, and construe them in the light most favorable to the plaintiff. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013); *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009). The court, however, is not required to accept "legal conclusions…cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); see *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.
>
> After accepting all non-conclusory allegations as true and drawing all reasonable inferences in favor of the plaintiff, the court must determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 556 U.S. at 679-80. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged…The plausibility standard is not akin to a 'probability requirement,' but it asks

---

[9] ECF No. 1 at ¶ 63.

[10] ECF No. 1 at ¶¶ 63-95.

[11] *InCom Corp.*, 2016 U.S. Dist. LEXIS 71319, *8 ("*Twombly* and *Iqbal* require plaintiffs to include a brief description of what the patent at issue does and an allegation that certain named and specifically identified products or product components also do what the patent does, thereby raising a plausible claim that the named products are infringing") (internal quotations omitted).

[12] *InCom Corp.*, 2016 U.S. Dist. LEXIS 71319, *3-4.

TELESIGN'S OPPOSITION TO
                                     TWILIO'S MOTION TO DISMISS

for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In all cases, evaluating a complaint's plausibility is a "context-specific" endeavor where courts to "draw on . . . judicial experience and common sense."[13]

## B.    Standard for pleading indirect-infringement (inducement).

The standard set forth in *In re Bill of Lading* continues to apply despite the recent abrogation of Form 18 because that form was not used to determine the sufficiency of pleading inducement infringement.[14] Inducement is sufficiently pleaded when a court is convinced that the plaintiff's complaint contains sufficient factual allegations to enable it to reasonably conclude that the defendant is liable for inducing infringement of the patents-in-suit.[15] A plaintiff need not prove its case at the pleading stage; a complaint can survive a motion to dismiss if it contains facts plausibly showing that the accused infringer specifically intended their customers to infringe the asserted patent and knew that the customer's acts constituted infringement.[16] A complaint need not identify specific direct infringers.[17] A defendant's knowledge can

---

[13] *Levitt v. Yelp!*, 765 F.3d 1123, 1135 (9th Cir. Cal. 2014) (quotation omitted).

[14] *R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission & Processing Sys. Patent Litig.)*, 681 F.3d 1323, 1336-1337 (Fed. Cir. 2012).

[15] *Id.* at 1346 ("For the reasons discussed above, we are convinced that all of R+L's amended complaints contain sufficient factual allegations to enable this court to reasonably conclude that each of the Appellees is liable for inducing infringement of the '078 patent. This is all that is required to state a claim for relief that is plausible on its face.") (citing to *Iqbal*, 556 U.S. at 678, citing to *Twombly*, 550 U.S. at 556).

[16] *Id.* at 1339 ("To survive Appellees' motion to dismiss, therefore, R+L's amended complaints must contain facts plausibly showing that Appellees specifically intended their customers to infringe the '078 patent and knew that the customer's acts constituted infringement. This does not mean, however, that R+L must prove its case at the pleading stage.").

[17] *Id.* at 1336 ("To state a claim for indirect infringement, therefore, a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists.") (emphasis in original) (citations omitted).

---

TELESIGN'S OPPOSITION TO TWILIO'S MOTION TO DISMISS

be alleged based on notice from an original complaint.[18]    Specific intent can be inferred based on circumstantial evidence.[19]

## III.    TELESIGN'S DIRECT-INFRINGEMENT ALLEGATIONS ARE SUFFICIENT.

### A.    Telesign's complaint adequately states a claim for relief for direct patent infringement.

Determining whether a complaint states a plausible claim is "context-specific."[20]    Unlike the elements of an antitrust violation (*Twombly*) or the inapplicability of qualified immunity (*Iqbal*), direct patent infringement is a strict-liability offense.[21]    Section 271(a) sets forth the terse elements of direct patent infringement:  "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes" a patent.[22]    Thus, Twilio is liable for patent infringement if—without authorization—it makes, uses, sells, offers, or imports, TeleSign's patented technology, in any way, for any reason, and independent of Twilio's state of mind.  This is true irrespective of any artificial, actual, or lack of

---

[18] *Labyrinth Optical Techs., LLC v. Fujitsu Am., Inc.*, No. 13-0030, 2013 U.S. Dist. LEXIS 188873, *18-19 (C.D. Cal. Aug. 21, 2013) ("*Bill of Lading* is therefore binding authority on this point…[t]hough the claims for indirect infringement both require knowledge of the patent, the Federal Circuit has recently held that post-filing knowledge is sufficient to meet this requirement.") (internal quotation and citations omitted).

