# EXHIBIT 2

# UNITED STATES PATENT AND TRADEMARK OFFICE

_____

# BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

**Twilio Inc.**
Petitioner

**v.**

**TeleSign Corporation**
Patent Owner

Patent No. 8,462,920

Patent Filing Date: October 5, 2006

Title:  REGISTRATION, VERIFICATION AND NOTIFICATION SYSTEM

_____

_Inter Partes_ Review No.:  IPR2016-00450

_____

# PATENT OWNER'S PRELIMINARY RESPONSE

# Table of Contents

I. INTRODUCTION ..................................................................................1

II. MANDATORY DISCLOSURE UNDER 37 C.F.R. §42.8(b)(2)...........................2

III. OVERVIEW ......................................................................................2

    A. The '920 Patent. ........................................................................2

    B. Summary of the Petition's Deficiencies..............................................4

IV. LEGAL STANDARDS ........................................................................7

    A. Standard for Granting *Inter Partes* Review .......................................7

    B. Standard for Claim Construction in *Inter Partes* Review....................8

    C. Standard for Obviousness.............................................................10

V. CLAIM CONSTRUCTION...................................................................11

    A. Summary ................................................................................11

    B. A notification event ultimately leads to registrants being notified that the event occurred (if the event occurs)........................12

    C. Petitioner's construction should not be adopted because it reads out "notification" from "notification event." ......................................15

        1. The Shamos Declaration's claim-construction comments should be given no weight. ....................................................17

        2. The Petition does not adequately support its proposed construction...............................................................20

    D. Petitioner's proposal is not true to the claim language and description. ................................................................................21

VI. LACK OF OBVIOUSNESS .................................................................22

    A. Overview of the Primary Reference, Bennett. ....................................22

        1. Bennett expressly states that it is not concerned with verifying the identity of individual users–one of the clear issues addressed by the '920 Patent.........................................23

        2. The Petition fails to establish that Bennett teaches or suggests a verification and notification process. ......................25

        3. The Petition fails to establish that Bennett teaches or suggests establishing a notification event................................28

        4. Even if Petitioner's construction of "notification event" were correct, the Petition fails to establish that Bennett

teaches or suggests establishing a notification event
associated with the registrant. ...................................................29

5.    The Petition fails to establish that Bennett teaches re-
verifying the registrant electronic contact after
identifying the occurrence of an established notification
event. ..........................................................................................30

6.    Even if Bennett were to render obvious "establishing a
notification event associated with the registrant," the
Petition fails to establish that Bennett teaches or suggests
re-verifying a registrant electronic contact after
identifying the occurrence of an established notification
event. ..........................................................................................31

7.    An ordinary skilled artisan would not be motivated to
modify Bennett as suggested by the Petition. ...........................34

8.    The Shamos Declaration improperly relies upon Thoursie
in its proposed challenge of Ground 1 even though
Ground 1 is purportedly solely based on Bennett. ....................36

B.    If Petitioner's position that a "notification event" may simply
be any "event" and any "verification" subsequent to an initial
verification is a "re-verification" upon detection of such event
is to be accepted, then the '421 Application also must be
interpreted as disclosing these limitations. .........................................37

1.    If the '421 Application adequately supports the invention
claimed in the '920 Patent, then the '920 Patent is
entitled to a priority date at least equivalent to that of the
filing date of the '421 Application. ............................................39

C.    Bennett, Thoursie, Rolfe and Woodhill are not analogous art. ...........39

VII.    THE SHAMOS DECLARATION IS ENTITLED TO NO WEIGHT. .................40

1.    The Shamos Declaration inconsistently considers and
uses the terms "verification," "re-verification," and "two-
factor authentication." ...............................................................42

2.    The hypothetical scenarios in the declaration are not
supported by the citations in the declaration. ...........................45

3.    The declaration adds and omits words from allegedly
direct quotations. .......................................................................46

VIII.    CONCLUSION .......................................................................................48

statements; instead, there must be some articulated reasoning with some rational

underpinning to support the legal conclusion of obviousness." *Id.* at 418.

In determining the scope and content of the prior art, the "mere fact that a

certain thing *may* result from a given set of circumstances is not sufficient [to

establish inherency.]" *In re Rijckaert*, 9 F.3d 1531, 1534 (Fed. Cir. 1993) (quoting

*In re Oelrich*, 666 F.2d 578, 581-82 (CCPA 1981)).  Further, "[t]hat which may be

inherent is not necessarily known.  Obviousness cannot be predicated on what is

unknown." *Id.* (citing *In re Spormann*, 363 F.2d 444, 448 (CCPA 1966)).

