# EXHIBIT A

# UNITED STATES PATENT AND TRADEMARK OFFICE

_____

# BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

**Twilio Inc.**
Petitioner

**v.**

**TeleSign Corporation**
Patent Owner

Patent No. 8,462,920

Patent Filing Date: October 5, 2006

Title:  REGISTRATION, VERIFICATION AND NOTIFICATION SYSTEM

_____

*Inter Partes* Review No.:  IPR2016-00450

_____

# PATENT OWNER'S PRELIMINARY RESPONSE

# Table of Contents

I.      INTRODUCTION ...................................................................................1

II.     MANDATORY DISCLOSURE UNDER 37 C.F.R. §42.8(b)(2)...........................2

III.    OVERVIEW ..........................................................................................2

      A.      The '920 Patent. ..........................................................................2

      B.      Summary of the Petition's Deficiencies...........................................4

IV.     LEGAL STANDARDS ............................................................................7

      A.      Standard for Granting *Inter Partes* Review ....................................7

      B.      Standard for Claim Construction in *Inter Partes* Review....................8

      C.      Standard for Obviousness..............................................................10

V.      CLAIM CONSTRUCTION......................................................................11

      A.      Summary ...................................................................................11

      B.      A notification event ultimately leads to registrants being notified that the event occurred (if the event occurs)..........................12

      C.      Petitioner's construction should not be adopted because it reads out "notification" from "notification event." .......................................15

            1.      The Shamos Declaration's claim-construction comments should be given no weight. ......................................................17

            2.      The Petition does not adequately support its proposed construction. .............................................................................20

      D.      Petitioner's proposal is not true to the claim language and description. ...............................................................................21

VI.     LACK OF OBVIOUSNESS .....................................................................22

      A.      Overview of the Primary Reference, Bennett. ....................................22

            1.      Bennett expressly states that it is not concerned with verifying the identity of individual users–one of the clear issues addressed by the '920 Patent. .........................................23

            2.      The Petition fails to establish that Bennett teaches or suggests a verification and notification process. .....................25

            3.      The Petition fails to establish that Bennett teaches or suggests establishing a notification event................................28

            4.      Even if Petitioner's construction of "notification event" were correct, the Petition fails to establish that Bennett

teaches or suggests establishing a notification event associated with the registrant. ..................................................29

5.    The Petition fails to establish that Bennett teaches re-verifying the registrant electronic contact after identifying the occurrence of an established notification event. .......................................................................................30

6.    Even if Bennett were to render obvious "establishing a notification event associated with the registrant," the Petition fails to establish that Bennett teaches or suggests re-verifying a registrant electronic contact after identifying the occurrence of an established notification event. .......................................................................................31

7.    An ordinary skilled artisan would not be motivated to modify Bennett as suggested by the Petition. ...........................34

8.    The Shamos Declaration improperly relies upon Thoursie in its proposed challenge of Ground 1 even though Ground 1 is purportedly solely based on Bennett. ....................36

B.    If Petitioner's position that a "notification event" may simply be any "event" and any "verification" subsequent to an initial verification is a "re-verification" upon detection of such event is to be accepted, then the '421 Application also must be interpreted as disclosing these limitations. ..........................................37

1.    If the '421 Application adequately supports the invention claimed in the '920 Patent, then the '920 Patent is entitled to a priority date at least equivalent to that of the filing date of the '421 Application. ...........................................39

C.    Bennett, Thoursie, Rolfe and Woodhill are not analogous art. ...........39

VII.    THE SHAMOS DECLARATION IS ENTITLED TO NO WEIGHT. .................40

1.    The Shamos Declaration inconsistently considers and uses the terms "verification," "re-verification," and "two-factor authentication." ..............................................................42

2.    The hypothetical scenarios in the declaration are not supported by the citations in the declaration. ...........................45

3.    The declaration adds and omits words from allegedly direct quotations. ......................................................................46

VIII.    CONCLUSION .........................................................................................48

## I.    INTRODUCTION

In accordance with 37 C.F.R. § 42.107, Patent Owner TeleSign Corporation ("Patent Owner") submits this preliminary response to the Petition filed by Twilio Inc. ("Petitioner") requesting *inter partes* review of claims 1-10, 13 and 17-22 of U.S. Patent No. 8,462,920 (the "'920 Patent").

The Board should deny Twilio's Petition because it fails to show a reasonable likelihood that Petitioner will prevail with respect to at least one challenged claim.  The Petition suffers from three independently fatal flaws, each of which is a sufficient basis to deny institution of *inter partes* review.  First, the Petition relies on improper claim constructions.  This infects the Petition's prior-art analysis.  Second, the Petition has not shown that the cited references, alone or in combination, teach[1] or suggest all elements of the claims.  For elements not taught in the primary reference, the Petition does not provide a sufficient rationale for modifying the primary reference to include the missing features.  The main limitations of independent claim 1 that are not taught include 1) "establishing a notification event associated with the registrant," 2)  identifying an occurrence of the established notification event," 2) "after identifying the occurrence of the

---

[1] Uses herein of "teach"/"teaches" means "teach or suggest"/"teaches or suggests" even if "or suggest" is occasionally omitted.

established notification event, re-verifying the registrant electronic contact," and 4) "a verification **and notification**[2] process." Finally, the Petition detrimentally depends on a declaration (the "Shamos Declaration") that is entitled to little or no weight. The Petition lacks independent evidentiary support. And without the Shamos Declaration, it cannot support the conclusory statements made.

## II.    MANDATORY DISCLOSURE UNDER 37 C.F.R. §42.8(b)(2)

The '920 Patent is asserted against Petitioner in concurrent litigation styled *TeleSign Corp. v. Twilio Inc.*, No. 2:15-cv-03240. Co-pending petitions for *inter partes* review in IPR No. 2016-00451 and IPR No. 2016-00360, also filed by Petitioner, identified this Petition as a related matter. Patent Owner does not foresee at this time that the decision in this Petition will affect, or be affected by, these other Petitions.

## III.    OVERVIEW

### A.    The '920 Patent.

One issue addressed by the '920 Patent is preventing fraud and identity theft by verifying the identity of registrant users–verifying that users are who they say

---

[2] All bolding, italics, and other emphasis appearing in any quoted matter has been added by the Patent Owner unless indicated otherwise. Thus, we do not respectively indicate "emphasis added" throughout this document.

they are–and providing for the notification to registrant users that certain notification events have occurred. EX 1001 at 1:41-51 ("fraud or identity theft … can be largely avoided by notifying the account owner of these acts …"). This problem is particularly acute with respect to fraudulent communications or financial transactions where accounts can quickly be compromised. EX 1001 at 1:48-50 ("When credit cards, account numbers, and the like are stolen, these accounts are quickly drained of cash or credit over a short period of time."). The inventors understood that alerting the user to certain notification events could benefit both the user/consumer and the online business. EX 1001 at 1:57-59 ("There are also instances … in which notification could benefit both the consumer as well as the business."). In certain situations, a registrant's electronic contacts are re-verified even though they have already been verified at least once before.

