**BAKER BOTTS L.L.P.**
Wayne O. Stacy (*pro hac vice*)
wayne.stacy@bakerbotts.com
2001 Ross Avenue
Dallas, TX  75201
Telephone:  214.953.6678
Facsimile:  214.661.4678

Sarah J. Guske (SBN 232467)
sarah.guske@bakerbotts.com
101 California St., Ste. 3070
San Francisco, CA 94111
Telephone: 415.291.6200
Facsimile: 415.291.6300

J.B. Schiller (SBN 298747)
jay.schiller@bakerbotts.com
1001 Page Mill Road,
Building One, Suite 200
Palo Alto, CA 94304
Telephone: 650.739.7500
Facsimile:  650.739.7600

Attorneys for Defendant
TWILIO INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELESIGN CORPORATION,<br><br>                 Plaintiff,<br><br>        vs.<br><br>TWILIO INC.,<br><br>                 Defendant. | Case No.  2:16-CV-02106-PSG-SS<br><br>**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Defendant Twilio Inc. ("Twilio") hereby files this Answer and Affirmative Defenses to the First Amended Complaint filed by Plaintiff TeleSign Corporation ("TeleSign"). Defendant denies the allegations and characterizations in Plaintiff's Complaint unless expressly admitted in the following paragraphs.

## Answer

### I. "Introduction and Parties"

1.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 1 of the First Amended Complaint ("FAC"), and on that basis denies each and every one of them.

2.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2 of the FAC, and on that basis denies each and every one of them.

3.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3 of the FAC, and on that basis denies each and every one of them.

4.    Denied.

5.    Admitted.

6.    Twilio admits it is valued at over $1 billion dollars. Twilio denies the remaining allegations set forth in paragraph 6 of the FAC.

7.    Admitted.

### II. "TeleSign I"

8.    Admitted.

### III. "Jurisdiction and Venue"

9.    Admitted.

10.   Admitted.

11.   Denied.

12.   Admitted.

13.   Admitted.

14.   Admitted.

15.   Twilio denies all infringement allegations and that TeleSign has suffered harm. Twilio is without knowledge or information sufficient to form a

1  belief as to the truth of the remaining allegations set forth in paragraph 15 of the

2  FAC, and on that basis denies each and every one of them.

3      16.    Admitted.

4                    **IV. "U.S. Patent No. 9,300,792"**

5      17.    Twilio admits that U.S. Patent No. 9,300,792 (the "'792 patent") is

6  titled "Registration, Verification, and Notification System." Twilio admits that a

7  purported copy of the '792 patent is attached to the FAC as Exhibit 1. Twilio is

8  without knowledge or information sufficient to form a belief as to the truth of the

9  remaining allegations set forth in paragraph 17 of the FAC, and on that basis

10  denies each and every one of them.

11      18.    Twilio admits the '792 patent issued from U.S. Patent Application

12  No. 14/678,815 ("the '815 application") and indicates an issue date of March 29,

13  2016. Twilio is without knowledge or information sufficient to form a belief as to

14  the truth of the remaining allegations set forth in paragraph 18 of the FAC, and on

15  that basis denies each and every one of them.

16      19.    Twilio admits the '815 application published as No. 2015/0215889

17  (the "'899 publication") and indicates a publication date of July 30, 2015. Twilio

18  admits that a purported copy of the '899 publication is attached to the FAC as

19  Exhibit 2. Twilio is without knowledge or information sufficient to form a belief

20  as to the truth of the remaining allegations set forth in paragraph 19 of the FAC,

21  and on that basis denies each and every one of them.

22      20.    Twilio is without knowledge or information sufficient to form a belief

23  as to the truth of the allegations set forth in paragraph 20 of the FAC, and on that

24  basis denies each and every one of them.

25      21.    To the extent the allegation set forth in paragraph 21 of the FAC call

26  for a legal conclusion there is no response required. To the extent a response is

27  required, however, Twilio is without knowledge or information sufficient to form

28

1  a belief as to the truth of the allegations set forth in paragraph 21 of the FAC, and
2  on that basis denies each and every one of them.

3      22.    Denied.

4      23.    Paragraph 23 of the FAC sets forth a statement to which no response
5  is required.

6      24.    Twilio admits it filed a motion on the pleadings under 35 U.S.C. §
7  101 in *TeleSign Corp. v Twilio, Inc.*, No. 15-03240-PSG ("*TeleSign I*") and such
8  motion was denied without prejudice pending claim construction. Twilio denies
9  the remaining allegations set forth in paragraph 24 of the FAC.

10     25.    Denied.

11     26.    Twilio admits the Patent Office granted the '792 patent after June 19,
12 2014. Twilio is without knowledge or information sufficient to form a belief as to
13 the truth of the remaining allegations set forth in paragraph 26 of the FAC because
14 the allegations are presented in such a way that Twilio does not understand the
15 meaning of "well after" as used by TeleSign, and on that basis denies each and
16 every one of them.

17     27.    Denied.

18     28.    Denied.

19     29.    Denied.

20     30.    Denied.

21     31.    Denied.

22     32.    Denied.

23     33.    Twilio denies that the '792 patent describes a technical problem to a
24 technical solution. Twilio is without knowledge or information sufficient to form a
25 belief as to the truth of the remaining allegations set forth in paragraph 33 of the
26 FAC, and on that basis denies each and every one of them.

27     34.    Denied.

28     35.    Denied.

36.    Denied.

37.    Denied.

## V. "The Asserted Claims"

38.    Twilio admits the FAC asserts claims 1, 6, 9, 10, 15, and 18 of the '792 patent.

## VI. "TeleSign and Twilio are Competitors"

39.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 39 of the FAC because the allegations are presented in such a way that Twilio does not understand the meaning of "similar" or "products and services" as used by TeleSign, and on that basis denies each and every one of them.

40.    Twilio admits it offers services relating to two-factor authentication. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 40 of the FAC, and on that basis denies each and every one of them.

41.    Twilio admits it competes for customers. Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 41 of the FAC because the allegations are presented in such a way that Twilio does not understand the meaning of "directly compete" as used by TeleSign, and on that basis denies each and every one of them.

42.    Twilio admits it has a "Lookup" service. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 42 of the FAC because the allegations are presented in such a way that Twilio does not understand the meaning of "increasing publicity" or "direct competition" or "phone verification services" as used by TeleSign, and on that basis denies each and every one of them.

43.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 43 of the FAC, and on that basis denies each and every one of them.

44.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 44 of the FAC, and on that basis denies each and every one of them.

45.    Admitted..

46.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 46 of the FAC, and on that basis denies each and every one of them.

47.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 47 of the FAC, and on that basis denies each and every one of them.

48.    Denied.

49.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 49 of the FAC, and on that basis denies each and every one of them.

50.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 50 of the FAC, and on that basis denies each and every one of them.

51.    Admitted.

52.    Twilio admits that in August 2015, TeleSign filed a motion for a preliminary injunction with respect to the '034 patent, which the Court denied. (*TeleSign I*, ECF No. 78.) Twilio denies the remaining allegations set forth in paragraph 52.

**VII.   "Twilio's Prior Knowledge of the '792 Patents and Its Claims"**

53.    Twilio denies it received actual notice of the '792 patent by March 29, 2016. Twilio admits the remaining allegations set forth in paragraph 52 of the FAC.

