Gary Miller (pro hac vice)
SHOOK HARDY & BACON L.L.P.
111 S. Wacker Dr.
Chicago, IL 60606
(312) 704-7700
gmiller@shb.com

Jesse J. Camacho (pro hac vice)
Mary J. Peal (pro hac vice)
SHOOK HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550
jcamacho@shb.com
mpeal@shb.com

Tony M. Diab (SBN 277343)
Shook, Hardy & Bacon L.L.P.
Jamboree Center, 5 Park Plaza
Suite 1600
Irvine, CA 92614
Tel: (949) 475-1500
Fax: (949) 475-0016
tdiab@shb.com

Counsel for Plaintiff
TeleSign Corporation

Sarah J. Guske
Baker Botts LLP
101 California Street Suite 3070
San Francisco, CA 94111
Tel: 415-291-6205
Fax: 415-291-6305
sarah.guske@bakerbotts.com

Wayne O. Stacy
Baker Botts LLP
2001 Ross Avenue
Dallas, TX 75201-2980
Tel: 214-953-6678
Fax: 214-661-4678
wayne.stacy@bakerbotts.com

J.B. Schiller
Baker Botts LLP
1001 Page Mill Road Building One Suite 200
Palo Alto, CA 94304
Tel: 650-739-7536
Fax: 650-739-7636
jay.schiller@bakerbotts.com

Counsel for Defendant Twilio Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELESIGN CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>TWILIO, INC.,<br><br>        Defendant. | Case No. 2:16-2106-PSG-SS<br><br>**[PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR PATENT LITIGATION** |

The parties have met and conferred regarding this [Proposed] Order re: Discovery of Electronically Stored Information for Patent Litigation.

Upon stipulation, the parties otherwise agree and the Court ORDERS as follows:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1. If a conflict exists between this Order and other rules (*e.g.*, local, patent, federal, etc.), this Order controls.

2. This Order may be modified in the Court's discretion or by stipulation.

3. As in all cases, costs may be shifted for disproportionate ESI (including email) production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under this Order (and under Fed. R. Civ. P. 26(b)(3)(A) and (B)). Absent a showing of good cause, activities undertaken to identify or produce information in this case are also protected from disclosure and discovery.

6. Production of ESI (including email) shall be completed by the deadline for the close of document discovery.

**ESI - Generally.**

7. Absent a showing of good cause by the requesting party, the categories of ESI identified below need not be preserved.

   a. Deleted, slack, fragmented, or other data only accessible by forensics.

      b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

      c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

      d. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

      e. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

      f. Voice messages.

      g. Text or instant messages.

      h. Electronic mail or pin-to-pin messages stored only on mobile devices (*e.g.*, iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

      i. Other electronic data stored only on a mobile device, such as calendar or contact data or notes.

      j. Logs of telephone calls.

      k. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

      l. Data remaining from systems no longer in use or that is unintelligible on the systems in use.

8. On-site inspection of electronic media is not permitted absent a demonstration by the requesting party of specific need and good cause.

9. Absent a showing of good cause, no party needs to restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, discs, SAN, offline storage, offsite storage, and other forms of media.

10. Absent a showing of good cause by the requesting party, the parties are not required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody, or control as set forth herein.

11. A party is only required to produce a single copy of a responsive document that it produces. A party may de-duplicate responsive ESI, including across custodians. The parties will use the industry standard MD5Hash values to de-duplicate documents. The parties will apply de-duplication on a family basis. A party may also de-duplicate "near-duplicate" email threads as follows: in an email thread, only the final-in-time email needs to be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains a unique attachment, that email and attachment are not considered a "near-duplicate." Duplicate email attachments having the same metadata need not be separately produced as long as at least one copy of the attachment has been produced.

12. ESI shall be produced as TIFFs unless it is impracticable to do so; and in such case, text-searchable PDFs would be allowed. Non-ESI that is uploaded into the party's document management database shall be produced to the requesting party as text-searchable image files. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history. During processing, the parties will force on the following: auto date, speaker notes, track changes, hidden columns or rows, hidden text or worksheets, and comments. The parties shall produce their information in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata.

13. Files not easily converted to image format may be produced natively. Examples include spreadsheets, databases, or other files (*e.g.*, file types with extensions "xls," "csv," and similar) for which conversion to image format is difficult or impractical. The parties will name each native file with the unique Bates number of the corresponding TIFF images, followed by the appropriate extension. The text file will contain the extracted text of the native file. The parties will provide a path to each native file in the data load file.

