# Exhibit 1

Trials@uspto.gov                                Paper 10
571-272-7822                                    Entered: March 8, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

TWILIO INC.,
Petitioner,

v.

TELESIGN CORPORATION,
Patent Owner.
_____

Case IPR2016-01688
Patent 9,300,792 B2
_____

Before SALLY C. MEDLEY, MICHAEL W. KIM, and JUSTIN T. ARBES,
*Administrative Patent Judges*.

ARBES, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2016-01688
Patent 9,300,792 B2

Petitioner Twilio Inc. filed a Petition (Paper 1, "Pet.") requesting *inter partes* review of claims 1–6, 8, 10–15, and 17 of U.S. Patent No. 9,300,792 B2 (Ex. 1001, "the '792 patent") pursuant to 35 U.S.C. § 311(a).  Patent Owner TeleSign Corporation filed a Preliminary Response (Paper 8, "Prelim. Resp.") pursuant to 35 U.S.C. § 313.  Patent Owner also provided, with its Preliminary Response, evidence that it filed with the Office a statutory disclaimer of claims 3, 5, 7, 12, 14, and 16 of the '792 patent pursuant to 37 C.F.R. § 1.321(a).  *See* Prelim. Resp. 3; Ex. 2003, 380.  Accordingly, no *inter partes* review will be instituted for claims 3, 5, 12, and 14.  *See* 37 C.F.R. § 42.107(e).

For the remaining claims 1, 2, 4, 6, 8, 10, 11, 13, 15, and 17, we determine whether to institute an *inter partes* review under 35 U.S.C. § 314.[1] Pursuant to 35 U.S.C. § 314(a), the Director may not authorize an *inter partes* review unless the information in the petition and preliminary response "shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."  For the reasons that follow, we have decided to institute an *inter partes* review as to claims 1, 2, 4, 6, 8, 10, 11, 13, 15, and 17 on one ground of unpatentability.

---

[1] *See* Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,764–65 (Aug. 14, 2012) ("[A] patent owner may file a statutory disclaimer of one or more challenged claims to streamline the proceedings.  Where no challenged claims remain, the Board would terminate the proceeding.  Where one or more challenged claims remain, the Board's decision on institution would be based solely on the remaining claims.").

IPR2016-01688
Patent 9,300,792 B2

# I. BACKGROUND

## A. The '792 Patent[2]

The '792 patent pertains to "on-line or web-site registration," and describes processes for (1) "verifying an on-line registration by a telephone connection separate from the on-line connection between the web-site and potential registrant," and (2) "notifying registrants of predetermined events using information obtained during the registration process."  Ex. 1001, col. 1, ll. 29–36.  According to the '792 patent, there was a need in the art for a way to accurately verify an individual's identity during registration because "potential registrants often register with untraceable or false e-mail addresses and phone numbers."  *Id.* at col. 1, ll. 37–60.  Similarly, there was a need to prevent fraud by subsequently notifying the registered individual when certain events occur and potentially seeking the individual's authorization.  *Id.* at col. 1, l. 61–col. 2, l. 25.

The registration process begins with a user filling out "an on-line registration form accessed through a website" (i.e., a "first communication connection").  *Id.* at col. 4, ll. 15–17, 51–54.  "For example, the registrant or consumer could be an individual attempting to access a web-site and set up an account with a financial institution."  *Id.* at col. 4, ll. 35–38.  The user provides certain information requested in the form, such as his or her telephone number.  *Id.* at col. 4, ll. 55–58.  The website then sends a Short Message Service (SMS) message to the user's telephone (i.e., a "second

---

[2] The '792 patent also was challenged in Case CBM2016-00099, in which the petition seeking covered business method patent review was denied.  The '792 patent is related to U.S. Patent No. 8,462,920 B2 ("the '920 patent"), challenged in Case IPR2016-00450, and U.S. Patent No. 8,687,038 B2 ("the '038 patent"), challenged in Case IPR2016-00451.

IPR2016-01688
Patent 9,300,792 B2

communication connection") containing a verification code. *Id.* at col. 4,
ll. 61–63, col. 6, ll. 29–36. The user enters the verification code in the
website form and, if there is a match and the information provided shows
that the user is who he or she purports to be, the user is verified and may
login. *Id.* at col. 2, ll. 57–64, col. 4, ll. 63–67.

