# EXHIBIT 1

Trials@uspto.gov                                    Paper 13
571-272-7822                                          Entered: February 27, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE
———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD
———————

TWILIO INC.,
Petitioner,

v.

TELESIGN CORPORATION,
Patent Owner.

———————

Case CBM2016-00099
Patent 9,300,792 B2

———————

Before SALLY C. MEDLEY, MICHAEL W. KIM, and JUSTIN T. ARBES,
*Administrative Patent Judges*.

ARBES, *Administrative Patent Judge*.

DECISION
Denying Institution of Covered Business Method Patent Review
*37 C.F.R. § 42.208*

CBM2016-00099
Patent 9,300,792 B2

Petitioner Twilio Inc. filed a Petition (Paper 1, "Pet.") requesting covered business method patent review of claims 1–18 of U.S. Patent No. 9,300,792 B2 (Ex. 1001, "the '792 patent") pursuant to 35 U.S.C. § 321(a). Patent Owner TeleSign Corporation filed a Preliminary Response (Paper 7, "Prelim. Resp.") pursuant to 35 U.S.C. § 323. Petitioner filed a Reply (Paper 10, "Reply") and Patent Owner filed a Sur-Reply (Paper 12, "Sur-Reply"), pursuant to our authorization (Paper 8). Patent Owner also provided, with its Preliminary Response, evidence that it filed with the Office a statutory disclaimer of claims 3, 5, 7, 12, 14, and 16 of the '792 patent pursuant to 37 C.F.R. § 1.321(a). *See* Prelim. Resp. 10–11; Ex. 2001, 380. Accordingly, no covered business method patent review will be instituted for claims 3, 5, 7, 12, 14, and 16. *See* 37 C.F.R. § 42.207(e).

For the remaining claims 1, 2, 4, 6, 8–11, 13, 15, 17, and 18, we determine whether to institute a covered business method patent review under 35 U.S.C. § 324.[1] Pursuant to 35 U.S.C. § 324(a), the Director may not authorize a covered business method patent review unless the information in the petition, if unrebutted, "would demonstrate that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable." For the reasons that follow, we have decided not to institute a covered business method patent review.

---

[1] *See* Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,764–65 (Aug. 14, 2012) ("[A] patent owner may file a statutory disclaimer of one or more challenged claims to streamline the proceedings. Where no challenged claims remain, the Board would terminate the proceeding. Where one or more challenged claims remain, the Board's decision on institution would be based solely on the remaining claims.").

CBM2016-00099
Patent 9,300,792 B2

# I. BACKGROUND

## A. The '792 Patent[2]

The '792 patent pertains to "on-line or web-site registration," and describes processes for (1) "verifying an on-line registration by a telephone connection separate from the on-line connection between the web-site and potential registrant," and (2) "notifying registrants of predetermined events using information obtained during the registration process." Ex. 1001, col. 1, ll. 29–36. According to the '792 patent, there was a need in the art for a way to accurately verify an individual's identity during registration because "potential registrants often register with untraceable or false e-mail addresses and phone numbers." *Id.* at col. 1, ll. 37–60. Similarly, there was a need to prevent fraud by subsequently notifying the registered individual when certain events occur and potentially seeking the individual's authorization. *Id.* at col. 1, l. 61–col. 2, l. 25.

The registration process begins with a user filling out "an on-line registration form accessed through a website" (i.e., a "first communication connection"). *Id.* at col. 4, ll. 15–17, 51–54. "For example, the registrant or consumer could be an individual attempting to access a web-site and set up an account with a financial institution." *Id.* at col. 4, ll. 35–38. The user provides certain information requested in the form, such as his or her telephone number. *Id.* at col. 4, ll. 55–58. The website then sends a Short Message Service (SMS) message to the user's telephone (i.e., a "second communication connection") containing a verification code. *Id.* at col. 4,

---

[2] The '792 patent also is challenged in Case IPR2016-01688. The '792 patent is related to U.S. Patent No. 8,462,920 B2, challenged in Case IPR2016-00450, and U.S. Patent No. 8,687,038 B2, challenged in Case IPR2016-00451.

CBM2016-00099
Patent 9,300,792 B2

ll. 61–63, col. 6, ll. 29–36.  The user enters the verification code in the website form and, if there is a match and the information provided shows that the user is who he or she purports to be, the user is verified and may login.  *Id.* at col. 2, ll. 57–64, col. 4, ll. 63–67.

