**BAKER BOTTS L.L.P.**
Wayne O. Stacy (*pro hac vice*)
wayne.stacy@bakerbotts.com
2001 Ross Avenue
Dallas, TX 75201
Telephone: 214.953.6678
Facsimile: 214.661.4678

Sarah J. Guske (SBN 232467)
sarah.guske@bakerbotts.com
J.B. Schiller (SBN 298747)
jb.schiller@bakerbotts.com
101 California St., Ste. 3600
San Francisco, CA 94111
Telephone: 415.291.6200
Facsimile: 415.291.6300

Attorneys for Defendant
TWILIO INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELESIGN CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>TWILIO INC.,<br><br>Defendant. | Case No. 2:16-CV-02106-PSG-SS<br><br>**TWILIO INC.'S NOTICE OF MOTION AND MOTION TO CONSOLIDATE AND STAY RELATED CASES ; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Honorable Judge Philip S. Gutierrez<br>Hearing Date: May 15, 2017<br>Hearing Time: 1:30 pm<br>Courtroom: 6A |

TWILIO'S NOTICE OF MOT. & MOT. TO CONSOLIDATE & STAY RELATED CASES; MEM. P. & A.

CASE NO. 2:16-CV-02106-PSG-SS

# **TABLE OF CONTENTS**

I. ....... INTRODUCTION ................................................................... 1

   a. .... *TeleSign I* and *TeleSign II* are closely related. .................... 1

   b. .... The Patent Office instituted an IPR of the '792 patent .......... 4

   c. .... The Patent Office's work on the '792 patent will be highly informative for the '038 and '920 patents. .............................. 4

   d. .... *TeleSign I* is stayed until late June so that the Patent Office can render its final written decision. ................................. 5

II. ..... LEGAL STANDARD ................................................................ 5

   a. .... Motion to Consolidate ...................................................... 5

   b. .... Motion to Stay ................................................................. 6

III. .... ARGUMENT – CONSOLIDATION ......................................... 7

   a. .... Neither party disputes the cases should be consolidated ........ 7

   b. .... Consolidating the cases now is the most efficient way to manage the two cases. .................................................................. 8

   c. .... Consolidating will eliminate the risk of inconsistent rulings. ....... 8

IV. .... ARGUMENT – STAY .............................................................. 8

   a. .... The stage of the litigation is early and favors a stay. .............. 9

   b. .... Granting a stay will greatly simplify the issues for the '792 case. ....... 10

      1. ... The pending IPR will impact all claims in the '792 patent ........... 10

      2. ... TeleSign's proposed, accelerated trial schedule makes no sense in light of the Patent Office's IPR schedule ................................ 10

   c. .... Staying both cases, or the consolidated case, will greatly simplify the issues. ................................................................ 13

   d. .... Granting a stay would not unduly prejudice TeleSign. ........... 14

V. ..... CONCLUSION ....................................................................... 16

1

2

# **TABLE OF AUTHORITIES**

3

4

**CASES**                                                              **PAGES(S)**

5

*ACQIS, LLC v. EMC Corp.*,

6

   109 F. Supp. 3d 352 (D. Mass. 2015)...............................................................14

7

*Apple Inc. v. Motorola, Inc.*,

8

   757 F.3d 1286 (Fed. Cir. 2014) ....................................................................11

9

*Aten Int'l Co., Ltd v. Emine Tech. Co.*,

10

   No. SACV09-0843AGMLGX, 2010 WL 1462110

11

   (C.D. Cal. Apr. 12, 2010) .................................................................................7

12

*Chrimar Sys. Inc v. Ruckus Wireless, Inc.*,

   No. 16-CV-00186-SI, 2016 WL 5403595

13

   (N.D. Cal. Sept. 26, 2016) ..............................................................................14

14

*Cypress Semiconductor Corp. v. GSI Tech., Inc.*,

15

   No. 13-cv-2013, 2014 WL 5021100 (N.D. Cal. Oct. 7, 2014) ...........................9

16

*Ethicon, Inc. v. Quigg*,

17

   849 F.2d 1422 (Fed. Cir. 1988) .........................................................................6

18

*ePlus, Inc. v. Lawson Software, Inc.*,

   789 F.3d 1349 (Fed. Cir. 2015) .......................................................................10

19

20

*Evolutionary Intelligence, LLC v. Apple, Inc.*,

   No. C 13-04201 WHA, 2014 WL 93954, (N.D. Cal. Jan. 9, 2014).................10

21

22

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*,

   No. C-13-4513, 2014 WL 4802426 (N.D. Cal. Sept. 26, 2014) ........................9

23

*Fresenius USA, Inc. v. Baxter Int'l., Inc.*,

24

   721 F.3d 1330 (Fed. Cir. 2013) .......................................................................10

25

*Genthern Can., Ltd. v. IGB Auto., Ltd.*,

26

   No. 13-11536, 2015 WL 804657 (E.D. Mich. Feb. 26, 2015)...........................9

