*REDACTED VERSION OF DOCUMENT FILED UNDER SEAL*

Gary Miller (*pro hac vice*)
(gmiller@shb.com)
Jesse Camacho (*pro hac vice*)
(jcamacho@shb.com)
Mary Jane Peal (*pro hac vice*)
(mpeal@shb.com)
Tony M. Diab (SBN 277343)
(tdiab@shb.com)
SHOOK, HARDY & BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California 92614
Telephone:  949.475.1500
Facsimile:   949.475.0016

Attorneys for Plaintiff
TELESIGN CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELESIGN CORPORATION, | Case No. 16-CV-02106-PSG-SS |
| Plaintiff, | **OPPOSITION TO TWILIO'S MOTION TO STAY CASE** |
| v. | |
| TWILIO, INC., | Date:  May 15, 2017 |
| Defendant. | Time:  1:30 PM |
| | Ctrm:  6A |
| | **Honorable Philip S. Gutierrez** |

# Table of Contents

I.    BACKGROUND ...................................................................................2

II.   LEGAL STANDARD FOR A MOTION TO STAY ...............................5

III.  ARGUMENT.......................................................................................7

      A.    The stage of the case weighs against granting a stay............................7

      B.    A stay will not simplify the issues enough to warrant a stay...............9

      C.    The harm to TeleSign from a continued stay justifies not
            imposing any future stays. .........................................................14

            1.    Twilio actively preys on TeleSign's customers.......................14

            2.    TeleSign is subject to not only the risk of harm but also
                  actual harm of a continued stay. .................................15

            3.    Summary of TeleSign's Harm ......................................19

            4.    A further stay will put TeleSign at a clear tactical
                  disadvantage.............................................................22

      D.    Twilio's cases are distinguishable...............................................23

IV.   CONCLUSION ................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADA Sols., Inc. v. Engineered Plastics, Inc.*,
  826 F. Supp. 2d 348 (D. Mass. 2011) ...........................................................24

*Adaptix, Inc. v. HTC Corp.*,
  Nos. 5:14-cv-02359, 5:14-cv-02360, 5:14-cv-02894, 5:14-cv-02895, 5:15-cv-
  00165, 5:15-cv-00166, 5:15-cv-00167, 5:15-cv-00168, 2015 U.S. Dist. LEXIS
  103503 (N.D. Cal. Aug. 5, 2015)...........................................................9, 17

*Allergan Inc. v. Cayman Chem. Co.*,
  No. 07–01316, 2009 WL 8591844 (C.D. Cal. Apr. 9, 2009) ...........................11

*Alltech, Inc. v. Cenzone Tech, Inc.*,
  No. 06-CV-0153, 2007 WL 935516 (S.D. Cal. Mar. 21, 2007) .......................13

*Asetek Holdings, Inc. v. Cooler Master Co.*,
  2014 U.S. Dist. LEXIS 47134 (N.D. Cal. Apr. 3, 2014) ................................26

*Athena Feminine Techs. Inc. v. Wilkes*,
  No. 10-04868, 2012 WL 1424988 (N.D. Cal. Apr. 24, 2012)..........................10

*Avago Techs. Fiber IP (Sing.) Pte Ltd. v. IPtronics Inc.*,
  2011 U.S. Dist. LEXIS 82665 (N.D. Cal. July 28, 2011)...........................24, 25

*Aylus Networks, Inc. v. Apple Inc.*,
  No. C-13-4700-EMC, 2015 U.S. Dist. LEXIS 71230 (N.D. Cal. June 2, 2015)...........................14

*CAP Co., Ltd. v. McAfee, Inc.*,
  No. 3-14-cv-05068, ECF. No. 81 (N.D. Cal. Apr. 11, 2017) .........................13

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012)...........................................................21

*Cuozzo Speed Techs., LLC v. Lee*,
  195 L. Ed. 2d 423 (2016) ...............................................................16

*e.Digital Corp. v. Dropcam, Inc.*,
  No. 14-CV-04922-JST, 2016 WL 658033 (N.D. Cal. Feb. 18, 2016)..................10

*Ethicon, Inc. v. Quigg*,
  849 F.2d 1422 (Fed. Cir. 1988)...........................................................9, 13

*Fitbit Inc. v. Aliphcom*,
No 16-cv-00118, 2016 U.S. Dist. LEXIS 150764 (N.D. Cal. Oct. 31, 2016) ..............................17

*Gentherm Can., Ltd. v. IGB Auto., Ltd.*,
No. 13-11536, 2015 U.S. Dist. LEXIS 23180 (E.D. Mich. Feb. 26, 2015)..................................26

*Hologram USA, Inc. v. Vntana, 3D, LLC*,
No. CV-14-9489-BRO, ECF No. 64 (C.D. Cal. Dec. 7, 2015) ....................................................14

*Murata Mack USA v. Daifuku Co.*,
830 F.3d 1357 (Fed. Cir. 2016)..................................................................................................10

*MyGo, LLC v. Mission Beach Indus., LLC*,
No. 3:16-CV-2350-GPC, 2017 U.S. Dist. LEXIS 13401 (S.D. Cal. Jan. 31, 2017) ....................14

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013) ....................................................24

*Nken v. Holder*,
556 U.S. 418 (2009).....................................................................................................................10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
No. 2-04-CV-32, 2008 WL 4809093 (E.D. Tex. Oct. 29, 2008)..................................................12

*Otto Bock HealthCare LP v. Össur HF*,
No. SACV-13-00891-CJC, 2013 U.S. Dist. LEXIS 188428 (C.D. Cal. Dec. 16,
2013) ...........................................................................................................................................14

*Phillips v. AWH Corp.*,
415 F. 3d 1303 (Fed. Cir. 2005) (en banc)..................................................................................16

*Pi-Net Int'l, Inc. v. Hertz Corp.*,
No. CV 12-10012-PSG, 2013 WL 7158011 (C.D. Cal. June 5, 2013).........................................10

*Polymer Technologies, Inc. v. Bridwell*,
103 F.3d 970 (Fed. Cir. 1996)......................................................................................................25

*Prestige Jewelry Int'l, Inc. v. BK Jewellery HK*,
No. 12-2930, 2012 U.S. Dist. LEXIS 63850 (S.D.N.Y. Mar. 27, 2012).......................................25

*Riverbed Tech., Inc., v. Silver Peak Sys., Inc.*,
No. C 13–02980, 2014 WL 1647399 (N.D. Cal. Mar. 14, 2014)..................................................27