[19] *Mortg. Grader, Inc. v. Costco Wholesale Corp.*, 89 F. Supp. 3d 1055, 1071 (C.D. Cal. Jan. 12, 2015) ("Specific intent may be inferred from circumstantial evidence where a defendant has both knowledge of the patent and specific intent to cause the acts constituting infringement. It can be shown by the defendant's receipt of a charge of infringement by the plaintiff.  And that charge of infringement can be made by service of a complaint.") (internal quotation and citations omitted).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (U.S. 2009).

[21] *Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1926 (U.S. 2015) (citation omitted).

[22] 35 U.S.C. § 271(a).

name it associates with any accused a product or service.  The Ninth Circuit's
sufficiency-of-pleadings framework must be applied against this framework:[23]

- To be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.

- The factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

As explained below:  (1) the complaint contains sufficient factual allegations to
give fair notice to Twilio, enabling it to defend itself and (2) the factual allegations
taken as true plausibly suggest an entitlement to relief.

### 1. The complaint includes sufficient allegations of underlying facts to give fair notice and to enable Twilio to defend itself effectively.

TeleSign attached the patent-in-suit.[24]  TeleSign's complaint explains that
claim 1 is directed to a specific verification and notification method implemented by a
computing system, and further describes that method with particularity.[25]  Prior to the
patented invention (in the 2005 or 2006 timeframe), performing the steps recited in the
claims of the '792 Patent was not conventional or routine.[26]  TeleSign named specific
products or services[27] developed or used by Twilio which, like TeleSign's patented
method and system, performs a verification and notification process.[28]  As this Court

---

[23] *Levitt*, 765 F.3d at 1135 (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).
[24] ECF Nos. 10 and 1-3.
[25] ECF No. 1 at ¶ 66.
[26] ECF No. 1 at ¶¶ 28-29.
[27] TeleSign adopted Twilio's naming conventions but does not concede that the operational aspects of or the products/services themselves are materially different from each other.
[28] ECF No. 1 at ¶ 63.

TELESIGN'S OPPOSITION TO
                                                    TWILIO'S MOTION TO DISMISS

has recently found, this is sufficient to state a claim for relief of direct patent infringement.[29]  The additional arguments that follow confirm this outcome.

### (a)    Twilio understands the complaint's allegations.

Twilio's motion itself calls into question Twilio's contention that it cannot defend itself effectively.  Twilio understands our allegations, just disagrees that they are true, which is not a basis for granting a motion to dismiss.  For example, Twilio refers to the products we name (e.g., Authy itself, Authy for Dropbox, Authy for Gmail, Authy OneCode) then makes substantive defenses regarding their functionality.[30]  Given Twilio's familiarity with its own products and services, it is well positioned to affirm or deny the complaint's allegations.

### (b)    TeleSign's complaint names specific products or services and maps them to claim 1.  Particularly because of the accused product's technical similarities, TeleSign is not required to plead detailed infringement facts for every possible combination of related products or services.

Twilio argues that the complaint should be dismissed because it does not plead facts that detail infringement for each of the supposed 19 "products" listed and for "each accused combination."[31]  But that is not required by Rule 8, *Twombly*, *Iqbal*, or any other binding precedent.[32]  The accused technologies are related to each other and

---

[29] *InCom Corp.*, 2016 U.S. Dist. LEXIS 71319, *8 (*citing Bender v. LG Electronics U.S.A., Inc.*, No. C 09-02114 JF (PVT), 2010 U.S. Dist. LEXIS 33075, 2010 WL 889541, *6 (N.D. Cal. Mar. 11, 2010)).

[30] ECF No. 34 at 4:1-20 (see respective bullet points).

[31] ECF No. 34 at 1:21-23.

[32] *See Audio MPEG, Inc. et al. v. HP Inc.*, No. 15-0073 (E.D. Va. July 1, 2016), ECF No. 159, p. 18 (denying dismissal where "Complaint alleges that any device that complies with the MPEG Standards - such as Dell's devices - necessarily infringes each of the Asserted Patents," including but not limited to HP computers and electronic devices that contained any one of nine named products); *Erfindergemeinschaft UroPep GbR v. Eli Lilly and Comp., et al.*, No. 15-1202, 2016 U.S. Dist. LEXIS 55197, *11-12 (E.D. Tex. April 26, 2016) (denying dismissal of claims against products and/or methods covered by one or

TELESIGN'S OPPOSITION TO TWILIO'S MOTION TO DISMISS

function similarly.  Some of the products or processes are modules, or in Twilio's words, "flexible building blocks,"[33] which it and its customers can use to build what they need.  Significantly, however, given that direct patent infringement is a strict-liability offense, Twilio is liable if it performs or is responsible for performing the steps carried out by its building blocks.  The complaint cannot properly be dismissed on procedural grounds because it does not specify every permutation of all such building blocks.