## V.    CLAIM CONSTRUCTION

### A.    Summary

The table below summarizes the parties' positions regarding the proper

construction of "notification event."

| "notification event" | |
|---|---|
| Patent Owner's Construction | Petitioner's Construction |
| **an event that results in the registrant being notified that the event occurred** | an event that results in the registrant being contacted either for re-verification or for notification that the event occurred |

Here, an appropriate construction for "notification event" is "an event that

results in the registrant being notified that the event occurred."

### B. A notification event ultimately leads to registrants being notified that the event occurred (if the event occurs).

The '920 Patent repeatedly explains that notification events are events that result in a registrant being notified of the occurrence thereof. Below are illustrative, relevant citations:

1. "Notification events are established, and the **registrant is notified** of the occurrence of a previously established notification event . . . ." EX 1001 at Abstract.

2. "The present invention also relates to a process for **notifying registrants** of predetermined events using information obtained during the registration process." EX 1001 at 1:10-13.

3. "For example, a consumer may wish **to be notified** every time a withdrawal or [*sic*] more than one thousand dollars is requested …". EX 1001 at 1:42-44.

4. "A business **may wish to notify** a consumer when more than five transactions post to a consumer's account within twenty-four hours." EX 1001 at 1:45-48.

5. "When credit cards, account numbers, and the like are stolen, these accounts are quickly drained of cash or credit over a short period of time. This can be largely avoided by **notifying the account owner** of these acts …". EX 1001 at 1:48-51.

6. "There is also a continuing need for a method to **notify a registrant**, such as through the registrant's telephone number, of events which are established either by the individual registrant or the company through which the registrant is conducting services."  EX 1001 at 1:64-2:1.

7. "The present invention resides in a process for verifying the identity of a registrant, as well as using the registration information to **notify the registrant** of events that are either established by the registrant or the business through which the registrant has registered."  EX 1001 at 2:7-11.

8. "Upon the occurrence of a previously established notification event, **the registrant is notified** …".  EX 1001 at 2:49-51.

9. "FIG. 9 is a flow chart depicting the steps taken in accordance with the present invention for registering and verifying a registrant as a **prelude to notification**; …".  EX 1001 at 3:42-44.

10. "[T]he present invention resides in a process for verifying the identity of a registrant, and utilizing the verification and/or registration information **to notify** the registrant of predetermined events established by either the registrant or the business."  EX 1001 at 3:54-58.

11. "The present invention **not only** provides a method of verifying a potential registrant, such as through his or her telephone number by establishing connection on-line with the registrant as well as via a telephone connection, it is **also** designed and configured so as to **provide notifications**, alerts, information, etc., …".  EX 1001 at 8:40-45.

12. "Such numbers are stored in the user's account (904), and can be used in the verification process, **as well as** an alert or **notification process**, …".  EX 1001 at 8:56-58.

13. "Thus, when a consumer attempts to make certain transactions, as specified by either the consumer or the business, the consumer may **be notified** or alerted in a variety of way [*sic*]."  EX 1001 at 10:44-47.

14. "For example, the consumer may wish **to be notified** every time a withdrawal of more than one thousand dollars is requested from his or her checking account."  EX 1001 at 10:60-62.

15. "Or, the business may wish **to notify** the consumer when more than five transactions post to the consumer's account within twenty-four hours."  EX 1001 at 10:62-65.

16. "[A] consumer who is a parent may wish **to be notified** when the consumer's child makes a purchase or [*sic*] more than [an] amount specified by the business or consumer."  EX 1001 at 10:67-11:3.

17. "The present invention is not limited to **notifying** a user of events that occur with respect to a financial account."  EX 1001 at 11:11-12.

18. "A verification **and notification** process, …".   EX 1001 at cl. 1, 12:20.

19. "The process of claim 2 further comprising: **notifying** the registrant of the occurrence of the established notification event by establishing a telephonic connection with the registrant via a registrant electronic contact."  EX 1001 at cl. 4, 12:61-65.

Thus, one of ordinary skill in the art, in view of the specification and claims, would understand that a notification event is "an event that results in the registrant being notified that the event occurred."