Another issue addressed by the '920 Patent is preventing fraudulent website registrations, such as attempts by fraudsters to pass off false registration information as legitimate. EX 1001 at 1:34-36 ("However, when doing business on the Internet, potential registrants often register with untraceable or false e-mail addresses and phone numbers."). *See also* EX 1001 at 4:46-48 ("[A] present problem with on-line registrations is that the registrant often registers with untraceable and false e-mail addresses and telephone numbers."). This problem has only increased, and today some websites are besieged with hundreds of thousands,

or even millions, of fake-registration attempts per day, a problem that the inventors recognized even in 2005 could lead to security breaches and fraud on the website owners. EX 1001 at 1:36-38 ("This can compromise the intended purpose of the registration, create a breach of security and constitute fraud on the web-site owners.").

The proliferation of online fraud and fake website registrations are recent problems rooted in computer technology. Before widespread adoption of the Internet, companies did not face the problems of people trying to make fake website registrations or steal user's online identities. The '920 Patent meets these recent problems rooted in computing and Internet technology with a corresponding computer-related solution. A solution provided by the claimed invention is to verify a registrant electronic contact (*e.g.*, a telephone number), establish a **notification event** associated with the registrant, identify an occurrence of the established notification event, and, after identifying the occurrence of the established notification event, **re-verify** the registrant electronic contact. EX 1001, claim 1 (12:20-55). Claim 1 is directed to a verification **and notification** process.

### B.    Summary of the Petition's Deficiencies.

The Petition suffers from three main deficiencies focused on construing claims incorrectly, misstating what the prior art teaches, and detrimentally relying on a declaration that should not be accorded any weight.

The chief issue with the Petition's claim interpretations is that they are divorced from and even inconsistent with the specification.  For example, the petition reads "notification" out of the "notification event" claim terms such that notification events do not have to actually provide for the notification of users. That is inconsistent with the specification and the claims, where claim construction should start, and which expressly recite a "verification **and notification** process."[3] Also, the Petition relies on a declaration entitled to little or no weight as evidence.

The Petition's flawed claim constructions infect its prior-art analysis in that the Petition relies on art that doesn't actually teach all claimed elements, including the establishing of such notification events (which provide for the registrant being notified of the occurrence of such an event).  The other most significant shortcoming in the Petition's obviousness analysis is that it reads out the "re" in "re-verifying" the registrant electronic contact.  Usernames, passwords, and other provided information can initially establish user credentials and potential registration information.  Then, an electronic contact, such as a user's phone number, might be verified.  The claims of the '920 Patent recite aspects of a form of initially verifying a registrant electronic contact (*e.g.*, verifying a registrant's phone number).  And Petitioner points to certain teachings in the prior art that it believes teach such initial verification.  But the claims also recite re-verifying after

---

[3] All emphasis in all quotations has been added unless indicated otherwise.

identifying the occurrence of particular events referred to as "notification events." Not only does the Petition wrongly regard any possible event as a notification event, it improperly maps prior-art teachings of initial verification to the claimed re-verification limitations, which require re-verifying a previously verified registrant electronic contact.

When discussing the prior art, the Petition uses language of the claims instead of language of the prior art itself. This would lead a casual observer to think that the prior art teaches far more than it does. For example, when arguing that the '920 Patent should not be entitled to the priority date of an ultimate parent application, the Petition decisively proclaims "[t]he words "notification event"' does [*sic*] not appear in the '421 application." Petition at p. 8. Of course the '421 Application contemplates events that lead to initial verifications, but the Petition is trying to make the point that such general teachings do not disclose "notification events" (nor re-verifications). Petition at pp. 8-9. However, none of the asserted prior art uses the words "notification event." And Bennett, for example, does not teach the recited "notification events" or "re-verification," but when discussing Bennett, the Petition weaves in claim language as though it is present in the reference when, in fact, it is not. The Petition improperly collapses re-verification of a verified registrant electronic contact into initial verification of previously provided information.

Finally, the expert declaration of Dr. Shamos is entitled to little or no weight. The Shamos Declaration refuses to respect all claim limitations, including, importantly, the notification-event limitations. For example, Dr. Shamos conveys a fundamental misunderstanding of the invention, claim construction, and what needs to be found in the prior art to support an obviousness finding by describing the claims, in his opinion, as steps that "amount to **nothing more** than: receiving a telephone number over the Internet; connecting to a telephone associated with the telephone number to communicate a verification code; receiving a verification code over an online form; comparing the received code with the communicated code for a match; [and] upon identifying an event, repeating the process." EX 1002 at ¶ 17. If that is his view, then his declaration should not be given any weight, at least because it does not address all of the express elements in the claims.

## IV. LEGAL STANDARDS

### A. Standard for Granting *Inter Partes* Review

Under 35 U.S.C. § 314(a), Congress limited the Board's authority to institute *inter partes* review only to those circumstances where "the information presented in the petition … and any response … shows that there is a reasonable likelihood that petitioner would prevail with respect to at least one of the claims challenged in the petition." *See also* 37 C.F.R. § 42.108(c). The petitioner has the

burden of showing that this statutory threshold has been met. *See, e.g.*, Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,756 (Aug. 14, 2012) ("The Board … may institute a trial where the petitioner establishes that the standards for instituting the requested trial are met …").

### B.    Standard for Claim Construction in *Inter Partes* Review

During *inter partes* review, claims in an unexpired patent are given their broadest reasonable interpretation ("BRI").  37 C.F.R. § 42.100(b).  The BRI is informed by the specification.  *Id.*  "That is not to say, however, that the Board may construe claims during IPR so broadly that its constructions are unreasonable under general claim construction principles.  As we have explained in other contexts, the protocol of giving claims their broadest reasonable interpretation … does not include giving claims a legally incorrect interpretation. … Rather, claims should always be read in light of the specification and teachings in the underlying patent. … Even under the broadest reasonable interpretation, the Board's construction cannot be divorced from the specification and the record evidence, and must be consistent with the one that those skilled in the art would reach.  A construction that is unreasonably broad and which does not reasonably reflect the plain language and disclosure will not pass muster." *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1298 (Fed. Cir. 2015) (internal quotations and citations omitted).

To the greatest degree possible, the claims are interpreted with reference to intrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317-1318 (Fed. Cir. 2005). Extrinsic evidence may not be used to reach a claim construction inconsistent with the intrinsic record. *Id.* at 1318; *Vitrionics Corp.*, 90 F.3d at 1583-84; *PPC Broadband, Inc. v. Corning Optical Communs. RF, LLC*, No. 2015-1364, 2016 U.S. App. LEXIS 3084, *6 (Fed. Cir. Feb. 22, 2016) ("The fact that 'around' has multiple dictionary meanings does not mean that all of these meanings are reasonable interpretations in light of this specification.").

While a declaration may be submitted in support of a petition for *inter partes* review, that testimony must "disclose the underlying facts or data" on which it is based. 37 C.F.R. § 42.65(a). Otherwise, it "is entitled to little or no weight." *Id.*; s*ee* 37 C.F.R. § 42.100(a). A distinction must also be drawn between testimony on the *technology* and testimony on the *proper construction* of a claim term. *Vitrionics Corp.*, 90 F.3d at 1585. Testimony regarding claim construction, "whether it be of an attorney, a technical expert, or the inventor … may only be relied upon if the patent documents, taken as a whole, are insufficient to enable the court to construe disputed claim terms. Such instances will rarely, if ever, occur." *Id.*

The United States Supreme Court recently granted *certiorari* to consider whether BRI is the proper standard for interpreting claims in granted patents

during *inter partes* review.  *Cuozzo Speed Technologies, LLC v. Lee*, 793 F.3d 1268 (Fed. Cir. 2015), *cert. granted*, 577 U.S. _____ (Jan. 15, 2016) (No. 15-446). The following claim-construction proposals are submitted with the understanding that the Board will evaluate this case based on the BRI standard.