54.    Admitted.

55.    Admitted.

56.    Twilio admits it was served with a complaint on April 30, 2015 that attached purported true and correct copies of the '920, '038, and '034 patents. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 50 of the FAC, and on that basis denies each and every one of them.

57.    Denied.

58.    Twilio admits TeleSign attached a purported copy of the pending and published claims as of February 22, 2016 as exhibits in *TeleSign I*. Twilio admits Exhibit 4 to the FAC purports to be an Office Action response for the '815 application, dated 2 October 2015.

59.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 59 of the FAC, and on that basis denies each and every one of them.

60.    Twilio admits Exhibit 6 of the FAC purportedly is a notice of publication of application no. 14/678,815. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 60 of the FAC, and on that basis denies each and every one of them.

61.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 61 of the FAC, and on that basis denies each and every one of them.

62.    Denied.

63.     To the extent the allegations set forth in paragraph 63 call for a legal conclusion there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 63 of the FAC, and on that basis denies each and every one of them.

64.     Denied.

65.     Denied.

66.     Denied.

## VIII. "COUNT I – Direct Infringement"

67.     All of the responses to the proceeding paragraphs are incorporated by reference herein.

68.     Twilio admits that TeleSign purports to have alleged infringement against Twilio. Twilio denies infringement.

69.     Denied.

70.     Twilio denies infringement by Authy. Twilio admits Authy includes computer-executable instructions. Twilio denies the remaining allegations set forth in paragraph 70 of the FAC.

71.     Denied.

72.     Twilio denies infringement of Twilio's Account Protection. Twilio admits certain Twilio services include computer-executable instructions. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 72 of the FAC, and on that basis denies each and every one of them because Twilio does not know what "Twilio Account Protection" includes as that is not one of Twilio's products.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

## VIII(A). "Authy"

77.     Twilio admits Authy may be available on the Internet. Twilio admits that its website states "is trusted by over 10,000 websites and mobile apps" and admits the included screenshot in paragraph 77 of the FAC appears to be from Twilio's website. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 77 of the FAC, and on that basis denies each and every one.

78.     Twilio admits the quote stated in paragraph 78 was made to the SEC. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 77 of the FAC, and on that basis denies each and every one.

79.     Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 79 of the FAC, and on that basis denies each and every one of them.

80.     Admitted.

81.     Twilio admits Authy provides an online security solution that uses two-factor authentication. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 81 of the FAC, and on that basis denies each and every one of them.

82.     Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 82 of the FAC, and on that basis denies each and every one of them.

83.     Twilio admits that Authy includes executable instructions. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 83 of the FAC, and on that basis denies each and every one of them.

84.     Twilio admits Authy may receive information from a user. To the extent the remaining allegations set forth in paragraph 84 of the FAC call for a

legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 84 of the FAC, and on that basis denies each and every one of them.

85.    Twilio admits that Authy may be used when a user attempts to access a service. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 85 of the FAC, and on that basis denies each and every one of them.

86.    Twilio admits Authy may send a message to a user's telephone. To the extent the remaining allegations set forth in paragraph 86 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 86 of the FAC, and on that basis denies each and every one of them.

87.    To the extent the allegations set forth in paragraph 87 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 87 of the FAC, and on that basis denies each and every one of them.

88.    Twilio admits Authy may confirm whether a received code is the correct code. To the extent the allegations set forth in paragraph 88 of the FAC call for a legal conclusion given the recited claim language (or language similar to that

of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 88 of the FAC, and on that basis denies each and every one of them.

89.     To the extent the allegations set forth in paragraph 89 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 89 of the FAC, and on that basis denies each and every one of them.

90.     Twilio admits that Authy may allow for text messages to be sent to users. Twilio admits that Authy may receive responses. To the extent the remaining allegations set forth in paragraph 90 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 90 of the FAC, and on that basis denies each and every one of them.

91.     Twilio admits Authy may allow for messages to be sent on different types of devices. To the extent the allegations set forth in paragraph 91 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 91 of the FAC, and on that basis denies each and every one of them.

92.    To the extent the allegations set forth in paragraph 92 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 92 of the FAC, and on that basis denies each and every one of them.

### VIII(B). "Twilio Account Protection"

93.    Twilio denies infringement of the '792 patent. Twilio admits it uses software that may perform two-factor authentication. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 93 of the FAC, and on that basis denies each and every one of them.

94.    Twilio denies infringement of the '792 patent. Twilio admits it has software that may allow for two-factor authentication. Twilio admits that it has code to control access to Twilio's products and services. Twilio admits its software uses computer-executable instructions to perform tasks. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 94 of the FAC, and on that basis denies each and every one of them.

95.    Denied.

96.    Twilio admits Twilio may receive information from users. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 96 of the FAC, and on that basis denies each and every one of them.

97.    Twilio admits the screenshot depicted in paragraph 97 of the FAC is from Twilio's registration page. Twilio is without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 96 of the FAC, and on that basis denies each and every one of them.

98.	Twilio admits that its software may allow for text messages to be sent to users. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 98 of the FAC, and on that basis denies each and every one of them.

99.	Admitted.

100.	Twilio admits the screenshot depicted in paragraph 100 of the FAC is from Twilio's registration page. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 100 of the FAC, and on that basis denies each and every one of them.

101.	To the extent the allegations set forth in paragraph 101 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 101 of the FAC, and on that basis denies each and every one of them.

102.	Twilio admits that Twilio may confirm whether a received code is the correct code. To the extent the allegations set forth in paragraph 102 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 102 of the FAC, and on that basis denies each and every one of them.

103.	To the extent the allegations set forth in paragraph 103 of the FAC call for a legal conclusion given the recited claim language (or language similar to

1    that of the asserted claims) and lack of claim construction there is no response

2    required. To the extent a response is required, however, Twilio is without

3    knowledge or information sufficient to form a belief as to the truth of the

4    remaining allegations set forth in paragraph 103 of the FAC, and on that basis

5    denies each and every one of them.

6        104.   To the extent the allegations set forth in paragraph 104 of the FAC

7    call for a legal conclusion given the recited claim language (or language similar to

8    that of the asserted claims) and lack of claim construction there is no response

9    required. To the extent a response is required, however, Twilio is without

10   knowledge or information sufficient to form a belief as to the truth of the

11   remaining allegations set forth in paragraph 104 of the FAC, and on that basis

12   denies each and every one of them.

13       105.   Twilio admits Twilio may transmit messages to different types of

14   devices. Twilio is without knowledge or information sufficient to form a belief as

15   to the truth of the remaining allegations set forth in paragraph 105 of the FAC, and

16   on that basis denies each and every one of them.

17       106.   To the extent the allegations set forth in paragraph 106 of the FAC

18   call for a legal conclusion given the recited claim language (or language similar to

19   that of the asserted claims) and lack of claim construction there is no response

20   required. To the extent a response is required, however, Twilio is without

21   knowledge or information sufficient to form a belief as to the truth of the

22   remaining allegations set forth in paragraph 106 of the FAC, and on that basis

23   denies each and every one of them.

24              **IX. "COUNT II – Indirect Infringement"**

25       107.   All of the responses to the proceeding paragraphs are incorporated by

26   reference herein.

27       108.   Twilio admits Twilio's S-1 form to the SEC cited in paragraph 108

28   states: "Our Programmable Communications Cloud consists of software for voice,

messaging, video and authentication that empowers developers to build applications that can communicate with connected devices globally. We do not aim to provide complete business solutions, rather our Programmable Communications Cloud offers flexible building blocks that enable our customers to build what they need." Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 108 of the FAC, and on that basis denies each and every one of them.