14. The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists: All Custodian, Custodian, Email Subject, From, To, CC, BCC, Date Sent, Time Sent, Filename, Author, Date Last Modified, MD5 Hash, File Size, File Extension, Page Count, Bates Number Begin, Bates Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

15. **Email**. Email production will occur according to the following process.
   a. An initial set of email custodians is determined according to ¶ 16 below.
   b. The receiving party will propose 10 initial search terms to the producing party. Focused terms, rather than over-broad terms (*e.g.*, product and company names), shall be employed. Terms set forth in the disjunctive count as multiple terms (*e.g.*, "apple or orange" is two search terms) except if they are synonyms or are used to address spelling variants (e.g., "non-vocal" and "nonvocal" shall be counted as one term).
   c. The parties shall confer in good faith to reach agreement on the proposed search terms. Such conferring will include the producing party providing input to help locate potentially responsive information. Examples of such input include the producing party 1) proposing search terms; 2) proposing modifications to the receiving party's proposed search terms; and 3) correcting clear mistakes.

PAGE 4

[PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR PATENT LITIGATION

7990574

      d. The parties will then use the search terms to run search queries on the custodians and non-custodial (i.e., a system or container that stores ESI, but over which an individual custodian does not organize, manage, or maintain the ESI (e.g, enterprise system or database)) mailboxes to obtain search results.

      e. If the receiving party, in good faith, believes the search results to be insufficient, then the receiving party shall explain in writing its bases to the producing party, whereby the parties shall further confer on additional or modified terms or custodians for subsequent searches to be run.

16. **Selection of Email Custodians.** The producing party may initially request that email of up to 5 custodians be searched. Subject to paragraph 15(e) above, this number may be reasonably increased and does not include non-custodial mailboxes (such as emails that go to help@acme.com or sales@acme.com--which must also be searched if they might contain responsive information). The initial custodians shall be determined as follows: (1) the producing party shall identify an initial set of custodians based on a good-faith determination that the initial set of custodians are those most likely to possess emails relevant to the issues in this case; (2) the producing party shall disclose the initial set of custodians to the receiving party; and (3) within 10 business days, the receiving party may modify the initial set to arrive at a proposed set. If the receiving party does not modify the initial set of custodians within the 10 business days, then the producing party's initial set will be deemed the final set of initial custodians.

17. Nothing in this Order discharges a party's responsibility to produce responsive information it is aware of.

18. Production of source code is governed by the protective order entered in this matter.

19. The parties will provide a cover letter or email with each production containing the following information:

    i. the case name; and

    ii. the piece of media included in the production with its unique production volume number or credentials to access the production.

20. Non-native documents will be stamped on every page with the appropriate confidentiality designation in accordance with the protective order entered in this case.

21. The parties will provide a privilege log for any document withheld in full or in part (*i.e.*, redacted) based upon a claim of privilege. Neither party shall be required to log privileged materials that post-date April 30, 2015 and relate to: this case; *TeleSign Corp. v. Twilio Inc.*, Case No. 2015-cv-03240 (C.D. Cal.); *TeleSign Corp. v. Twilio Inc.*, Case No. 16-cv-02106 (C.D. Cal.); IPR2016-00360; IPR2016-00450; IPR2016-00451; CBM2016-00099; and IPR2016-01688. The log will detail the following for each document:

    i. a privilege number for documents withheld in whole;

    ii. the Bates number for documents withheld in part (*i.e.*, redacted) or page count for documents withheld in full;

    iii. the document date;

    iv. the author(s) (*i.e.*, from) with an asterisk identifying any legal personnel;

    v. the recipient(s) (*i.e.*, to, cc, and bcc) with an asterisk identifying any legal personnel;

    vi. the basis of the privilege claimed; and

    vii. a description sufficient to allow the receiving party to assess the privilege claim.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: March 3, 2017          By: */s/ Mary Jane Peal*

Jesse Camacho (*pro hac vice*)
(jcamacho@shb.com)
Gary Miller (*pro hac vice*)
(gmiller@shb.com)
Mary Jane Peal (*pro hac vice*)
(mpeal@shb.com)
Tony Diab (SBN 277343)
(tdiab@shb.com)
SHOOK, HARDY & BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California 92614
Telephone: 949.475.1500
Facsimile: 949.475.0016

Attorneys for Plaintiff
TELESIGN CORPORATION

Date: March 3, 2017           By: */s/ Sarah J. Guske*

Sarah J. Guske
(sarah.guske@bakerbotts.com)
Wayne O. Stacy
(wayne.stacy@bakerbotts.com)
Jay B. Schiller
(jay.schiller@bakerbotts.com)
Baker Botts LLP
101 California Street Suite 3070
San Francisco, CA 94111
Tel: 415-291-6205
Fax: 415-291-6305

Attorneys for Defendant
TWILIO INC.

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: _____

UNITED STATES MAGISTRATE JUDGE