"After registration, notification events are established" by the user or
business utilizing the system or by a third party. *Id.* at col. 2, l. 65–col. 3,
l. 1. A notification event may comprise, for example, "a news event, or a
request to access or alter [the] registrant's account." *Id.* at col. 3, ll. 1–3.
When a previously established notification event occurs, the user is notified
via the telephone number provided during registration. *Id.* at col. 3, ll. 4–10.
For example, the system may send an SMS message or voice message to the
user's telephone containing a verification code. *Id.* at col. 9, ll. 25–37. The
user then enters the verification code into a website form, allowing the user
to verify his or her identity, "provide[ ] confirmation of receipt of the
information and, where necessary, authorization for the event to occur, such
as access to the account, etc." *Id.* at col. 9, ll. 37–43.

### B. Illustrative Claim

Claim 1 of the '792 patent recites:

1. A verification and notification method implemented by
a computing system, the method comprising:

receiving, from a user, information via a computing
interface presented to the user as a result of an attempt by the
user to access a service, the received information including a
telephone number associated with the user;

verifying the telephone number by:

IPR2016-01688
Patent 9,300,792 B2

establishing a short message service (SMS) connection with the user using the received telephone number;

communicating a verification code to the user through the SMS connection;

receiving, via the computing interface, a submitted verification code that is entered by the user; and

verifying the telephone number if the submitted verification code is the same as the communicated verification code;

completing a registration of the user based on the received information and verified telephone number, wherein the completed registration enables the user to access the service;

maintaining a record of one or more notification events associated with actions that require acknowledgement by the user;

upon receiving an indication of an occurrence of an established notification event, transmitting a message addressed to the verified telephone number indicating the occurrence of the notification event; and

receiving, from the user, an acknowledgement of an action associated with the established notification event.

## C. The Prior Art

Petitioner relies on the following prior art:

U.S. Patent No. 7,142,840 B1, filed Feb. 20, 2003, issued Nov. 28, 2006 (Ex. 1005, "Geddes");

U.S. Patent No. 8,781,975 B2, filed May 23, 2005, issued July 15, 2014 (Ex. 1003, "Bennett"); and

U.S. Patent Application Publication No. 2006/0020816 A1, filed July 5, 2005, published Jan. 26, 2006 (Ex. 1004, "Campbell").

IPR2016-01688
Patent 9,300,792 B2

### D. The Asserted Grounds

Petitioner challenges claims 1, 2, 4, 6, 8, 10, 11, 13, 15, and 17 of the
'792 patent[3] on the following grounds:

| References | Basis | Claims Challenged |
|---|---|---|
| Bennett and Campbell | 35 U.S.C. § 103(a)[4] | 1, 2, 4, 6, 8, 10, 11, 13, 15, and 17 |
| Bennett and Geddes | 35 U.S.C. § 103(a) | 1, 2, 4, 6, 8, 10, 11, 13, 15, and 17 |

### E. Claim Interpretation

The Board interprets claims in an unexpired patent using the "broadest
reasonable construction in light of the specification of the patent in which
[they] appear[ ]." 37 C.F.R. § 42.100(b); *Cuozzo Speed Techs., LLC v. Lee*,
136 S. Ct. 2131, 2144–46 (2016) (upholding the use of the broadest
reasonable interpretation standard). The parties provide proposed
interpretations for various claim limitations. *See* Pet. 22–25; Prelim. Resp.
15–26. For purposes of this Decision, we conclude that only "notification
event" requires interpretation.

The Board previously interpreted the term "notification event" in
similar claims of the related '920 and '038 patents (Cases IPR2016-00450
and IPR2016-00451, respectively), which are parents of the '792 patent and
share the same specification. In Case IPR2016-00450, the claim recited

---

[3] As explained above, Patent Owner disclaimed claims 3, 5, 12, and 14.

[4] The Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284
(2011) ("AIA"), amended 35 U.S.C. §§ 102 and 103. Because the
challenged claims of the '792 patent have an effective filing date before the
effective date of the applicable AIA amendments, we refer to the pre-AIA
versions of 35 U.S.C. §§ 102 and 103.