"After registration, notification events are established" by the user or business utilizing the system or by a third party.  *Id.* at col. 2, l. 65–col. 3, l. 1.  A notification event may comprise, for example, "a news event, or a request to access or alter [the] registrant's account."  *Id.* at col. 3, ll. 1–3. When a previously established notification event occurs, the user is notified via the telephone number provided during registration.  *Id.* at col. 3, ll. 4–10. For example, the system may send an SMS message or voice message to the user's telephone containing a verification code.  *Id.* at col. 9, ll. 25–37.  The user then enters the verification code into a website form, allowing the user to verify his or her identity, "provide[ ] confirmation of receipt of the information and, where necessary, authorization for the event to occur, such as access to the account, etc."  *Id.* at col. 9, ll. 37–43.

*B. Illustrative Claim*

Claim 1 of the '792 patent recites:

1. A verification and notification method implemented by a computing system, the method comprising:

receiving, from a user, information via a computing interface presented to the user as a result of an attempt by the user to access a service, the received information including a telephone number associated with the user;

verifying the telephone number by:

CBM2016-00099
Patent 9,300,792 B2

establishing a short message service (SMS) connection with the user using the received telephone number;

communicating a verification code to the user through the SMS connection;

receiving, via the computing interface, a submitted verification code that is entered by the user; and

verifying the telephone number if the submitted verification code is the same as the communicated verification code;

completing a registration of the user based on the received information and verified telephone number, wherein the completed registration enables the user to access the service;

maintaining a record of one or more notification events associated with actions that require acknowledgement by the user;

upon receiving an indication of an occurrence of an established notification event, transmitting a message addressed to the verified telephone number indicating the occurrence of the notification event; and

receiving, from the user, an acknowledgement of an action associated with the established notification event.

*C. The Prior Art*

Petitioner relies on the following prior art:

U.S. Patent Application Publication No. 2005/0273442 A1, filed May 23, 2005, published Dec. 8, 2005 (Ex. 1003, "Bennett"); and

U.S. Patent Application Publication No. 2006/0020816 A1, filed July 5, 2005, published Jan. 26, 2006 (Ex. 1004, "Campbell").

CBM2016-00099
Patent 9,300,792 B2

*D. The Asserted Grounds*

Petitioner challenges claims 1, 2, 4, 6, 8–11, 13, 15, 17, and 18 of the

'792 patent[3] on the following grounds:

| References | Basis | Claims Challenged |
|---|---|---|
| N/A | 35 U.S.C. § 101 | 1, 2, 4, 6, 8–11, 13, 15, 17, and 18 |
| Bennett and Campbell | 35 U.S.C. § 103(a)[4] | 1, 2, 4, 6, 8, 10, 11, 13, 15, and 17 |

*E. Claim Interpretation*

The Board interprets claims in an unexpired patent using the "broadest

reasonable construction in light of the specification of the patent in which

[they] appear[ ]."  37 C.F.R. § 42.300(b); *Cuozzo Speed Techs., LLC v. Lee*,

136 S. Ct. 2131, 2144–46 (2016) (upholding the use of the broadest

reasonable interpretation standard).  The parties provide proposed

interpretations for various claim limitations.  *See* Pet. 25–28; Prelim. Resp.

9–10.  For purposes of this Decision, however, we conclude that no claim

terms require interpretation.

II. DISCUSSION

Section 18 of the AIA provides for the creation of a transitional

program for reviewing covered business method patents, and limits reviews

---

[3] As explained above, Patent Owner disclaimed claims 3, 5, 7, 12, 14,
and 16.

[4] The Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284
(2011) ("AIA"), amended 35 U.S.C. § 103.  Because the '792 patent has an
effective filing date before the effective date of the applicable AIA
amendment, we refer to the pre-AIA version of 35 U.S.C. § 103.

CBM2016-00099
Patent 9,300,792 B2

to persons or their privies that have been sued or charged with infringement of a "covered business method patent," which does not include patents for "technological inventions." AIA §§ 18(a)(1)(B), 18(d)(1); *see* 37 C.F.R. § 42.302. Petitioner bears the burden of demonstrating that the '792 patent is a covered business method patent. *See* 37 C.F.R. § 42.304(a). For the reasons explained below, Petitioner has not demonstrated that the '792 patent is a covered business method patent.