27

*Georgia-Pacific Corp.v. U.S. Plywood Corp.*,

28

   318 F.Supp. 1116 (S.D.N.Y. 1970) .................................................................11

*Georgia-Pacific Corp.v. U.S. Plywood-Champion Papers Inc.*,
    446 F.2d 295 (2d Cir. 1971) ............................................................ 11

*In re Adams Apple, Inc.*,
    829 F.2d 1484 (9th Cir. 1987) ........................................................... 6

*In re CTP Innovations, LLC, Pat. Litig.*,
    No. MDL 14-MD-2581, 2015 WL 317149 (D. Md. Jan. 23, 2015) .................. 9

*In re Facebook Privacy Litig.*,
    Nos. C 10-02389-JW & C 10-05301-BZ, 2010 WL 5387616,
    (N.D. Cal. Dec. 21, 2010) ................................................................. 6

*Intellectual Ventures II LLC v. Suntrust Banks, Inc.*,
    No. 1:13-cv-2454, 2014 WL 5019911 (N.D. Ga. Oct. 7, 2014) ..................... 9

*Limestone v. Micron Tech.*,
    No. SACV150278DOCRNBX, 2016 WL 3598109
    (C.D. Cal. Jan. 12, 2016) ................................................................. 14

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ........................................................ 11

*Methode Elecs., Inc. v. Infineon Techs. Corp.*,
    No. 99-cv-21142, 2000 WL 35357130 (N.D. Cal. Aug. 7, 2000) .................. 14

*Paxonet Commc'ns, Inc. v. Transwitch Corp.*,
    303 F. Supp. 2d 1027 (N.D. Cal. 2003) ................................................ 6

*PersonalWeb Techs., LLC v. Apple Inc.*,
    69 F. Supp. 3d 1022 (N.D. Cal. 2014) ................................................ 14

*Pi-Net Int'l, Inc. v. Hertz Corp.*,
    No. CV 12-10012 PSG, 2013 WL 7158011,
    (C.D. Cal. June 5, 2013) ................................................................... 7

*Pragmatus AV, LLC v. Facebook, Inc.*,
    No. 11-cv-00494-EJD, 2011 WL 4635512
    (N.D. Cal. Oct. 5, 2011) ................................................................. 13

*Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*,
    No. 13-cv-02980-JSW, 2014 WL 1647399
    (N.D. Cal. March 14, 2014) ............................................................. 13

*SanDisk Corp. v. Phison Elecs. Corp.*,
  538 F. Supp. 2d 1060 (W.D. Wis. 2008)........................................................ 6

*Sec. People, Inc. v. Ojmar US, LLC*,
  No. 14-cv-04968-HSG, 2015 WL 3453780
  (N.D. Cal. May 29, 2015)............................................................................. 15

*Serv. Solutions U.S., L.L.C. v. Autel.US Inc.*,
  No. 13-10534, 2015 WL 401009 (E.D. Mich. Jan. 28, 2015).......................... 9

*SSL Servs., LLC v. Cisco Sys., Inc*,
  No. 2:15-CV-433-JRG-RSP, 2016 WL 3523871
  (E.D. Tex. June 28, 2016)............................................................................... 9

*Surfcast, Inc. v. Microsoft Corp.*,
  No. 2:12-cv-333, 2014 WL 6388489 (D. Me. Nov. 14, 2014) .......................... 9

*Ultratec, Inc. v. Sorenson Commc'ns, Inc.*,
  No. 13-cv-346-bbc, 2015 WL 2248437 (W.D. Wis. May 13, 2015) ............... 10

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
  943 F. Supp. 2d 1028 (C.D. Cal. 2013).......................................................... 6

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
  No. 12-cv-5501, 2015 WL 435457 (N.D. Cal. Feb. 2, 2015) ........................... 9

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014) ..................................................................... 8

*Wireless Recognition Techs. v. A9.com Inc.*,
  Nos. 5:12–CV–01217–EJD, et al., 2012 WL 4005459
  (N.D. Cal. Sept. 11, 2012) ........................................................................... 13

*Wonderland Nursery Goods Co. v. Baby Trend, Inc.*,
  No. EDCV 14-01153-VAP (SPx), 2015 WL 1809309
  (C.D. Cal. Apr. 20, 2015) .................................................................... 6, 7, 15

**RULES**

Fed. R. Civ. Proc. 42(a) .................................................................................. 5

**OTHER**

*CANVS Corp. v. United States*,
  Order, No. 10-540 C (Fed. Cl. Dec. 19, 2014), ECF 114 ............................... 9

TWILIO'S NOTICE OF MOT. & MOT. TO
CONSOLIDATE & STAY RELATED CASES;
MEM. P. & A.

iv

CASE NO. 2:16-CV-02106-PSG-SS

Capella Photonics, Inc. v. Cisco Sys., Inc.,
    Order Granting [Defendant's] Mot. to Stay Consolidated Cases
    Pending Inter Partes Review of Patents-in-Suit,
    No. C-14-3348 EMC (N.D. Cal. Mar. 6, 2015), ECF 172 ................................. 9