*Robert Bosch Healthcare Systems, Inc. v. Cardiocom, LLC*,
No. C-14-1575-EMC, 2014 WL 3107447 (N.D. Cal. Jul. 3, 2014) .......................................10, 24

*Shaw Indus. Grp. v. Automated Creel Sys.*,
817 F.3d 1293 (Fed. Cir. 2016)....................................................................................................17

*Sorensen v. Lexar Media, Inc.*,
  No. C-08-00095-JW, 2008 U.S. Dist. LEXIS 87511 (N.D. Cal. Apr. 30, 2008) .........................12

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  814 F.3d 1309 (Fed. Cir. 2016)...........................................................................................15

*TeleSign Corp. v. Twilio Inc.*,
  No. 2:15-cv-03240-PSG-SS.................................6, 7, 8, 11, 12, 13, 14, 20, 23, 25, 26

*Tokuyama Corp. v. Vision Dynamics, LLC*,
  No. C082781SBA, 2008 WL 4532565 (N.D. Cal. Oct. 9, 2008) .................................11

*TPK Touch Solutions, Inc v. Wintek Electro-Optics Corp.*,
  No. 13-cv-02218, 2013 WL 6021324 (N.D. Cal. Nov. 13, 2013) ...............................11

*Trebro Mfg. v. FireFly Equip., LLC*,
  748 F.3d 1159 (Fed. Cir. 2014)............................................................................26

*Twilio Inc. v. TeleSign Corp.*,
  Case No. 5:16-cv-06925-LHK (N.D. Cal.), ECF No. 66.........................................5, 7

*United Pet Group, Inc. v. MiracleCorp Prods.*,
  No. 12-00440, 2012 U.S. Dist. LEXIS 88926 (E.D. Mo. June 27, 2012) ...................25

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
  943 F. Supp. 2d 1028 (C.D. Cal. 2013) ...............................................................24

*Viskase Corp. v. Am. Nat'l Can Co.*,
  261 F.3d 1316 (Fed. Cir. 2001).........................................................................10

*Wonderland Nursery Goods Co. v. Baby Trend, Inc.*,
  No. 14-01153-VAP, 2015 WL 1809309 (C.D. Cal. Apr. 20, 2015)...........................10

**Statutes**

35 U.S.C. § 101...........................................................................................15, 27

35 U.S.C. § 102................................................................................................15

35 U.S.C. § 103................................................................................................15

35 U.S.C. § 112................................................................................................15

35 U.S.C. § 286................................................................................................15

35 U.S.C. § 287................................................................................................15

35 U.S.C. § 288................................................................................................15

35 U.S.C. § 311(b)............................................................................................15

35 U.S.C. § 316(a)(11)..............................................................................................8

35 U.S. Code § 315(b) .............................................................................................8

**Rules**

FED. R. CIV. P. 1 ...............................................................................................8, 24

NDCA Patent L.R. 3-2(e) ........................................................................................9

NDCA Patent L.R. 3-2(i) .........................................................................................9

**Other Authorities**

37 C.F.R. § 42.100(c)...............................................................................................8

Table of Exhibits

| Exhibit A | Transcript of Proceedings Before the Honorable Lucy H. Koh on March 1, 2017 (Case Management Conference) |
|-----------|---------------------------------------------------------------------------------------------------------|
| Exhibit B | Bloomberg BNA, http://documents.jdsupra.com/d45663ef-f889-4e82-9e56-5e6663cda4f2.pdf |
| Exhibit C | TW00011610-12 |
| Exhibit D | TW00015140-42 |
| Exhibit E | TW00015165-67 |
| Exhibit F | TW00015217-19 |
| Exhibit G | https://customers.twilio.com/1386/epicnpc/ |
| Exhibit H | Email thread between ███████████ |
| Exhibit I | Email thread between ███████████████████ |
| Exhibit J | https://www.twilio.com/verification |
| Exhibit K | Email thread between ████████████ |

All citations to Exhibits herein are citations to the Exhibits to the Declaration of Mary Peal in Support of TeleSign's Opposition, submitted concurrently.

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

"This case is a competitor-verse-competitor case with an injunction at issue." Those are not TeleSign's words. Rather, those are Twilio's words made in response to TeleSign requesting a two-week extension of a deadline in a case Twilio initiated in December against TeleSign in the Northern District of California.[1] Twilio argued that TeleSign's requested delay **harms** Twilio because TeleSign purportedly launched new product features and a press campaign **targeted at Twilio**.[2] Thus, by Twilio's own analysis: the harm to a plaintiff from even a two-week extension justifies no delay in a competitor case where an injunction is at issue and where a defendant is purportedly targeting the plaintiff in the market. That rationale applies here with far greater force.

The instant case is a competitor case (the same competitors in fact), with an injunction at issue,[3] and Twilio is and has been targeting TeleSign's customers since before the current stay. TeleSign stands to be significantly harmed from a continued stay—harm not outweighed by any simplification of issues from the IPRs, which are actually complicating this case by ballooning the record and corpus of information the parties might cite to in order to advance their positons.

TeleSign does not contest consolidation of the two infringement actions pending before this court ("*TeleSign I*" and "*TeleSign II*"), but does oppose staying a consolidated action for at least eleven more months, and, really, indefinitely pending the conclusion of the '792 IPR proceedings, including appeals. As Twilio acknowledges, its IPR petitions relating to two asserted patents were denied in their entirety, and the IPR involving 11 claims of the '034 patent is to conclude on or about June 28, 2017. By that date, the PTAB will have resolved the patentability issues for all three of the asserted patents in *TeleSign I*, leaving only four asserted claims from *Telesign II* at issue. Sufficient bases do not exist to continue delaying the resolution

---

[1] *Twilio Inc. v. TeleSign Corp.*, Case No. 5:16-cv-06925-LHK (N.D. Cal.) ("the NDCA case"), ECF No. 66 at 2.

[2] *Id.* (emphasis added).

[3] ECF No. 40 at ¶ 154(D).

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

of this case just because those four (out of over 80) claims are under review. There is no question that litigation will proceed on the majority of patents and claims at issue.

The '792 IPR proceedings—regardless of outcome – will not resolve all of the pending issues in the case, such as claim construction, infringement, damages, inequitable-conduct allegations, and invalidity issues that are not before the PTAB. Findings from the '792 IPR will not instruct the Court on the non-challenged patents, because the PTAB conducts its analysis subject to a lower burden (preponderance of the evidence) and without a presumption of validity. A stay will not harm Twilio, because now that Twilio has sued TeleSign, it will have to produce a great deal of information in the NDCA case that is relevant here. Plus, Twilio will need to defend against the unchallenged claims in this case, which Twilio contends includes issues very similar to the four challenged claims in the '792 IPR. Thus, whereas Twilio argues that the similarities of the claims favor a stay, in fact, the similarities weigh against a stay because Twilio will have to litigate the unchallenged claims, and in so doing, will—by its own contention of how similar the claims are—address the issues of the challenged claims.