The complaint steps through claim 1 and ties each claim element to representative Twilio technology.[34]  Paragraph 63 of the complaint names specific products and services using naming nomenclature that Twilio itself publicly uses.  And beyond identifying specific products or services, the complaint identifies a category of infringing products, which is permissible and provides Twilio adequate notice.[35]

Many of the products or services are related on their face.  For example, 11 of them include "Authy" in their title:  Authy; Authy OneTouch; Authy 2FA App; Authy OneCode; Authy SoftToken; Authy Phone Intelligence; Authy 2FA; Authy Authentication; Authy Verification; Authy Mobile and Desktop; and Authy REST API.  TeleSign's understanding is that Authy is Twilio's current flagship authentication offering, branded after the company it acquired by the same name.

---

more claims of the asserted patent, including Cialis, and holding "[i]t may be that…that the evidence will show that Brookshire's pharmacies do not engage in conduct that is sufficient to constitute 'administering' Cialis. Those questions, however, are properly left for claim construction, summary judgment, or trial.").

[33] See Exhibit A to TeleSign's Request for Judicial Notice, p. 012.

[34] ECF No. 1 at ¶¶ 61-93.

[35] *MIS Scis. Corp. v. RPost Communs. Ltd.*, No. 14-376-VC, 2016 U.S. Dist. LEXIS 70892, *2 (N.D. Cal. May 18, 2016) ("[W]hen an accuser is the plaintiff, to survive a motion dismiss it need only identify the general category of products that infringe.") (internal quotation omitted).

TELESIGN'S OPPOSITION TO
TWILIO'S MOTION TO DISMISS

Sometimes, Twilio refers to its two-factor authentication more generically, for example: "Two-factor authentication service to strengthen traditional login for websites, SaaS products, and mobile apps."[36]  Or sometimes, Twilio uses "Two-Factor Authentication" as a generic title for its technology.[37]  And Twilio also offered two-factor-authentication products or services prior to acquiring Authy.  Thus, the compliant refers to other names that Twilio would understand, but that may not actually be truly separate products, such as "Twilio's 2FA Technology," "MFA" ("Multifactor Authentication"), and "2FA powered by SMS."

Some of the other identified technologies are used to carry out specific claim elements, such as "communicating a verification code to the user through the SMS connection."[38]  Thus, the compliant also names products or services such as "Twilio SMS" and "Twilio Voice," which are mentioned with "Two-Factor Authentication."[39]  Similarly, the complaint provides examples of types of Twilio's registration technology even though such technology may not have its own product name but nevertheless is used to complete registrations, such as that referenced in Twilio's Terms of Service, technology associated with changing a phone number, or illustrative code associated with verifying a user account.[40]

Any doubts as to whether the Twilio products and services function similarly should be resolved as reasonable inferences drawn in favor of TeleSign.[41]  Because the Twilio products or services named in the complaint function similarly, we cite to illustrative evidence that shows the functional aspects recited in the '792 Patent. Including the names of the products or services as we understand them and the cited

---

[36] ECF No 1-15, p. 159.
[37] *See, e.g.*, ECF No. 1-37, p. 323.
[38] ECF No. 10 at 12:50-51; 13:34-35.
[39] ECF No. 1-37, p. 323.
[40] ECF No. 1 at ¶¶ 85 & 86, referencing, for example, ECF Nos. 1-29, 1-18, and 1-9.
[41] *Ashcroft*, 556 U.S. at 663.

TELESIGN'S OPPOSITION TO
TWILIO'S MOTION TO DISMISS

evidence provides Twilio with adequate notice of what it must defend, indeed *more* notice, not less.

### 2.    Taken as true, TeleSign's factual allegations plausibly suggest an entitlement to relief.

For the reasons previously mentioned, stated in the Summary, and the following, TeleSign's factual allegations plausibly suggest an entitlement to relief:

- the accused products and services are related;
- the technological operations of the accused products and services are similar, and that functionality gives rise to infringement;
- the complaint includes specific factual allegations tying claim 1 to Twilio's actions or products; and
- the complaint states that Twilio's infringement is without TeleSign's permission.[42]

TeleSign's complaint satisfies *Twombly*, *Iqbal*, and Rule 8 because the complaint's factual allegations plausibly suggest an entitlement to relief.

### B.    Responses to other Twilio arguments.

### 1.    Referring to "similar" products is not fatal.

Twilio claims that referring to "similar" technology prevents Twilio from "meaningfully respond[ing]" to TeleSign's infringement allegations.[43]  But in this case, "similar" should be understood in the context of the specific products identified. If there are similar products, services, or other technologies that Twilio practices but that TeleSign is unaware of, Twilio will be commensurately liable for infringement.