## C.    Petitioner's construction should not be adopted because it reads out "notification" from "notification event."

Despite the excerpts above from the specification, the Petition equates "notification event" with "event," giving no weight to "notification."  Petitioner's construction would extend the scope of "notification event" to include any event that results in the registrant being contacted for re-verification.  Petition at p. 10 ("Thus, a 'notification event' does not necessarily result in notifying the registrant

of the occurrence; it may result in either reverification <u>or</u> notification.") (emphasis original).  Divorced from the specification, Petitioner's proposal is not what an ordinary skilled artisan would understand "notification event" to mean.  The claim recites, and the specification describes, not merely an "event," but a "notification event."

The Petition's failure to address all the limitations of the claim language cannot be viewed as mere oversight.  Petitioner understands that every single limitation in a claim lends importance to its meaning.  For instance, at p. 20 of the Petition, in discussing the primary reference relied upon in the proposed grounds for rejection (Bennett (EX 1005)), Petitioner states that "Bennett's 'completion code' is" purportedly "a type of 'verification code,' because the **code is used to verify** the registrant's provided electronic contact."  Petition at p. 20.

However, when similarly discussing the term "notification event," the description is devoid of any statement similarly explaining why the events described in Bennett are supposedly "notification events."  For instance, one would expect a statement that indicated that these described events are "notification events" because they are events that notify the user of something.  The fact that a statement in this regard is missing from the Petition (and the Shamos Declaration) is illustrative of the simple fact that Bennett does not describe "notification events"

as the term is properly construed:  "an event that results in the registrant being notified that the event occurred."

Petitioner proposes its claim-construction positions to try to force the art within the scope of the claims.  And as explained below, Petitioner's position that a notification event need not result in the user being notified of the occurrence of the event should not properly be bolstered by the Shamos Declaration and is inconsistent with the specification.

### 1.    The Shamos Declaration's claim-construction comments should be given no weight.

Instead of properly starting with the claims or the specification to construe "notification event," the Petition cites directly to and detrimentally relies on the Shamos Declaration.  Petition at p. 9 (citing EX 1002 at ¶¶ 23-29).  But the Shamos Declaration does not address all the limitations of the claims and ignores important aspects of the specification.  Dr. Shamos is also an attorney, and his declaration is more of any advocacy piece to support Petitioner's positions than an independent analysis and setting forth of technical facts.  When convenient, the declaration sometimes leaves out important information.  At other times, the declaration adds misleading and/or inappropriate information.

As mentioned at § III.B., above, Petitioner's declaration states:  "These steps amount to nothing more than: receiving a telephone number over the Internet; connecting to a telephone associated with the telephone number to communicate a

verification code; receiving a verification code over an online form; comparing the received code with the communicated code for a match; [and] upon identifying an event, repeating the process." EX 1002 at ¶ 17. Establishing a notification event, which is both expressly claimed and clearly explained in the specification, is excluded from this summary. *See*, *e.g.*, § V.B., above. Here, the declaration leaves out important information. "All words in a claim must be considered in judging the patentability of that claim against the prior art." In re Wilson, 424 F.2d 1382, 1385 (CCPA 1970). Because the declaration does not address all claim limitations, it cannot be used to assess the patentability of the claim. His attempt to completely read out elements of the claims is particularly troubling given that Dr. Shamos is a registered patent attorney, who should appreciate the significance of all claim elements.

Later, the declaration misquotes the '920 specification. The declaration alleges that the '920 Patent, at col. 9, lines 3-4 states: "If a previously established **notification event** occurs, then the system will notify and/or verify the user." EX 1002 at ¶ 28. But that's not what the '920 Patent says. Dr. Shamos added the word "notification." The sentence says "events," not "notification events": "If a previously established **event** occurs, then the system will notify and/or verify the user." EX 1001 at 9:3-4. Here, the declaration improperly adds critical misinformation to advocate for a point, misquoting the '920 Patent.

These two examples are representative.  The statement in the declaration that the claimed steps amount to nothing more than what was quoted above and at § III.B.—disregarding express claim limitations and the specification–indicates that he does not understand the invention, does not understand the most fundamental aspects of claim construction, does not understand the concept that all claim limitations are to be respected, and is willing to overlook relevant claim limitations just to support his client's positions.  The entire declaration should not be accorded any weight.  *See also*, § VII., below.  Given the importance of "notification events" to this matter, to misquote the specification right where it matters—adding "notification" where it does not appear in the text—indicates an advocacy zeal (at best) that further undermines any residual weight that might otherwise have been accorded an expert declaration.