### C.    Standard for Obviousness

The determination of whether a patent claim is obvious is an objective analysis.  *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007).  "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.  Against this background, the obviousness or nonobviousness of the subject matter is determined." *Id.* (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)).

Even when the individual elements of a claim were known, the obviousness inquiry requires a determination of "whether there was an apparent reason to combine the known elements in the fashion claimed."  *Id.* at 418.  This analysis is important, "because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known."  *Id.* at 418-19. "Rejections on obviousness grounds cannot be sustained by mere conclusory

statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Id.* at 418.

In determining the scope and content of the prior art, the "mere fact that a certain thing *may* result from a given set of circumstances is not sufficient [to establish inherency.]" *In re Rijckaert*, 9 F.3d 1531, 1534 (Fed. Cir. 1993) (quoting *In re Oelrich*, 666 F.2d 578, 581-82 (CCPA 1981)). Further, "[t]hat which may be inherent is not necessarily known. Obviousness cannot be predicated on what is unknown." *Id.* (citing *In re Spormann*, 363 F.2d 444, 448 (CCPA 1966)).

## V.    CLAIM CONSTRUCTION

### A.    Summary

The table below summarizes the parties' positions regarding the proper construction of "notification event."

| "notification event" | |
|---|---|
| Patent Owner's Construction | Petitioner's Construction |
| **an event that results in the registrant being notified that the event occurred** | an event that results in the registrant being contacted either for re-verification or for notification that the event occurred |

Here, an appropriate construction for "notification event" is "an event that results in the registrant being notified that the event occurred."

**B.    A notification event ultimately leads to registrants being notified that the event occurred (if the event occurs).**

The '920 Patent repeatedly explains that notification events are events that result in a registrant being notified of the occurrence thereof.    Below are illustrative, relevant citations:

1. "Notification events are established, and the **registrant is notified** of the occurrence of a previously established notification event . . . ." EX 1001 at Abstract.

2. "The present invention also relates to a process for **notifying registrants** of predetermined events using information obtained during the registration process." EX 1001 at 1:10-13.

3. "For example, a consumer may wish **to be notified** every time a withdrawal or [*sic*] more than one thousand dollars is requested …". EX 1001 at 1:42-44.

4. "A business **may wish to notify** a consumer when more than five transactions post to a consumer's account within twenty-four hours." EX 1001 at 1:45-48.

5. "When credit cards, account numbers, and the like are stolen, these accounts are quickly drained of cash or credit over a short period of time. This can be largely avoided by **notifying the account owner** of these acts …". EX 1001 at 1:48-51.

6. "There is also a continuing need for a method to **notify a registrant**, such as through the registrant's telephone number, of events which are established either by the individual registrant or the company through which the registrant is conducting services." EX 1001 at 1:64-2:1.

7. "The present invention resides in a process for verifying the identity of a registrant, as well as using the registration information to **notify the registrant** of events that are either established by the registrant or the business through which the registrant has registered." EX 1001 at 2:7-11.

8. "Upon the occurrence of a previously established notification event, **the registrant is notified** …". EX 1001 at 2:49-51.

9. "FIG. 9 is a flow chart depicting the steps taken in accordance with the present invention for registering and verifying a registrant as a **prelude to notification**; …". EX 1001 at 3:42-44.

10. "[T]he present invention resides in a process for verifying the identity of a registrant, and utilizing the verification and/or registration information **to notify** the registrant of predetermined events established by either the registrant or the business." EX 1001 at 3:54-58.

11. "The present invention **<u>not only</u>** provides a method of verifying a potential registrant, such as through his or her telephone number by establishing connection on-line with the registrant as well as via a telephone connection, it is **<u>also</u>** designed and configured so as to **<u>provide notifications</u>**, alerts, information, etc., …".  EX 1001 at 8:40-45.

12. "Such numbers are stored in the user's account (904), and can be used in the verification process, **<u>as well as</u>** an alert or **<u>notification process</u>**, …".  EX 1001 at 8:56-58.

13. "Thus, when a consumer attempts to make certain transactions, as specified by either the consumer or the business, the consumer may **<u>be notified</u>** or alerted in a variety of way [*sic*]."  EX 1001 at 10:44-47.

14. "For example, the consumer may wish **<u>to be notified</u>** every time a withdrawal of more than one thousand dollars is requested from his or her checking account."  EX 1001 at 10:60-62.

15. "Or, the business may wish **<u>to notify</u>** the consumer when more than five transactions post to the consumer's account within twenty-four hours."  EX 1001 at 10:62-65.

16. "[A] consumer who is a parent may wish **to be notified** when the consumer's child makes a purchase or [*sic*] more than [an] amount specified by the business or consumer."  EX 1001 at 10:67-11:3.

17. "The present invention is not limited to **notifying** a user of events that occur with respect to a financial account."  EX 1001 at 11:11-12.

18. "A verification **and notification** process, …".  EX 1001 at cl. 1, 12:20.

19. "The process of claim 2 further comprising: **notifying** the registrant of the occurrence of the established notification event by establishing a telephonic connection with the registrant via a registrant electronic contact."  EX 1001 at cl. 4, 12:61-65.

Thus, one of ordinary skill in the art, in view of the specification and claims, would understand that a notification event is "an event that results in the registrant being notified that the event occurred."

## C.  Petitioner's construction should not be adopted because it reads out "notification" from "notification event."

Despite the excerpts above from the specification, the Petition equates "notification event" with "event," giving no weight to "notification."  Petitioner's construction would extend the scope of "notification event" to include any event that results in the registrant being contacted for re-verification.  Petition at p. 10 ("Thus, a 'notification event' does not necessarily result in notifying the registrant

of the occurrence; it may result in either reverification <u>or</u> notification.") (emphasis original).  Divorced from the specification, Petitioner's proposal is not what an ordinary skilled artisan would understand "notification event" to mean.  The claim recites, and the specification describes, not merely an "event," but a "notification event."

The Petition's failure to address all the limitations of the claim language cannot be viewed as mere oversight.  Petitioner understands that every single limitation in a claim lends importance to its meaning.  For instance, at p. 20 of the Petition, in discussing the primary reference relied upon in the proposed grounds for rejection (Bennett (EX 1005)), Petitioner states that "Bennett's 'completion code' is" purportedly "a type of 'verification code,' because the **<u>code is used to verify</u>** the registrant's provided electronic contact."  Petition at p. 20.

However, when similarly discussing the term "notification event," the description is devoid of any statement similarly explaining why the events described in Bennett are supposedly "notification events."  For instance, one would expect a statement that indicated that these described events are "notification events" because they are events that notify the user of something.  The fact that a statement in this regard is missing from the Petition (and the Shamos Declaration) is illustrative of the simple fact that Bennett does not describe "notification events"

as the term is properly construed:  "an event that results in the registrant being notified that the event occurred."