109.    Twilio admits Twilio's form to the SEC cited in paragraph 109 states: "Use Case APIs. While developers… in building their applications." Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 109 of the FAC, and on that basis denies each and every one of them.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.

114.    Denied.

### IX(A). "Twilio's Knowledge"

115.    All of the responses to the proceeding paragraphs are incorporated by reference herein.

116.    Twilio admits a copy of the Original Complaint was served on March 31, 2016. Twilio denies the remaining allegations set forth in paragraph 116 of the FAC.

117.    Denied.

118.    Denied.

### IX(B). "Underlying Direct Infringement"

119.    Denied.

120.    Denied.

121.   Denied.

**"First Theory of Underlying Direct Infringement"**

122.   Denied.

123.   Denied.

124.   To the extent the allegations set forth in paragraph 124 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 124 of the FAC, and on that basis denies each and every one of them.

125.   To the extent the allegations set forth in paragraph 125 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 125 of the FAC, and on that basis denies each and every one of them.

126. To the extent the allegations set forth in paragraph 126 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 126 of the FAC, and on that basis denies each and every one of them.

127. To the extent the allegations set forth in paragraph 127 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response

1   required. To the extent a response is required, however, Twilio is without

2   knowledge or information sufficient to form a belief as to the truth of the

3   allegations set forth in paragraph 127 of the FAC, and on that basis denies each

4   and every one of them.

5        128. To the extent the allegations set forth in paragraph 128 of the FAC call

6   for a legal conclusion given the recited claim language (or language similar to that

7   of the asserted claims) and lack of claim construction, there is no response

8   required. To the extent a response is required, however, Twilio is without

9   knowledge or information sufficient to form a belief as to the truth of the

10  allegations set forth in paragraph 128 of the FAC, and on that basis denies each

11  and every one of them.

12              **"Second Theory of Underlying Direct Infringement"**

13       129.   Denied.

14       130.   Twilio is without knowledge or information sufficient to form a belief

15  as to the truth of the allegations set forth in paragraph 130 of the FAC, and on that

16  basis denies each and every one of them.

17       131.   To the extent the allegations set forth in paragraph 131 of the FAC

18  call for a legal conclusion given the recited claim language (or language similar to

19  that of the asserted claims) and lack of claim construction, there is no response

20  required. To the extent a response is required, however, Twilio is without

21  knowledge or information sufficient to form a belief as to the truth of the

22  remaining allegations set forth in paragraph 131 of the FAC, and on that basis

23  denies each and every one of them.

24       132.   To the extent the allegations set forth in paragraph 132 of the FAC

25  call for a legal conclusion given the recited claim language (or language similar to

26  that of the asserted claims) and lack of claim construction, there is no response

27  required. To the extent a response is required, however, Twilio is without

28  knowledge or information sufficient to form a belief as to the truth of the

remaining allegations set forth in paragraph 132 of the FAC, and on that basis denies each and every one of them.

133.   To the extent the allegations set forth in paragraph 133 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 133 of the FAC, and on that basis denies each and every one of them.

134.   To the extent the allegations set forth in paragraph 134 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 134 of the FAC, and on that basis denies each and every one of them.

135.   To the extent the allegations set forth in paragraph 135 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 135 of the FAC, and on that basis denies each and every one of them.

**"Third Theory of Underlying Direct Infringement"**

136.   Denied.

137.   Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 137 of the FAC, and on that basis denies each and every one of them.

138.    Twilio denies infringement of the '792 patent. Twilio admits Authy may be used to send a text message, receive responses from users, and confirm whether the response entered by a user matches a code. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 138 of the FAC, and on that basis denies each and every one of them.

139.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 139 of the FAC, and on that basis denies each and every one of them.

140.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 140 of the FAC, and on that basis denies each and every one of them.

141.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 141 of the FAC, and on that basis denies each and every one of them.

142.    Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 142 of the FAC, and on that basis denies each and every one of them.

143.    Denied.

144.    Denied.

145.    Twilio admits to having contracts with at least some of its customers. To the extent the allegation set forth in paragraph 145 of the FAC call for a legal conclusion, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 145 of the FAC, and on that basis denies each and every one of them.

146.    Twilio admits it has a Twilio API Service Level Agreement. To the extent the remaining allegations set forth in paragraph 146 of the FAC call for a

legal conclusion, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 146 of the FAC, and on that basis denies each and every one of them.

147. To the extent the first allegation set forth in paragraph 147 of the FAC call for a legal conclusion, there is no response required. Twilio admits the document attached to the FAC purporting to be an API Service Level Agreement states: "Twilio will use commercially reasonable efforts to make the Twilio API available 99.95% of the time. In the event Twilio does not meet the goal of 99.95% API availability in a given calendar month ("Monthly Uptime Percentage"), you will be eligible to receive a Service Credit as described below." Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 147 of the FAC, and on that basis denies each and every one of them.

148. Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 148 of the FAC, and on that basis denies each and every one of them.

149. Denied.

150. Twilio may require some customers to indemnify Twilio. To the extent the allegations set forth in paragraph 150 of the FAC call for a legal conclusion, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 150 of the FAC, and on that basis denies each and every one of them.

151. Twilio may require some customers to agree to the Twilio's Service Level Agreement and Terms of Services. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations

set forth in paragraph 151 of the FAC, and on that basis denies each and every one of them.

152.   Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 152 of the FAC, and on that basis denies each and every one of them.

153.   Denied.

154.   Twilio may require some customers to indemnify Twilio. Twilio admits the Terms of Service includes an indemnification clause and admits said clause it included in paragraph 154 of the FAC. To the extent the remaining allegations set forth in paragraph 154 of the FAC call for a legal conclusion, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 154 of the FAC, and on that basis denies each and every one of them.

155.   Twilio admits it may transmit text messages. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 155 of the FAC, and on that basis denies each and every one of them.

156.   Admitted.

### IX(C).  "Specific Intent"

157.   All of the responses to the proceeding paragraphs are incorporated by reference herein.

158.   Denied.

159.   Denied.

160.   Denied.

161.   Denied.

162.   Denied.

163.   Denied.

164.   Twilio admits https://www.twilio.com/use-cases is associated with Twilio and includes the following "use-cases": "Two-Factor Authentication," "Dispatch Notifications." Twilio admits selecting "Two-Factor Authentications" currently directs a user to https://www.twilio.com/use-cases/two-factor-authentication. Twilio admits in the middle of the page it states "SMS," "VOICE," "SHORT CODES," and "AUTHY." Twilio admits below these words includes the following text: "Why Twilio" and "Easy to build and use," which further states "Integrate second-factor authentication into any login or registration workflow in any programming language. Customize the user experience with your design and security requirements." Twilio denies the remaining allegations set forth in paragraph 164 of the FAC.

165.   Twilio admits it markets to developers and IT support personal. Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 165 of the FAC, and on that basis denies each and every one of them.

166.   Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 166 of the FAC, and on that basis denies each and every one of them.

167.   Denied.

168.   Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 168 of the FAC, and on that basis denies each and every one of them.

169.   Denied.

170.   Twilio admits to marketing its products. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 170 of the FAC, and on that basis denies each and every one of them.

171.   Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 171 of the FAC, and on that basis denies each and every one of them.

172.   Twilio denies all infringement allegations. To the extent the allegations set forth in paragraph 172 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 172 of the FAC, and on that basis denies each and every one of them.