IPR2016-01688
Patent 9,300,792 B2

"establishing a notification event," "identifying an occurrence of the established notification event," and "after identifying the occurrence of the established notification event, re-verifying the registrant electronic contact," and the Board interpreted "notification event" to mean "an event that results in the registrant being notified that the event occurred."  IPR2016-00450, Paper 17, 7–11 ("-450 Dec.").  In Case IPR2016-00451, the claims recited "establishing a notification event associated with the user" and "upon detecting an occurrence of the established notification event, re-verifying the electronic contact address," and the Board interpreted "notification event" to mean "an event that results in the user being notified that the event occurred."  IPR2016-00451, Paper 17, 7–11 ("-451 Dec.").  The only difference between the two interpretations was the use of "registrant" or "user" to mirror the surrounding language in the respective claims.

Petitioner argues that "notification event" in the claims of the '792 patent should be interpreted to mean "*either* 'an event that results in the user being contacted either for re-verification *or* for notification that the event occurred' *or* 'an event that results in the registrant being notified that the event occurred.'"  Pet. 12 (emphases added).  Citing the previous decisions in Cases IPR2016-00450 and IPR2016-00451, Petitioner states that

> [d]epending upon how the Board is interpreting "notified that the event occurred," Petitioner may disagree with the Board's construction.  If sending a verification code to the user as a result of the occurrence of an event for use in re-verification qualifies as notification under the Board's construction, Petitioner agrees with the Board's construction.  If the Board is requiring a particular form of notification, such as a sentence stating that a particular event has occurred, then the construction of "notification" is not consistent with the [broadest reasonable interpretation].

7

IPR2016-01688
Patent 9,300,792 B2

*Id.* at 23.  According to Petitioner, the Specification of the '792 patent does
not require "any particular form of notification," such that merely "sending a
verification code to the user" can be a form of notification.[5]  *Id.* at 23–25.
Patent Owner disagrees, arguing that "notification event" should be
interpreted the same as in the previous proceedings.  Prelim. Resp. 15–26.
We agree with Patent Owner.

Claims 1 and 10 recite "maintaining a record of one or more
notification events associated with actions that require acknowledgement by
the user," "upon receiving an indication of an occurrence of an established
notification event, transmitting a message . . . indicating the occurrence of
the notification event," and receiving an "acknowledgement of an action
associated with the established notification event" from the user.  As with
the claims of the related patents, the claims recite a "notification event," not
merely an "event."  If Petitioner were correct that a "notification event" can
be an event that results in merely sending a verification code to the user for
use in re-verification (rather than notifying the user that the event occurred),
the word "notification" would be superfluous.  *See Merck & Co., Inc. v.
Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (rejecting a
proposed claim construction that would render a claim term superfluous).
Interpreting "notification event" to be an event that results in the user being
notified that the event occurred also is consistent with the surrounding
language of the claims, which recite receiving an indication of the
"occurrence" of an "established notification event" and transmitting a

---

[5] Petitioner states, however, that the interpretation of "notification event" is
"immaterial" because Petitioner "presents arguments under both
constructions in [its] element-by-element analysis."  Pet. 23, 25.

8

IPR2016-01688
Patent 9,300,792 B2

message "indicating the occurrence of the notification event." It is consistent with the Specification of the '792 patent as well, which describes users being notified of the occurrence of notification events. *See, e.g.*, Ex. 1001, Abstract ("Upon the occurrence of a notification event, an indication of the occurrence of the notification event is transmitted to the verified telephone number."), col. 1, ll. 33–36 ("The present invention also relates to a process for notifying registrants of predetermined events using information obtained during the registration process."), ll. 62–64 ("For example, to prevent fraud or identity theft, either the business or individual may wish to be alerted to certain events."), col. 3, ll. 4–10 ("Upon the occurrence of a previously established notification event, the registrant is notified . . . .").