A "covered business method patent" is "a patent that *claims* a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions." AIA § 18(d)(1) (emphasis added); *see* 37 C.F.R. § 42.301(a). The U.S. Court of Appeals for the Federal Circuit recently held the following regarding the scope of covered business method (CBM) patent review:

> CBM patents are limited to those with claims that are directed to methods and apparatuses of particular types and with particular uses "in the practice, administration, or management of a financial product or service." The patent for a novel lightbulb that is found to work particularly well in bank vaults does not become a CBM patent because of its incidental or complementary use in banks. Likewise, it cannot be the case that a patent covering a method and corresponding apparatuses becomes a CBM patent because its practice could involve a potential sale of a good or service. All patents, at some level, relate to potential sale of a good or service. Take, for example, a patent for an apparatus for digging ditches. Does the sale of the dirt that results from use of the ditch digger render the patent a CBM patent? No, because the claims of the ditch-digging method or apparatus are not directed to "performing data processing or other operations" or "used in

7

CBM2016-00099
Patent 9,300,792 B2

> the practice, administration, or management of a financial product or service," as required by the statute. It is not enough that a sale has occurred or may occur, or even that the specification speculates such a potential sale might occur.

*Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1382 (Fed. Cir. 2016) (citations omitted); *see also Secure Axcess, LLC v. PNC Bank Nat'l Ass'n*, -- F.3d --, 2017 WL 676601, at *9 (Fed. Cir. Feb. 21, 2017) ("Necessarily, the statutory definition of a CBM patent requires that the patent have a claim that contains, however phrased, a financial activity element."); *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1340 (Fed. Cir. 2016) (approving of prior Board decisions that "properly focuse[d] on the claim language at issue and, finding nothing explicitly or inherently financial in the construed claim language, decline[d] to institute CBM review," and finding that the challenged patent was eligible for review because the claims recited "an express financial component in the form of a subsidy" that was "central to the operation of the claimed invention"); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1325 (Fed. Cir. 2015) (stating that "the definition of 'covered business method patent' is not limited to products and services of only the financial industry" and "on its face covers a wide range of finance-related activities"). A patent need have only one claim directed to a covered business method to be eligible for review. Transitional Program for Covered Business Method Patents—Definitions of Covered Business Method Patent and Technological Invention; Final Rule, 77 Fed. Reg. 48,734, 48,736 (Aug. 14, 2012).

Petitioner cites six claims of the '792 patent in support of its argument that the '792 patent is a covered business method patent: claims 1, 5, 7, 10, 14, and 16. *See* Pet. 5–6; Reply 1–3.

CBM2016-00099
Patent 9,300,792 B2

*Disclaimed Claims 5, 7, 14, and 16*

Claims 5 and 14 recite that "the notification event is associated with activity related to a financial account associated with the user." Claims 7 and 16 recite "charging a fee to the user based at least in part on the user being notified of the occurrence of the established notification event." Petitioner points to these limitations as supporting its contention that the '792 patent is a covered business method patent. *See* Pet. 5–6; Reply 2. Patent Owner, however, statutorily disclaimed claims 5, 7, 14, and 16, pursuant to 35 U.S.C. § 253(a) and 37 C.F.R. § 1.321(a). *See* Prelim. Resp. 10–11; Ex. 2001, 380. Accordingly, we treat the '792 patent as though these claims never existed. *See Vectra Fitness, Inc. v. TWNK Corp.*, 162 F.3d 1379, 1383 (Fed. Cir. 1998) ("This court has interpreted the term 'considered as part of the original patent' in section 253 to mean that the patent is treated as though the disclaimed claims never existed."); *Guinn v. Kopf*, 96 F.3d 1419, 1422 (Fed. Cir. 1996) ("A statutory disclaimer under 35 U.S.C. § 253 has the effect of canceling the claims from the patent and the patent is viewed as though the disclaimed claims had never existed in the patent."); *see also Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) (holding that the Board's interference jurisdiction under 35 U.S.C. § 291 required "the existence of an interference, and a claim that 'never existed' [due to a statutory disclaimer] cannot form the basis for an interference"); *Blue Calypso*, 815 F.3d at 1340 (citing previous Board decisions that "properly focuse[d] on the claim language at issue"). Petitioner's arguments regarding claims 5, 7, 14, and 16, therefore, are not persuasive.