Cutsforth, Inc. v. Westinghouse Air Brake Techs. Corp.,
    Order, Civil No. 12-1200 (SRN/JSM) (D. Minn. Jan. 15, 2015),
    ECF 98 ........................................................................................................ 9

Kaneka Corp. v. SKC Kolon PI, Inc.,
    Order, No. CV 11-3397 JGB (RZx) (C.D. Cal. Dec. 5, 2014),
    ECF 486 ...................................................................................................... 9

Locata LBS LLC v. Paypal Inc.,
    Order Granting Stay Pending Inter Partes Review,
    No. C 14-01864 JSW (N.D. Cal. Dec. 4, 2014), ECF 83 ................................... 9

Norman IP Holdings, LLC v. Chrysler Group LLC,
    Order, No. 6:13-cv-278-JDL (E.D. Tex. Oct. 8, 2014), ECF 281 ..................... 9

Safe Storage LLC v. Dell Inc.,
    Order, Civil Action No. 12-1624-GMS (D. Del. Jan. 22, 2015),
    ECF 36 ........................................................................................................ 9

**TO ALL PARTIES HEREIN AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 15, 2017, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Philip S. Gutierrez in Courtroom 6A of the United States District Court for the Central District of California, Western Division, located at 350 West 1st Street, Los Angeles, California, 90012-4565, Twilio moves to consolidate and stay related cases. This motion is made following the conference of counsel pursuant to L.R. 7-3 that took place on March 1, 2016.

## MOTION

Twilio moves pursuant to FRCP 42(a) to consolidate related cases and to stay proceedings pending the conclusion of the now instituted U.S. Patent No. 9,300,792 *inter partes* review. This motion is based on this motion, the pleadings, the record and other papers on file in this action, and upon such further evidence or argument as may be presented to the Court.

1    Twilio moves this Court to stay *TeleSign Corp. v. Twilio*, Case No. 2:16-
2    CV-02106-PSG-SS ("*TeleSign II*") pending the resolution of an instituted IPR on
3    the sole asserted patent.  And if the Court consolidates *TeleSign II* and *TeleSign*
4    *Corp. v. Twilio*, Case No. 2:15-cv-03240-PSG-SS ("*TeleSign I*"), Twilio moves
5    the Court to stay both cases pending the resolution of the two instituted IPRs.
6    *TeleSign I* is already stayed until at least late June 2016—pending the completion
7    of the '034 IPR. *TeleSign I*, Dkt. 124 (Order Granting Stay); *see also TeleSign I*,
8    Dkt. 141 (Order Denying TeleSign's Application to Reopen Case).  Staying both
9    cases, or the consolidated case, an additional 8 months will enable the Court to
10   take full advantage of all IPR results and schedule a single trial on the remaining
11   claims, if any.  Any other schedule risks substantial wasted resources and likely a
12   wasted jury trial.

13   **I.    INTRODUCTION**

14   In March 2016, TeleSign filed a surprise second suit against Twilio,
15   *TeleSign II*.  TeleSign based this second suit on a patent, the '792 patent, from the
16   same family of patents that TeleSign asserted in *TeleSign I*.  Even though *TeleSign*
17   *I* was pending, TeleSign filed a separate, second suit rather than amend its original
18   complaint to add the new patent.  TeleSign attempted to manipulate the two case
19   schedules so that TeleSign could go forward with *TeleSign II*, while the original
20   suit was stayed.

21   **a.    *TeleSign I* and *TeleSign II* are closely related.**

22   TeleSign has acknowledged in writing that these two suits are the type of
23   patent suits that should be consolidated.  (*See TeleSign I*, Dkt. 150 at 4 ("*TeleSign*
24   *I* and *TeleSign II* can be consolidated"); *TeleSign II*, Dkt. 55 at 2 ("TeleSign is not
25   opposed to a consolidation").  TeleSign's analysis of relatedness is correct.  These
26   two cases should be consolidated.  The list below includes a few examples of how
27   related the cases are:

28   • The '792 patent shares the same inventors as the asserted patents in

*TeleSign I.*

- The '792 patent shares the same prosecutor as the asserted patents in *TeleSign I*.

- The '792 patent is in the same patent family as each of the asserted patents in *TeleSign I*—all of the asserted patents in both suits claim priority to U.S. Patent Application No. 11/034,421.

- The '038 and '920 specifications (from *TeleSign I*) and the '792 specifications (from *TeleSign II*) are identical.

- In *TeleSign II*, TeleSign alleges Twilio's two-factor authentication services infringe the '792 patent.  TeleSign accuses the same technology in *TeleSign I*.  (*Compare TeleSign I*, Dkt. 13 at ¶¶ 20, 43, and 66 *with TeleSign II*, Dkt. 40 at ¶ 68.)

- TeleSign's other asserted patent, the '034 patent, has a specification that shares significant common disclosure with the '792, '038, and '920 specifications.

- Of TeleSign's 45 identified witnesses in *TeleSign II*, 44 are the same witnesses TeleSign identified in the Rule 26 disclosures in *TeleSign I*.