A stay, however, will harm TeleSign because the parties are direct competitors and TeleSign is being denied an opportunity to advance its offensive case and bring it to a close. The current stay already has harmed TeleSign, preventing it from vindicating itself in the market as it loses business to Twilio and suffers unquantifiable harm from loss of goodwill, damage to reputation, and loss of business opportunities. Accordingly, Twilio's stay motion should be denied.

## I.    BACKGROUND

The parties are engaged in three separate patent-infringement lawsuits. Two of the suits are in the Central District of California: *TeleSign Corp. v. Twilio Inc.*, No. 2:15-cv-03240-PSG-SS filed by TeleSign in April 2015 ("*TeleSign I*") and this action filed by TeleSign in March 2016 ("*TeleSign II*"). The most recent suit was filed in

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

December 2016 by Twilio in the Northern District of California, *Twilio Inc. v. TeleSign Corp.*, Case No.16-cv-06925-LHK-SVK ("the NDCA case").

In *Telesign I*, TeleSign alleges that Twilio's two-factor authentication and phone-intelligence products infringe three of TeleSign's patents.[4]  TeleSign's '034 patent relates to a different aspect of verification and registration than the '038 and '920 patents.  Prior to the current stay, the parties engaged in written discovery; TeleSign served an initial set of infringement contentions on December 11, 2015 and final proposed claim terms on March 7, 2016.  Between December 2015 and January 2016, Twilio petitioned the PTAB for IPR of 11 claims of the '034 patent, 17 claims of the '920 patent and all 22 claims of the '038 patent.  Twilio then moved to stay the case pending IPR review (ECF Nos. 91, 98), which the Court granted (ECF No. 124).  Since the stay was entered on March 9, 2016, the PTAB has denied Twilio's IPR petitions for two of the asserted patents (the '038 and '920 patents) and instituted IPR on 11 of 34 asserted claims of the '034 patent.

Thus, at present, 67 claims across three asserted patents (86% of total asserted claims in *TeleSign I*) are **un**challenged and not subject to IPR, while 11 claims (14%) are under review by the PTAB.  The PTAB is expected to issue a final written decision regarding those 11 claims at issue in the IPR within two months —by June 28, 2017 at the latest.

In *Telesign II*, TeleSign alleges that Twilio's two-factor authentication products infringe claims 1, 6, 9, 10, 15, and 18 of TeleSign's '792 patent.  Initial disclosures have been exchanged.  TeleSign served written discovery, but granted an extension for Twilio to respond, and the case has since been stayed (prior to Twilio's responses being due).  Twilio petitioned the PTAB for IPR and a covered business method ("CBM") review of the '792 patent in August 2016.  The PTAB denied the CBM review but instituted IPR on four of the six claims asserted against Twilio.  Two of the

---

[4] The Asserted Patents in *TeleSign I* are U.S. Patent Nos. 8,462,920 ("the '920 patent"); 8,687,038 ("the '038 patent"); and 7,945,034 ("the '034 patent").

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

asserted claims, Claims 9 and 18, remain and are not under PTAB review. Twilio is time barred from filing additional IPRs on the '792 patent. 35 U.S. Code § 315(b).

Twilio now moves the Court to consolidate *TeleSign II* with *TeleSign I* and to stay the case at least until the PTAB issues its final written decision in the IPR on the '792 patent, which is expected by March 2018—though the decision could be delayed to September 2018, if the PTAB extends the time by six months, as allowed by the statute for "good cause."[5]  To the extent Twilio's stay request contemplates staying the case during appeals of the PTAB's final written decision to the Federal Circuit (and back again or beyond), the stay will be *several years*—long after this case should have concluded.

The NDCA case is currently proceeding with discovery. Twilio has produced approximately 18,146 pages of documents. The parties agreed to share discovery across cases but disagreed on the scope of an opt-out caveat. The NDCA court recently resolved that dispute in favor of cross-use of discovery between the NDCA and CDCA cases. NDCA ECF No. 61, p. 3 ("[B]ecause of the similarities in the cases and adequate safeguards for third parties, Rule 1 favors cross-use of discovery in this case and the CDCA cases to allow for the 'just, speedy, and inexpensive' resolution of the cases."). Thus, Twilio already has produced, and will be producing, discovery in the NDCA case relating to its two-factor-authorization products that will be relevant to TeleSign's infringement claims in the CDCA cases, and, pursuant to the NDCA Protective Order, that discovery will be available for use in the CDCA cases. For instance, the NDCA local rules require plaintiffs to disclose any products of their own that are purportedly covered by their own patents. Twilio has done this, indicating that the following Twilio products are purportedly covered by its patents:

---

[5] *See* 35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.100(c) (stating IPR to be completed within one year of institution, though time may be extended up to six months for good cause). The PTAB has rarely, if ever, invoked this provision, but is also handling more IPRs than it has in the past.

"Programmable Voice," "Programmable SMS," "Notify," and "Two Factor Authentication" (among others).  Twilio's Infringement Contentions of March 15, 2017 (in NDCA).  These are the same (or substantially similar) products mentioned in TeleSign's Complaint.  The NDCA local patent rules further require Twilio to disclose technical documents and financial information regarding those embodying products (which are also at issue in this case).[6]  Thus, Twilio's contention that it will purportedly be subject to unnecessary work in the CDCA cases is undermined by the fact that it will need to conduct a great deal of that work in connection with its own suit (as well as in connection with the unchallenged claims).  Being able to share related information across cases reduces purported harm to Twilio and disfavors a stay.  *See, e.g., Adaptix, Inc. v. HTC Corp.*, Nos. 5:14-cv-02359, 5:14-cv-02360, 5:14-cv-02894, 5:14-cv-02895, 5:15-cv-00165, 5:15-cv-00166, 5:15-cv-00167, 5:15-cv-00168, 2015 U.S. Dist. LEXIS 103503, at *17 n.14 (N.D. Cal. Aug. 5, 2015) ("The parties have agreed that discovery from certain related cases may be shared across the cases for the sake of efficiency. As a result, because the Wave 1 cases proceeded to summary judgment, a significant amount of discovery has already taken place, greatly minimizing any efficiency that a stay might provide.").