Courts have not found open-ended wording fatal where products are named, including types of products, or where infringing activity is identified. For example, this Court permitted the use of open-ended wording to identify a nonexhaustive list of

---

[42] ECF No. 1 at ¶ 5.
[43] ECF No. 34 at 9:5.

TELESIGN'S OPPOSITION TO
TWILIO'S MOTION TO DISMISS

products in *InCom*, which alleged that "Defendants' infringing activities '***include*** development, manufacture, and use of an attendance tracking system, including an attendance tracking device known as the 'MagicBand.'"[44]

Moreover, TeleSign's complaint identifies a category of products, which is, in and of itself sufficient.   For example, in *MIS Sciences*, MIS Sciences filed a declaratory judgment action seeking a declaration that it did not infringe several of RPost's patents.[45]   MIS Sciences' complaint sought a declaration of noninfringement by "products and services, namely electronic message/email marketing, campaign, marketing automation, link tracking and message delivery/failure/opening reports." *Id*. at *2-3.   The court reasoned that a declaratory-judgment plaintiff is not required to plead more than an accuser.   *Id*. at *2.   The court explained "when an accuser is the plaintiff, to survive a motion dismiss it need only identify the general category of products that infringe." *Id*.   Therefore, MIS Sciences' identification of categories of products was sufficient.   *Id*. at *2-4.

Twilio cites to *Bender* to argue that TeleSign's "laundry list" of products does not provide notice.[46]   *Bender* was a multi-defendant case against NEC, Pioneer Electronics, Sharp Electronics, and LG Electronics.   The allegations in *Bender* provided far less notice, naming generic things like cell phones, computers and televisions.[47]   The problem in *Bender* was that the claim 1 (for example) of the

---

[44] *InCom Corp.*, 2016 U.S. Dist. LEXIS 71319, *7; *see also Avago Technologies General IP (Singapore) PTE Ltd. V. ASUStek Computer, Inc., et al*., No. 15-4525, 2016 U.S. Dist. LEXIS 55655, *13 (N.D. Cal. April 25, 2016) (denying dismissal of claims involving eight asserted patents, where the plaintiff accused products "including but not limited to" ASUS's product models, because "the allegations are not as conclusory as that formerly permitted under Form 18 and has sufficient specificity to provide at least some notice to ASUS.").

[45] *MIS Scis. Corp.*, 2016 U.S. Dist. LEXIS 70892, *1.

[46] ECF No. 34 at 9:16-22 (citing *Bender*, 2010 U.S. Dist. LEXIS 33075, 2010 WL 889541, *2).

[47] *Bender*, 2010 WL 889541, 2010 U.S. Dist. LEXIS 33075, *7.

TELESIGN'S OPPOSITION TO TWILIO'S MOTION TO DISMISS

asserted patent (5,103,188) was directed not to such electronic devices, but merely to an "electrical circuit for amplifying complex or high speed signals." The court found that the complaint contained "a long list of allegedly infringing product types, any one of which might contain thousands – if not millions – of electrical circuits, which may be spread across many chips."[48] Therefore, in *Bender*, the defendants would effectively be forced to "scour through thousands – if not millions – of circuits in huge devices such as cable modems and mobile phones to try to identify which devices contain the circuits Bender might be accusing."[49] Twilio is not in the same position as any defendant in *Bender*. TeleSign's allegations are against Twilio alone and name Twilio products and services. Unlike the terse Bender complaint, TeleSign's complaint is supported with specific allegations and documentary evidence. Twilio is essentially attacking the sufficiency of that evidence, which is not a proper basis in this case for dismissal under Rule 12(b)(6). Other courts have refused to apply *Bender* where the allegations are not so broad and the accused software is identified.[50]

Twilio also cites to the *Prism* case.[51] There, the court required Prism to amend because the pleadings involved only one paragraph per patent of "generic" accusations against "various wireless products and data services."[52] TeleSign has alleged far more detail than that complaint, including the names of products or services that TeleSign is aware of and examples of products or services in relation to the claimed elements of

---

[48] *Id.* at *11.

[49] *Id.* at *17-18.

[50] *Symantec Corp. v. Veeam Software Corp.*, No. 12-700, 2012 U.S. Dist. LEXIS 75729, *8 (N.D. Cal. May 31, 2012) ("Again, the allegations in [*Bender*] covered a much broader spectrum of products than Veeam's services related to its identified Backup & Replication software.").

[51] ECF No. 34 at 9:2-15 (citing *Prism Technologies, LLC v. AT&T Mobility, LLC*, No. 12-122, 2012 WL 3867971, 2012 U.S. Dist. LEXIS 126630, *11-12 (D. Neb. Sept. 6, 2012)).