This misquotation is not isolated.  With regard to the '920 Patent, the declaration also argues that "[t]he specification's use of the word "or" indicates that the occurrence of the particular "notification event" is not necessarily communicated to the registrant" when referring to EX 1001 at 8:59-62.  EX 1002 at ¶ 28.  But the specification states: "For example, if the user logs into his or her account (906), attempts to make a transaction (908), or attempts to modify account information (910), the user may be notified **or <u>even</u>** required to become telephone

verified (912)."  EX 1001 at 8:59-62.  Thus, "or" is not used by itself, and the
phrase "or even" means "in addition to" being notified (not instead of).

Even in quotations the Petitioner's declaration is unreliable or misleading
(*e.g.*, stating that the specification says "or" rather than "or even," although the
phrases have very different meanings), and the declaration should not be given any
evidentiary weight.

### 2.    The Petition does not adequately support its proposed construction.

The Petition provides only two paragraphs to support its proposed claim
construction.  Petition at pp. 9-10.  The first is not relevant to whether the
notification event results in notification **or** re-verification.  Although it is true that
notification events can be applied in a wide variety of scenarios and could be
transactions, it is also true that the recited "notification event" will result in the
user being notified about an occurred event regardless of the scenario and whether
the format of the notification event is that of a transaction.  *See* § V.B., above.

Thus, the Petition's second paragraph (of Section VIII.A, Petition at p. 10) is
the only support for Petitioner's position that a "notification event" "does not
necessarily result in notifying the registrant of the occurrence; it may result in
either reverification or notification."  Petition at 10 (emphasis original).  And this
support is based on one statement made during the prosecution history:  "an
established notification event may include receiving a request to access an account

associated with the registrant from a device that is not associated with the account." Petition at p. 10, citing EX 1013 at p. 81. But that statement does not contradict and is not even in tension with the specification's clear disclosure that notification events result in the user being notified about that event. Yes, an established notification event may include receiving a request to access an account from a device not associated with a registrant's account, and in that claimed situation, such a notification event would result in the registrant being notified of such an event, consistent with Patent Owner's proposed claim construction.

## D. Petitioner's proposal is not true to the claim language and description.

Petitioner's proposal should be rejected because it would allow for the claims of the '920 Patent to read on embodiments where notification events do not result in the registrant being notified that the event occurred at all. The claims of the '920 Patent read in view of the specification do not contemplate that. The claims recite a "notification" event, and the specification explains that users are notified of such notification events. Thus, Petitioner's proposal is not true to the overall claim language and description in the specification. Patent Owner's proposal, however, does reflect the claim language and the specification—and should therefore be adopted.

## VI.    LACK OF OBVIOUSNESS

### A.    Overview of the Primary Reference, Bennett.

All grounds asserted in the Petition rely upon Bennett.  Petition at pp. 3-4.

Bennett relates to identifying and/or dealing with major, widespread theft (or suspected theft) of user credentials. This point is repeatedly stressed throughout Bennett.  Below are illustrative, relevant citations:

1. "Embodiments of the present invention may relate to a method and system for addressing **massive theft (or suspected theft)** of identification information used in order to access services that contain, for example, confidential information of the users of those services, services where the user can perform sensitive operations or other services."  EX 1005 at 2:47-52.

2. "Embodiments of the invention may be used so Service Providers that may provide services containing confidential information, will be able to continue providing access to such services to their users, for example, in the face of **massive theft, or suspected theft** of credentials of the users of their services." EX 1005 at 5:12-17.

3. "An embodiment of the invention and system may be used … to address **massive credentials theft or suspected theft** …".  EX 1005 at 5:45-48.

4.  "The system and method described herein may be implemented whenever **massive Credentials' theft** may occur, as well as when it is **suspected** to have occurred …".  EX 1005 at 6:19-21.

5.  "This is necessary to prevent fox [*sic*] example a fraudster from executing **massive fraud**."  EX 1005 at 16:31-32.

Bennett is directed to addressing *en masse* theft and fraud on a large scale basis, not notifying specific users of notification events "associated with" a user and verifying previously verified users.

### 1.    Bennett expressly states that it is not concerned with verifying the identity of individual users–one of the clear issues addressed by the '920 Patent.