Petitioner proposes its claim-construction positions to try to force the art within the scope of the claims.  And as explained below, Petitioner's position that a notification event need not result in the user being notified of the occurrence of the event should not properly be bolstered by the Shamos Declaration and is inconsistent with the specification.

### 1.    The Shamos Declaration's claim-construction comments should be given no weight.

Instead of properly starting with the claims or the specification to construe "notification event," the Petition cites directly to and detrimentally relies on the Shamos Declaration.  Petition at p. 9 (citing EX 1002 at ¶¶ 23-29).  But the Shamos Declaration does not address all the limitations of the claims and ignores important aspects of the specification.  Dr. Shamos is also an attorney, and his declaration is more of any advocacy piece to support Petitioner's positions than an independent analysis and setting forth of technical facts.  When convenient, the declaration sometimes leaves out important information.  At other times, the declaration adds misleading and/or inappropriate information.

As mentioned at § III.B., above, Petitioner's declaration states:  "These steps amount to nothing more than: receiving a telephone number over the Internet; connecting to a telephone associated with the telephone number to communicate a

verification code; receiving a verification code over an online form; comparing the received code with the communicated code for a match; [and] upon identifying an event, repeating the process." EX 1002 at ¶ 17. Establishing a notification event, which is both expressly claimed and clearly explained in the specification, is excluded from this summary. *See*, *e.g.*, § V.B., above. Here, the declaration leaves out important information. "All words in a claim must be considered in judging the patentability of that claim against the prior art." In re Wilson, 424 F.2d 1382, 1385 (CCPA 1970). Because the declaration does not address all claim limitations, it cannot be used to assess the patentability of the claim. His attempt to completely read out elements of the claims is particularly troubling given that Dr. Shamos is a registered patent attorney, who should appreciate the significance of all claim elements.

Later, the declaration misquotes the '920 specification. The declaration alleges that the '920 Patent, at col. 9, lines 3-4 states: "If a previously established **notification event** occurs, then the system will notify and/or verify the user." EX 1002 at ¶ 28. But that's not what the '920 Patent says. Dr. Shamos added the word "notification." The sentence says "events," not "notification events": "If a previously established **event** occurs, then the system will notify and/or verify the user." EX 1001 at 9:3-4. Here, the declaration improperly adds critical misinformation to advocate for a point, misquoting the '920 Patent.

These two examples are representative. The statement in the declaration that the claimed steps amount to nothing more than what was quoted above and at § III.B.—disregarding express claim limitations and the specification–indicates that he does not understand the invention, does not understand the most fundamental aspects of claim construction, does not understand the concept that all claim limitations are to be respected, and is willing to overlook relevant claim limitations just to support his client's positions. The entire declaration should not be accorded any weight. *See also*, § VII., below. Given the importance of "notification events" to this matter, to misquote the specification right where it matters—adding "notification" where it does not appear in the text—indicates an advocacy zeal (at best) that further undermines any residual weight that might otherwise have been accorded an expert declaration.

This misquotation is not isolated. With regard to the '920 Patent, the declaration also argues that "[t]he specification's use of the word "or" indicates that the occurrence of the particular "notification event" is not necessarily communicated to the registrant" when referring to EX 1001 at 8:59-62. EX 1002 at ¶ 28. But the specification states: "For example, if the user logs into his or her account (906), attempts to make a transaction (908), or attempts to modify account information (910), the user may be notified **or <u>even</u>** required to become telephone

verified (912)."  EX 1001 at 8:59-62.  Thus, "or" is not used by itself, and the phrase "or even" means "in addition to" being notified (not instead of).

Even in quotations the Petitioner's declaration is unreliable or misleading (*e.g.*, stating that the specification says "or" rather than "or even," although the phrases have very different meanings), and the declaration should not be given any evidentiary weight.

### 2.    The Petition does not adequately support its proposed construction.

The Petition provides only two paragraphs to support its proposed claim construction.  Petition at pp. 9-10.  The first is not relevant to whether the notification event results in notification **or** re-verification.  Although it is true that notification events can be applied in a wide variety of scenarios and could be transactions, it is also true that the recited "notification event" will result in the user being notified about an occurred event regardless of the scenario and whether the format of the notification event is that of a transaction.  *See* § V.B., above.

Thus, the Petition's second paragraph (of Section VIII.A, Petition at p. 10) is the only support for Petitioner's position that a "notification event" "does not necessarily result in notifying the registrant of the occurrence; it may result in either reverification or notification."  Petition at 10 (emphasis original).  And this support is based on one statement made during the prosecution history:  "an established notification event may include receiving a request to access an account

associated with the registrant from a device that is not associated with the account." Petition at p. 10, citing EX 1013 at p. 81. But that statement does not contradict and is not even in tension with the specification's clear disclosure that notification events result in the user being notified about that event. Yes, an established notification event may include receiving a request to access an account from a device not associated with a registrant's account, and in that claimed situation, such a notification event would result in the registrant being notified of such an event, consistent with Patent Owner's proposed claim construction.

### D. Petitioner's proposal is not true to the claim language and description.

Petitioner's proposal should be rejected because it would allow for the claims of the '920 Patent to read on embodiments where notification events do not result in the registrant being notified that the event occurred at all. The claims of the '920 Patent read in view of the specification do not contemplate that. The claims recite a "notification" event, and the specification explains that users are notified of such notification events. Thus, Petitioner's proposal is not true to the overall claim language and description in the specification. Patent Owner's proposal, however, does reflect the claim language and the specification—and should therefore be adopted.

## VI.    LACK OF OBVIOUSNESS

### A.    Overview of the Primary Reference, Bennett.

All grounds asserted in the Petition rely upon Bennett.  Petition at pp. 3-4. Bennett relates to identifying and/or dealing with major, widespread theft (or suspected theft) of user credentials.  This point is repeatedly stressed throughout Bennett.  Below are illustrative, relevant citations:

1. "Embodiments of the present invention may relate to a method and system for addressing **massive theft (or suspected theft)** of identification information used in order to access services that contain, for example, confidential information of the users of those services, services where the user can perform sensitive operations or other services."  EX 1005 at 2:47-52.

2. "Embodiments of the invention may be used so Service Providers that may provide services containing confidential information, will be able to continue providing access to such services to their users, for example, in the face of **massive theft, or suspected theft** of credentials of the users of their services." EX 1005 at 5:12-17.

3. "An embodiment of the invention and system may be used … to address **massive credentials theft or suspected theft** …".  EX 1005 at 5:45-48.

4. "The system and method described herein may be implemented whenever **massive Credentials' theft** may occur, as well as when it is **suspected** to have occurred …".  EX 1005 at 6:19-21.

5. "This is necessary to prevent fox [*sic*] example a fraudster from executing **massive fraud**."  EX 1005 at 16:31-32.

Bennett is directed to addressing *en masse* theft and fraud on a large scale basis, not notifying specific users of notification events "associated with" a user and verifying previously verified users.

### 1. Bennett expressly states that it is not concerned with verifying the identity of individual users–one of the clear issues addressed by the '920 Patent.

As previously set forth at § III.A., above, one issue addressed by the '920 Patent is that it seeks to verify the identity of registrant users – to verify that registrant users are who they say they are.  Importantly, Bennett expressly makes clear that this is **not** what its teachings are concerned with:  "This method may more generally be seen as a method for achieving a sufficient level of security in authentication **not by actually validating user's identity** but rather by (i) requiring users to provide details of 'something' that may be either expensive, complicated or hard to achieve in large numbers … ; and (ii) by limiting the number of different user service accounts or users who may use the same 'something' for authentication."  EX 1005 at 7:44-53.  This is a critical distinction

because it illuminates why Bennett fails in any way to address another important aspect of the '920 Patent – notification.