173.   Twilio denies all infringement allegations. To the extent the allegations set forth in paragraph 173 of the FAC call for a legal conclusion given the recited claim language (or language similar to that of the asserted claims) and lack of claim construction, there is no response required. To the extent a response is required, however, Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 173 of the FAC, and on that basis denies each and every one of them.

174.   Denied.

175.   Denied.

176.   Twilio admits users may obtain a free trial account in certain instances. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 176 of the FAC, and on that basis denies each and every one of them.

177.   To the extent TeleSign alleges that Twilio advertises its products, Twilio admits it advertises its products. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 177 of the FAC, and on that basis denies each and every one of them.

178. Denied.

179. Twilio admits it has services that implement a REST API. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 179 of the FAC, and on that basis denies each and every one of them.

180. Twilio admits to marketing its products. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 180 of the FAC, and on that basis denies each and every one of them.

181. Twilio admits it provides a REST API. Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 181 of the FAC, and on that basis denies each and every one of them.

182. Twilio admits it provides a REST API. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 182 of the FAC, and on that basis denies each and every one of them.

183. Twilio admits it provides a REST API. Twilio is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 183 of the FAC, and on that basis denies each and every one of them.

184. Denied.

185. Denied.

186. Denied.

187. Denied.

188. Denied.

189. Twilio denies the allegation set forth in paragraph 189 of the FAC. In August 2015, TeleSign filed a motion for a preliminary injunction with respect to the '034 patent, which the Court denied. (*TeleSign I*, ECF No. 78.)

# X.  "Willful Infringement"

190.   All of the responses to the proceeding paragraphs are incorporated by reference herein.

191.   Denied.

192.   Denied

193.   Denied.

194.   Denied.

195.   Denied.

196.   Twilio admits its motion for judgments on the pleadings was denied without prejudice pending claim construction. Twilio denies the remaining allegations set forth in paragraph 196 of the FAC.

197.   Denied.

198.   Twilio is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 198 of the FAC, and on that basis denies each and every one of them.

# XI.  "TeleSign's Prayer for Relief"

199.   Twilio denies that TeleSign is entitled to any relief requested in TeleSign's Prayer for Relief, either as prayed or otherwise. To the extent that TeleSign's Prayer for Relief may be deemed to allege any facts, Twilio denies each and every allegation.

# XII.  Jury Trial Demanded

200.   Twilio requests a jury trial on all issues triable by jury.

# XIII.  General Denial

201.   Twilio denies each allegation set forth in the FAC not expressly admitted herein.

# XIV.  Affirmative Defensives

202.   Twilio reserves the right to amend its Answer, including asserting additional defenses as discovery progresses. Without altering any applicable burden of proof, Twilio alleges the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE
## (NONINFRINGEMENT)

204.   Twilio has not infringed and does not infringe and has not induced others to infringe any valid claim of the '792 patent. For example, for direct infringement, Twilio does not practice every element of every asserted claim. As another example, Twilio does not provide the required "notification event" as recited by the asserted claims of the '792 patent. For induced infringement, Twilio does not induce others to practice the asserted claims. As another example, Twilio does not encourage its users to perform or provide the required "notification event" as recited by the asserted claims of the '792 patent.

## SECOND AFFIRMATIVE DEFENSE
## (INVALIDITY)

205.   One or more claims of the '792 patent are invalid for failure to satisfy one or more of the conditions of patentability set forth in the Patent Act, 35 U.S.C. § 100, *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

206.   For example, the claims of the '792 patent are invalid under 35 U.S.C. § 101 because each claim is directed to an unpatentable abstract idea of obtaining from a verified user an acknowledgement of an action associated with a specified event.

207.   As another example, the claims of the '792 patent are rendered invalid under 35 U.S.C. § 102 and/or 103 by at least U.S. Patent No. 8,781,975 ("Bennett") and U.S. Patent Publication No. 2006/0020816 ("Campbell").

## THIRD AFFIRMATIVE DEFENSE
## (NO INJUNCTIVE RELIEF)

208.   TeleSign is not entitled to any form of injunctive relief because Twilio is not liable for infringement of a valid claim and because TeleSign has not suffered, and will not suffer, irreparable harm because of the Twilio conduct alleged in the FAC, TeleSign has an adequate remedy at law, and the balance of hardship and the public interest do not favor injunctive relief.

## FOURTH AFFIRMATIVE DEFENSE
## (LIMITATIONS ON DAMAGES)

209.   TeleSign is barred or limited in recovery in whole or in part by failing to meet the requirements of 35 U.S.C. §§ 286, 287, and/or 288.

## FIFTH AFFIRMATIVE DEFENSE
## (PROSECUTION HISTORY ESTOPPEL)

210.   TeleSign is barred or limited from recovery in whole or in part by the doctrine of prosecution history estoppel.

211.   For example, during the prosecution of the '792 patent and its family members, TeleSign made claim amendments and arguments at least regarding the term "notification event" and as such is estopped from invoking the doctrine of equivalents to broaden the scope of its claims.

## SIXTH AFFIRMATIVE DEFENSE
## (INEQUITABLE CONDUCT)

212.   The '792 patent is unenforceable due to inequitable conduct in TeleSign's procurement, the relevant facts and circumstances of which are set forth below.

213.    The '792 patent is unenforceable as a result of inequitable conduct by at least Stephen Bishop and Jesse J. Camacho who were involved in the preparation and prosecution of the '792 patent and are registered to practice before the Patent Office (collectively, the "Applicants").

214.   During the prosecution of the '792 patent, each of the Applicants were subject to the duty of disclosure under 37 C.F.R. § 1.56.

215.   Title 37 C.F.R. § 1.56 requires each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned.

216.   By way of introduction, and as pled in more detail below, Twilio alleges that the inequitable conduct comprised of intentional misrepresentations and/or omissions, including without limitation the following: misrepresentations by the Applicants to the Patent Office through omissions, the failure by Applicants to disclose one or more references during prosecution in breach of the duty of candor and good faith required by 37 C.F.R. § 1.56 with the intent to deceive the Examiner, and the failure by Applicants to disclose related litigation during prosecution in breach of the duty of candor and good faith required by 37 C.F.R. § 1.56.

217.   The '792 patent is in the same family as the asserted patents in *TeleSign I*. The '034, '920,'038 patents (the "*TeleSign I* patents"), and the asserted patent in this suit (the '792 patent) each claim priority back to Patent Application No. 11/034,421. All four of the patents share a similar specification and relate to the same general subject matter.

218.   Any attack as to the validity and enforceability of a patent in the family, including the *TeleSign I* patents, are relevant to the validity and enforceability of its parents and children.

**Applicants Withheld Material Information Relating to the '920 Patent and '038 Patent IPRs and Made Misrepresentations Through Omissions to the Patent Office**

219.   Applicants were aware of relevant information by at least January 11, 2016 when Twilio filed its Petition for *Inter Partes* Review of the '920 and '038 patents.

220.   Twilio's Petition for *Inter Partes* Review of the '920 patent was filed with a supporting expert declaration that was not disclosed to the patent office. (*See* Inter Partes Review No. 2016-00450, No. 1002, Declaration of Dr. Michael Shamos.)

221.   Twilio's Petition for *Inter Partes* Review of the '038 patent was filed with a supporting expert declaration that was not disclosed to the patent office. (*See* Inter Partes Review No. 2016-00451, No. 1002, Declaration of Dr. Michael Shamos.)