Petitioner's arguments in favor of a broader interpretation are not persuasive. According to Petitioner, the Specification uses the term "notification event" broadly, referring to examples like a credit card transaction, withdrawal of a particular amount from a checking account, or news event. Pet. 24 (citing Ex. 1001, col. 2, l. 65–col. 3, l. 10, col. 9, ll. 14–17, col. 11, ll. 16–18, 26–28, 34–67). The cited portions, however, merely describe types of events, without indicating what activity occurs after the event. Similarly, Petitioner points to the disclosure in the Specification that when a "previously established event" occurs, "the system will notify and/or verify the user" such that a "verification message is played, . . . which includes either the verification code and/or occurrence of the notification event." *Id.* at 24–25 (quoting Ex. 1001, col. 9, ll. 25–43, col. 10, ll. 2–4). We are not persuaded that the "and/or" language supports Petitioner's reading, however, because the claims themselves recite transmitting a

IPR2016-01688
Patent 9,300,792 B2

message "indicating the occurrence of the notification event."  The cited
language also pertains to two separate actions and does not define or
otherwise shed light on what constitutes a "notification event" by itself.

On this record, applying the broadest reasonable interpretation of the
claims in light of the Specification, we interpret "notification event" to mean
an event that results in the user being notified that the event occurred.

## II. DISCUSSION

### A. *Effective Filing Date of the Challenged Claims of the '792 Patent*

As an initial matter, Petitioner argues that the earliest effective filing
date of the challenged claims is October 5, 2006.  Pet. 9–16.  Petitioner
provides on page 10 of the Petition a chart depicting the lineage of the
'792 patent:



As shown in the chart above, the '792 patent claims priority as a
continuation or divisional application of a series of applications, and as a
continuation-in-part (CIP) of U.S. Patent Application No. 11/034,421
(Ex. 1027, "the '421 application"), filed on January 11, 2005.  *See* Ex. 1001,

IPR2016-01688
Patent 9,300,792 B2

col. 1, ll. 7–25.  Petitioner points out that there is no presumption that the challenged claims are entitled to the filing date of the '421 application because the Office did not consider priority during prosecution of the '792 patent.  Pet. 10 (citing Ex. 1033[6]); *see PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008) ("When neither the [Office] nor the Board has previously considered priority, there is simply no reason to presume that claims in a CIP application are entitled to the effective filing date of an earlier filed application.").

Petitioner argues that the '421 application does not provide written description support for independent claims 1 and 10 of the '792 patent, in particular, the limitations of "maintaining a record of one or more notification events associated with actions that require acknowledgement by the user" and, "upon receiving an indication of an occurrence of an established notification event, transmitting a message . . . indicating the occurrence of the notification event."  Pet. 11–15.  As Petitioner correctly points out, the '421 application only discloses a verification process for an on-line registration; it does not describe a notification process after such verification.  *See id.* at 11; Ex. 1027 ¶¶ 1, 20–36; *compare* Ex. 1027, claim 1 ("process for verifying an on-line registration"), *with* Ex. 1001, claim 1

---

[6] On September 21, 2016, Petitioner filed a corrected version of the prosecution history of the '792 patent as Exhibit 1033 and sent an email to the Board requesting that the original version be expunged.  In an email to the Board dated October 26, 2016, Patent Owner stated that it did not oppose Petitioner's request, but reserved the right to object to the exhibit under our rules as, for example, "inadmissible or insufficient."  To ensure a clear record, and because the prosecution history of the '792 patent is publicly available, we will expunge the original version of Exhibit 1033 filed on August 29, 2016.

IPR2016-01688
Patent 9,300,792 B2

("verification and notification method").  Indeed, the term "notification event" does not appear in the '421 application, and appears for the first time in the following application, U.S. Patent Application No. 11/538,989 (Ex. 1021), which was filed on October 5, 2006 and issued as the '920 patent.  Patent Owner does not dispute Petitioner's assertions regarding the effective filing date of the challenged claims in its Preliminary Response. Based on our review of the current record, we agree with Petitioner that the challenged claims are not entitled to the filing date of the '421 application, and the earliest effective filing date of the challenged claims is October 5, 2006.  Accordingly, Petitioner has shown sufficiently, on the present record, that all of the asserted references (Bennett, Campbell, and Geddes) are prior art under 35 U.S.C. § 102.[7]  *See* Pet. 15.

## B. Obviousness Ground Based on Bennett and Campbell

Petitioner contends that claims 1, 2, 4, 6, 8, 10, 11, 13, 15, and 17 are unpatentable over Bennett and Campbell under 35 U.S.C. § 103(a), citing the testimony of Michael Shamos, Ph.D. as support.  Pet. 26–64 (citing Ex. 1002).  We are persuaded that Petitioner has established a reasonable likelihood of prevailing on its asserted ground for the reasons explained below.