CBM2016-00099
Patent 9,300,792 B2

*Claims 1 and 10*

Petitioner also relies on independent claims 1 and 10 in support of its contention that the '792 patent is a covered business method patent. Pet. 5–6; Reply 1–3. At the outset, we note that Petitioner's argument in the Petition that "the fraud prevention process claimed by the '792 patent is 'financial in nature, incidental to a financial activity or complementary to a financial activity'" is incorrect, as it is based on language from the AIA's legislative history that was rejected by the Federal Circuit in *Unwired Planet*. *See* Pet. 5; 841 F.3d at 1380–82. Rather, the question is whether the '792 patent "claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service," and we evaluate Petitioner's arguments based on that statutory language. AIA § 18(d)(1).

Petitioner points to the recitation in claims 1 and 10 of a "service" and "notification event," arguing that a "primary embodiment" in the Specification of the '792 patent is a "financial fraud detection system" with notification events "linked to financial activity." Pet. 6 (citing Ex. 1001, col. 11, ll. 10–33, 46–57, claims 5, 14). Claims 1 and 10 recite a "computing interface presented to the user as a result of an attempt by the user to access a service," completing a registration that "enables the user to access the service," "maintaining a record of one or more notification events associated with actions that require acknowledgement by the user," transmitting a message "indicating the occurrence of the notification event," and receiving an "acknowledgement of an action associated with the established notification event" from the user. Thus, as used in the claims, "service" and "notification event" are generic, context-neutral terms, without

CBM2016-00099
Patent 9,300,792 B2

any express or implicit connection to financial products or services. *See* Reply 2 (acknowledging that "[c]laim 1 is not exclusively directed at a financial activity"). Petitioner also does not propose interpreting the terms such that they would be financial in nature. *See* Pet. 25–28. Nor do we find any other language in claims 1 and 10 relating to financial products or services. *See* Prelim. Resp. 14–16, 24–27, 29–34.

We agree with Petitioner that the Specification of the '792 patent describes various embodiments pertaining to finance-related services and notification events. *See* Pet. 6; Reply 2; Ex. 1001, col. 1, l. 64–col. 2, l. 12, col. 11, ll. 10–33. The Specification, however, characterizes these as merely "example[s]," and does not indicate that the disclosed system is limited, or even directed primarily, to just finance-related activities. *See, e.g.*, Ex. 1001, col. 4, ll. 35–38 ("For example, the registrant or consumer could be an individual attempting to access a web-site and set up an account with a financial institution."), col. 11, ll. 15–17 ("For example, the consumer may wish to be notified every time a withdrawal of more than one thousand dollars is requested from his or her checking account.").

In fact, the Specification indicates just the opposite. *See id.* at col. 2, ll. 12–16 ("There are also instances which are not financially based in which notification could benefit both the consumer as well as the business."), col. 11, ll. 10–42 ("The alert/notification aspect of the present invention can be implemented in a wide variety of scenarios. . . . The present invention is not limited to notifying a user of events that occur with respect to a financial account. Instead, alerts or notifications can be given to the user for any reason."). The Specification provides multiple examples of services and notification events outside the financial context, such as providing access to

11

CBM2016-00099
Patent 9,300,792 B2

information on a secure website and notifying the user of sports scores, airline flight changes, etc. *See, e.g.*, *id.* at col. 2, ll. 15–16, col. 5, ll. 48–53, col. 10, ll. 36–47, col. 11, ll. 38–42; Pet. 26 (acknowledging that the Specification of the '792 patent "uses the term 'notification event' broadly," where "[n]otification events can be implemented in 'a wide variety of scenarios,'" such as "a news event" (citations omitted)). Other panels of the Board have found patents not to meet the definition of "covered business method patent" in similar circumstances.[5]

---

[5] *See, e.g.*, *Facebook, Inc. v. Skky, LLC*, Case CBM2016-00091, slip op. at 10–14 (PTAB Nov. 23, 2016) (Paper 7) (claim generically reciting "tracking" file selection, where the specification disclosed financial as well as "possible technical as well as non-financial reasons why files are to be tracked"); *Google Inc. v. SimpleAir, Inc.*, Case CBM2015-00019, slip op. at 10–13 (PTAB May 19, 2015) (Paper 11) (claim reciting "only generic, context-neutral 'data,' without any language relating to a financial product or service"); *Sega of Am., Inc. v. Uniloc USA, Inc.*, Case CBM2014-00183, slip op. at 11–13 (PTAB Mar. 10, 2015) (Paper 11) (claims were "directed to technology that restricts the use of software" where the software had "no particular relationship to a financial product or service"); *Salesforce.com, Inc. v. Applications in Internet Time LLC*, Case CBM2014-00162, slip op. at 9–10 (PTAB Feb. 2, 2015) (Paper 11) (patent specification referred to "banking, financial and securities activities" as "part of a long list of regulated industries . . . that use business software and could benefit from the invention"); *J.P. Morgan Chase & Co. v. Intellectual Ventures II LLC*, Case CBM2014-00160, slip op. at 6–12 (PTAB Jan. 29, 2015) (Paper 11) (claims pertaining to secure electronic communications had "general utility not limited or specific to any application"); *PNC Fin. Servs. Group, Inc. v. Intellectual Ventures I LLC*, Case CBM2014-00032, slip op. at 6–15 (PTAB May 22, 2014) (Paper 13) (claims described "software systems that have general utility not specific to any application"); Prelim. Resp. 18–20.