- The claims of the '038, '920 and '792 patents are similar and share common elements and terms.  The chart below illustrates the claim overlap of claim 1 in the '038 patent from *TeleSign I* and claim 1 of the '792 patent in *TeleSign II*.

| OVERLAP BETWEEN CLAIMS IN TELESIGN I AND II | |
|---|---|
| ***TeleSign I***<br>**'038 (Claim 1[a])** | ***TeleSign II***<br>**'792 (Claim 1[a])** |
| **receiving**, from a user, information responsive to at least part of a form | **receiving**, from a user, information via a computing |

| that is presented to the user on a website, the **received information** including an electronic contact address associated with the user; | interface presented to the user as a result of an attempt by the user to access a service, the **received information** including a telephone number associated with the user; |
|---|---|
| **'038 (Claim 1[b])** | **'792 (Claim 1[b])** |
| **verifying** the received electronic contact address, wherein verifying the received electronic contact address includes: | **verifying** the telephone number by: |
| **establishing** a first telephonic **connection** with the user using the received electronic contact address; | **establishing** a short message service (SMS) **connection** with the user using the received telephone number; |
| **communicating** a first communicated **verification code** to the user through the first telephonic connection; | **communicating** a **verification code** to the user through the SMS connection; |
| **receiving** a first submitted **verification code** after it is **entered by the user** via the website; and | **receiving**, via the computing interface, a submitted **verification code** that is **entered by the user**; and |

TWILIO'S NOTICE OF MOT. & MOT. TO CONSOLIDATE & STAY RELATED CASES; MEM. P. & A.

3

CASE NO.  2:16-CV-02106-PSG-SS

| | |
|---|---|
| **verifying** the received electronic contact address **if the first submitted verification code is the same as the first communicated verification code**; | **verifying** the telephone number **if the submitted verification code is the same as the communicated verification code**; |

### b.    The Patent Office instituted an IPR of the '792 patent

The Patent Office has instituted *inter partes* review for the sole patent in *TeleSign II*, the '792 patent.  (*TeleSign II,* Dkt. 58-1).  The Patent Office has found that Twilio has a reasonable likelihood of demonstrating invalidity of each independent claim and the vast majority of dependent claims.  The Patent Office will issue its final decision by early March 2018.

The Patent Office acknowledged that TeleSign already statutorily disclaimed 6 of the 18 claims in the '792 patent.  TeleSign disclaimed a third of the '792 claims claim to avoid an additional Patent Office proceeding, a covered business method review.  Accordingly, even at the beginning stages of the Patent Office's work, 6 claims (33% of the claims) have already been permanently removed from the '792 patent and any district court litigation.

| **Current Status of the '792 Patent** ||
|---|---|
| **Statutorily Disclaimed** | **IPR Instituted** |
| 3, 5, 7, 12, 14, 16 | 1, 2, 4, 6, 8, 11, 13, 15, 17 |

### c.    The Patent Office's work on the '792 patent will be highly informative for the '038 and '920 patents.

The Patent Office did not institute IPRs on the '038 and '920 patents asserted in *TeleSign I*.  The Patent Office's decision turned on the construction of "notification event," a term found in the '792, '038, and '920 patents.  *See Twilio*

*Inc. v. TeleSign Corp.,* IPR2016-00451, Paper 17 (PTAB July 8, 2016); *Twilio Inc. v. TeleSign Corp.*, IPR2016-00450, Paper 17 (PTAB July 8, 2016).

Twilio specifically addressed the Patent Office's claim construction issues in the '792 IPR Petition.  And the Patent Office agreed that Twilio's new art would likely invalidate the '792 patent under the Patent Office's construction of "notification event." (*TeleSign II,* Dkt. 58-1 at 22).

The "notification event" term is critical to the '038, '920, and '792 patents.  The Patent Office's claim construction and invalidity finding related to the '792 patent's use of "notification event" will be important and informative to the Court on the '038 and '920 patents because the claims in the three patents are very similar.  (*See supra* Section I.a.).  Stated differently, the Patent Office will address issues in the '792 IPR that are highly relevant to the '038 and '920 patents in *TeleSign I.*

**d.    *TeleSign I* is stayed until late June so that the Patent Office can render its final written decision.**

TeleSign asserted the '034 patent in *TeleSign I. TeleSign I* is stayed pending resolution of the '034 IPR.  The final written decision will be available in June. As this Court has previously found, the '034 IPR decision will "narrow the issues, provide guidance to the Court, and ultimately simplify the litigation in this case." *TeleSign I*, Dkt. 124 (Order Granting Stay); *see also TeleSign I*, Dkt. 141 (Order Denying TeleSign's Application to Reopen Case).

**II.    LEGAL STANDARD**

**a.    Motion to Consolidate**

Under FRCP 42(a), a court may consolidate two actions involving common questions of law or fact. Rule 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the action; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a).