## II.    LEGAL STANDARD FOR A MOTION TO STAY

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (citation omitted). However, a "court is under no obligation to delay its own proceedings" where parallel

---

[6] Specifically, pursuant to NDCA Patent L.R. 3-2(e), Twilio must produce "documents sufficient to show the operation of any aspects or elements of such instrumentalities the patent claimant relies upon as embodying any asserted claims" and, pursuant to NDCA Patent L.R. 3-2(i), "documents sufficient to show marking of such embodying accused instrumentalities and if it wants to preserve the right to recover lost profits based on such products, sales, revenues, costs and profits of such embodying accused instrumentalities."

litigation is pending before the PTAB.  *See Robert Bosch Healthcare Systems, Inc. v. Cardiocom, LLC*, No. C-14-1575-EMC, 2014 WL 3107447, at *2 (N.D. Cal. Jul. 3, 2014); *Pi-Net Int'l, Inc. v. Hertz Corp.*, No. CV 12-10012-PSG, 2013 WL 7158011, at *2 (C.D. Cal. June 5, 2013) ("Courts are not required to stay judicial proceedings pending re-examination of a patent."); *Athena Feminine Techs. Inc. v. Wilkes*, No. 10-04868, 2012 WL 1424988, at *2 (N.D. Cal. Apr. 24, 2012) ("A court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze."); *see also Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("The court is not required to stay judicial resolution in view of the reexaminations.").  The party requesting the stay must show a stay is appropriate. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

Courts generally consider three factors in deciding whether to grant a stay during IPR proceedings: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.  *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. 14-01153-VAP, 2015 WL 1809309, at *2 (C.D. Cal. Apr. 20, 2015) (quoting *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030-31 (C.D. Cal. 2013)); *see also Murata Mack USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016).  Courts should also consider the "totality of the circumstances" in evaluating whether a stay is proper. *Wonderland Nursery Goods*, 2015 WL 1809309, at *2 ("While the case law enumerates several general considerations that are helpful in determining whether to order a stay, ultimately 'the totality of the circumstances governs.'" (quoting *Universal Elecs.*, 943 F. Supp. 2d at 1031)); *see also e.Digital Corp. v. Dropcam, Inc.,* No. 14-CV-04922-JST, 2016 WL 658033, at *2 (N.D. Cal. Feb. 18, 2016) ("While case law supplies these general considerations, the Court ultimately must decide whether to issue a stay on a case-by-

case basis."); *Allergan Inc. v. Cayman Chem. Co.*, No. 07–01316, 2009 WL 8591844, at *2 (C.D. Cal. Apr. 9, 2009) (holding that although the three factors are relevant, a court may analyze the "totality of circumstances" to make a decision on a request for stay).

Courts also have recognized that requiring a stay of litigation whenever some relevant claims could be affected by a parallel PTO proceeding would "invite parties to unilaterally derail timely patent case resolution." *TPK Touch Solutions, Inc v. Wintek Electro-Optics Corp.*, No. 13-cv-02218, 2013 WL 6021324, at *2 (N.D. Cal. Nov. 13, 2013); *Tokuyama Corp. v. Vision Dynamics, LLC*, No. C082781SBA, 2008 WL 4532565, at *2 (N.D. Cal. Oct. 9, 2008) ("There is no per se rule that patent cases should be stayed pending reexaminations, because such a rule would invite parties to unilaterally derail litigation.").

## III.    ARGUMENT

### A.    The stage of the case weighs against granting a stay.

The Court first must consider the status of discovery and whether a trial date has been set. *TeleSign I* is now two years old. There, the court ordered a trial date of January 2017, but due to the stay currently in place, that time has come and gone. No trial date has been set in *TeleSign II*.

In *TeleSign I*, the parties exchanged initial disclosures, served and responded to requests for production and interrogatories, served infringement contentions and initial claim charts, and one deposition has occurred. Twilio has produced 17,043 pages of documents, and TeleSign has produced 2,794 pages of documents. The parties were beginning the claim-construction process when the case was stayed. *TeleSign II*, filed in March 2016, is still in its early stages, with the parties having exchanged initial disclosures and negotiated the terms of a scheduling order, protective order, and ESI order. TeleSign also has served written discovery requests.

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

Since the stay was entered in *TeleSign I* on March 9, 2016, the PTAB has (a) denied Twilio's IPR petitions for the '038 and '920 patents, (b) instituted IPR on 11 of 34 asserted claims of the '034 patent, (c) denied Twilio's CBM review petition for the '792 patent, and (d) instituted IPR on four of six asserted claims of the '792 patent. This leaves 67 asserted claims in *TeleSign I* and two asserted claims in *TeleSign II* beyond the scope of any review by the Patent Office. The PTAB is expected to issue a final written decision on the 11 asserted claims of the '034 patent by June 28, 2017, and the final written decision for the four asserted claims of the '792 patent in March 2018. The status of the claims is summarized in the table below:

| TeleSign Patent | Result | Claims at issue in IPR |
|---|---|---|
| 8,687,038 | IPR Denied | 0 of 22 |
| 8,462,920 | IPR Denied | 0 of 22 |
| 7,945,034 | IPR Granted | 11 of 34 |
| 9,300,792 | CBM Denied, IPR Granted | 4 of 6 |
| **Total** | | **15 of 84** (4 of 84 after '034 IPR is finished in June 2017) |

While the final IPR is pending, the parties can make substantial progress in discovery and the Court can "make substantial progress in interpreting the patent[s] at issue and otherwise moving the action toward resolution." *Sorensen v. Lexar Media, Inc.*, No. C-08-00095-JW, 2008 U.S. Dist. LEXIS 87511, at *2-3 (N.D. Cal. Apr. 30, 2008) (denying motion to stay). Given that the one remaining IPR is unlikely to "appreciably change the amount of new discovery in, or alter the resolution of, this case," the interest of efficiency and justice favor advancing this case and dealing with such a "contingency when and if it occurs, rather than putting this case indefinitely on hold." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2-04-CV-32, 2008 WL 4809093, at *2 (E.D. Tex. Oct. 29, 2008).

The Federal Circuit recognizes the value of moving forward with litigation while PTO proceedings continue. "[C]hallenging validity in a court and requesting

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

1   PTO reexamination are concepts not in conflict." *Ethicon*, 849 F.2d at 1428.

2   Accordingly, "[c]oncurrent litigation and reexamination proceedings are permitted

3   since litigation and reexamination are distinct proceedings, with distinct parties,

4   purposes, procedures, and outcomes." *Alltech, Inc. v. Cenzone Tech, Inc*., No. 06-CV-

5   0153, 2007 WL 935516, at *1 (S.D. Cal. Mar. 21, 2007).