[52] *Prism Technologies, LLC*, 2012 WL 3867971, 2012 U.S. Dist. LEXIS 126630, *11-12.

TELESIGN'S OPPOSITION TO
TWILIO'S MOTION TO DISMISS

the '792 Patent.[53]  Prism is distinguishable and courts have refused to apply *Prism* in cases where a complaint identifies infringing activity.[54]

### 2. The scope of TeleSign's allegations are commensurate with Twilio's pervasive infringement.

Twilio asserts that "TeleSign is trying to use its complaint to accuse every piece of Twilio's technology—whether named, unnamed, known, or unknown."[55]  That is hyperbole, not factual.  TeleSign's complaint identifies the accused products or services by name (or as similar technology).[56]  Twilio argues that TeleSign's allegations are broad.  That is because Twilio's infringement is broad.  TeleSign's allegations are tied to the '792 patent claims and the named technology or similar technology, a finite range.  Therefore, this case against Twilio is not unlimited, and its scope stands to be refined as discovery progresses.[57]

Courts have rejected the "unrestricted discovery" argument when it is inapplicable.  In *Uniloc*, for example, the court recently accepted infringement allegations against "software utilizing the same or reasonably similar functionality."[58]  Defendant Avaya argued that Uniloc's claims were against "unspecified software products" and would lead to "unrestricted discovery."  *Id*., p. 10.  The court held that

---

[53] ECF No. 1 at ¶¶ 63-95.

[54] *Beco Dairy Automation, Inc. v. Global Tech Sys*., No. 12-1310, 2015 U.S. Dist. LEXIS 130503, *11-12 (E.D. Cal. Sept. 28, 2015) (distinguishing *Prism* because "[h]ere, GTS alleges that BECO's milk meters, pulsation monitors, milk metering systems, and pulsation monitoring systems infringe on the seven patents-in-suit.").

[55] ECF 34 at 1:12-13.

[56] ECF 1 at ¶¶ 63-64.

[57] *Symbol Technologies, Inc. v. Hand Held Products, Inc*., No. 03-102, 2003 U.S. Dist. LEXIS 21002, *9 (D. Del. Nov. 14, 2003) ("[T]here are, however, a finite number of claims and a finite number of infringing products.  Consequently, the court finds that traditional mechanisms of discovery are the proper tools to refine the scope of this litigation.").

[58] *Uniloc USA, Inc., et al. v. Avaya Inc., et al*., No. 15-1168 (E.D. Tex. May 13, 2016), ECF No. 48, p. 10.

TELESIGN'S OPPOSITION TO TWILIO'S MOTION TO DISMISS

the "inclusion of these broader allegations merely serves as notice to Avaya that Uniloc alleges infringement against all Avaya products that practice the patented invention." *Id*.    The court explained that "[i]t is often the case that litigants have good reason to believe that additional, unspecified products infringe their patents, but formal discovery may be necessary to ascertain the precise scope and application of the alleged infringement." *Id*.  The same is true here.  TeleSign provided notice of Twilio's products and services and similar technology that infringes the '792 Patent.  TeleSign is entitled to discovery to ascertain the precise scope of its infringement allegations.

In citing *Elan Microelectronics*, Twilio argues that "TeleSign appears to be saying 'there may or may not be infringement, we need further discovery to find out.'"[59]  Elan is distinguishable because there, the court found that Apple's allegation of infringement consisted of "nothing more than" a bare assertion of infringement.[60]  The court explained that there were two possibilities: the first being that Apple was only stating that there may or may not be infringement, the second being  "**the allegations could be understood as intending to convey that Apple believes there is infringement and is making that factual contention, but needs discovery to gather evidentiary support for the contention**."[61]  The emphasized alternative is what TeleSign is alleging here.  Unlike in the *Elan* case, TeleSign supports its claims with additional, specific allegations, such as those in paragraphs 65-93 of the

[59] ECF No. 34 at 15:17-18 (quoting *Elan Microelectronics Corp. v. Apple, Inc.*, 2009 U.S. Dist. LEXIS 83715, *4 (N.D. Cal. Sept. 14, 2009)).
[60] *Elan Microelectronics Corp.*, 2009 U.S. Dist. LEXIS 83715, *4-5.
[61] *Id.* at *12-13; *see also Nu-You Technologies, LLC v. Eltoweissy et al.*, No. 15-3434 (N.D. Tex. July 5, 2016), ECF No. 37, p. 3 (denying dismissal of complaint that alleged an online video supported infringement of a patented method, holding "Nu-You has plausibly alleged that Eltoweissy, personally and as the alter ego of Diamond Cuts, performed the patented method" and that "[c]laim construction and infringement analysis should not be resolved on a motion to dismiss.") (quotation omitted).