As previously set forth at § III.A., above, one issue addressed by the '920 Patent is that it seeks to verify the identity of registrant users – to verify that registrant users are who they say they are.  Importantly, Bennett expressly makes clear that this is **not** what its teachings are concerned with:  "This method may more generally be seen as a method for achieving a sufficient level of security in authentication **not by actually validating user's identity** but rather by (i) requiring users to provide details of 'something' that may be either expensive, complicated or hard to achieve in large numbers … ; and (ii) by limiting the number of different user service accounts or users who may use the same 'something' for authentication."  EX 1005 at 7:44-53.  This is a critical distinction

because it illuminates why Bennett fails in any way to address another important aspect of the '920 Patent – notification.

The '920 Patent seeks not only to verify a registrant user's identity but also to provide for notification to the user as to the events that resulted in a required re-verification. This is made clear throughout the specification and claim language of the '920 Patent. For instance, independent claim 1 recites a "verification and notification process," "verifying a received registrant electronic contact," "establishing a notification event associated with the registrant," and "re-verifying the registrant electronic contact." EX 1001 at cl. 1, 12:20-55. *See also*, EX 1001 at cl. 4, 12:61-65 ("The process of claim 2 further comprising: notifying the registrant of the occurrence of the established notification event by establishing a telephonic connection with the registrant via a registrant electronic contact."). Both verification and notification are contemplated by the '920 Patent.

Bennett on the other hand is concerned not with "actually validating [a] user's identity" but with implementing a process and system to address widespread credentials theft. EX 1005 at 7:44-53. The teachings of Bennett thus contain no suggestion of or motivation to notify users as to the events based upon which they are being asked to verify. They are simply being asked to perform some additional security measure to prevent theft or in view of widespread theft of user credentials. Bennett provides no reason why any additional information would be provided to a

user and thus provides no teaching or suggestion that users are notified of anything in association with the verification process.   This leads to several major deficiencies in the teachings of Bennett with respect to the claims of the '920 Patent.

### 2.    The Petition fails to establish that Bennett teaches or suggests a verification **and notification** process.

As set forth in § VI.A.1., above, Bennett does not teach or suggest user notification.  Thus it logically follows that Bennett cannot and does not teach "a verification and notification process."   Despite Petitioner's misleading assertion that "Bennett is directed at an 'authentication system' that performs a two-factor authentication at registration and repeats the process when a notification event occurs," Bennett is entirely devoid of any teaching or suggestion of "notification" or "notification events" as the term is properly construed herein.  Petition at p. 11. Rather, Petitioner improperly uses terminology taken not from Bennett but from the '920 Patent in an attempt to portray that Bennett is more aligned with the claims of the '920 Patent than it actually is.  The simple fact is that Bennett fails to disclose a verification and **notification** process.

The preamble of claim 1 recites a "verification **and notification** process, …".  EX 1001 at cl. 1, 12:20.  Properly construed, a "verification and notification process" both verifies a registrant electronic contact and provides for a registrant to be notified of established notification events.   This is repeatedly made clear

throughout the specification of the '920 Patent.  Below are illustrative, relevant citations:

1. "[T]he present invention relates to a process for **<u>verifying</u>** an on-line registration by a telephone connection separate from the on-line connection between the web-site and potential registrant.  The present invention **<u>also</u>** relates to a process for **<u>notifying</u>** registrants of predetermined events using information obtained during the registration process."  EX 1001 at 1:7-13.

2. "[T]here is a continuing need for a method of **<u>verifying</u>** a registrant's identity, … There is **<u>also</u>** a continuing need for a method to **<u>notify</u>** a registrant, … of events … The present invention fulfills **<u>these</u>** needs and provides other related advantages."  EX 1001 at 1:62-2:3.

3. "The present invention resides in a process for **<u>verifying</u>** the identity of a registrant, **<u>as well as</u>** using the registration information to **<u>notify</u>** the registrant of events…".  EX 1001 at 2:7-9.

4. "[T]he present invention resides in a process for **<u>verifying</u>** the identity of a registrant, **<u>and</u>** utilizing the verification and/or registration information to **<u>notify</u>** the registrant of predetermined events…".  EX 1001 at 3:54-58.