The '920 Patent seeks not only to verify a registrant user's identity but also to provide for notification to the user as to the events that resulted in a required re-verification. This is made clear throughout the specification and claim language of the '920 Patent. For instance, independent claim 1 recites a "verification and notification process," "verifying a received registrant electronic contact," "establishing a notification event associated with the registrant," and "re-verifying the registrant electronic contact." EX 1001 at cl. 1, 12:20-55. *See also*, EX 1001 at cl. 4, 12:61-65 ("The process of claim 2 further comprising: notifying the registrant of the occurrence of the established notification event by establishing a telephonic connection with the registrant via a registrant electronic contact."). Both verification and notification are contemplated by the '920 Patent.

Bennett on the other hand is concerned not with "actually validating [a] user's identity" but with implementing a process and system to address widespread credentials theft. EX 1005 at 7:44-53. The teachings of Bennett thus contain no suggestion of or motivation to notify users as to the events based upon which they are being asked to verify. They are simply being asked to perform some additional security measure to prevent theft or in view of widespread theft of user credentials. Bennett provides no reason why any additional information would be provided to a

user and thus provides no teaching or suggestion that users are notified of anything in association with the verification process.   This leads to several major deficiencies in the teachings of Bennett with respect to the claims of the '920 Patent.

### 2.    The Petition fails to establish that Bennett teaches or suggests a verification **and notification** process.

As set forth in § VI.A.1., above, Bennett does not teach or suggest user notification.  Thus it logically follows that Bennett cannot and does not teach "a verification and notification process."   Despite Petitioner's misleading assertion that "Bennett is directed at an 'authentication system' that performs a two-factor authentication at registration and repeats the process when a notification event occurs," Bennett is entirely devoid of any teaching or suggestion of "notification" or "notification events" as the term is properly construed herein.  Petition at p. 11.  Rather, Petitioner improperly uses terminology taken not from Bennett but from the '920 Patent in an attempt to portray that Bennett is more aligned with the claims of the '920 Patent than it actually is.  The simple fact is that Bennett fails to disclose a verification and **notification** process.

The preamble of claim 1 recites a "verification **and notification** process, …".  EX 1001 at cl. 1, 12:20.  Properly construed, a "verification and notification process" both verifies a registrant electronic contact and provides for a registrant to be notified of established notification events.  This is repeatedly made clear

throughout the specification of the '920 Patent.  Below are illustrative, relevant citations:

1. "[T]he present invention relates to a process for **<u>verifying</u>** an on-line registration by a telephone connection separate from the on-line connection between the web-site and potential registrant.  The present invention **<u>also</u>** relates to a process for **<u>notifying</u>** registrants of predetermined events using information obtained during the registration process."  EX 1001 at 1:7-13.

2. "[T]here is a continuing need for a method of **<u>verifying</u>** a registrant's identity, … There is **<u>also</u>** a continuing need for a method to **<u>notify</u>** a registrant, … of events … The present invention fulfills **<u>these</u>** needs and provides other related advantages."  EX 1001 at 1:62-2:3.

3. "The present invention resides in a process for **<u>verifying</u>** the identity of a registrant, **<u>as well as</u>** using the registration information to **<u>notify</u>** the registrant of events…".  EX 1001 at 2:7-9.

4. "[T]he present invention resides in a process for **<u>verifying</u>** the identity of a registrant, **<u>and</u>** utilizing the verification and/or registration information to **<u>notify</u>** the registrant of predetermined events…".  EX 1001 at 3:54-58.

Petitioner provides a misleading and inaccurate picture of the teachings of Bennett at p. 16 of the Petition wherein it states, in describing Bennett, "… where a returning user attempts to access an account from a different IP address or computer that was previously used, the system may **notify the user** by re-verifying and communicating a verification message to the stored communication channel." Petition at p. 16.    In fact, Bennett does not describe notifying the user by re-verifying and communicating a verification message as asserted, either at the cited locations or elsewhere in the reference.    Rather, Bennett simply teaches user verification void of any notification at all.

In Bennett, the registrant would only know they are being asked to verify. There is no disclosure that the request would contain no explicit or implicit information as to what event or condition might have occurred to prompt the request.    Nor is there any disclosure that such information might be forthcoming subsequent to verification.    There is no disclosure at all that the registrant is aware of alert levels or other conditions that may prompt the system to require registrant verification.    Bennett is devoid of any description of or motivation to notify the registrant of anything.    Thus, Bennett fails to teach or suggest "a verification **and notification** system."

### 3.     The Petition fails to establish that Bennett teaches or suggests establishing a notification event.

As previously set forth at §§ V.A. and V.B., above, properly construed, a "notification event" is "an event that results in the registrant being notified that the event occurred." As Bennett is devoid of any description of or motivation to notify the registrant of any event for which verification is requested, Bennett fails to teach or suggest "establishing a notification event."

According to the Petition, "Bennett states that 'each and every transaction or user may be required to go through out of channel authentication' which may "include attempts to access an account by the registrant, …". Petition at p. 22. The Petition further asserts that in this scenario, the "notification event would be the user attempting to login to the" account. Petition at p. 23. While Petitioner is attempting to refer to some vague notion of an event, it has failed to show that these are "notification events," as properly construed given the context of the '920 Patent specification and claims. The term "notification event" cannot be condensed down to merely an event as contended by Petitioner. Such would not comport with what a skilled artisan would understand "notification event" to mean and it would improperly read "notification" out of "notification event."

4.      **Even if Petitioner's construction of "notification event" were correct, the Petition fails to establish that Bennett teaches or suggests establishing a notification event <u>associated with the registrant</u>.**

Continuing the flawed line of reasoning discussed in the immediately preceding paragraphs, the Petition further asserts that "the notification event would be associated with each user that registered with the on-line banking system." Petition at p. 23. Besides being fatally flawed as not disclosing "notification events" at all, this line of reasoning is additionally flawed because Bennett expressly states that these out of channel authentications are **<u>not</u>** "based on user … information" and thus are not *associated with the registrant user* (as claimed). EX 1005 at 11:41-45.

In the Petition, column 11, lines 44-45 of Bennett have been taken out of context to make them appear to support a position which they do not support. Reproduced more completely, the relevant portion of Bennett states: "In other embodiments, the information kept on users may differ, and out of channel or out of band authentication **<u>may not be based on user</u>** or alert **<u>information</u>**. **<u>For example</u>**, each and every transaction or user may be required to go through out of channel authentication." EX 1005 at 11:41-45. If it is required for all transactions or all users to go through out of channel authentication, Bennett makes it clear that this is not based on an event associated with the registrant user but is rather based on information **<u>not</u>** associated with the registrant user. Rather, Bennett explains

that companies can require all of their customers to perform additional steps in response to known or suspected "massive fraud." *See* § VI.A., above. Thus, the Petition fails to establish that Bennett teaches or suggests establishing a notification event **associated with the registrant**.