222.   Both expert declarations contained relevant material to the validity and enforceability of the '792 patent.

223.   For example, Dr. Shamos's expert declarations provided evidence and expert evidence as to the invalidity of the '920 and '038 patents that were not previously entertained by the examiner.

224.   Dr. Shamos's expert declarations addressed a new reference, U.S. Patent No. 8,781,975 ("Bennett"), that was previously unknown to the examiner of the '792 patent.

225.   The Bennett reference is one of the primary references cited to in Twilio's Petition for *Inter Partes* Review of the '792 patent.

226.   Had the examiner been aware of the expert declarations submitted by Dr. Shamos in the '920 and '038 IPRs the examiner would have gained additional information regarding the invalidity of the asserted claims of '792 patent.

225.   Dr. Shamos's expert declarations addressed new and different prior art combinations that were not known to the examiner.

226.   For Example, Dr. Shamos provided evidence regarding the Bennett and Rolfe (U.S. Patent Publication No. 2003/0221125) combination that would

have been material to the examiner during prosecution of the asserted claims of the '792 patent.

227.  Dr. Shamos's expert declarations would have been material to the prosecution of the asserted claims of the '792 patent because the expert declarations provide factual information as to why each asserted claims are rendered obvious by the Bennett and Rolfe combination.

228.  For example, Twilio's Petition for *Inter Partes* Review of the '038 patent explains how the preamble of the '038 patent is disclosed by the prior art and provides the following statement:

- Bennett discloses this process. (*See* Parts X.A.1-X.A. 14; **Inter Partes Review No. 2016-00451, No. 1002, Declaration of Dr. Michael Shamos at ¶¶ 54-66.**) (emphasis added.)

229.  Dr. Shamos's expert declaration explains how the preamble of the '038 patent is disclosed by Bennett (a reference previously unknown to the examiner) in 12 paragraphs.

230.  Dr. Shamos's explanation as to why the preamble of the '038 patent is disclosed by the Bennett reference would have been material to the examiner because preamble of the '038 patent is nearly identical to the preamble of the '792 patent.

| '038 preamble (Claim 1) | '792 preamble (Claim 1) |
|---|---|
| *A verification and notification process implemented by a computing system, the process comprising:* | *A verification and notification method implemented by a computing system, the method comprising:* |

231.  As another example, Twilio's Petition for *Inter Partes* Review of the '038 patent addresses element 1[a] of the '038 patent and provides the following statement:

- Bennett teaches that a user first interacts with the authentication system through a website. (Inter Partes Review No. 2016-00451, Ex. 1005 at 9:2-

12, 10:34-44, FIG. 2; **Inter Partes Review No. 2016-00451, No. 1002, Declaration of Dr. Michael Shamos at ¶¶ 67-76.**) (emphasis added.)

232.   Dr. Shamos's expert declaration explains how element 1[a] of the '038 patent is disclosed by Bennett (a reference previously unknown to the examiner) in nine paragraphs.

233. Dr. Shamos's explanation as to why element 1[a] of the '038 patent is disclosed by the Bennett reference would have been material to the examiner because element 1[a] of the '038 patent is nearly identical to element 1[a] of the '792 patent.

| '038 (Claim 1[a]) | '792 preamble (Claim 1[a]) |
|---|---|
| *receiving, from a user, information responsive to at least part of a form that is presented to the user on a website, the received information including an electronic contact address associated with the user* | *receiving, from a user, information via a computing interface presented to the user as a result of an attempt by the user to access a service, the received information including a telephone number associated with the user;* |

234.   As another example, Twilio's Petition for *Inter Partes* Review of the '038 patent addresses element 1[b] (and its sub elements) of the '038 patent and provides the following statements:

- for element 1[b][i]: "Bennett discloses this step." (**Inter Partes Review No. 2016-00451, No. 1002, Declaration of Dr. Michael Shamos at ¶¶ 67-76.**) (emphasis added.)

- for element 1[b][ii]: "Bennett discloses this step." (**Inter Partes Review No. 2016-00451, No. 1002, Declaration of Dr. Michael Shamos at ¶¶ 83-87.**) (emphasis added.)

- for element 1[b][iii]: "Bennett discloses this step." (**Inter Partes Review No. 2016-00451, No. 1002, Declaration of Dr. Michael Shamos at ¶¶ 88-92.**) (emphasis added.)

- for element 1[b][iv]: "Bennett discloses this step." (**Inter Partes Review No. 2016-00451, No. 1002, Declaration of Dr. Michael Shamos at ¶¶ 93-96.**) (emphasis added.)

235.   Dr. Shamos's expert declaration explains how element 1[b] of the '038 patent is disclosed by Bennett (a reference previously unknown to the examiner) in 19 paragraphs.

236. Dr. Shamos's testimony as to why element 1[b] of the '038 patent is disclosed by the Bennett reference would have been material to the examiner because element 1[b] of the '038 patent is nearly identical to element 1[b] of the '792 patent.

| '038 (Claim 1[b]) | '792 preamble (Claim 1[b]) |
|---|---|
| *verifying the received electronic contact address, wherein verifying the received electronic contact address includes:* | *verifying the telephone number by:* |
| *establishing a first telephonic connection with the user using the received electronic contact address;* | *establishing a short message service (SMS) connection with the user using the received telephone number;* |
| *communicating a first communicated verification code to the user through the first telephonic connection;* | *communicating a verification code to the user through the SMS connection;* |
| *receiving a first submitted verification code after it is entered by the user via the website; and* | *receiving, via the computing interface, a submitted verification code that is entered by the user; and* |
| *verifying the received electronic contact address if the first submitted verification code is the same as the first communicated verification code;* | *verifying the telephone number if the submitted verification code is the same as the communicated verification code;* |

237.   As another example, Twilio's Petition for *Inter Partes* Review of the '038 patent addresses the "notification event" element of the '038 patent and provides nine paragraphs of conclusory language with extensive citations to Dr.

Shamos's declaration that includes 25 paragraphs regarding the "notification event" element.

238.   Twilio's Petition for *Inter Partes* Review of the '920 patent is similar to Twilio's Petition for *Inter Partes* Review of the '038 in that it also relies on Dr. Shamos's expert declaration for proving evidence as to why an element is disclosed or a combination obvious.

239.   Applicants withheld each of Dr. Shamos's expert declarations from the Patent Office.

240.   In Applicants' IDS form submitted on January 22, 2016, Applicants disclosed the IPR petitions, but not Dr. Shamos's expert declarations. (Exhibit A, Applicant's Jan. 22 IDS.)

241.   Each of the cited IPR petitions are roughly 60 pages and contain statements that cite extensively to Dr. Shamos's expert declaration for support and further detail.

242.   Each of Dr. Shamos's expert declaration are over 100 pages and contain the evidence supporting the contentions made in the IPR petition.

243.   As set forth above, Dr. Shamos's expert declarations are "but-for material" because the Patent Office would not have allowed one or more claims of the '792 patent had it been aware of the information contained in the expert declarations.

244.   In addition to withholding Dr. Shamos's expert declarations from the Patent Office, Applicants also made misrepresentations to the Patent Office with the intent to deceive the Patent Office regarding Dr. Shamos's expert declarations.

245.   For example, in Applicants' January 22, 2016 letter to the Patent Office the Applicants state:

• Applicant notes that the grounds of rejection found in the IPRs rely on combinations of references U.S. Patent 8,781,975 to Bennett et al. ("Bennett"), U.S. Patent No. 8,302,175 to Thoursie et al. ("Thoursie"), U.S.