---

[7] Bennett was filed on May 23, 2005, and Campbell was filed on July 5, 2005—both prior to October 5, 2006.  Thus, we need not determine at this time whether either is entitled to the filing date of its corresponding provisional application.

IPR2016-01688
Patent 9,300,792 B2

### 1. Bennett

Bennett describes a system for "extending authentication to a two factor, out of band form, requiring an additional data element or code via a channel different from the channel used for the primary transaction." Ex. 1003, Abstract. The user first provides information, such as his or her telephone number, to the system via a website (i.e., a "first communication channel"). *Id.* at col. 2, ll. 61–63, col. 14, ll. 46–56. The system then establishes a telephone connection with the user (i.e., a "second communication channel") and sends a completion code to the user (e.g., in an SMS message). *Id.* at col. 2, ll. 63–67, col. 5, ll. 32–35, col. 10, l. 62–col. 11, l. 5, col. 15, ll. 8–13. The user enters the completion code into the website and the system determines, if there is a match, the user is allowed to complete the transaction. *Id.* at col. 2, l. 67–col. 3, l. 4, col. 15, ll. 14–42. The user may be required to go through the authentication process only for certain transactions, such as when the user is accessing the system from a different device than what was used in the past, or for "each and every transaction." *Id.* at col. 11, ll. 44–45, col. 18, ll. 4–16. In Bennett's disclosed system, a decision making module determines whether a particular transaction requires the "two-factor" authentication process based on various factors, such as, for example, the current "alert level." *Id.* at col. 11, l. 28–col. 13, l. 23, col. 16, ll. 3–13.

### 2. Campbell

Campbell describes a system for managing "authentication attempts using . . . a real time communication channel with the end user that is separate from the channel being used for authentication." Ex. 1004,

IPR2016-01688
Patent 9,300,792 B2

Abstract.  The system receives information about an authentication attempt
(an "event"), such as a user attempting to access the Internet from a
particular location, and determines whether the event meets certain criteria
that would warrant additional procedures to prevent fraud.  *Id.* ¶¶ 13–18.
For example, an authentication attempt may be made where the same user
ID was already used and Internet access is still active, or where multiple
authentication attempts during a particular time period indicate "atypical
use." *Id.* ¶¶ 18–22.

     If additional processing is required, the system communicates with the
requesting user via a "separate communications channel," such as a cellular
network.  *Id.* ¶¶ 23–24.  For example, the system may automatically change
the user's password and send an SMS message to the user's telephone with
the new password "along with a message explaining the reason a new
password is being sent." *Id.* ¶ 25.  "An example message could read 'Your
password has been changed to XXXXXXX due to a risk that your old
password has been compromised.'  Thus the valid user is automatically
equipped with and informed of a change in password." *Id.* ¶ 39.  Or, if the
number of authentication attempts in a particular time period exceeds a
designated threshold,

> [t]he SMS message would indicate that the User account has
> been suspended and request the User to contact the
> authentication authority.  The authentication authority could be
> a service provider or company that is granting access to, in this
> case, the internet.  An example SMS message could read "Your
> account has been suspended due to a risk that your password
> has been compromised.  Please contact 800-555-5555 for
> further information."  Thus the valid user is informed of the
> issue and can contact the authentication authority.

*Id.* ¶ 41.

IPR2016-01688
Patent 9,300,792 B2

### 3. Level of Ordinary Skill in the Art

> Section 103(a) forbids issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting 35 U.S.C. § 103(a)).  Petitioner argues that a person of ordinary skill in the art at the time of the '792 patent would have had "at least an undergraduate degree in computer science, or equivalent experience, and in addition would be familiar with Internet and telephone communications."  Pet. 22 (citing Ex. 1002 ¶¶ 11–20).  Patent Owner does not dispute Petitioner's assessment in its Preliminary Response.  Based on the current record, including our review of the '792 patent and the types of problems and solutions described in the '792 patent and cited prior art, we agree with Petitioner's assessment of the level of ordinary skill in the art and apply it for purposes of this Decision.