CBM2016-00099
Patent 9,300,792 B2

In its Reply,[6] Petitioner attempts to distinguish the instant facts from prior decisions involving generic, context-neutral claim terms, because the finance-related embodiments described in the Specification show that "the primary purpose of the '792 [patent] is financially related," and a claim need not be "exclusively for the administration of a financial service" to be eligible. Reply 1–3 (emphasis omitted). Again, our focus is on what the '792 patent claims, not solely the exemplary embodiments described in the Specification, some of which are related to finance and some of which are not. *See Secure Axcess*, 2017 WL 676601, at *6 ("the written description alone cannot substitute for what may be missing in the patent 'claims,' and therefore does not in isolation determine CBM status"). Petitioner's arguments are not persuasive given the generic claim language and broad disclosure in the Specification cited above. Further, we do not agree with Petitioner that the "primary purpose" of the '792 patent relates to finance. *See* Reply 3. The '792 patent describes a need in the art for a more secure way to "verify[ ] a registrant's identity" during online registration and notify the registrant of designated events because individuals "often register with untraceable or false e-mail addresses and phone numbers," which "can compromise the intended purpose of the registration, create a breach of security and constitute fraud on the web-site owners." Ex. 1001, col. 1, ll. 29–30, col. 1, l. 52–col. 2, l. 25, col. 5, ll. 1–7. As explained in the

---

[6] Given our disposition explained herein, we need not decide whether the arguments made in Petitioner's Reply were proper. *See* Sur-Reply 1; Paper 8, 2 (authorizing a reply to address "(1) the impact of *Unwired Planet*, . . . and (2) whether certain claims of the challenged patent that were statutorily disclaimed by Patent Owner should be considered in determining whether the challenged patent is eligible for covered business method patent review").

CBM2016-00099
Patent 9,300,792 B2

'792 patent, that need existed in contexts beyond those that are financial. *Id.* at col. 2, ll. 12–16, col. 11, ll. 10–42.

Finally, Petitioner argues that *Unwired Planet* requires the Board to "strike the proper balance between (1) an invention of general usage that could also be used in the administration of a financial service and (2) an invention that is used in administration of a financial service but that could also be used for non-financial purposes." Reply 1. Petitioner, however, does not quote anything in *Unwired Planet* for this proposition, which appears to contradict the Federal Circuit's direction that covered business method patents "are limited to those with claims that are directed to methods and apparatuses of *particular types and with particular uses* 'in the practice, administration, or management of a financial product or service,'" and "[i]t is not enough that a sale . . . *may* occur, or even that the specification speculates such a potential sale *might* occur." *See Unwired Planet*, 841 F.3d at 1382 (emphasis added).

For the foregoing reasons, based on the record presented and particular facts of this proceeding, Petitioner has not established that the '792 patent claims a method or apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service. Therefore, the '792 patent does not qualify as a "covered business method patent" under § 18(d)(1) of the AIA, and we do not institute a covered business method patent review on any of the asserted grounds as to any of the challenged claims.

CBM2016-00099
Patent 9,300,792 B2

## III. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that the Petition is denied as to all challenged claims of the '792 patent.

CBM2016-00099
Patent 9,300,792 B2

PETITIONER:

Wayne O. Stacy
Eliot D. Williams
Sarah J. Guske
BAKER BOTTS L.L.P.
wayne.stacy@bakerbotts.com
eliot.williams@bakerbotts.com


PATENT OWNER:

Jesse J. Camacho
Amy M. Foust
Elena S. K. McFarland
Mary J. Peal
SHOOK, HARDY & BACON L.L.P.
jcamacho@shb.com
afoust@shb.com
emcfarland@shb.com
mpeal@shb.com