The Court has broad authority to consolidate actions that involve common questions of fact or law if, in the Court's discretion, consolidation would facilitate the administration of justice. *In re Adams Apple, Inc.*, 829 F.2d 1484, 1488 (9th Cir. 1987). Courts frequently consolidate cases when they involve the same or related patents because they necessarily involve substantial legal and factual overlap. *See In re Facebook Privacy Litig.*, Nos. C 10-02389-JW & C 10-05301-BZ, 2010 WL 5387616, at *1 (N.D. Cal. Dec. 21, 2010); *see also SanDisk Corp. v. Phison Elecs. Corp.*, 538 F. Supp. 2d 1060, 1064, 1068 (W.D. Wis. 2008) (consolidating cases "involv[ing] allegations of infringement against the same products..." and "many of the same defendants" because "related issues will arise about the workings of defendants' products in both cases, and defenses of invalidity... are likely to rest on issues common to both cases"); *Paxonet Commc'ns, Inc. v. Transwitch Corp.*, 303 F. Supp. 2d 1027, 1029 (N.D. Cal. 2003) (consolidating cases where the two actions involved the same parties, there was an overlap of patents between the two actions, and technologies of the patents appeared related).

## b.   Motion to Stay

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (citation omitted). Courts generally consider three factors in deciding whether to grant a stay during IPR proceedings:

1. whether discovery is complete and whether a trial date has been set;

2. whether a stay will simplify the issues in question and trial of the case; and

3. whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.

1  *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. EDCV 14-01153-VAP

2  (SPx), 2015 WL 1809309, at *2 (C.D. Cal. Apr. 20, 2015) (quoting *Universal*

3  *Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028 (C.D. Cal.

4  2013) at 1030–31). Courts should also consider the "totality of the circumstances"

5  in evaluating whether a stay is proper. *Id.*

6        There is a liberal policy in favor of granting motions to stay proceedings

7  pending the outcome of Patent Office proceedings, especially in cases that are still

8  in the initial stages of litigation and where there has been little or no discovery.

9  *Pi-Net Int'l, Inc. v. Hertz Corp.*, No. CV 12-10012 PSG JEMX, 2013 WL

10  7158011, at *2 (C.D. Cal. June 5, 2013) (quoting *Aten Int'l Co., Ltd v. Emine*

11  *Tech. Co.*, No. SACV09-0843AGMLGX, 2010 WL 1462110, at *6 (C.D. Cal.

12  Apr. 12, 2010)).

13  **III.   ARGUMENT – CONSOLIDATION**

14      **a.   Neither party disputes the cases should be consolidated.**

15        Both Twilio and TeleSign agree these two suits are the type that should be

16  consolidated.   (*TeleSign II*, Dkt. 55 at 2 ("TeleSign is not opposed to a

17  consolidation").) TeleSign, however, wants to link the consolidation to this Court

18  lifting the stay and issuing an accelerated trial schedule that puts the jury trial on

19  the same schedule as the Patent Office proceeding. (*Id.* at Dkt. 55-1 (Proposed

20  Schedule).)   According to TeleSign, if the stay is not lifted, then the two cases

21  should proceed separately and the Court should schedule the two cases separately.

22  (*See* Ex. A.)

23        These two suits, however, should be consolidated now.   *TeleSign I* and

24  *TeleSign II* involve overlapping questions of law and fact.   No justification exists

25  in this case for litigating related patents and overlapping facts twice.   The burden

26  on the Court, the jury system, and the parties would be extreme.   And little would

27  be gained by two trials other than TeleSign getting two bites at the same apple on

28  identical patents and issues.

**b.     Consolidating the cases now is the most efficient way to manage the two cases.**

Consolidating the two cases will conserve judicial and party resources by avoiding double the discovery, double the court hearings, and double the trials. Notably, problems are already arising in this action regarding discovery. TeleSign has recently served its first sets of discovery requests in *TeleSign II*.   TeleSign is recrafting its discovery approach from *TeleSign I* by modifying its original discovery requests.  TeleSign is using the two proceedings to exceed its discovery limits and gain a strategic advantage over Twilio. And by delaying consolidation, TeleSign's tactic could be successful.  Thus, if this suit is not quickly consolidated with *TeleSign I*, TeleSign will be receiving <u>double</u> the amount of discovery on the same patents and accused products.

**c.     Consolidating will eliminate the risk of inconsistent rulings.**

Allowing the two suits to proceed independently creates a risk of inconsistent rulings, such as on claim construction, evidence admissibility, and dispositive motions. For example, two juries could rule differently on factual issues relevant to both actions, such as level of ordinary skill in the art, priority dates, scope of the prior art, and indefiniteness may likewise be decided differently. At a minimum, the Court will need to resolve claim and issue preclusion issues that will arise from two substantially similar trials. Such potential complications can be eliminated by consolidating both actions.

## IV.   ARGUMENT – STAY

The Patent Office has instituted review of the '792 patent. The PTAB's decision, expected just 8 months after the current stay in *TeleSign I* expires, has the potential to dramatically simplify the issues in both *TeleSign II* and *TeleSign I*. Moving forward with either of these actions—or a consolidated action—will undoubtedly result in substantial inefficiencies for the Court and the parties.  Since the Federal Circuit's decision in *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759

F.3d 1307 (Fed. Cir. 2014), courts have strongly favored stays once the PTAB has instituted *inter partes* review.[1]  This case should be no exception.  The factors strongly favor a stay.