6       Here, since Twilio has requested a stay pending the completion of both the '034

7   and '792 IPRs, the stay would last at least until March 2018 and possibly years longer

8   if the stay is allowed to last through all appeals—which is essentially the decision

9   before the Court given that the '034 patent is about to enter the appeals stage (with

10  claims directed to different subject matter than the other three patents).[7]  *TeleSign I* is

11  over two years old already.  As of June 2017, only one IPR (covering only four

12  asserted claims) will remain pending.

13      Due to (1) the age of the case, (2) important changes in the status of the IPR

14  proceedings since the last stay was granted, (3) the high affirmance rate of PTAB

15  decisions by the Federal Circuit, and (4) the efficiencies of proceeding with the

16  litigation, TeleSign submits that this factor weighs against granting a stay.

17      **B.    A stay will not simplify the issues enough to warrant a stay.**

18      Twilio wrongly contends that a stay would simplify the case for *all* asserted

19  claims, due to the "substantial overlap" between the specifications of the '038, '920,

20  and '792 patents, the asserted claims, the prior art, the fact witnesses, and the accused

21  products.  ECF No. 65 at 13.  Further, Twilio argues that TeleSign will waste the

22

23  [7] TeleSign disputes that any stay should be allowed through appeals of the PTAB's

24  final written decision, especially in light of the high affirmance rate of PTAB
    decisions by the Federal Circuit.  Indeed, through April 24, 2016, 83% were affirmed

25  completely, 10% were affirmed-in-part, and only 7 % were reversed, vacated, and/or
    remanded.  *See* Ex. B (Bloomberg BNA, http://documents.jdsupra.com/d45663ef-

26  f889-4e82-9e56-5e6663cda4f2.pdf).  *See also CAP Co., Ltd. v. McAfee, Inc*., No. 3-

27  14-cv-05068, ECF. No. 81 (N.D. Cal. Apr. 11, 2017) (denying request to keep action
    open and stayed through appeal of PTAB decision, in part because of age of case and

28  "high affirmance rate of PTAB decisions by the Federal Circuit").

Court's and the jury's resources by canceling claims or amending claims during or shortly after trial. ECF No. 65 at 12. There are insufficient bases for the Court to stay this case based on such speculation because (1) the '792 IPR proceedings will eliminate hardly any (if any, and let alone all) of the issues in this litigation; and (2) there will be no waste of the Court's or the jury's resources because TeleSign does not intend to cancel or amend any claims currently in IPR.

The PTAB will have resolved all three asserted patents in *TeleSign I* by June. Regardless of what claims remain following the final written decision in the '034 IPR in June, it is certain that the asserted claims of the '920 and '038 patents will go forward, as will at least 23 unchallenged claims of the '034 patent. Further, this Court and the parties already know that there are at least two asserted claims that are *not* part of the pending '792 IPR (and will not be part of any IPR filed by Twilio given that Twilio is time-barred from filing more IPRs). Thus, even if the PTAB finds the other four asserted claims unpatentable, at least Claims 9 and 18 of the '792 patent will be litigated in this court. The rationale for a stay is lessened when—as here—IPR proceedings are asserted against some, but not all, of the claims at issue. *See, e.g., Hologram USA, Inc. v. Vntana, 3D, LLC*, No. CV-14-9489-BRO, ECF No. 64 at 4–5 (C.D. Cal. Dec. 7, 2015); *Aylus Networks, Inc. v. Apple Inc.*, No. C-13-4700-EMC, 2015 U.S. Dist. LEXIS 71230, at *4 (N.D. Cal. June 2, 2015); *Otto Bock HealthCare LP v. Össur HF*, No. SACV-13-00891-CJC, 2013 U.S. Dist. LEXIS 188428, at *5-*6 (C.D. Cal. Dec. 16, 2013). There is no meaningful additional simplification to be gained by waiting for the PTAB to resolve the four asserted claims that are being reviewed in the final remaining IPR.

The PTAB will not address most of the issues raised in the litigation. For example, the PTAB will not consider whether Twilio infringes the asserted patents. The PTAB also will not address the significant inequitable-conduct allegations Twilio has raised in its Answer. *See MyGo, LLC v. Mission Beach Indus., LLC*, No. 3:16-CV-2350-GPC, 2017 U.S. Dist. LEXIS 13401, at *6 (S.D. Cal. Jan. 31, 2017) ("MBI

made multiple invalidity arguments in its counterclaims that extend beyond the issue of prior art, including allegations of inequitable conduct and fraud on the PTO. (ECF No. 7 at 1.) Ex parte reexamination would not address, let alone simplify, such issues for the Court."). The attorneys subject to those allegations should not have to wait to be exonerated.

Moreover, the PTAB's decision will not – and statutorily cannot – resolve validity issues related to any other grounds other than patents and printed publications under 35 U.S.C. §§ 102 and 103.[8] The IPRs will not resolve any issues of "system" prior art, *i.e.*, prior art that does not take the form of a patent or published paper, nor will the IPRs resolve whether the Asserted Patents are invalid under 35 U.S.C. § 101, which Twilio raised early in this suit,[9] or under 35 U.S.C. § 112 for indefiniteness, lack of written description, or lack of enablement, which Twilio raised in its answer.[10] *See* 35 U.S.C. § 311(b); *Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1316 (Fed. Cir. 2016) (finding that "[i]nter partes review cannot replace the district court in all instances, for example, when claims are challenged in district court as invalid based on the on-sale bar, for claiming patent-ineligible subject matter, or on grounds of indefiniteness"). Further, Twilio raised other affirmative defenses that will not be considered by the PTAB including: (i) whether TeleSign's claims for damages are limited pursuant to 35 U.S.C. §§ 286, 287, and/or 288[11]; and (ii) whether the relief sought by TeleSign is barred, in whole or in part, by the doctrine of prosecution

---

[8] *See* 35 U.S.C. § 311(b) ("A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications.").

[9] *TeleSign I*, ECF No. 87.

[10] *TeleSign I*, ECF No. 79, ¶ 89, Third Affirmative Defense.

[11] *TeleSign I*, ECF No. 79, ¶ 91, Fifth Affirmative Defense.

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

history estoppel and/or the equitable doctrines of waiver, estoppel, acquiescence, and/or unclean hands.[12]  All of these issues would remain after the IPRs are complete.