TELESIGN'S OPPOSITION TO
TWILIO'S MOTION TO DISMISS

complaint and the corresponding screenshots and cited exhibits. Courts have distinguished *Elan Microelectronics* and similar cases as containing *no* supporting factual allegations.[62]

### 3.     Miscellaneous (setting the record straight).

Space does not permit TeleSign to list all disputed assertions, but we address some in this section. Twilio asserts that TeleSign refused to amend its complaint in any way.[63] TeleSign requested options from Twilio and only received the one Twilio now seeks, which TeleSign declined. The '792 patent is not a continuation-*in-part* of two of the *TeleSign I* patents.[64] It is a straight continuation. Claim 1 is not the sole asserted claim.[65] TeleSign is not required to map all asserted claims at the pleadings stage.

## IV.     TELESIGN'S INDUCEMENT ALLEGATIONS ARE SUFFICIENT

### A.     The Court should find as it did when Twilio made a similar motion in *TeleSign I*: the complaint's allegations are sufficient.

This is the second time Twilio argues that TeleSign's indirect-infringement allegations are deficient. The Court found that TeleSign's allegations in *TeleSign I* were sufficient.[66] The instant complaint includes even more factual allegations, and thus, is also sufficient. Although we include a complete analysis below, it appears that Twilio's argument on indirect infringement largely stands or falls with its

---

[62] *See Clifton v. Pearson Educ., Inc.*, No. 11-3640, 2012 U.S. Dist. LEXIS 61569, *14-15 (N.D. Cal. May 2, 2012) ("the cases relied upon by Defendant are distinguishable in that the courts found that the plaintiffs failed to allege *any* facts in support of their claims") (emphasis in original) (quotation omitted) (collecting cases including *Elan Microelectrics Corp.*, 2009 U.S. Dist. LEXIS 83715, 2009 WL 2972374, *2).

[63] ECF No. 34 at 2:10-11.

[64] ECF No. 34 at 3:6.

[65] ECF No. 34 at 5:28.

[66] *TeleSign Corp. v. Twilio, Inc.*, No. 15-3240-PSG-SS (*TeleSign I*) (C.D. Cal. Oct. 16, 2015), ECF No. 75 at Section IV.

TELESIGN'S OPPOSITION TO
TWILIO'S MOTION TO DISMISS

argument on direct-infringement allegations.  If the Court finds that TeleSign's direct-infringement allegations are sufficient, in view of the below, TeleSign's inducement allegations are sufficient.  Below, we track the Court's analysis in its *TeleSign I* Order, which explains that stating a claim for induced infringement, a plaintiff much allege (1) direct infringement by some actor; (2) the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement; and (3) the alleged infringer knew of the patent and that the induced acts constitute patent infringement.[67]

## B.    TeleSign's underlying direct-infringement allegations are sufficient.

For its induced-infringement claim, TeleSign alleges two theories of underlying, direct infringement—(1) customers infringe as single actors;[68] and (2) the customers infringe with all steps being attributable to Twilio's customers.[69]  Each theory satisfies the threshold issue for an inducement claim of whether some actor directly infringes the patents.[70]  The direct-infringement portion of TeleSign's inducement claim will rise or fall with its direct-infringement allegations, discussed above.

TeleSign's first theory is that Twilio's customers use Twilio's 2FA and Authy technologies to infringe the claimed methods of the '792 Patent.[71]  TeleSign alleges and describes a valid patent.[72]  TeleSign indicates which technology of Twilio's is the basis of infringement of the '792 Patent.[73]  TeleSign's second theory is that Twilio's customers use others' technology, including Twilio's, to infringe.[74]  Although direct

---

[67] *TeleSign I*, ECF No. 75, p. 8 (internal citations and quotations omitted).
[68] *E.g.*, ECF No. 1 at ¶¶ 101-102.
[69] *E.g.*, ECF No. 1 at ¶¶ 103-105.
[70] *TeleSign I*, ECF No. 75, p. 9.
[71] *E.g.*, ECF No. 1 at ¶ 63
[72] *E.g.*, ECF No. 1 at ¶¶ 16-33.
[73] *TeleSign I*, ECF No. 75, p. 9.
[74] *E.g.*, ECF No. 1 at ¶¶ 99, 103-105.