Petitioner provides a misleading and inaccurate picture of the teachings of Bennett at p. 16 of the Petition wherein it states, in describing Bennett, "… where a returning user attempts to access an account from a different IP address or computer that was previously used, the system may **notify the user** by re-verifying and communicating a verification message to the stored communication channel." Petition at p. 16.   In fact, Bennett does not describe notifying the user by re-verifying and communicating a verification message as asserted, either at the cited locations or elsewhere in the reference.   Rather, Bennett simply teaches user verification void of any notification at all.

In Bennett, the registrant would only know they are being asked to verify. There is no disclosure that the request would contain no explicit or implicit information as to what event or condition might have occurred to prompt the request.   Nor is there any disclosure that such information might be forthcoming subsequent to verification.   There is no disclosure at all that the registrant is aware of alert levels or other conditions that may prompt the system to require registrant verification.   Bennett is devoid of any description of or motivation to notify the registrant of anything.   Thus, Bennett fails to teach or suggest "a verification **and notification** system."

### 3.    The Petition fails to establish that Bennett teaches or suggests establishing a notification event.

As previously set forth at §§ V.A. and V.B., above, properly construed, a "notification event" is "an event that results in the registrant being notified that the event occurred." As Bennett is devoid of any description of or motivation to notify the registrant of any event for which verification is requested, Bennett fails to teach or suggest "establishing a notification event."

According to the Petition, "Bennett states that 'each and every transaction or user may be required to go through out of channel authentication' which may "include attempts to access an account by the registrant, …". Petition at p. 22. The Petition further asserts that in this scenario, the "notification event would be the user attempting to login to the" account. Petition at p. 23. While Petitioner is attempting to refer to some vague notion of an event, it has failed to show that these are "notification events," as properly construed given the context of the '920 Patent specification and claims. The term "notification event" cannot be condensed down to merely an event as contended by Petitioner. Such would not comport with what a skilled artisan would understand "notification event" to mean and it would improperly read "notification" out of "notification event."

**4.      Even if Petitioner's construction of "notification event" were correct, the Petition fails to establish that Bennett teaches or suggests establishing a notification event <u>associated with the registrant</u>.**

Continuing the flawed line of reasoning discussed in the immediately preceding paragraphs, the Petition further asserts that "the notification event would be associated with each user that registered with the on-line banking system." Petition at p. 23. Besides being fatally flawed as not disclosing "notification events" at all, this line of reasoning is additionally flawed because Bennett expressly states that these out of channel authentications are <u>**not**</u> "based on user … information" and thus are not *associated with the registrant user* (as claimed). EX 1005 at 11:41-45.

In the Petition, column 11, lines 44-45 of Bennett have been taken out of context to make them appear to support a position which they do not support. Reproduced more completely, the relevant portion of Bennett states: "In other embodiments, the information kept on users may differ, and out of channel or out of band authentication <u>**may not be based on user**</u> or alert <u>**information**</u>. <u>**For example**</u>, each and every transaction or user may be required to go through out of channel authentication." EX 1005 at 11:41-45. If it is required for all transactions or all users to go through out of channel authentication, Bennett makes it clear that this is not based on an event associated with the registrant user but is rather based on information <u>**not**</u> associated with the registrant user. Rather, Bennett explains

that companies can require all of their customers to perform additional steps in response to known or suspected "massive fraud." *See* § VI.A., above.  Thus, the Petition fails to establish that Bennett teaches or suggests establishing a notification event **associated with the registrant**.

### 5. The Petition fails to establish that Bennett teaches re-verifying the registrant electronic contact <u>after</u> identifying the occurrence of an established notification event.

Element 1[e] of independent claim 1 begins with "after identifying the occurrence of the established notification event, re-verifying the registrant electronic contact, …".   EX 1001 at claim 1, 12:42-43.   Bennett is the only reference relied upon in support of this claim element in the Petition.  Petition at p. 29.   However, the Petition utterly fails to establish that Bennett teaches "after identifying the occurrence of the established notification event."   Rather, in its purported support of this element, the Petition merely states that "[t]his is introductory language for claim elements 1[e][i] through 1[e][iv].  Each element is addressed separately below."  Petition at p. 29.  It then makes the unsubstantiated statement that "[t]he steps below occur after an occurrence of the established notification event is identified."  *Id*.   As the sole support for this conclusory statement, the Petition references the Shamos Declaration at ¶ 135.  *Id*.  The Shamos Declaration, however, merely contains the exact same unsupported