### 5. The Petition fails to establish that Bennett teaches re-verifying the registrant electronic contact **after** identifying the occurrence of an established notification event.

Element 1[e] of independent claim 1 begins with "after identifying the occurrence of the established notification event, re-verifying the registrant electronic contact, …". EX 1001 at claim 1, 12:42-43. Bennett is the only reference relied upon in support of this claim element in the Petition. Petition at p. 29. However, the Petition utterly fails to establish that Bennett teaches "after identifying the occurrence of the established notification event." Rather, in its purported support of this element, the Petition merely states that "[t]his is introductory language for claim elements 1[e][i] through 1[e][iv]. Each element is addressed separately below." Petition at p. 29. It then makes the unsubstantiated statement that "[t]he steps below occur after an occurrence of the established notification event is identified." *Id*. As the sole support for this conclusory statement, the Petition references the Shamos Declaration at ¶ 135. *Id*. The Shamos Declaration, however, merely contains the exact same unsupported

statement. EX 1002 at ¶ 135 ("The steps below occur after an occurrence of the established notification event is identified.").

**No** support or rationale is offered by either the Petition or the Shamos Declaration to support re-verification **after** the occurrence of an established notification event. Thus, the Petition fails to establish that Bennett teaches re-verifying the registrant electronic contact **after** identifying the occurrence of the established notification event.

6. **Even if Bennett were to render obvious "establishing a notification event associated with the registrant," the Petition fails to establish that Bennett teaches or suggests re-verifying a registrant electronic contact after identifying the occurrence of an established notification event.**

In the claimed embodiments, "re-verifying" requires verifying again a registrant electronic contact that has already been verified at least once before—not just subsequently applying a two-factor authentication process to a registrant who has already performed one. As set forth above, according to the Petition, "Bennett states that 'each and every transaction or user may be required to go through out of channel authentication'" which "include[s] attempts to access an account by the registrant." Petition at p. 22. The Petition further asserts that "Bennett teaches that all attempts to access an account are subjected to re-verification" and that the "notification event would be the user attempting to login to the … account."

Petition at pp. 22-23.  However, the alleged "notification events" in support of this proposition lead to verification and **not** to the claimed **re-verification**.

The Petition relies upon two primary cites in Bennett to support the proposition that "all attempts to access an account are subject to reverification": Col. 11, ll. 33-45 and col. 16, ll. 6-13.  *Id*.  The first of these citations is the complete paragraph containing the quote set forth in the above: "In other embodiments, the information kept on users may differ, and out of channel or out of band authentication **may not be based on user** or alert **information**.  **For example**, each and every transaction or user may be required to go through out of channel authentication."   EX 1005 at 11:41-45.   In context, what are being described are simply conditions for requiring out of channel verification, **not** re-verification.  *See* EX 1005 at 11:33-45.  At best, Bennett is suggesting initial verification, not re-verification.

The second of these citations similarly describes verification and not re-verification.  The sentence just prior to the cited excerpt states that "after the 'regular authentication['] [*sic*] may be completed successfully, each authentication transaction may be evaluated as to whether it requires further checks."  *See* EX 1005 at 16:3-6.  "Regular authentication" is not out of channel authentication as would be required for the subsequent sentences to be describing any kind of re-verification but rather is authentication based on, *e.g*., user ID and password.  *See*

EX 1005 at 9:26-29 ("The end user 14 may authenticate itself using credentials such as, for example, user ID and password ("Regular authentication")."); EX 1005 at 16:1-3 ("A user may authenticate itself using acceptable credentials "regular authentication" for example, user ID, user password and the like.").

While conceding that Bennett may be read to not expressly teach "establishing a notification event associated with the registrant," the Petition continues to misleadingly assert that this limitation would nonetheless have been obvious in view of Bennett. The Petition states: "To the extent the Board does not find that Bennett expressly teaches configuring the rules in Bennett's decision making module to correspond to the claimed notification event associated with a registrant, it would have been obvious to modify Bennett to do so because the purpose of Bennett's decision engine is to determine whether to require a subsequent two-factor authentication for a particular user during a particular transaction." Petition at p. 26. Even if this characterization of Bennett's decision engine were accurate (and Patent Owner does not concede that it is), the "subsequent two-factor authentication" that would be determined is a two-factor authentication subsequent to "regular authentication" (such as username and password), not a re-verification as claimed in the '920 Patent.

The term "re-verify" cannot be condensed down to describe any out of channel verification subsequent to an initial verification as contended by Petitioner.

Such would not comport with what a skilled artisan would understand "re-verify" to mean and it would improperly read "re-" out of "verify."

### 7. An ordinary skilled artisan would <u>not</u> be motivated to modify Bennett as suggested by the Petition.

Bennett teaches as goals of its described system and method a desire to reduce the number of out-of-band authentications, lower the costs of running the service, and reduce the intrusiveness to its customers. "While the authentication process … of the invention may be simple and user-friendly, it may be still desired to refrain from repetitive out-of-band authentications … This may have the effect of both lowering the costs of running the service … and reducing intrusiveness on customers." EX 1005 at 18:4:11. Thus, modifying Bennett in such a way as to increase the number of out-of-band communications, increase the costs of running the service, and increase the intrusiveness on customers would run contrary to the express teachings of Bennett. However, these undesired effects are precisely what would likely result if Bennett were modified as suggested by the Petition such that it would ostensibly render obvious "establishing a notification event associated with the registrant."

The Petition alleges that "Bennett discloses establishing several types of notification events associated with the registrant." Petition at p. 22. For instance, the Petition alleges that "Bennett expressly states that 'each and every transaction or user may be required to go through out of channel authentication'" and that

"'transactions' include attempts to access an account by the registrant, such as an on-line banking login or company extranet login." *Id*. The Petition goes on to state that "Bennett discloses that a user can be required to go through two-factor authentication every time she attempts to login to her on-line banking account." *Id*. at pp. 22-23. The Petition alleges that each of these events is a "notification event." *Id*.

Subsequent to so broadly characterizing what may purportedly be construed as a "notification event," the Petition states that a "POSITA would be motivated to establish notification events associated with previously registered users (registrants) because Bennett expressly mentions reducing the burden and cost of repeated authentication." *Id*. at pp. 26-27. This would most certainly not be the case, however, if the events described in Bennett may be properly categorized as "notification events." If the events described by Bennett are "notification events," identification of which would prompt re-verification as claimed in the '920 Patent, users of Bennett would be asked to authenticate quite frequently, for instance, "every time she attempts to login to her on-line banking account" or for "each and every transaction" she attempts. *Id*. at pp. 22-23. This repeated authentication would not reduce the number of out-of-band communications, reduce the costs of running the service, or reduce the intrusiveness on customers. Rather, it would more likely cause the exact opposite effects.

As such, modifying Bennett as suggested by the Petition would run contrary to the express teachings of Bennett and, thus, a skilled artisan would **not** be motivated to make such modification. Modifying Bennett as suggested by the Petition would not be a simple design choice as alleged, but rather would alter Bennett in a way that Bennett expressly states is undesirable. *Id*. at p. 27.

### 8.    The Shamos Declaration improperly relies upon Thoursie in its proposed challenge of Ground 1 even though Ground 1 is purportedly solely based on Bennett.