Patent Publication No. 2003/0221125 to Rolfe ("Rolfe") (now U.S. Patent No. 7,383,572), and U.S. Patent No. 6,934,858 to Woodhill ("Woodhill"). **Thoursie, Rolfe, and Woodhill were previously disclosed by Applicant in an Information Disclosure Statement Filed on July 17, 2015, and the present claims have already been found allowable over these references. As such, of the references relied upon in the IPRs, only Bennett has been newly-cited in the attached IDS**. (emphasis added.)

246.  By making these statements, Applicants intended to deceive the Patent Office into not looking further into the Thoursie, Rolfe, and Woodhill references despite the IPRs relying on <u>new</u> and <u>different</u> combinations that were not known to the examiner.

247.  For example, Dr. Shamos's expert declaration states the Bennett reference alone (a <u>new</u> reference to the examiner) renders the '920 and '038 patents obvious.

248.  As yet another example, Dr. Shamos's expert declaration states the Bennett + Thoursie combination (a <u>new</u> combination to the examiner) renders the '920 and '038 patents obvious.

249.  As yet another example, Dr. Shamos's expert declaration states the Bennett + Rolfe combination (a <u>new</u> combination to the examiner) renders the '920 and '038 patents obvious.

249.  As yet another example, Dr. Shamos's expert declaration states the Bennett + Thoursie + Rolfe combination (a <u>new</u> combination to the examiner) renders the '920 and '038 patents obvious.

250.  As yet another example, Dr. Shamos's expert declaration states the Bennett + Woodhill combination (a <u>new</u> combination to the examiner) renders the '920 patent obvious.

251.  As yet another example, Dr. Shamos's expert declaration states the Bennett + Thoursie +Woodhill combination (a <u>new</u> combination to the examiner) renders the '920 patent obvious.

252.  None of the combinations disclosed in paragraphs 247-251 above were known to the examiner and Applicants knew that the examiner was not aware of the above combinations.

253.  The above withheld combinations are "but-for material" because the Patent Office would not have allowed one more claims of the '792 patent had it been aware of Dr. Shamos's expert declarations.

254.  Despite this knowledge, Applicants deceived the Patent Office by stating that "the present claims have already been found allowable over these references."

255.  Applicants intentionally misled the examiner by steering the examiner away from (a) Dr. Shamos's expert declarations and (2) the new prior art combinations.

256.  Applicants had strong motivations to deceive the Patent Office, as they were gearing up to file a second lawsuit against Twilio and wanted to obtain the '792 patent as quickly as possible. For Example, Jesse J. Camacho (one of the Applicants) is lead counsel for the *TeleSign I* suit. Obtaining the '792 patent was a means for filing a second suit against Twilio in an attempt to obtain more revenue.

257.  Applicants' failure to disclose the expert reports constitutes a breach of the duty of candor and good faith required by 37 C.F.R. § 1.56—with the intent to deceive the Examiner.

258.  Applicants misrepresentation through omission constitutes a breach of the duty of candor and good faith required by 37 C.F.R. § 1.56—with the intent to deceive the Examiner.

**Failure to Disclose Material Prior Art References**

35

259.   Applicants were aware of relevant art by at least September 28, 2015 when Twilio filed its Opposition to TeleSign's Motion for Preliminary Injunction. (*TeleSign I*, ECF No. 55).

260.   In Twilio's Opposition to TeleSign's Motion for Preliminary Injunction, a heading states: "Twilio Raises a Substantial Question of Invalidity" which discloses the following prior art references: U.S. Patent No. 7,577,847 ("Nguyen"), UK Patent Application 2362489 ("Chang"), U.S. Patent Publication No. 2004/0219904 ("De Petris"), U.S. Patent Publication No. 2004/0203595 ("Singhal I"), and U.S. Patent Publication No. 2007/0042755 ("Singhal II") (collectively, the "withheld references").

261.   Twilio's Opposition to TeleSign's Motion for Preliminary Injunction included a supporting expert declaration with claim charts demonstrating how the references disclose limitations of claims of the '034 patent.

262.   The '034 patent is part of the same patent family of the '792 patent.

263.   The '034 and '792 patents date priority back to the same parent application.

264.   The '034 and '792 patents relate to the same subject matter.

265.   The '034 and '792 patents share a similar specification.

266.   The Nguyen, Chang, De Petris, and Singhal references are material to the validity of at least one claim of the '792 patent.

267.   The references that were withheld from the Patent Office by the Applicants are material to the validity of the '792 patent because the examiner would have found the withheld references relevant to his or her review for patentability of the asserted claims of the '792.

268.   The references that were withheld from the Patent Office by the Applicants are material to the validity of the '792 patent because each of the withheld references both address similar problems and offer similar solutions and are generally directed to verification of a user.

269.  For example, U.S. Patent No. 7,577,847 ("Nguyen") is relevant to the validity of claims of the '792 patent. Like the claims of the '792 patent, Nguyen discloses a verification and notification method that receives a user's telephone number, verifies the telephone number by submitting a code to the user, confirms the user has entered the correct code, completes registration based on the user submitting the correct code, and maintains records of such events. For example, Nguyen discloses:

- In this example, the player uses client device 110, logs into network device 145 via the Internet according to one of many login procedures known by those of skill in the art, then enters registration data (including name, age, address and a telephone number) into fields of a registration page provided by network device 145, e.g. via HTML. (*Telesign I*, ECF No. 55-11, 8:3-9.)

- Network device 145 then causes a telephone call to be placed to the player, e.g., via telephone network 150 to telephone 155 of FIG. 1 (step 225). (*Id.* at 9:25-27.)

- In step 335, the verification server places a call to the telephone number indicated by the player. The verification server requires the player to enter a confirmation number (preferably a randomly generated number) into the keypad of the telephone. (*Id.* at 10:46-50.)

- In step 340, the data gathered during the telephone call (and voice biometric data, if any) are transmitted to the game server. The game server compares these data with data obtained during and/or as a result of the registration process (step 345). In step 350, the game server determines whether the player's requested gaming session is approved. (*Id.* at 11:24-29.)

- If the requested gaming session is approved, the game server allows the requested gaming session to begin. If the requested gaming session is not approved, the process ends in this example (step 355). (*Id.* at 11:38-41.)

- *See also id* at figures 2 and 3.

270. As yet another example, U.S. Application No. 2004/0203595 ("Singhal I") is also relevant. For example, Singhal I provides:

- Authentication system 10 is used to store a user's existing passwords; alternatively, the authentication system creates on demand a transient random pass code that is good for a limited duration. When the user has forgotten the password in a traditional system, alternatively, without the need to create or remember passwords, user can use transient pass codes. The user retrieves the password or the pass code via a cell telephone 800 call to the authentication system, before logging on to the system.

271. As yet another example, UK Patent Application 2362489 ("Chang") is also relevant. For example, the Abstract of Chang provides:

- For example, the second telecommunications network may be a telephone network (e.g. a mobile telephone network), and the contact data may be the user's telephone number. The website contacts the user using the second telecommunications network to check the- identity of the user. for example, the website may send the user a validation code. This may be sent as part of a message to a mobile phone owned by the user. The user reads the validation code, and sends it to the website by internet (e.g. by entering it onto a webpage presented on the user's browser).