### 4. Analysis

Petitioner relies on Bennett for the majority of the limitations of independent claims 1 and 10.  Pet. 26–59.  For example, Petitioner argues that Bennett teaches receiving a telephone number from a user via a "computing interface presented to the user as a result of an attempt by the user to access a service" (i.e., a web page provided to the user), communicating a "verification code" (i.e., completion code) to the user through an "SMS" or "telephonic" connection, receiving the completion code entered by the user via the "computing interface," verifying the user's

IPR2016-01688
Patent 9,300,792 B2

telephone number if there is a match, and completing the registration of the user. *Id.* at 26–37.

With respect to the "notification event" limitations of the claims, Petitioner first relies on Bennett. *Id.* at 37–44. Petitioner argues that Bennett teaches "notification events associated with actions that require acknowledgement by the user," as recited in the claims, because after initial authentication, Bennett's "per-user" decision rules "define which transactions (actions) require notifying the user and receiving user acknowledgement, in the form of two-factor authentication." *Id.* at 38–41. For example, two-factor authentication may be required "when a logon attempt is detected from a new device" or when there were "log-in attempts from suspicious IP addresses and password recovery attempts." *Id.* at 40–41. According to Petitioner, Bennett requires that the user "acknowledge the action that triggered the notification" by entering the completion code; "[f]or the user to enter the code, she first reads it and is thereby notified." *Id.* at 38–39. Alternatively, Petitioner contends that notification is inherent in Bennett because "the user is necessarily notified that an event requiring re-verification has occurred." *Id.* at 41. Petitioner argues that the SMS message in Bennett identifies the source of the message (i.e., the sending telephone number) and "the user will know" that the completion code in the SMS message "corresponds to the occurrence of an event requiring two-factor authentication from past experience with the system, for example during her initial account sign-up." *Id.* (citing Ex. 1002 ¶¶ 104, 110).

As explained above, a "notification event" is an event that results in the user being notified that the event occurred. *See supra* Section I.E. Petitioner does not point to any specific disclosure in Bennett of notifying

16

IPR2016-01688
Patent 9,300,792 B2

the user that an event occurred.  Rather, Bennett discloses "transactions" that
trigger a completion code being sent to the user, such as "online or other
transactions, interactions, enrollment to a service, re-enrollment and
password recovery using some sort of authentication/challenge or use of
various services."  Ex. 1003, col. 12, ll. 33–39, col. 12, l. 56–col. 13, l. 23.
The system determines that a transaction warrants two-factor authentication
and sends an SMS message with a completion code to the user, but the
completion code is simply a code generated by the system and then
"entered" by the user in response.  *See id.* at col. 9, ll. 58–65, col. 15,
ll. 8–42.  We are not persuaded that the completion code notifies the user
that a particular event occurred.  Nor are we persuaded that such notification
necessarily occurs in Bennett, as the code may simply be, for example, a set
of numbers that the user then enters into his or her telephone, which say
nothing about a particular event having occurred.  In that case, the
underlying transaction that triggered two-factor authentication would not
result in the user being notified that the transaction occurred.  Thus, based on
the current record, we are not persuaded that Bennett discloses, expressly or
inherently, the "notification event" limitations of the claims.[8]

Petitioner, however, also relies on the combined teachings of Bennett
and Campbell for the "notification event" limitations of claims 1 and 10.
Pet. 44–59.  Petitioner cites Campbell's disclosure of determining based on
set criteria that additional processing is required and sending an SMS
message to the user with an explanation.  *Id.* at 44–45.  One example in

---

[8] The Board similarly found in related Cases IPR2016-00450 and
IPR2016-00451 that Petitioner had not shown that Bennett discloses
"notification events."  *See* -450 Dec. 13–14; -451 Dec. 13–14.

IPR2016-01688
Patent 9,300,792 B2

Campbell is "suspension of the user's account as the result of multiple attempts to access the account using invalid user ID and password combinations within a certain time period," where the corresponding SMS message reads "'Your account has been suspended due to a risk that your password has been compromised.  Please contact 800-555-5555 for further assistance.'"  *Id.* (citing Ex. 1004 ¶¶ 40–41).  Suspension of the user's account, therefore, is a "notification event" (i.e., an event that results in the user being notified that the event occurred) according to Petitioner.  *Id.*