### a.    The stage of the litigation is early and favors a stay.

There is currently no scheduling order for *Telesign II*—the party's initial case management conference is set for March 20.  No party has produced any documents beyond the Rule 26 disclosures. No major litigation events have occurred. And the parties are not close to being prepared for trial.  Accordingly, the "stage of the proceedings" factor weighs strongly in favor of a stay.

The "stage of the proceedings" factor weighs just as strongly in favor of a stay if *TeleSign I* and *TeleSign II* are consolidated.  *TeleSign I* is currently stayed

---

[1] *See* Order Granting [Defendant's] Mot. to Stay Consolidated Cases Pending *Inter Partes* Review of Patents-in-Suit, Capella Photonics, Inc. v. Cisco Sys., Inc., No. C-14-3348 EMC (N.D. Cal. Mar. 6, 2015), ECF 172; *Gentherm Can., Ltd. v. IGB Auto., Ltd.*, No. 13-11536, 2015 WL 804657 (E.D. Mich. Feb. 26, 2015); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 12-cv-5501, 2015 WL 435457 (N.D. Cal. Feb. 2, 2015); *Serv. Solutions U.S., L.L.C. v. Autel.US Inc.*, No. 13-10534, 2015 WL 401009 (E.D. Mich. Jan. 28, 2015); *In re CTP Innovations, LLC, Pat. Litig.*, No. MDL 14-MD-2581, 2015 WL 317149 (D. Md. Jan. 23, 2015); Order, Safe Storage LLC v. Dell Inc., No. 12-1624-GMS (D. Del. Jan 22, 2015), ECF No. 36; Order, Cutsforth, Inc. v. Westinghouse Air Brake Techs. Corp., Civil No. 12-1200 (SRN/JSM) (D. Minn. Jan. 15, 2015), ECF 98; Order, CANVS Corp. v. United States, No. 10-540 C (Fed. Cl. Dec. 19, 2014), ECF 114; Order, Kaneka Corp. v. SKC Kolon PI, Inc., No. CV 11-3397 JGB (RZx) (C.D. Cal. Dec. 5, 2014), ECF 486; Order Granting Stay Pending *Inter Partes* Review, Locata LBS LLC v. Paypal Inc., No. C 14-01864 JSW (N.D. Cal. Dec. 4, 2014), ECF 83; *Surfcast, Inc. v. Microsoft Corp.*, No. 2:12-cv-333, 2014 WL 6388489 (D. Me. Nov. 14, 2014); Order, Norman IP Holdings, LLC v. Chrysler Group LLC, No. 6:13-cv-278-JDL (E.D. Tex. Oct. 8, 2014), ECF 281; *Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-cv-2013, 2014 WL 5021100 (N.D. Cal. Oct. 7, 2014); *Intellectual Ventures II LLC v. Suntrust Banks, Inc.*, No. 1:13-cv-2454, 2014 WL 5019911 (N.D. Ga. Oct. 7, 2014); *Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. C-13-4513, 2014 WL 4802426 (N.D. Cal. Sept. 26, 2014); *SSL Servs., LLC v. Cisco Sys., Inc*, No. 2:15-CV-433-JRG-RSP, 2016 WL 3523871, at *3 (E.D. Tex. June 28, 2016).

through at least the end of June and maybe longer depending on TeleSign's appeals to the Federal Circuit. *TeleSign I* is also in its early stages. Few documents have been produced.  No major litigation events have occurred.  And the parties are not close to being prepared for trial.

### b.    Granting a stay will greatly simplify the issues for the '792 case.

#### 1.  The pending IPR will impact all claims in the '792 patent

The '792 IPR will significantly simplify the issues in *TeleSign II*. The Patent Office is reviewing the validity of every independent claim and all but two of the dependent claims.  Accordingly, every claim will be impacted by the '792 IPR.

#### 2.  TeleSign's proposed, accelerated trial schedule makes no sense in light of the Patent Office's IPR schedule

TeleSign pushes this Court to move forward on an accelerated schedule that puts trial for the '792 patent in 11 months.  (*TeleSign II*, Dkt. 55.)   Under TeleSign's schedule, the jury could be deliberating at the same time that the Patent Office issues its Final Written Decision on the '792 patent's validity.

First, consider the briefing and appeal chaos that will accompany any invalidity finding by the Patent Office.  For example, if the jury finds some claims of the '792 patent valid, but the Patent Office finds those same claims invalid, the ultimate outcome would depend upon which decision could reach finality first. *See Evolutionary Intelligence, LLC v. Apple, Inc.*, No. C 13-04201 WHA, 2014 WL 93954, *3 (N.D. Cal. Jan. 9, 2014); *see, e.g., Fresenius USA, Inc. v. Baxter Int'l., Inc.*, 721 F.3d 1330 (Fed. Cir. 2013); *see, e.g., ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349 (Fed. Cir. 2015).  The appeal schedule, delays in briefing the appeal, and this Court's handling of post-trial motions could determine whether the jury decision or the Patent Office decision is binding.  *Id.*; *see also Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-346-bbc, 2015 WL 2248437, *4 (W.D. Wis. May 13, 2015).  Justice should not turn on a race to the appellate court.