The Board is not expected to engage in additional claim construction that will simplify issues for this Court.  In reviewing Twilio's Petitions for IPR, the PTAB construed very few terms.  But even those constructions do not simplify issues for this Court because the PTAB analyzes patent claims under a different claim-construction standard—the "broadest reasonable interpretation" standard—as opposed to the *Phillips* standard applied by district courts.[13]  Thus, the Court will need to construe the terms the parties disagree on, and can expect Twilio to request that the Court *ignore* the IPR record on claim construction given the breadth with which terms are construed at the PTAB.  For example, Twilio pursued very broad constructions for "notification event" in the '792, '038, and '920 IPRs.  Those proposed broad constructions would increase the likelihood that Twilio's accused products will be found infringing.  Thus, Twilio will likely resist any urging by TeleSign to consider the IPR record.  And if that is the case, then how can the IPRs in this case be expected to reduce—instead of complicate—issues?

Additionally, TeleSign anticipates that Twilio will not honor its prior contention regarding estoppel.  In prior briefing, when attempting to convince the Court to stay *TeleSign I*, Twilio argued: "Under Section 315(e), estoppel attaches to 'any ground that the petitioner raised or reasonably could have raised during that inter partes review.' Congress made **simplification** and speed a part of the statute governing inter partes review. The Court and the parties have the advantages of this Congressional

---

[12] *TeleSign I*, ECF No. 79, ¶¶ 92-93, Sixth & Seventh Affirmative Defenses.

[13] *Cuozzo Speed Techs., LLC v. Lee*, 195 L. Ed. 2d 423, 439 (2016) (rejecting arguments that the Patent Office should be precluded from applying the BRI standard in IPRs and should instead use the plain-and-ordinary-meaning standard applied by federal courts and as set forth in *Phillips v. AWH Corp.*, 415 F. 3d 1303, 1314 (Fed. Cir. 2005) (en banc)).

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

intent."[14]  But simplification would only occur by application of the letter of Section 315(e), which precludes a petitioner (Twilio) from asserting in this civil action invalidity "on any ground that the petitioner raised or reasonably could have raised during" the IPR.  TeleSign, however, expects Twilio will try to restrict the scope of this estoppel significantly given current precedent which, to date, has rejected a strict interpretation of the estoppel provision.  *See Shaw Indus. Grp. v. Automated Creel Sys.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016).  Indeed, Twilio may take the position that no invalidity issues have been settled by the IPRs.

Further, as discussed above, this litigation will proceed regardless of the outcome of the IPRs.  Twilio will have to satisfy discovery obligations for the non-challenged claims (which Twilio contends are similar to the challenged claims), and Twilio will have to satisfy its discovery obligations in the NDCA case regardless of the outcome of the IPRs.  Thus, "allowing the case to proceed would not significantly affect judicial efficiencies."  *Fitbit Inc. v. Aliphcom*, No 16-cv-00118, 2016 U.S. Dist. LEXIS 150764, at *6-*9 (N.D. Cal. Oct. 31, 2016) (litigation history between the parties and cross-use of discovery across all the cases did not weigh in favor of stay); *Adaptix*, 2015 U.S. Dist. LEXIS 103503, at *17 n.14 (shared discovery across related cases minimized efficiencies that a stay might provide).  There are very few, if any, issues unique only to the challenged claims.  Thus, it cannot be the case that simplification of issues favors a stay here.

Finally, Twilio refers to supposed problems that might stem from inconsistent outcomes between the Court and the Patent Office.  Those claims are exaggerated, and the purported issues can be addressed in the litigation.  For example, infringement is determined on a claim-by-claim basis, and damages can be tailored as well.  Damages can be apportioned to the challenged versus unchallenged claims,  Thus, even dealing with inconsistent determinations would not be overly burdensome.

---

[14] *TeleSign I*, ECF No. 119 at 5:12-15 (emphasis added).

In sum, this factor weighs against a stay because it is unlikely that a stay will sufficiently simplify the issues or the trial of this case to justify imposing a stay.

**C.    The harm to TeleSign from a continued stay justifies not imposing any future stays.**

Twilio and TeleSign are competitors, and Twilio has been actively preying on TeleSign's customers while this lawsuit has been pending.  TeleSign has been subject to not only the risk of harm but also has suffered actual harm.

**1.    Twilio actively preys on TeleSign's customers.**

The current stay of discovery prevents TeleSign from accessing more evidence of harm that is in Twilio's possession.  But, before the stay, Twilio produced at least some documents that illustrate Twilio's plans to take TeleSign's customers and "takedown" TeleSign.

The annotated screenshot below is from a Twilio document showing a bulleted item to ███████████████████████████████

███████████████████████████████████████████████████████████████

The Twilio document below shows that Twilio created or was maintaining a ███████████████████████████████ a few months after *TeleSign I* was filed in April 2015.

OPPOSITION TO TWILIO'S MOTION TO STAY CASE



The Twilio document below names "TeleSign" as a competitor, and specifically in the two-factor authentication ("2FA") space:

The excerpt below shows how a Twilio employee will be

### 2.    TeleSign is subject to not only the risk of harm but also actual harm of a continued stay.

The totality of damage to TeleSign's reputation and goodwill as a result of Twilio's direct infringement and inducing others to infringe is not quantifiable.  This

damage stems from the loss of business or customers and the intangibles associated with such loss, such as the inability to cross sell to those customers and the nonquantifiable aspect of losing relationships. TeleSign is being denied an opportunity to vindicate itself by way of an infringement determination, which would allow TeleSign to properly be perceived by the market as an innovator in the claimed subject-matter area. In this space, customers factor innovation into their decision to select a provider, such as Twilio or TeleSign. For example, the excerpt from Twilio's website below recounts a customer, EpicNPC, as attributing its switch from its former provider to Authy (an accused product) based on EpicNPC's perception that they were not innovating.

"Before we switched to Authy, we had been doing phone verification with another company, but our biggest concern was that they were not innovating," recalls Zihal. "We had been with them for almost two years and they really never updated any of the security features. We looked at Authy and found that they provide much more useful information. We're now able to block people using certain types of service providers, like VOIP, so we have more tools to monitor track and block the types of users we don't want."

Ex. G (https://customers.twilio.com/1386/epicnpc/).