1  infringement requires a single actor perform all steps of a patented method, an entity

2  that directs and controls the activity of another, or conditions a benefit on performing

3  steps attributable to the entity, can be liable for direct infringement.[75]

4  An indemnity clause can be an indication of sufficient direction and control.[76]

5  The Complaint cites Twilio's specific indemnification clause that contributes to an

6  inducement finding.[77]  This Court has already found that:  "Read in the light most

7  favorable to the Plaintiff, see *Grecia*, 2015 WL 538486, at *2 n.3, the indemnification

8  clause protects Defendant from any intellectual property issues that arise from the

9  customer's use of Defendant's services."[78]  The Court rejected Twilio's arguments to

10  the contrary and found TeleSign's allegations sufficient in view of the indemnification

11  clause, Twilio's commitment to provide its API (which TeleSign alleges is used to

12  infringe) 99.95% of the time, and other allegations (including that Twilio encourages

13  its customers to perform infringing steps via tutorials).[79]  The instant complaint

14  includes those and still other allegations.

15  Twilio also enters into contracts with customers to provide its services, which

16  signifies direction and control.[80]  These contracts make promises to customers that

17  Twilio will provide its services.[81]  Additionally, Twilio provides service credits to its

18  customers if it fails to provide its services.[82]  The complaint specifically alleges that

19

20

---

21  [75] *See Akamai Techns., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed.

22  Cir. 2015) (en banc).

    [76] *TeleSign I*, ECF No. 75, p. 10.

23  [77] ECF No. 1 at ¶ 112 (*citing* ECF No. 1-29 (Exhibit 29) at p. 285).

    [78] *TeleSign I*, ECF No. 75, p. 11.

24  [79] TeleSign 1, ECF No. 75, p. 11-12.

25  [80] ECF No. 1 at ¶¶ 103-117; *see also Grecia v. VUDU, Inc.*, No. 14-775, 2015 U.S.

    Dist. LEXIS 16256, *16-17 (N.D. Cal. Feb. 9, 2015); *Nalco Co. v. Turner

26  Designs, Inc.*, 73 F. Supp. 3d 1096, 1104-1105 (N.D. Cal. 2014).

27  [81] ECF No. 1 at ¶¶ 109-110, 114-117.

28  [82] ECF No. 1 at ¶¶ 115-116 (*citing* ECF No. 1-32).

TELESIGN'S OPPOSITION TO
TWILIO'S MOTION TO DISMISS

Twilio encourages its customers to perform infringing acts via its website.[83]    In combination with the Twilio agreements, a reasonable inference is that Twilio will not decline to perform actions that it recommends its users undertake.    Therefore, TeleSign has sufficiently alleged a theory of direct infringement based on steps attributable to Twilio's customers.[84]

### C.    TeleSign has adequately pleaded knowledge.

Induced infringement requires knowledge of a patent and that the induced acts constitute infringement.    *Id*. (citation omitted).    Courts have held that post-suit knowledge is sufficient to allege post-suit liability, at a minimum.    *Id*.    "[O]nce a Defendant is aware that it is potentially inducing infringement and decides to continue its actions, it should be liable if it is incorrect." *Id*. (citation omitted).    Courts have refused to encourage tactical maneuvers or gamesmanship by requiring plaintiffs to file amended complaints to allege knowledge. *Id*., pp. 12-13.  Here, TeleSign alleges facts supporting knowledge and, at least, has alleged post-suit knowledge.[85]

### D.    TeleSign has adequately pleaded specific intent.

The specific intent requirement requires, beyond the threshold knowledge, that the inducer must have an affirmative intent to cause direct infringement.[86]    *Bill of Lading* discussed the pleading standard for specific intent and stated "[a]t this stage of the litigation a plaintiff is only required to plead enough facts to enable a court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[87] Plaintiffs need note prove their cases when inferences can reasonably be drawn.[88]

---

[83] *See, e.g.*, ECF No. 1 at ¶¶ 101-121 ("Direct Infringement" section).
[84] *TeleSign I*, ECF No. 75, p. 12.
[85] *See, e.g.*, ECF No. 1 at ¶¶ 140-153 ("Knowledge" section).
[86] *TeleSign I*, ECF No. 75, pp. 13 (citation omitted).
[87] *In re Bill of Lading*, 681 F.3d at 1342 (citation omitted).
[88] *Id*. at 1342-43.

Even minimal allegations suggesting a defendant pushed others to infringe can be sufficient.[89]

TeleSign's allegations are sufficient to reasonably infer specific intent. TeleSign's complaint addresses "Specific Intent" in Section VIII(B).[90]   TeleSign's complaint gives an overview of the patent, what Twilio's service does that TeleSign accuses of infringement, and gives examples of how Twilio shows others how to use its products and services to infringe.   Although the complaint does not expressly identify certain patent claims as infringed besides claim 1, the complaint contains enough to support an inducement claim.   Twilio argues that "mere knowledge of possible infringement" does not amount to inducement,[91] but "that statement does *not* mean that plaintiffs must prove their case at the pleading stage by establishing that the defendant must have known its customers' conduct constituted infringement."[92]

## V.    TELESIGN IS NOT REQUIRED TO PLEAD DETAILS ON DOCTRINE OF EQUIVALENTS.

Separate, detailed allegations are not required in a complaint when alleging infringement under the doctrine of equivalents, which is merely a type of direct infringement.[93]   In a case cited by Twilio itself, the court decided that a theory of infringement under the doctrine of equivalents need only be *mentioned* in a complaint,

---

[89] *TeleSign I*, ECF No. 75, pp. 13 (*citing Unilin Beheer B.V. v. Tropical Flooring*, No. 12-2209, 2014 WL 2795360, *5 (C.D. Cal. June 13, 2014)).