Petitioner repeatedly and detrimentally relies upon the Shamos Declaration in support of its assertion with respect to proposed challenge Ground 1 that Bennett renders obvious "establishing a notification event associated with the registrant." *See* Petition at pp. 22-27 (showing repeated references to the Shamos Declaration in support of claim element 1[c].). Ground 1 of Petitioner's proposed bases for challenge relies solely upon Bennett. Petition at p. 15. However, the Shamos Declaration references and relies upon teachings of Thoursie in support of its Ground 1 discussion of this element. EX 1002 at ¶ 126. Thus, the Shamos Declaration cannot be relied upon to support the assertion that Bennett alone teaches or suggests "establishing a notification event associated with the user."

**B.    If Petitioner's position that a "notification event" may simply be any "event" and any "verification" subsequent to an initial verification is a "re-verification" upon detection of such event is to be accepted, then the '421 Application also must be interpreted as disclosing these limitations.**

Petitioner has taken excerpts out of context to attempt to establish teachings that are not present in Bennett.  In so doing, Petitioner has effectively collapsed "notification event" into any event at all, thus reading out the term "notification" and collapsed "re-verify" into merely "verify," thus reading out the intended meaning of including the "re-".  Such reading is necessary if Bennett stands any chance at rendering obvious the claims of the '920 Patent but it is also improper and is not what an ordinary skilled artisan would understand the claims to mean.

However, if "notification event" and "re-verification" are to be construed as Petitioner has proposed, then the '421 Application undoubtedly provides written description of the invention claimed in the '920 Patent.  The '421 Application reads:  "A system can be automated such [*sic*] so as to work twenty-four hours a day …".  EX 1014 at p. 28, ll. 19-20.  This disclosure indicates that the system described therein is capable of running by itself and the entirety of the '421 Application contemplates the possibility of people being subject to the process each time a particular action is taken, *e.g.,* at each login.  Contrarily, however, Dr. Shamos asserts that the re-verification is not disclosed to a POSITA in the '421

Application as it purportedly discloses merely verification. *See* EX 1002 at ¶¶ 33-40.

In asserting its position that the '920 Patent is entitled only to its actual filing date and not to the filing date of the '421 Application, the Petition and the Shamos Declaration allege that the first time the words "notification event" and "re-verification" appear in the '920 Patent lineage is in the '920 Patent itself. *See* Petition at pp. 8-9; EX 1002 at ¶¶ 37-38. The absence of these words, it is alleged, equates to an absence of a disclosure of the concepts the words later came to describe. *See id*. Notably, however, the relied upon prior art is also devoid of these words.

In an attempt to establish that the absence of these words from the prior art does not equate to a failure of that art to disclose the concepts embodied thereby, Petitioner and Dr. Shamos reduce the clear meanings of "notification event" and "re-verification" as supported by the '920 Patent specification and claims to merely any event and any verification subsequent to the initial verification. *See* § VI.A., above. Petitioner cannot have it both ways. If one is to interpret the relied upon prior art to adequately describe "notification event" and "re-verification" in this over-simplified fashion, similar treatment must be afforded the '421 Application.

1.      **If the '421 Application adequately supports the invention claimed in the '920 Patent, then the '920 Patent is entitled to a priority date at least equivalent to that of the filing date of the '421 Application.**

If the '421 Application supports the invention claimed in the '920 Patent in accordance with the explanation in the immediately preceding paragraph, the '920 Patent is entitled to a priority date at least as early as the '421 Application filing date: January 11, 2005.

C.      **Bennett, Thoursie, Rolfe and Woodhill are not analogous art.**

"To be considered within the prior art for purposes of the obviousness analysis, a reference must be analogous." *Circuit Check Inc. v. QXQ Inc.*, 795 F.3d 1331, 1335 (Fed. Cir. 2015) (citing *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993). "Prior art is analogous if it is from the same field of endeavor or if it is reasonably pertinent to the particular problem the inventor is trying to solve." *Id.* The pertinent question "is whether an inventor would look to this particular art to solve the particular problem at hand." *Id.*

The **claimed** invention is directed to a "verification and notification process" designed to protect individual registrants by re-verifying their contact information after initial verification and after identifying the occurrence of established notification events. EX 1001 at cl. 1. The claimed invention is further directed to providing for the notification to registrants of the event that occasioned the re-verification. *Id*.

As discussed above at § VI.A., Bennett relates to identifying and/or dealing with major, widespread theft (or suspected theft) of user credentials. *See*, *e.g*., EX 1005 at 2:47-52. Bennett is far more concerned with protecting a company from widespread fraud than with protecting users, contrary to the '920 Patent. Also as discussed above, Bennett is in no way concerned with user notification or re-verification. Thoursie also is not concerned with user notification but rather is directed to a method and system having multiple channels through which to verify a user. *See*, EX 1008 at Abstract. Rolfe also is unconcerned with, and does not disclose, re-verification. *See*, EX 1006 at Abstract. Woodhill, too, is unconcerned with, and does not disclose, user notification or re-verification. EX 1010 at Abstract.

Thus, Bennett, Thoursie, Rolfe and Woodhill are not from the same field of endeavor as the claimed invention, neither are they pertinent to the problems faced by the named inventors, and inventors would not have reason to look to Bennett, Thoursie, Rolfe and/or Woodhill to solve the problem of preventing fraudulent website registrations.

## VII. THE SHAMOS DECLARATION IS ENTITLED TO NO WEIGHT.

As stated above, while the Petitioner may present expert testimony in support of a petition for *inter partes* review—as it has done here—that testimony *must* "disclose the underlying facts or data" on which it is based. 37 C.F.R. §

42.65(a).  Otherwise, it "is entitled to little or no weight."  *Id*.; s*ee* 37 C.F.R. § 42.100(a) (establishing that *inter partes* review is "subject to the procedures set forth in subpart A of this part" including § 42.65); *see also* 77 Fed. Reg. at 48,763 (explaining that "[t]he Board expects that most petitions … will rely upon affidavits of experts," but "[a]ffidavits expressing an opinion of an expert *must* disclose the underlying facts or data upon which the opinion is based" (citing § 42.65 and Fed. R. Evid. 705) (emphasis added)); Changes to Implement Inter Partes Review Proceedings, 77 Fed. Reg. 48,680, 48,697 (Aug. 14, 2002) ("If corroborating evidence is necessary to show unpatentability of a challenged claim, the evidence must be included with the petition to meet the requirements of the rules.").  "Arguments of counsel cannot take the place of evidence lacking in the record."  *Zund Systemtechnik Ag & Zund Am., Inc. Requester*, No. 2011-013537, 2012 WL 527411, at *9 (Bd. Pat. App. & Interf. Feb. 16, 2012) (citing *Estee Lauder, Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 595 (Fed. Cir. 1997)).  The Shamos Declaration is replete with inaccuracies and misleading statements and, accordingly, should be given little to no weight.  In addition to the reasons set forth in the claim-construction section above (§ V.), three examples are provided below.