272. As yet another example, U.S. Application No. 2007/0042755 ("Singhal II") is also relevant. For example, the Abstract of Singhal II provides:

- This invention discloses a system of remote user authentication to an authentication server, with a telephone interface to the authentication

server that only receives routed call that have originated from a cell phone in a cellular network and a call handling logic function which routs only those call to the authentication server over the interface that have originated from a cell phone with a subscriber identity module (SIM) card and for which the cellular company maintains an individual subscriber identification data.

273. As yet another example, U.S. Patent Publication No. 2004/0219904 ("De Petris") is also relevant. For example, the Abstract of De Petris provides:

- A security system with cross-checking for authenticating users on data communications networks comprises means for receiving from a service provider identification data of a user and of a point of access to a service; means for identifying the geographic location of the access point and a of mobile telephone number associated with the user; means for sending the mobile telephone number to a mobile telephone carrier; means for receiving from the telephone carrier data that identify the geographic location of a mobile telephone that corresponds to the sent mobile telephone number; computing means for generating a result of a comparison between the geographic location of the service access point and the geographic location of the mobile telephone and means for sending the result or data as a function of the result to the service provider or to the mobile telephone number.

274. Despite being aware of the withheld references on September 28, 2015, the Applicants failed to disclose the references during prosecution of the '792 patent.

275. Applicants disclosed none of the withheld references that were disclosed in Twilio's September 28, 2015 opposition motion. (*TeleSign I*, ECF No. 51.)

276.   Because of the Applicants' failure to disclose the withheld references, Applicants received a notice of allowance for the '792 patent on February 18, 2016.

277.   The withheld prior art references are "but-for material" because the Patent Office would not have allowed one or more claims of the '792 patent had it been aware of the withheld references.

278.   Applicants failed to disclose the withheld references to the Patent Office despite learning of these references at least by September 28, 2015.

279.   Applicants knew the withheld references were relevant to the Asserted Claims and knew the withheld references in combination or alone would have rendered the claims obvious.

280.   Applicants intended to deceive the Patent Office by systematically withholding or obfuscating the relevance of the known prior art.

281.   The Applicants had strong motivations to deceive the Patent Office, as they were gearing up to file a second lawsuit against Twilio.

282.   The Applicants failure to disclose the withheld references constitutes a breach of the duty of candor and good faith required by 37 C.F.R. § 1.56—with the intent to deceive the Examiner.

**Failure to Disclose Litigation Proceedings (The *TeleSign I* Litigation)**

283.   Applicants failed to properly disclose the related *TeleSign I* litigation to the Patent Office.

284.   The related *TeleSign I* litigation, which concerns three related patents in the same patent family of the '792 patent, is relevant to the validity and enforceability of the '792 patent because the Patent Office needs to be apprised of the specific arguments challenging validity or enforceability.

285.   The Applicants were aware of a relevant 35 U.S.C. § 101 challenge by at least September 28, 2015 when Twilio filed its Opposition to TeleSign's Motion for Preliminary Injunction. (*TeleSign I*, ECF No. 55).

286.   In Twilio's Opposition to TeleSign's Motion for Preliminary Injunction, a heading states: "Claim 1 is invalid under Section 101" which raises substantial questions to validity under 35 U.S.C. § 101 of the '034 patent.

287.   Twilio's Opposition to TeleSign's Motion for Preliminary Injunction included a supporting expert declaration demonstrating that the claims were not directed to a technological invention. (*TeleSign I*, ECF No. 55-2).

288.   The '034 patent is part of the same patent family of the '792 patent.

289.   The '034 and '792 patents date priority back to the same parent application.

290.   The '034 and '792 patents relate to the same subject matter.

291.   The '034 and '792 patents share a similar specification.

292.   The litigation activities of the '034 patent are relevant to the '792 patent because both patents are related to two-factor authentication and are part of the same patent family.

293.   The 35 U.S.C. § 101 challenge to the '034 patent is material to the validity and enforceability of the '792 patent.

294.   The withheld 35 U.S.C. § 101 challenge to the '034 patent is material because the examiner would have considered the withheld information important to patentability. For example, the 35 U.S.C. § 101 challenge to '034 patent is material to the '792 patent because the patents are related to the same family, contain similar specifications, and are both related to two-factor authentication technology.

295.   The challenge of patentability under 35 U.S.C. § 101 is material to the prosecution of the '792 patent because the arguments made in Twilio's motion would have affected the soundness and/or consistency of arguments made in favor of the patentability of the '792 patent given the substantial similarities between the '034 and '792 patents.

296.   As stated above, the '034, '920, and '038 patents are in the same family as the '792 patent, relate to the same technical field, share substantial overlap in their disclosure, and are all generally related to two-factor authentication technology.

297.   Applicants knew the withheld material was relevant to the Asserted Claims and knew the withheld material would have rendered the claims invalid and unenforceable.

298.   The withheld section 101 challenge is "but-for material" because the Patent Office would not have allowed one or more claims of the '792 patent had it been aware of Twilio's motion when Applicants learned of the challenge prior to the examiner issuing a notice of allowance.

299.   Despite being aware of the section 101 challenge on September 28, 2015, the Applicants failed to disclose this material during prosecution of the '792 patent.

300.   Applicants waited for almost four months after learning of the relevant 35 U.S.C. § 101 challenge and after the examiner had issued a notice of allowance of the '792 patent to notify the examiner of the *TeleSign I* litigation, but still withheld Twilio's September 28, 2015 section 101 challenge from the Patent Office.

301.   Obscuring    the    improper    delay,    Applicant    made    numerous misrepresentations and/or omissions in its letter. Applicants January letter states:

- "On January 5, 2016, however, Applicant was made aware of a challenge arising out of the litigation of the validity of the '920 and '038 patents on the basis of 35 U.S.C. § 101." (Exhibit B, Applicant's Jan. 22 letter to the PTO, at 1.)

302.   Applicants were not first made aware of the challenge arising out of § 101 validity for the patent family on January 5, 2016. Applicants were instead made aware of the § 101 challenge on September 28, 2015 in Twilio's Opposition

to TeleSign's Preliminary Injunction and Twilio's supporting expert declaration relating to the '034 patent. (ECF No. 51 at 22 ("Raising a substantial question as to validity under 35 U.S.C. § 101…"); ECF No. 51-2 at 67 ("Claim 1 Is Not Directed to a Technological Invention").)

303.   Applicants intended to deceive the Patent Office by systematically withholding or obfuscating the relevance of the known related litigation.

304.   The Applicants had strong motivations to deceive the Patent Office, as they were gearing up to file a second lawsuit against Twilio.

305.   The Applicants failure to disclose the withheld material constitutes a breach of the duty of candor and good faith required by 37 C.F.R. § 1.56—with the intent to deceive the Examiner.

**Failure to Disclose Litigation Proceedings (The '034 IPR)**

306.   Applicants failed to properly disclose the related '034 IPR litigation to the Patent Office.

307.   The related '034 IPR, which concerns a patent in the same patent family of the '792 patent, is relevant to the validity and enforceability of the '792 patent because the Patent Office needs to be apprised of the specific arguments challenging validity or enforceability.

308.   The Applicants were aware of the relevant '034 IPR by at least December 16, 2015 when Twilio filed its Petition for *Inter Partes* Review.

309.   In Twilio's Petition for *Inter Partes* Review of the '034 patent, multiple relevant references and invalidity grounds were raised.