    Petitioner asserts that it would have been obvious to combine this teaching with Bennett and "include a sentence [in Bennett's SMS message along with the completion code] that describes the occurrence of the event that triggered the notification" (i.e., the reason why the user is being sent a completion code).  *Id.* at 45–47.  Petitioner provides, with supporting testimony from Dr. Shamos, reasons as to why a person of ordinary skill in the art would have been motivated to do so, including that doing so would "provide better customer service."  *Id.* at 42–47 (citing Ex. 1002 ¶¶ 116–18).  "In cases of fraudulent attempts to access the service, the receipt of a completion code may alarm a user that has not attempted to access their account."  *Id.* at 47.  "Including additional information with the SMS message would, as taught by Campbell, have been obvious to a [person of ordinary skill in the art], in order to keep the customer informed and instill confidence in the service."  *Id.*  Based on the current record, we are persuaded that Petitioner has provided sufficient explanation as to how Bennett and Campbell teach the "notification event" limitations and why a person of ordinary skill in the art would have combined their teachings.  *See id.* at 44–59.

IPR2016-01688
Patent 9,300,792 B2

Patent Owner makes a number of arguments in response. First, Patent Owner argues that Petitioner's arguments as to why Bennett teaches certain limitations pertaining to "notification events" fail, and that there was "no apparent reason to combine Campbell with Bennett," because Bennett itself does not teach "notification events." Prelim. Resp. 42–45, 49–54. Although we agree that Bennett alone does not teach "notification events," we are persuaded based on the current record that the combination of Bennett and Campbell teaches such events, and that adding an explanatory sentence to Bennett's SMS message would make the underlying event in Bennett a "notification event" (because it would result in the user being notified that the event occurred). Petitioner's explanation regarding the asserted combination is sufficient at this stage of the proceeding. *See* Pet. 44–59.

Second, Patent Owner contends that "[t]he proposed combination of Campbell with Bennett would not result in a 'notification event' as claimed" because Bennett's decision making module determines whether to provide a completion code, and there are certain situations in which a user would *not* be provided with a completion code, such as when the system has a lowered alert level. Prelim. Resp. 45–48. According to Patent Owner, "Petitioner's proposal to send additional explanatory text with the completion code would not change the fact that the occurrence of a particular event *might* not result in sending a completion code at all." *Id.* at 48 (emphasis added). We are not persuaded based on the current record. Bennett broadly discloses numerous types of transactions that can trigger two-factor authentication depending on the circumstances. *See, e.g.*, Ex. 1003, col. 12, l. 56–col. 13, l. 23, col. 16, ll. 3–6 ("each authentication transaction may be evaluated as to whether it requires further checks"). Bennett also states that "each and every

IPR2016-01688
Patent 9,300,792 B2

transaction or user" may be required to undergo two-factor authentication. *Id.* at col. 11, ll. 44–45. Based on the current record, we do not see how the fact that Bennett's system might not send a completion code in some circumstances refutes Petitioner's obviousness analysis, which is based on a transaction and circumstances that would cause the system to send a completion code. *See, e.g.*, Pet. 38 (providing as an example "an attempt to login to a user account from an unknown device").

Third, Patent Owner argues that Petitioner's proposed combination is "contrary to the stated goals of Bennett" to "reduce the number of out-of-band authentications, lower the costs of running the service, and reduce the intrusiveness to its customers." Prelim. Resp. 48–49 (citing Ex. 1003, col. 18, ll. 4–11). We are not persuaded based on the current record. Adding an explanatory sentence to the SMS message with the completion code in Bennett would not increase the number of communications; it would only add text to the communication. Further, any additional "costs" or "intrusiveness" for doing so would appear to be minimal, given that the SMS message already is being sent. Petitioner also provides sufficient explanation at this stage for why the additional text would be helpful, rather than intrusive, for the user. *See* Pet. 47.

Fourth, Patent Owner argues that the asserted ground should be denied under 35 U.S.C. § 325(d) because Petitioner made similar claim interpretation arguments and asserted grounds based in part on Bennett in Cases IPR2016-00450 and IPR2016-00451. Prelim. Resp. 27–32. Further, according to Patent Owner, "the propositions for which Campbell [is] cited have been previously presented to the Office" in Case IPR2016-00450, where Petitioner asserted a ground for certain dependent claims based on a

IPR2016-01688
Patent 9,300,792 B2

combination of Bennett and U.S. Patent Application Publication
No. 2003/0221125 A1 ("Rolfe").[9]  Prelim. Resp. 30–32.