Second, TeleSign's accelerated schedule guarantees that this Court will handle dispositive motions, pretrial motions, and post-trial motions even if the Patent Office invalidates every remaining claim of the '792 patent. The Court's work will be a complete waste when the Patent Office's decision becomes final.

Third, TeleSign's accelerated schedule guarantees that the parties will prepare damages and infringement-related expert reports that will likely be meaningless by the time of trial. If the Patent Office invalidates all of the '792 claims, then the entire expert process will be wasted. Even if the Patent Office invalidates some, but not all, of the '792 claims, the damages reports will need to be completely reworked. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1132-33 (S.D.N.Y. 1970) ), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971) ("Consequently, it is necessary to determine where the invention extends to and affects the whole article, giving it its essential marketability, or whether it is only for an improvement."); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336-37 (Fed. Cir. 2009); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315-16 (Fed. Cir. 2014) (overruled on other grounds). The *Georgia Pacific* analysis requires a detailed look at the individual claims being tried. If, for example, the Patent Office invalidates the '792 independent claims, the damages analysis will change radically. *See Georgia Pacific*, 318 F.Supp. at 1132-33; *Lucent*, 580 F.3d at 1136-37; *Apple*, 757 F.3d at 1315-16. Twilio would be free to practice the '792 patent's independent claims and would only be responsible for the incremental value of any dependent claims the jury found infringed. *See Georgia Pacific*, 318 F.Supp. at 1132-33; *Lucent*, 580 F.3d at 1136-37; *Apple*, 757 F.3d at 1315-16.

Fourth, TeleSign's schedule virtually guarantees that jury's time will be wasted. If the Patent Office invalidates even one claim of the '792 patent, the results of the entire trial will be in jeopardy. For example, if the Patent Office invalidates the independent claims, a new trial on damages would be necessary.

And if the Patent Office invalidates all of the tried claims, then the jury's efforts would be completely wasted.

Fifth, TeleSign's accelerated schedule makes for difficult evidentiary issues at trial. TeleSign, for example, is asserting that Twilio willfully infringes. The pending IPR proceedings will be a major piece of evidence showing that Twilio's infringement, assuming that the jury finds any, is not willful. The Court will be faced with the inevitable motions in limine to exclude or include this very relevant evidence.

Sixth, with the overlapping Patent Office and district court schedule, Twilio will be required to fully litigate all invalidity issues in the district court. Twilio will also be required to try the validity issues to the jury. Estoppel does not exist until the Patent Office issues its Final Written Decision. So under TeleSign's accelerated schedule, estoppel could become an issue for the first time in the middle of the jury trial.

And finally, TeleSign has already demonstrated that its preferred IPR defense strategy is to cancel the currently-issued claims and substitute amended claims. (*See* Exhibit B (TeleSign's Motion to Amend).) The Court and the parties will first see any amended claim language in the Patent Office's final written decision. If TeleSign follows its past practices in the '792 IPR, the claims that the Court reviews for dispositive motions and the claims that the jury analyzes for infringement and invalidity, will be canceled during or shortly after the trial. If TeleSign is successful with its amendments, new claims with new limitations will first appear at the same time as the jury trial. The Court and the jury, however, will be rendering decisions on the old, canceled claims. A stay would prevent this type of waste by allowing the parties to begin discovery and expert reports only after the exact claim language is known.

### c.   Staying both cases, or the consolidated case, will greatly simplify the issues.

Given the substantial overlap between (1) the '038, '920, and '792 specification, (2) the asserted claims, (3) the prior-art references, (4) the fact witnesses, and (5) the accused products, a final decision from the Patent Office on the '792 IPR will significantly simplify this case for all of the asserted claims, not just the '792 patent claims.

Several courts have recognized the advantages of staying a case like this one until all IPRs related to an asserted patent family are completed.  Exemplary cases include:

- *Wireless Recognition Techs. v. A9.com Inc.*, Nos. 5:12–CV–01217–EJD, et al., 2012 WL 4005459, at *2 (N.D. Cal. Sept. 11, 2012) (where Patent Office has already canceled certain claims in one patent, and those claims overlap with asserted claims in another patent, the final exhaustion of *inter partes* procedures should simplify issues for the court);
- *Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-cv-00494-EJD, 2011 WL 4635512, at *3 (N.D. Cal. Oct. 5, 2011) (where Patent Office rejected asserted claims during *inter partes* examination, that fact favored stay because completion of Patent Office proceedings should simplify the issues and reduce burdens of the Court and parties).
- *See Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, No. 13-cv-02980-JSW, 2014 WL 1647399, at *3 (N.D. Cal. March 14, 2014) (where some claims in the litigation are not under *inter partes* review, a stay is proper as the IPR may raise

collateral estoppel or clarify claim construction positions across all claims, or encourage settlement);

- *Methode Elecs., Inc. v. Infineon Techs. Corp.*, No. 99-cv-21142, 2000 WL 35357130, at *3 (N.D. Cal. Aug. 7, 2000) (staying the litigation of both the reexamined and non-reexamined patents because "it appears that there are overlapping issues" in the infringement action the two patents).