Notably, EpicNPC cites an ability to block certain types of providers, like VOIP providers, as an innovative aspect. That it is an innovative aspect recited in TeleSign's '034 patent, which was filed before Twilio even existed. For example, claim 1 of the '034 patent recites "registering the user . . . based on the type of phone" characteristic and one "type of phone" characteristic is "determining whether the telephone number is associated with a . . . voice over internet protocol telephone" as recited in claim 4. *See TeleSign I*, ECF No. 13-1 (the '034 patent). How many other unknown potential customers might choose Twilio over TeleSign because they wrongly perceive Twilio to be innovative by virtue of offering products and services that, in reality, TeleSign invented? A stay will harm TeleSign by delaying its

opportunity to show that Twilio is infringing, and thus delaying the time for the market to know that it is TeleSign—not Twilio—who innovated in the accused-technology space, and thereby reap all of the benefits associated with that recognition.

**Lost customers**.  Damage from the loss of business opportunities, including lost customers, is a basis for finding irreparable harm.  *See Celsis in Vitro, Inc. v. CellzDirect, Inc*., 664 F.3d 922, 929 (Fed. Cir. 2012) ("Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.").  TeleSign has already lost customers to Twilio because Twilio has been able to offer technology TeleSign accuses as infringing.  One example is ███ ████████████████████████████████████████████. *See* Ex. H.  But ███████████ ████████████████████████████████ Ex. H.  Indeed, ██████ ███████████████████████████████████████████████████████ ████████████ Ex H at p. 084.  Thus, ██████ is receiving similar functionality from Twilio by way of an alternative product, *e.g.*, Authy, which TeleSign accuses of infringing TeleSign's patents.  TeleSign believes there are many other lost customers like ██████ but lacks access to Twilio's customer list, and thus cannot cross-reference it.

**Lost business**.  In addition to losing customers, TeleSign has lost business to Twilio because Twilio has been allowed to infringe TeleSign's patents.  One example is lost business from ████████████. ██████████████████████████████ ██████████████████████████

---

[15] *See* ECF No. 40 at ¶¶ 68, 77-92.

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

because Twilio has been allowed to offer its infringing Authy product. This harm is not fully compensable by money damages at least because ████████████████████████████████, even if TeleSign were to offer lower rates. Ex. I ██████████████████████████████

Thus, TeleSign has been and is being denied an opportunity to cross sell to ████████, to demonstrate its continuing ability to service large volumes of ████████ traffic, and to enjoy unknown additional downstream benefits—such as enhanced relationships with TeleSign vendors that were not engaged (or used less) because of the lack of ████████████ business. Cross selling is widely used by both Twilio and TeleSign in the markets they serve. For example, TeleSign ████████

---

[16] *See* Peal Ex. J (https://www.twilio.com/verification).

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

1    ███████████████████████    But TeleSign is prohibited from even trying to cross-

2    sell products in connection with the business ████████████████████████

3    █████████████████████████████████████████████████████████

4    **Other lost opportunities**.  As another example, TeleSign lost out on a business

5    opportunity with ███████ in 2016.   Instead of choosing TeleSign's two-factor

6    authentication technology, ███████████████████████ Ex. K at p. 099.

7    But if Twilio were prevented from offering its infringing Authy product, that would

8    not have been an option for ███████  Cross-selling opportunities with ███████ also

9    have been lost and cannot be quantified, nor can the lack of its endorsement of

10   TeleSign as a current customer.

11       **3.**      **Summary of TeleSign's Harm**

12   TeleSign has shown that Twilio is actively pursuing TeleSign's customers and

13   that Twilio's ability to offer products accused of infringement has resulted in TeleSign

14   losing customers such as ████████ losing business from customers such as ████████

15   ████, and missing out on new customers and opportunities such as with ████████

16   Granting Twilio's stay motion would likely mean a delay of yet another year,

17   and possibly two if the stay is extended for appeals, before TeleSign could have its

18   day in court and resolve the issue of infringement to the market.  Had *TeleSign I*

19   progressed on its original schedule for a January 2017 trial date, this litigation would

20   likely be over.  Any appeal likely would have been final before any IPR appeals, and

21   no time would have been wasted.  Certainly no time would have been wasted with

22   respect to the '920 and '038 patents, nor the unchallenged claims of the '034 patent.

23   TeleSign filed this infringement action in hopes of securing a "just, speedy, and

24   inexpensive determination" from this Court that Twilio is liable for infringement of

25

26   17 ████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████

28   █████████████████████████████████████        █████████████

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

the asserted patents. *See Universal Elecs.*, 2013 WL 1876459, at *6 (citing FED. R. CIV. P. 1.). Staying this case pending yet another PTO review prolongs the final resolution of this dispute and the delay will inherently prejudice TeleSign. *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 WL 3353984, at *2 (D. Del. July 2, 2013). "If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner." *Universal Elecs.*, 2013 WL 1876459, at *6 (citing *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, No. 06–04206, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007)). Twilio's stay request is contrary to the "just, speedy, and inexpensive determination" promise of Federal Rule of Civil Procedure 1, and unduly prejudices TeleSign in prolonging the final resolution of the parties' dispute.

Not only will TeleSign be prejudiced by the delay, TeleSign will be prejudiced in the market because the parties are direct competitors. *See Robert Bosch*, 2014 WL 3107447, at *6 (where the parties are direct competitors, "the likelihood of undue prejudice to the non-moving party is heightened"). "Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages." *Avago Techs. Fiber IP (Sing.) Pte Ltd. v. IPtronics Inc.*, 2011 U.S. Dist. LEXIS 82665, at *16 (N.D. Cal. July 28, 2011) (citing *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327-28 (Fed. Cir. 2008)). Staying a case while such harm is ongoing prejudices the patentee that seeks timely enforcement of its right to exclude. *Id.* (citing *Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009)). Generally, in cases of direct competition between litigants, "courts presume that a stay will prejudice the non-movant." *ADA Sols., Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 351 (D. Mass. 2011).

Indeed, the Federal Circuit has stated that:

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

> Competitors change the marketplace. Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers. The market is rarely the same when a market of multiple sellers is suddenly converted to one with a single seller by legal fiat. Requiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option.

*Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996); *see also Avago Techs.*, 2011 U.S. Dist. LEXIS 82665, at *17 ("Even 'ordinary' competition can justify denial of a stay when that competition is based on alleged infringement and has effects that would be difficult to reverse after the fact.").