[90] *See, e.g.*, ECF No. 1 at ¶¶ 122-139 ("Specific Intent" section).

[91] ECF No. 34, p. 7.

[92] *Intellicheck Mobilisa, Inc. v. Wizz Sys., LLC*, No. 15-3666, 2016 U.S. Dist. LEXIS 7290, *14-15 (W.D. Wash. Jan. 20, 2016).

[93] *Teashot LLC v. Green Mt. Coffee Roasters, Inc.*, No. 12-189, 2014 U.S. Dist. LEXIS 14841, *18 (D. Colo. Feb. 6, 2014) ("A plaintiff is not required to expressly refer to the doctrine of equivalents in a complaint, alleging infringement and citing to the statute prohibiting infringement is sufficient.") (internal citation omitted).

TELESIGN'S OPPOSITION TO TWILIO'S MOTION TO DISMISS

which we do.[94]  Other courts have allowed a plaintiff to pursue infringement under the doctrine of equivalents even when it was not mentioned at all in a complaint.[95]  The main point courts disagree on is whether the doctrine of equivalents must *expressly* be in the pleadings, not on the specificity of the allegations.[96]  Here, TeleSign *has* expressly alleged infringement of the '792 Patent under the doctrine of equivalents.[97] No more is required at the pleading stage.

## VI.    CONCLUSION.

But here, for this case, Twilio's motion to dismiss should be denied because TeleSign's complaint specifically identifies Twilio's products or services and alleges that they perform the same function as the patented method.  TeleSign submits that its complaint complies with *Twombly* and *Iqbal*, as Twilio's Answer will also have to.[98]

---

[94] *Automated Transaction Corp. v. Bill Me Later, Inc*., No. 09-61903, 2010 U.S. Dist. LEXIS 46101, *7, 11 (S.D. Fla. May 11, 2010) ("the two different theories of infringement must be included in a pleading…").

[95] *Probatter Sports, LLC v. Sports Tutor, Inc*., No. 05-1975, 2015 U.S. Dist. LEXIS 92107, *30-31 (D. Conn. July 15, 2015) ("it is of no consequence that plaintiff did not use the words 'doctrine of equivalents' in its complaint: the nature of the infringement—whether literal or under the doctrine of equivalents—need not be pleaded.") (quotation omitted).

[96] *Teashot LLC*, 2014 U.S. Dist. LEXIS 14841, *18-19 ("[D]istrict courts are split as to whether such express pleading [of infringement under the doctrine of equivalents] is required.") (citations omitted).

[97] ECF No. 1 at ¶ 95.

[98] See, e.g. *Info. Planning & Mgmt. Serv. v. Dollar Gen. Corp*., 2016 U.S. Dist. LEXIS 883, *13-14 (E.D. Va. Jan. 5, 2016) (dismissing counterclaims and affirmative defenses when defendant merely listed code sections without referencing specific content of the sections or any facts supporting its counterclaim of invalidity and affirmative defenses); *see also Textile Network, Inc. v. California Webbing Mills, Inc*., No. 15-1756 (D. Colo. Feb. 23, 2016), ECF No. 37, p. 4 (recommending granting motion to dismiss counterclaims, and finding "that the counterclaims do not provide fair notice to Plaintiff of the bases for Defendant's claims of noninfringement, invalidity, and unenforceability.").

Dated:  July 11, 2016                  By:/s/ Jesse J. Camacho

Gary Miller
(gmiller@shb.com)
Shook, Hardy & Bacon L.L.P.
111 S. Wacker Dr.
Chicago, IL 60606
Telephone:  312.704.7700
Facsimile:  312.558.1195

Jesse Camacho
(jcamacho@shb.com)
Mary Jane Peal
(mpeal@shb.com)
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone:  816.474.6550
Facsimile:  816.421.5547

Tony M. Diab
(tdiab@shb.com)
Shook, Hardy & Bacon L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California 92614
Telephone:  949.475.1500
Facsimile:  949.475.0016

Attorneys for Plaintiff
TELESIGN CORPORATION

TELESIGN'S OPPOSITION TO
TWILIO'S MOTION TO DISMISS