1.       **The Shamos Declaration inconsistently considers and uses the terms "verification," "re-verification," and "two-factor authentication."**

The Shamos Declaration repeatedly uses the terms and concepts of "verification," "re-verification," "two-factor authentication," and "registration" interchangeably and without respect for the language used in the claims or specification of the '920 Patent.  Illustrative examples follow:

1. The declaration asserts:  "The '920 patent relates to a telephone-based two-factor authentication process that **repeats authentication** at the occurrence of an established notification event."  EX 1002 at ¶ 34.  In fact, the claims of the '920 Patent relate not to "repeat authentication" but rather to "re-verification."   Here, the declaration appears to be equating "authentication" and "verification," as well as equating (or interchangeably using) "repeat authentication" and "re-verification." Not only is this confusion of terms and concepts unsupported by the '920 Patent, it is not even supported by the references relied upon in the Petition. For instance, Bennett describes "authentication" in terms of a user supplying "credentials such as, for example user ID and password …".  EX 1005 at 9:26-28.  *See also* EX 1005 at 16:1-3 ("A user may authenticate itself using acceptable credentials 'regular authentication' for example, user ID, user password and the like.").

Thus, a POSITA could reasonably understand "authentication" to involve something very different than what is recited in the '920 Patent claims. The '920 Patent is not related to this "authentication" nor is it related to "repeat authentication" as alleged.

2. The declaration is inconsistent as to whether FIG. 3 of Bennett is illustrating "verification" or "re-verification" – two very different concepts, both of which are recited in the '920 Patent claims. And at least one instance, the declaration alleges FIG. 3 illustrates "registration." For instance:

a.    The declaration asserts:  "Figure 3 of Bennett is a flowchart of an **initial** authentication process …".  EX 1002 at ¶ 65.

b.    The declaration asserts:  "For example, in one embodiment of Bennett, all attempts to access an account by the registrant are subjected to **re-verification**."  EX 1002 at ¶ 69 (referencing the description of FIG. 3 at EX 1005 at 16:3-21).

c.    The declaration asserts:  "… Bennett … [is] directed at a process for requiring a **second** out-of-bound **verification** after a notification event, such as logging-into an existing account, logging in from a different device, or taking part in a consumer transaction."  EX

1002 at ¶ 55 (referencing portions of Bennett that cover FIG. 3 - EX 1005 at 15:61-17:8).

    d.    The declaration asserts: "This same step 1[a] occurs during Bennett's Figure 3 **registration** process, which can be implemented on the system in Figure 2. (*Id.* at 15:61-64)." EX 1002 at ¶ 78. Here again, Dr. Shamos references the FIG. 3 embodiment.

3. The declaration asserts: "A POSITA would understand these transactions would occur after an initial **<u>authentication</u>** at registration, requiring a second **<u>authentication</u>**." EX 1002 at ¶ 138. Here, Dr. Shamos directly substitutes "authentication" for "verification." An "initial authentication at registration" could simply mean registering a login and password, as discussed above. This statement of Dr. Shamos does not, in fact, require any verification or re-verification. The sloppy use of terminology leads to confusion and multiple interpretations of what Dr. Shamos may be attempting to opine.

4. The declaration asserts "… if the decision engine determines the device is unknown, it informs the **authentication** system a **re-verification** is required" (EX 1002 at ¶ 149), "…the decision engine informs the **authentication** system a **re-verification** is required…"

(EX 1002 at ¶ 150), and "…when the decision engine decides a **re-verification** should take place…" (EX 1002 at ¶ 156).    In fact, Bennett does not distinguish "verification" or "re-verification." Rather, all instances are merely "verifications." The decision engine does not specifically trigger any "re-verification."    That is, the decision engine of Bennett never directs any other module to use a verified number for a re-verification.

Either the declaration fails to appreciate the differences among these critical terms or the declaration misinterprets the language used in the claims or specification of the '920 Patent.  In either case, the declaration is not probative of the patentability of the claims.

### 2.    The hypothetical scenarios in the declaration are not supported by the citations in the declaration.

Several hypothetical scenarios in the declaration include citations that do not support the assertions or scenarios.  Illustrative examples follow:

1. Paragraph 139 of the Shamos Declaration, presents a scenario that is not expressly taught by Bennett, while citing several locations of Bennett as though it does.  EX 1002 at ¶ 139.

2. Paragraph 148 of the Shamos Declaration is primarily a pieced-together scenario devoid of supporting citation.  EX 1002 at ¶ 148.

Only one citation is provided throughout (EX 1005 at 10:64-11:5) and this citation supports **only** the final sentence of the paragraph.

3.  The declaration asserts:  "The authentication system collects the stored telephone number and generates a code, and then passes both the external communication engine for re-verification."  EX 1002 at ¶ 149.  However, neither of the provided cites (EX 1005 at 15:29-53 and 18:4-54) describe collecting a stored telephone number as asserted.

4.  At paragraph 146 of the Shamos Declaration, none of the provided citations describe "the authentication system collects the registrant's verified contact information and generates a code, and passes both to the external communication engine for re-verification," as asserted. EX 1002 at ¶ 150.

### 3.    The declaration adds and omits words from allegedly direct quotations.

The declaration is chockfull of quotations that add and/or omit words from allegedly direct quotations.  These misquotations often strengthen the alleged support for the assertions in the declaration.  Illustrative examples follow:

1.  Citing to EX 1013 at 9, ¶ 9:   "'After registration [and initial verification], notification events are established.'" EX 1002 at ¶ 37.

**Actual quotation:** "After registration, notification events are established."

2. Citing to EX 1001 at 9:3-6 (although it should be 9:14-15): "'If a previously established **notification event** occurs, then the system will notify and/or verify the user.'" EX 1002 at ¶ 28. **Actual quotation:** "If a previously established **event** occurs, then the system will notify and/or verify the user."

3. Citing to EX 1005 at 14:50-53: "Bennett teaches that, in 'some embodiments previous numbers or channels may be stored in the user channel mapping database 110, and the authentication application 111 may offer the user to [] use one of them.'" EX 1002 at ¶ 180. **Actual quotation:** "In some embodiments previous numbers or channels may be stored in the user channel mapping database 110, and the authentication application 111 may offer the user to **either** use one of them **or to enter a new one**."

## VIII.  CONCLUSION

The Petition does not show a reasonable likelihood that any challenged claim is unpatentable.  The primary reference, Bennett, relates to identifying and/or dealing with major, widespread theft (or suspected theft) of user credentials whereas the '920 Patent seeks to prevent fraudulent website registrations by—among other things—verifying the identity of users and providing for the notification to users of established notification events.  Bennnett does not teach at least the claimed elements recited in Section VI.A., above.  As described in detail above, the Petition relies on claim-construction arguments disconnected from the specification of the '920 Patent, improper paraphrasing of the prior art, and assertions unsupported by technical rationale.  When the claims are properly construed and the art is considered without the benefit of hindsight and arbitrary modification, there is no showing that any claim is unpatentable.  Because the Petition fails to establish a reasonable likelihood that any challenged claim is unpatentable, institution of *inter partes* review should be denied.


April 13, 2016                    Respectfully Submitted,


/TAWNI L. WILHELM/
_____
Tawni L. Wilhelm (Reg. No. 47,456)
Counsel for Patent Owner

## CERTIFICATE OF SERVICE

The undersigned herby certifies that a copy of the foregoing Patent Owner Preliminary Response for *inter partes* review was served on counsel of record on April 13, 2016, and that this document was filed through the Patent Review Processing System.

Dated: April 13, 2016                    Respectfully submitted,


By:

/TAWNI L. WILHELM/
_____

Tawni L. Wilhelm
Reg. No. 47,456
Counsel for Patent Owner


SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550