310.   Twilio's Petition for *Inter Partes* Review included a supporting expert declaration demonstrating that the claims were invalid.

311.   The validity challenge made in Twilio's Petition for *Inter Partes* Review is material to the validity and enforceability of the '792 patent.

312.  Despite being aware of the Petition for *Inter Partes* Review of the '034 patent on December 16, 2015, the Applicants failed to disclose this information during prosecution of the '792.

313.  Applicants waited for over a month after learning of the '034 IPR and after the examiner had issued a notice of allowance of the '792 patent to notify the examiner of the some, but not all IPR litigation for the patent family.

314.  Obscuring the improper delay, Applicant made numerous misrepresentations and omissions in its letter. Applicants January letter states:

- "On January 11, 2016, Applicant was made aware of Petitions for *Inter Partes* Review, filed with the USPTO, of the '920 and '038 patents ("the IPRs"). Based on those newly-raised challenges to the patentability and validity of the '920 and '038 patents, Applicants submits the attached Information Disclosure Statement and requests consideration of the newly-cited references pursuant to the Quick Pack Information Disclosure Statement pilot program. (Exhibit B, Applicant's Jan. 22 letter to the PTO, at 1)

315.  Applicants disclosed the petition for *Inter Partes* review of the '038 and '920 patents on January 22, 2016 to the Patent Office but not the declarations or exhibits. (Exhibit A, Applicant's Jan. 22 IDS, at 1.)

316.  Applicants failed to disclose any part of the petition for *Inter Partes* review of the '034 patent that was filed almost one month prior to the filings of the '920 and '038 IPR petitions.

317.  The '034 Petition of *Inter Partes* Review is material because but-for the withheld information the Patent Office would not have allowed one or more claims of the '792 patent because the examiner would have considered the arguments made in the petition important to the ultimate patentability of the asserted claims of '792 patent.

318.   As stated above, the '034 patent is in the same family as the '792 patent, relate to the same technical field, and share substantial overlap in their disclosure.

319.   The '034 IPR concerns the same withheld references discussed above in paragraph 260, and for the same reasons set forth in paragraphs 259-282, the references are "but-for material."

320.   Applicants knew the withheld material was relevant to the Asserted Claims and knew the withheld material would have rendered the claims invalid and unenforceable.

321.   Applicants intended to deceive the Patent Office by systematically withholding or obfuscating the relevance of the known related litigation.

322.   The Applicants had strong motivations to deceive the Patent Office, as they were gearing up to file a second lawsuit against Twilio.

323.   The Applicants failure to disclose the withheld material constitutes a breach of the duty of candor and good faith required by 37 C.F.R. § 1.56—with the intent to deceive the Examiner.

**Applicants Misrepresentations Through Omission to Accelerate Allowance**

324.    Applicants were in a hurry to obtain the '792 patent.

325.   *TeleSign I* had already been filed and TeleSign was eager to assert additional patents against Twilio.

326.   Applicants filed the '792 patent through the TrackOne Request. (Exhibit C, TrackOne Request)

327.   The Patent Office states that filing an application under the TrackOne Request offers an application "special status with fewer requirements than the current accelerated examination program and without having to perform a pre-examination search."

328.   Applicants paid a fee to prioritize the speed at which their application would be prosecuted through the TrackOne Request.

329.    Because Applicants were in a hurry to obtain the '792 patent, Applicants were incentivized to make misrepresentations through omissions to the Patent Office.

330.    Applicants omitted all references to the related '034 IPR and '034 District Court litigation. (*See* ¶¶259-305)

331.    Applicants omitted Dr. Shamos's expert declarations in the '034, '920, and '038 IPRs and the District Court litigation. (*See* ¶¶219-258)

332.    In addition to filing under the TrackOne Request, Applicants also took advantage of the Quick Path Information Disclosure Statement (QPIDS) to further accelerate obtaining the '792 patent.

333.    The Patent Office states that "[t]he Quick Path Information Disclosure Statement (QPIDS) pilot program is part of the USPTO's on-going efforts towards compact prosecution and pendency reduction."

334.    Applicants filed an IDS under the QPIDS program on January 22, 2016, waiting until after the notice of allowance.

335.    Applicants January 22, 2016 QPIDS contained <u>some, but not all,</u> of the information known to the Applicants. (Exhibit A, Applicant's Jan. 22 IDS.)

336.    Applicants were required to make and did make a certification that none of the information contained in its January 22, 2016 IDS was known to the Applicants "more than three months prior to the filing of the information disclosure statement." (Exhibit A, Applicant's Jan. 22 IDS.)

337.    But applicants were aware of material information at least by September 2015, which is roughly six months prior to Applicants filing of the January 22, 2016 IDS.

338.    Six months is outside the three month window provided by the certification.  Had Applicants disclosed all the known prior art, Applicants would have been required to re-open prosecution of the '792 patent.

339.   Because the Applicants were in a hurry to obtain the '792 patent, in order to be in "compliance" with the certification made the Applicants, the Applicants (i) only listed the information in the IDS that the Applicants had become aware of in the past three months, (ii) excluded information from the IDS that the Applicants had knowledge of prior to the three month period, and (iii) excluded materially relevant information from the IDS that the Applicants had become aware of within the past three months.

340.   Applicants misrepresented relevant material information to the Patent Office through their omissions.

341.   The misrepresentation through Applicants omissions to the Patent Office is "but-for material" because the Patent Office would not have allowed one or more claims of the '792 patent at the speed at which they did had it not been for Applications omissions to the Patent Office.

342.   Applicants should have pulled its applications from allowance to reopen prosecution and disclose all of the material information that was known to the Applicants.

343.   Instead, Applicants were in a rush to obtain an allowance and breached of the duty of candor and good faith required by 37 C.F.R. § 1.56—with the intent to deceive the Examiner through Applicants misrepresentations to the Patent Office.

## SEVENTH AFFIRMATIVE DEFENSE
## (EQUITABLE DEFENSES)

344.   TeleSign is barred or limited from recovery in whole or in part by the doctrines of waiver, estoppel, acquiescence, and/or unclean hands.

## RESERVATION OF RIGHTS

345.   Twilio reserves all other affirmative defenses pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses, at law or in equity, that now exist or in the future may be available

based on discovery and further investigation in this case.

## TWILIO'S PRAYER FOR RELIEF

Wherefore, Twilio respectfully requests that the Court enter judgment in Twilio's favor by granting the following relief:

A.    Dismissing TeleSign's First Amended Complaint for Patent Infringement against Twilio in its entirety, with prejudice;

B.    Declaring that Twilio has not directly infringed any claim in the '792 patent.

C.    Declaring that Twilio has not indirectly infringed any claim in the '792 patent;

D.    Declaring that Twilio and Twilio's customers have not infringed any claim in the '792 patent;

E.    Declaring that Twilio has not willfully infringed any claim in the '792 patent;

F.    Declaring that all asserted claims of the '792 patent are invalid and/or unenforceable;

G.    Denying TeleSign any and all relief;

H.    Declaring that this is an exceptional case under 35 U.S.C. § 285, and awarding Twilio costs, attorneys' fees, and expenses; and

I.    Awarding Twilio such other and further relief as the Court may deem just and proper.


Dated: November 21, 2016                Respectfully submitted,

                                        BAKER BOTTS L.L.P.

                                         /s/ Sarah J. Guske
                                        Sarah J. Guske
                                        Attorney for Defendant
                                        TWILIO, INC.