In determining whether to institute an *inter partes* review, we may
"deny some or all grounds for unpatentability for some or all of the
challenged claims."  37 C.F.R. § 42.108(b); *see also* 35 U.S.C. § 314(a)
(prescribing requirement for authorizing institution but not mandating
institution).  Our discretionary determination of whether to institute review
is guided by 35 U.S.C. § 325(d), which states, in relevant part, that "the
Director may take into account whether, and reject the petition or request
because, the same or substantially the same prior art or arguments previously
were presented to the Office."  The statutory language gives the Director the
authority not to institute review on the basis that the same or substantially
the same prior art or arguments were presented previously to the Office, but
does not require that result.  Based on the particular facts of this proceeding,
we are not persuaded to exercise our discretion under 35 U.S.C. § 325(d).
Cases IPR2016-00450 and IPR2016-00451 involved different patents with
different claims.  Further, although Bennett was cited to the examiner during
prosecution of the '792 patent, Campbell, and the specific combination of
Bennett and Campbell, were not considered during prosecution or during
Cases IPR2016-00450 and IPR2016-00451.  *See* Ex. 1024.

Petitioner has demonstrated, on this record, a reasonable likelihood of
prevailing on its assertion that independent claims 1 and 10 are unpatentable
over Bennett and Campbell.  We have reviewed Petitioner's contentions

---

[9] The Board did not reach the merits of Petitioner's asserted combination
based on Bennett and Rolfe because Petitioner failed to demonstrate a
reasonable likelihood of prevailing as to the parent independent claim.  *See*
-450 Dec. 14; IPR2016-00450, Paper 29, 5–8.

IPR2016-01688
Patent 9,300,792 B2

regarding dependent claims 2, 4, 6, 8, 11, 13, 15, and 17 as well, and are persuaded that Petitioner has demonstrated, on this record, a reasonable likelihood of prevailing on its asserted ground. *See* Pet. 59–64.

### C. Obviousness Ground Based on Bennett and Geddes

Petitioner makes the contingent argument that "[t]o the extent that the Board finds the '792 patent is entitled to a priority date of January 11, 2005," the challenged claims are unpatentable over Bennett and Geddes under 35 U.S.C. § 103(a). Pet. 64–66. As explained above, we agree with Petitioner that the challenged claims are not entitled to the January 11, 2005 date, and, thus, the contingency has not materialized. *See supra* Section II.A. Accordingly, we do not institute an *inter partes* review on Petitioner's asserted ground.

### D. Conclusion

We conclude that Petitioner has demonstrated a reasonable likelihood of prevailing with respect to at least one claim of the '792 patent challenged in the Petition. The Board, however, has not made a final determination under 35 U.S.C. § 318(a) with respect to the patentability of the challenged claims.

### III. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that the version of Exhibit 1033 filed on August 29, 2016, is expunged from the record of this proceeding;

IPR2016-01688
Patent 9,300,792 B2

FURTHER ORDERED that an *inter partes* review is instituted as to claims 1, 2, 4, 6, 8, 10, 11, 13, 15, and 17 of the '792 patent;

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(a), *inter partes* review of the '792 patent is hereby instituted commencing on the entry date of this Decision, and pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial; and

FURTHER ORDERED that the trial is limited to the following ground of unpatentability, and no other grounds set forth in the Petition as to claims 1, 2, 4, 6, 8, 10, 11, 13, 15, and 17 of the '792 patent are authorized:

Claims 1, 2, 4, 6, 8, 10, 11, 13, 15, and 17 under 35 U.S.C. § 103(a) as unpatentable over Bennett and Campbell.

IPR2016-01688
Patent 9,300,792 B2

PETITIONER:

Wayne O. Stacy
Eliot D. Williams
BAKER BOTTS L.L.P.
wayne.stacy@bakerbotts.com
eliot.williams@bakerbotts.com


PATENT OWNER:

Jesse J. Camacho
Amy M. Foust
Elena S. K. McFarland
Mary J. Peal
SHOOK, HARDY & BACON L.L.P.
jcamacho@shb.com
afoust@shb.com
emcfarland@shb.com
mpeal@shb.com