- *Limestone v. Micron Tech.*, No. SACV150278DOCRNBX, 2016 WL 3598109, at *4 (C.D. Cal. Jan. 12, 2016) (granting stay even before institution);

- *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 358 (D. Mass. 2015) (granting stay where IPR proceeding did not involve all patents, but involved a related patent);

- *Chrimar Sys. Inc v. Ruckus Wireless, Inc.*, No. 16-CV-00186-SI, 2016 WL 5403595, at *4 (N.D. Cal. Sept. 26, 2016) (staying case where some but not all patents were undergoing IPR);

- *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1028 (N.D. Cal. 2014) (citing to judicial economy and staying case where only 2 of the asserted 7 patents were undoing IPR).

### d.    Granting a stay would not unduly prejudice TeleSign.

TeleSign will suffer no undue prejudice or clear disadvantage if this action is stayed.  Twilio is seeking an 8 month extension to the current stay.  TeleSign cannot show that an additional 8 month extension will outweigh the benefits and savings of the IPR process.

This Court has already decided the prejudice issue—twice. *TeleSign I*, Dkt. 124 (Order Granting Stay); *see also TeleSign I*, Dkt. 141 (Order Denying TeleSign's Application to Reopen Case). Specially, on deciding on the prejudice issue in *TeleSign I*, this Court stated "that it was troubled by Plaintiff's factual evidence, as it consists almost entirely of testimony from [Berkowitz, Plaintiff's vice president]." *TeleSign I*, Dkt. 124 at 7. Nothing has changed that makes an additional 8-month stay so prejudicial to justify racing to trial at the same time the Patent Office is evaluating validity.

Further, the fact that TeleSign and Twilio are generally in the same marketplace does not mean that a stay in inappropriate. Many courts have granted stays pending IPR where the parties are competitors. Instead of relying on general statements of competition, courts in this circuit have "required 'evidence to substantiate an argument that direct competition will result in prejudice to the non-moving party.'" *Sec. People, Inc. v. Ojmar US, LLC*, No. 14-cv-04968-HSG, 2015 WL 3453780, at *5 (N.D. Cal. May 29, 2015) (quotations omitted). No such evidence exists in the present case. Moreover, as this Court has repeatedly cited to, Twilio and TeleSign are not the sole competitors within their industry—there are "several others in the market offering similar services as Plaintiff and Defendant". *TeleSign I*, Dkt. 78 at 10 (Court Order). This fact and the Court's denial of TeleSign's preliminary injunction "undermines the weight that should be afforded" any purported undue harm resulting from the parties being competitors. *See Wonderland Nursery*, 2015 WL 1809309 at *4.

Additionally, a stay would enable TeleSign to more smoothly pursue its likely strategy of canceling existing claims in the '792 patent and adding new claims. The parties can conserve resources and avoid litigating old, canceled claims. And of course, if the Patent Office rejects both the old and the new claims, the parties would benefit by avoiding wasted litigation.

1    Accordingly, granting a stay would not prejudice or disadvantage TeleSign.
2    Not only would a brief stay conserve the parties' and the Court's resources, but
3    there would be a more complete record on whether this action should proceed.  If
4    this action is not stayed, however, Twilio will suffer prejudice and expense in
5    litigating unsupported claims and being forced to contend with the expansive
6    discovery contemplated by TeleSign in this case.  Indeed, if there is no stay, but
7    TeleSign's claims are then invalidated or cancelled during *inter partes* review, the
8    time and expense invested by this court and the parties will never be fully
9    recouped.

10   **V.    CONCLUSION**

11    Twilio requests that the Court immediately consolidate and stay *TeleSign I*
12   and *TeleSign II* until the completion of the '034 and '792 IPRs.  A stay of 8
13   months beyond the current stay in *TeleSign I* will take advantage of all pending
14   IPRs and eliminate wasted Court and parties effort. *TeleSign I* is currently stayed
15   until late June 2017.  The Patent Office will be concluded with all IPRs related to
16   TeleSign's suits eight months later, in March of 2018.  Staying the two TeleSign
17   cases, or the consolidated case, until March of 2018 enables the Court to have the
18   benefit of all Patent Office decisions, and potentially, the Federal Circuit's
19   decision on the '034 patent.  The Court could then schedule a single trial to
20   address any remaining claims.

21    This eight month stay and consolidation is the best way for the Court to
22   avoid multiple trials and secures the benefit of the Patent Office's work.  Without
23   this short stay, the Court will very likely be facing multiple trials, multiple sets of
24   summary judgment motions, multiple pre-trial conferences, and multiple sets of
25   post-trial briefing.

26

27

28

1    Dated: March 15, 2017                    Respectfully submitted,

2

3                                             BAKER BOTTS L.L.P.

4

5                                             /s/ Wayne Stacy_____
                                              Wayne Stacy

6                                             Attorney for Defendant
                                              TWILIO INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28