Here, in connection with Twilio's prior motion to stay in *TeleSign I*, this Court acknowledged that TeleSign will suffer prejudice "due to its market competition with Defendant."[18]  At that time, though, the Court found that the prejudice factor weighed "only slightly against a stay" because TeleSign had not presented new evidence from that which was found lacking during the preliminary injunction proceedings.[19] TeleSign respectfully asks the Court to not hold TeleSign to the standard necessary to support a preliminary injunction when, in the context of avoiding a stay, it need only show undue prejudice, which here is presumed because the parties are direct competitors.  One of the underlying reasons why the relevant showing in a stay context is undue prejudice instead of irreparable harm, *see United Pet Group, Inc. v. MiracleCorp Prods.*, No. 12-00440, 2012 U.S. Dist. LEXIS 88926, at *8 (E.D. Mo. June 27, 2012) ("Irreparable harm, however, is not the standard in the present context[.]"); *Prestige Jewelry Int'l, Inc. v. BK Jewellery HK*, No. 12-2930, 2012 U.S. Dist. LEXIS 63850, at *9 (S.D.N.Y. Mar. 27, 2012) ("They don't have to [prove irreparable harm]; that is not the test."), is precisely because such evidence lies with

---

[18] *TeleSign I*, ECF No. 124 at 7.

[19] *Id.*

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

the defendant.  It is Twilio who has customer records showing, for example, which customers were formerly TeleSign's customers, what products or services each customer has purchased, how Twilio has been able to cross sell, what prices Twilio offered in order to get the customers' business, etc.

The harm outlined above demonstrates that the current stay already has caused losses from which TeleSign is not likely to recover.  Thus, prejudice from this direct competition is not only presumed, it is proven.  *See, e.g., Trebro Mfg. v. FireFly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014) ("[T]he record shows that a loss of market share and customers is a loss that Trebro is not likely to recover.").  In sum, the status of the parties as direct competitors and the risk of undue competitive harm create a risk of undue prejudice that weighs against issuing a stay.  *See Asetek Holdings, Inc. v. Cooler Master Co*., 2014 U.S. Dist. LEXIS 47134 (N.D. Cal. Apr. 3, 2014) (finding that a stay could produce undue prejudice, though degree of prejudice is difficult to estimate).

### 4.    A further stay will put TeleSign at a clear tactical disadvantage.

Not only will prolonging this case allow Twilio to continue using its infringement to improperly obtain a competitive advantage over TeleSign,[20] a further stay would provide Twilio with an unfair tactical advantage in its race to have its own infringement claims heard first.  TeleSign filed its first patent infringement action against Twilio in this court in April 2015.  Twilio filed its own patent infringement action against TeleSign 20 months later, in December 2016, in the Northern District of California.  Not surprisingly, Twilio is taking vastly different positions in the NDCA case than here.[21]  Twilio wants the NDCA case to proceed first, and the *TeleSign I* and

[20] *Gentherm Can., Ltd. v. IGB Auto., Ltd.*, No. 13-11536, 2015 U.S. Dist. LEXIS 23180, at *7 (E.D. Mich. Feb. 26, 2015) (observing, in a patent-infringement case between competitors, that "prolonging the case will allow Defendant to continue using that infringement to obtain an improper competitive advantage over Plaintiff").

[21] *See supra* at 1 & nn. 1, 2.

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

*TeleSign II* cases to be put on the back burner.[22]  A further stay of these cases presents an unfair tactical advantage to Twilio and puts TeleSign at a clear tactical disadvantage.

### D. Twilio's cases are distinguishable.

Twilio cites many cases where a court granted a stay.  But virtually all of the cases cited by Twilio in its Motion can be distinguished from the facts of this case because either (1) they do not involve competitors (where the likelihood of prejudice is heightened or presumed), or (2) they involve IPRs where all or nearly all asserted claims are challenged (and thus the likelihood of simplification of issues is heightened or presumed).   The closest case involving both—competitors and fewer than all asserted claims being challenged in the IPR—is *Riverbed Tech., Inc., v. Silver Peak Sys., Inc.*, No. C 13–02980, 2014 WL 1647399 (N.D. Cal. Mar. 14, 2014).  But *Riverbed* is distinguishable because, in that case, "the parties [had] sought IPR for **almost all** of the claims on the patents in suit."  *Id.* at *3.  In this case, only a small minority of claims are at issue, presently only 15 of 84 claims, and as of June 28—at the conclusion of the '034 IPR—that number will drop to only 4 of 84 (the four claims of the '792 patent).   Thus, Twilio not yet cited a single case where the parties are similarly situated with related facts where a Court imposed a further stay.

## IV.  CONCLUSION

TeleSign has been limited to defensive mode ever since the stay was instituted in March 2016.   Since then, it has had to defend itself against five post-grant proceedings and then a seemingly retaliatory lawsuit asserting seven patents.   But

---

[22]  Relatedly, when TeleSign filed a potentially case-dispositive motion to dismiss based on 35 U.S.C. § 101 in the NDCA case, Twilio asserted that no stay was appropriate despite the potential for issues simplification; rather, proposing only a short extension for TeleSign to respond to written discovery. Ex. A at 7:25-8:1 (by Mr. Stacy, "So I think the process doesn't need a formal stay. We can just let it go forward."); *see also id.* at 14:21-22 (reflecting TeleSign's agreement to not push for a stay).

contrary to Twilio's representations to this Court about issues simplification, Twilio repeatedly has lost in its bids to attack TeleSign's patents, revealing their strength. With all its resources, Twilio could not convince the Patent Office to conduct *inter partes* reviews of the '920 and '038 patents, even with rehearing requests, and failed in its attempt to institute a CBM review of the '792 patent. Come the end of June, the Court will have a full record in the '034 IPR, but —should TeleSign prevail—Twilio will likely ask the Court to ignore that outcome or argue that the Court reach alternative positions favorable to Twilio. Very few, if any, unique issues remain to be simplified, issues that pale in comparison to the harm that will beset TeleSign if a further stay is ordered. TeleSign respectfully asks that the Court not impose any additional stays in this case.

OPPOSITION TO TWILIO'S MOTION TO STAY CASE

Dated:   May 1, 2017          Signed:/s/  Jesse J. Camacho

Gary Miller
(gmiller@shb.com)
Shook, Hardy & Bacon L.L.P.
111 S. Wacker Dr.
Chicago, IL 60606
Telephone:  312.704.7700
Facsimile:  312.558.1195

Jesse Camacho
(jcamacho@shb.com)
Mary Jane Peal
(mpeal@shb.com)
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone:  816.474.6550
Facsimile:  816.421.5547

Tony M. Diab
(tdiab@shb.com)
Shook, Hardy & Bacon L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California 92614
Telephone:   949.475.1500
Facsimile:   949.475.0016

Attorneys for Plaintiff
TELESIGN CORPORATION