# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| TWILIO, INC., | ) | C-16-06925 LHK |
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| VS. | ) | MARCH 1, 2017 |
| | ) | |
| TELESIGN CORPORATION, | ) | PAGES 1-36 |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LUCY H. KOH
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:      BAKER BOTTS
                        BY:  WAYNE O. STACY
                        2001 ROSS AVENUE
                        DALLAS, TEXAS  75201

                        BY:  JAY B. SCHILLER
                        1001 PAGE MILL ROAD
                        BUILDING ONE, SUITE 200
                        PALO ALTO, CALIFORNIA  94304

FOR THE DEFENDANT:      SHOOK, HARDY & BACON
                        BY:  JESSE J. CAMACHO
                        2555 GRAND BOULEVARD
                        KANSAS CITY, MISSOURI  64108

                        BY:  GARY MILLER
                        111 SOUTH WACKER DRIVE, 51ST FLOOR
                        CHICAGO, ILLINOIS  60606

OFFICIAL COURT REPORTER:     LEE-ANNE SHORTRIDGE, CSR, CRR
                             CERTIFICATE NUMBER 9595

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

Ex. A - p. 026

```
 1      SAN JOSE, CALIFORNIA                    MARCH 1, 2017

 2                      P R O C E E D I N G S

 3          (COURT CONVENED AT 2:10 P.M.)

 4              THE CLERK:  OKAY.  CALLING CASE NUMBER 16-CV-06925,

 5      TWILIO, INC. VERSUS TELESIGN CORPORATION.

 6          COUNSEL, PLEASE STATE YOUR APPEARANCES.

 7              MR. STACY:  WAYNE STACY FOR TWILIO.  WITH ME IS

 8      J.B. SCHILLER.

 9              THE COURT:  OKAY.  WAYNE STACY AND WHO ELSE IS WITH

10      YOU?  I'M SORRY.

11              MR. STACY:  THIS IS J.B. SCHILLER.

12              THE COURT:  OKAY.  WELCOME.

13              MR. STACY:  THANK YOU.

14              MR. CAMACHO:  YOUR HONOR, THIS IS JESSE CAMACHO FOR

15      TELESIGN, ALONG WITH MY PARTNER.

16              MR. MILLER:  GARY MILLER FOR TELESIGN, TOO, YOUR

17      HONOR.

18              THE COURT:  ALL RIGHT.  GOOD AFTERNOON AND WELCOME.

19      YOU CAN TAKE A SEAT, WHATEVER IS MORE COMFORTABLE FOR YOU.

20          IN YOUR INITIAL DISCLOSURES THAT YOU EXCHANGED ON

21      FEBRUARY 21, DID YOU ACTUALLY PRODUCE ANY DOCUMENTS OR DID YOU

22      JUST EXCHANGE LISTS OF CATEGORIES OF DOCUMENTS IN YOUR

23      POSSESSION?

24              MR. STACY:  LISTS OF CATEGORIES AT THIS POINT IN

25      TIME.
```

1                MR. CAMACHO:  SAME.

2                THE COURT:  ALL RIGHT.  THAT'S FINE.

3            SO WHAT'S THE STATUS OF YOUR PREVIOUS LAWSUITS?  ARE --

4    ARE THEY STILL PENDING?  THE ONE IN THE CENTRAL DISTRICT OF

5    CALIFORNIA, WHAT'S THE RESOLUTION OF THAT ONE?

6                MR. STACY:  WE GO SEE JUDGE GUTIERREZ ON MARCH 17TH

7    TO TALK ABOUT THE SCHEDULE FOR THE SECOND LITIGATION, AND THE

8    FIRST LITIGATION IS CURRENTLY STAYED.

9                THE COURT:  OKAY.

10               MR. STACY:  SO I SUSPECT WE'LL GET A SCHEDULE FOR

11   EVERYTHING GOING FORWARD FROM THERE.

12               THE COURT:  OKAY.  THE FIRST LITIGATION IS STAYED

13   BECAUSE OF IPR, OR WHAT?

14               MR. STACY:  CORRECT.

15               THE COURT:  AND WHAT'S THE STATUS OF YOUR IPR?

16               MR. STACY:  THERE WERE THREE SEPARATE PATENTS.  ONE

17   IPR INSTITUTED, FINAL WRITTEN DECISION DUE IN, I BELIEVE, LATE

18   JUNE.  AND THE OTHER TWO WERE NOT INSTITUTED.

19               THE COURT:  OKAY.  SO WHAT'S HAPPENING WITH THE TWO

20   FOR WHOM IPR WAS DENIED?  IS THAT BEING LITIGATED?  WHAT'S --

21               MR. STACY:  THEY ARE PART OF -- BECAUSE IT'S AN

22   OVERLAPPING SERIES OF PATENTS, RIGHT NOW IT'S ALL STAYED UNTIL

23   JUNE.

24               THE COURT:  I SEE.  AND YOU'RE EXPECTING, YOU SAID, A

25   DECISION IN JUNE?

1             MR. STACY:  YES.  I THINK IT'S LATE JUNE.

2             MR. CAMACHO:  THE 27TH.

3             MR. STACY:  THE 27TH OF JUNE.

4             THE COURT:  OKAY.  SO THAT IS STAYED.

5         ALL RIGHT.  THEN TELL ME, IS THAT -- IS THAT IT FOR

6     TELESIGN I?

7             MR. STACY:  CORRECT, THAT'S --

8             THE COURT:  OKAY.  AND THEN THE SECOND LITIGATION IS

9     A FOURTH PATENT; CORRECT?

10            MR. STACY:  IT'S A FOURTH PATENT.  IT'S THE '792

11    PATENT.  IT'S RELATED TO THE TWO THAT WERE NOT INSTITUTED.

12            THE COURT:  OKAY.

13            MR. STACY:  AND IT'S A CONTINUATION OF THE TWO THAT

14    WERE NOT INSTITUTED.  SO WE'LL -- THE -- TECHNICALLY THE CMC ON

15    THE 17TH IS ONLY ON THAT PATENT, BUT I WOULD SUSPECT EVERYTHING

16    WILL BE DISCUSSED.

17            THE COURT:  ALL RIGHT.  SO YOU FILED A SEPARATE

18    CENTRAL DISTRICT OF CALIFORNIA ACTION ON THE '792?

19            MR. STACY:  THEY DID.

20            THE COURT:  OKAY.

21            MR. CAMACHO:  WE'RE PLAINTIFFS IN THE CENTRAL

22    DISTRICT.

23            THE COURT:  ALL RIGHT.  AND THAT WAS RELATED TO THE

24    FIRST CASE BEFORE JUDGE GUTIERREZ?

25            MR. CAMACHO:  THAT'S RIGHT.  IT'S A CHILD PATENT.

5

```
 1        JUST LIKE MR. STACY SAID, IT'S A CHILD PATENT OF TWO PARENT

 2   PATENTS THAT ARE IN-SUIT ON TELESIGN I.

 3              THE COURT:  AND WHY -- YOU KNOW, THAT ONE WAS

 4   FILED -- THAT LAWSUIT WAS FILED ON MARCH 28TH OF 2016.  THERE'S

 5   BEEN NO STAY; CORRECT?

 6              MR. CAMACHO:  CORRECT.

 7              THE COURT:  SO HOW COME NOTHING HAS HAPPENED IN THE

 8   CASE?  DID YOU PETITION FOR IPR AND NOTHING WAS INSTITUTED,

 9   OR --

10              MR. STACY:  SO THERE WERE A SERIES OF MOTIONS TO

11   DISMISS THAT -- ONE THAT WAS GRANTED BY JUDGE GUTIERREZ BASED

12   ON THE PLEADINGS REQUIRED MORE PLEADING.  AND THAT SCHEDULE

13   JUST TOOK, TOOK TIME.

14        AND THEN I GUESS THE LAST HEARING -- THE LAST DECISION

15   CAME DOWN IN JANUARY OR SO AND THIS WAS THE DATE HE PICKED UP.

16        WE DO HAVE AN IPR PENDING INSTITUTION.  DECISION IS DUE BY

17   MARCH 15TH.

18              THE COURT:  OKAY.  AND WHEN ARE YOU GOING BEFORE

19   JUDGE GUTIERREZ?

20              MR. STACY:  MARCH 17TH.

21              THE COURT:  OKAY.  AND THERE'S NO DESIRE TO HAVE THIS

22   CASE TRANSFERRED DOWN TO THE CENTRAL DISTRICT?

23              MR. STACY:  NO.  TWILIO IS A LOCAL COMPANY AND THE

24   HARM IS HERE, THE WITNESSES ARE HERE.  EVERYTHING IS HERE FOR

25   THIS CASE --
```

**Ex. A - p. 030**

```
1              THE COURT:  OKAY.

2              MR. STACY:  -- WHERE WE'RE THE PLAINTIFF, AT LEAST.

3              THE COURT:  ALL RIGHT.  ALL RIGHT.  WELL, THANK YOU

4      FOR ALL THAT BACKGROUND INFORMATION.

5          I WASN'T CLEAR ON WHETHER THE DEFENDANT IS SEEKING A

6      DISCOVERY STAY OR NOT.

7              MR. CAMACHO:  SO WE HAD PROPOSED ON PAGE 5, YOUR

8      HONOR, THAT DISCOVERY BEYOND ANYTHING -- ANYTHING BEYOND THE

9      LOCAL RULES SHOULD NOT TAKE PLACE UNTIL THE COURT HAS HAD AN

10     OPPORTUNITY TO RULE ON OUR 101 MOTION TO DISMISS.

11             THE COURT:  OKAY.  SO YOU ARE FINE GOING FORWARD WITH

12     PATENT LOCAL RULE PRODUCTIONS?

13             MR. CAMACHO:  YES, SO FAR, THAT SOUNDS FINE.

14             THE COURT:  OKAY.  WHAT IS THE PLAINTIFF'S POSITION

15     ON THAT?

16             MR. STACY:  IT'S HIGHLY UNUSUAL TO SHUT DOWN A

17     SELECTIVE PIECE OF DISCOVERY FOR A PENDING 101 MOTION.  THEY'RE

18     KIND OF, YOU KNOW, THROWN OUT AND THROWN AROUND ALL THE TIME IN

19     PATENT CASES, SO IT WOULD JAM EVERY CASE UP.

20         I THINK WITH THE SCHEDULE WE HAVE, WE CAN PROGRESS WITH A

21     NICE ORDERLY DISCOVERY.  WE HAVEN'T SERVED DISCOVERY YET.  YOU

22     KNOW HOW THE FIRST SET OF DISCOVERY ROLLS OUT.  WE WOULD

23     PROBABLY SERVE THEM NEXT WEEK, THIS WEEK, GIVE A 30 DAY

24     EXTENSION.

25             SO I THINK THE PROCESS DOESN'T NEED A FORMAL STAY.  WE CAN
```

**Ex. A - p. 031**

```
1    JUST LET IT GO FORWARD.  THE PARTIES WILL BE RELATIVELY

2    EFFICIENT ABOUT DOCUMENT PRODUCTION EARLY ON, SO --

3              THE COURT:  UM-HUM.

4              MR. STACY:  IT'S MOSTLY A HARDSHIP TO US WHILE WE TRY

5    TO MOVE THE CASE FORWARD.

6              THE COURT:  UM-HUM.  WELL, WHAT IF IT'S A MIXED

7    RULING, IF CERTAIN PATENTS OR CERTAIN CLAIMS ARE DISMISSED ON

8    101 GROUNDS AND OTHERS AREN'T?  I'M A LITTLE BIT CONCERNED

9    ABOUT DOING SOME TYPE OF, YOU KNOW, BIFURCATED DISCOVERY.

10             MR. CAMACHO:  YES.  SO, YOU KNOW, OUR CONCERN IS THAT

11   IF WE WERE TO RECEIVE DISCOVERY REQUESTS FROM THE PLAINTIFF AND

12   THOSE DISCOVERY REQUESTS WERE ASSOCIATED WITH CERTAIN

13   PATENTS --

14             THE COURT:  RIGHT.

15             MR. CAMACHO:  -- THAT THEN THE COURT FOUND INVALID AT

16   THIS EARLY STAGE, THEN OUR CLIENT WOULD UNNECESSARILY BE PUT

17   THROUGH THE TIME AND EXPENSE OF RESPONDING TO THAT DISCOVERY.

18             THE COURT:  SURE.  OKAY.

19             MR. CAMACHO:  SO ALL WE'RE PROPOSING IS REALLY KIND

20   OF THE SAME -- IT'S REALLY THE SAME RATIONAL THAT TWILIO

21   ADVANCED IN CONNECTION WITH MOVING TO STAY THE CENTRAL DISTRICT

22   CASE, WHICH IS, HEY, THERE MAY BE SOME ISSUES SIMPLIFIED IN

23   IPR, LET'S PUT EVERYTHING ON ICE.

24        WE'RE NOT NECESSARILY PROPOSING WE PUT EVERYTHING ON ICE,

25   BUT TO THE EXTENT THERE'S ADDITIONAL DISCOVERY, TO US IT JUST
```

1      SEEMS LIKE A POTENTIAL WASTE OF EFFORT --

2              THE COURT:  UM-HUM.

3              MR. CAMACHO:  -- PENDING THE COURT'S RULING.

4              THE COURT:  I SEE.  BUT YOU'RE -- WELL, THE

5      MARCH 15TH DEADLINE WOULD ONLY APPLY TO THE PLAINTIFFS ANYWAY,

6      THE INFRINGEMENT CONTENTIONS AND ACCOMPANYING PRODUCTIONS.

7          YOU WOULD NOT BE AFFECTED BY THE PATENT LOCAL RULES

8      BECAUSE YOUR DEADLINE WOULD BE MAY 1 FOR THE INVALIDITY

9      CONTENTIONS.

10             MR. CAMACHO:  WE WOULD STILL BE ON THE HOOK.  OUR 45

11      DAYS WOULD START TICKING FOR THE INVALIDITY CONTENTIONS.

12             THE COURT:  WELL, YOUR INVALIDITY CONTENTIONS WOULD

13      STILL BE DUE ON MAY 1ST.

14             MR. CAMACHO:  CORRECT.

15             THE COURT:  YEAH.  I GUESS -- AND I DON'T KNOW --

16      YOUR MOTION IS A MONSTER.  BASICALLY IT MOVES ON ALL CLAIMS AND

17      ALL PATENTS, AND THERE ARE A LOT OF PATENTS IN THIS CASE.

18          I'M UNCLEAR ON ARE THERE CERTAIN PATENTS -- THERE'S SEVEN

19      COUNTS OF PATENT INFRINGEMENT.  ARE THERE CERTAIN PATENTS OR

20      CERTAIN CLAIMS THAT ONLY ADDRESS CERTAIN OF THE PRODUCTS?

21      OR -- DO YOU SEE WHAT I'M SAYING?  ARE ALL PRODUCTS -- THE

22      EIGHT DIFFERENT PRODUCTS, ARE THEY ALL ALLEGED TO BE INFRINGING

23      ALL OF THE ASSERTED PATENTS?

24             MR. STACY:  NO.  THERE ARE SEVEN, SEVEN PATENTS,

25      FIVE -- FOUR FAMILIES.

```
1                    THE COURT:  UM-HUM, RIGHT.

2                    MR. STACY:  FOUR DIFFERENT FAMILIES.

3                    THE COURT:  YES.

4                    MR. STACY:  AND THERE'S A MIX OF WHICH PRODUCTS ARE

5       INCLUDED.

6                    THE COURT:  UM-HUM.

7                    MR. STACY:  SO FAMILY ONE HAS THREE, THREE DIFFERENT

8       PRODUCTS; THERE'S SOME OVERLAP FOR FAMILY TWO AND IT ADDS

9       ADDITIONAL PRODUCTS.

10                    THE COURT:  UM-HUM.

11                    MR. STACY:  SO THERE'S NOT A CLEAN, CLEAN BREAK WHERE

12      YOU CAN SAY, PRODUCT ONE IS ONLY LINKED TO THESE PATENTS.

13                    THE COURT:  WELL, LET'S -- LET'S -- YOU KNOW, LET'S

14      GO THROUGH THE DIFFERENT PRODUCTS.

15           SO SCORE, IS THAT ACCUSED OF INFRINGING ALL FOUR FAMILIES?

16                    MR. STACY:  SCORE IS ONE FAMILY.

17           AND IF YOU DON'T MIND, I'M GOING TO BRING UP MY EXPERT ON

18      THIS.

19                    THE COURT:  SURE.

20           AND, YOU KNOW, IF YOU'RE NOT -- IF IT WOULDN'T BE

21      PRODUCTIVE TO GO THROUGH THIS LEVEL OF DETAIL, THAT'S FINE.

22      I'M JUST TRYING TO GET A SENSE OF -- YOU KNOW, NORMALLY I

23      WOULDN'T STAY DISCOVERY.  BUT IF THERE IS GOING TO BE A GRANT

24      THAT MIGHT ELIMINATE A PATENT, THEN IT DOESN'T MAKE SENSE TO BE

25      ORDERING PRODUCTION OF DISCOVERY IN RESPONSE.
```

10

```
 1              MR. STACY:  AND, YOUR HONOR, MAYBE I -- I RARELY,

 2     RARELY WOULD BE SO BOLD TO ASK SOMETHING LIKE THIS, BUT WHAT

 3     ARE WE LOOKING AT IN TERMS OF DECISION TIME?  THAT MAY DICTATE

 4     IF IT'S --

 5              THE COURT:  YEAH.

 6              MR. STACY:  I MEAN, I'VE SEEN SOME OF THOSE LINGER

 7     FOR 18 MONTHS AND THEN WE ROLLED OUT WITH SUMMARY JUDGMENT.

 8              THE COURT:  NO.

 9              MR. STACY:  SOME NINE MONTHS, SOME THREE MONTHS, SOME

10     SIXTY DAYS.

11              THE COURT:  YEAH.

12              MR. STACY:  LIKE I SAID, WE DIDN'T RUSH TO SERVE

13     DISCOVERY FOR THIS TYPE OF REASON.  SO WE'RE LOOKING AT, RIGHT

14     NOW, 60 DAYS OUT BEFORE DISCOVERY RESPONSES WOULD BE DUE ANYWAY

15     IF WE SERVED TOMORROW BECAUSE WE'D GIVE A 30 DAY ROUTINE

16     EXTENSION NO MATTER WHAT.

17              THE COURT:  I SEE.

18              MR. STACY:  IT MIGHT BE THAT THAT'S THE EASIEST WAY

19     TO HANDLE THAT IF YOU GIVE US A TIMEFRAME THAT IT WOULD BE OKAY

20     TO SERVE DISCOVERY NOW AND THAT RESPONSES WOULD BE DUE.

21              THE COURT:  RIGHT, SURE.

22           OKAY.  WELL, YOU KNOW, NORMALLY I WOULDN'T HAVE ANYTHING

23     PENDING MORE THAN FOUR WEEKS FROM THE HEARING DATE.  THERE ARE

24     INSTANCES WHERE I'VE ISSUED A CLAIM CONSTRUCTION ORDER THE DAY

25     AFTER THE TUTORIAL AND A WEEK BEFORE THE CLAIM CONSTRUCTION
```

**Ex. A - p. 035**

11

```
 1    HEARING.  SO IT JUST VARIES ON WHAT OTHER MATTERS WE ARE

 2    JUGGLING AND HOW LONG IT'S GOING TO TAKE.

 3           NOW, THIS MOTION TO DISMISS FOUR PATENT FAMILIES, IT'S A

 4    LOT.  IT'S A LOT TO COVER, SO I CAN'T TELL YOU HOW QUICKLY THAT

 5    COULD BE ISSUED.  BUT, YOU KNOW, HOPEFULLY WITHIN A MONTH OF

 6    THE HEARING DATE.

 7              MR. STACY:  OKAY.

 8              THE COURT:  I TRY NOT TO HAVE ANYTHING PENDING LONGER

 9    THAN THAT, AND IN MANY INSTANCES -- IF THIS WEREN'T SO BIG --

10    YOU KNOW, IN MANY INSTANCES I ACTUALLY ISSUE THE ORDER THE

11    TUESDAY BEFORE THE THURSDAY HEARING DATE, AND I WOULD SAY

12    PROBABLY IN 50 TO 60 PERCENT OF CASES, WE USUALLY TRY TO GET

13    THE ORDERS OUT BEFORE THE HEARING DATE AND WE VACATE THE

14    HEARING.

15           NOW, IT REALLY DEPENDS ON HOW COMPLEX THE MOTION IS AS TO

16    WHETHER WE CAN MEET THAT DEADLINE, AND I KNOW WITH SEVEN

17    PATENTS AND A 101 CHALLENGE, THAT'S NOT LIKELY TO HAPPEN.

18              MR. STACY:  WOULD IT --

19              THE COURT:  BUT I THINK WE COULD GET IT OUT WITHIN A

20    MONTH OF THE MARCH 30TH HEARING DATE.  THAT'S FEASIBLE.

21              MR. STACY:  WOULD IT MAKE YOUR LIFE EASIER, INSTEAD

22    OF HAVING TO RULE ON A STAY AND HAVE THAT CITED BACK OVER AND

23    OVER TO YOU AGAIN ABOUT STAYING DISCOVERY PENDING 101, IF WE

24    SAID -- IF WE SERVED DISCOVERY MONDAY, THAT IT'S NOT DUE UNTIL

25    APRIL 15TH?
```

**Ex. A - p. 036**

```
1            MR. CAMACHO:  YOUR HONOR, YEAH.  IT --

2            THE COURT:  IS THAT ACCEPTABLE TO YOU?

3            MR. CAMACHO:  WELL, SEE, HERE'S THE THING:  IN THE

4    PATENT CASES THAT I'VE BEEN INVOLVED IN ON BOTH SIDES, I WOULD

5    EXPECT THE DISCOVERY REQUESTS THAT I WOULD RECEIVE ARE GOING TO

6    SAY SOMETHING ALONG THE LINES OF ALL DOCUMENTS REGARDING THE

7    PRODUCTS, THE TECHNICAL DESCRIPTIONS, SOURCE CODE, ET CETERA,

8    REVENUE.

9            SO IT'S -- THE PROBLEM IS EVEN INTERACTING WITH MY CLIENT

10   AND HAVING PUT MY -- PUTTING MY CLIENT THROUGH THE REQUIREMENTS

11   TO BE -- TO EVEN BE IN A POSITION TO RESPOND TO THE DISCOVERY

12   REQUESTS.

13           I GUESS I'M TRYING TO AVOID A HARD CONVERSATION WITH MY

14   CLIENT, WHICH IS, OKAY, WE GOT THIS FAVORABLE RULING, WHY DID

15   WE HAVE TO GO THROUGH ALL OF THIS EXERCISE INTERNALLY, AND DID

16   YOU AT LEAST ASK FOR IT?

17           SO TO US, WE WOULD SAY IT JUST MAKES MORE SENSE TO WAIT

18   UNTIL AFTER THE 101 MOTION HAS BEEN RULED ON, THEN I THINK

19   THERE'S ENOUGH TIME IN THIS SCHEDULE WHERE WE JUST PICK UP

20   DISCOVERY FROM THAT POINT FORWARD AND THEN MOVE ON.

21           THE COURT:  RIGHT.  MY RELUCTANCE IS, THOUGH, NOT

22   HAVING REVIEWED THE MOTION, SO I'M NOT COMMENTING ON HAVING

23   REVIEWED THE PATENTS, BUT IT SEEMS UNLIKELY THAT YOU WOULD GET

24   A TOTAL WIN ON SEVEN PATENTS, RIGHT?  SO I THINK SOME DISCOVERY

25   IS GOING TO BE NECESSARY.  SOME CASE WILL BE MOVING FORWARD.
```

13

1    SO HAVING A COMPLETE BLANKET STAY, THAT IS ALSO GIVING ME

2    PAUSE.  THAT'S ACTUALLY WHY I WANTED TO CALL YOUR CASE LAST,

3    BECAUSE I THINK THIS IS A TRICKIER ISSUE.

4        MR. CAMACHO:  AND THAT'S WHY WE'RE NOT COMING FORWARD

5    AND SAYING LET'S PUT EVERYTHING -- LET'S EVEN AVOID THE LOCAL

6    RULES.  THE LOCAL RULES IN THE NORTHERN DISTRICT ARE PRETTY

7    COMPREHENSIVE.  THEY'RE DESIGNED TO ACCOMMODATE DISCLOSURE AND

8    REBUTTAL DISCLOSURE AND THEN DISCLOSURE.  THEY'RE THE TYPE OF

9    THINGS THAT, IN JURISDICTIONS THAT DON'T HAVE RULES, ARE JUST

10   HANDLED BY ROGS.  SO WE'RE NOT TRYING TO SAY LET'S PUT THE CASE

11   ON ICE.

12       BUT AS FAR AS ADDITIONAL THINGS BEYOND THE LOCAL RULES, TO

13   US IT SEEMS LIKE THAT'S WHERE THE BALANCE IS.

14       THE COURT:  RIGHT.  AND I RARELY EVER VARY FROM THE

15   PATENT LOCAL RULES HERE.

16       MR. CAMACHO:  RIGHT, SURE.  OF COURSE.

17       THE COURT:  I WAS GOING TO ADOPT THEM WHOLESALE

18   TODAY.

19       MR. STACY:  WOULD --

20       THE COURT:  GO AHEAD.

21       MR. STACY:  SO I'M LOOKING AT THE SCHEDULE HERE.

22       THE COURT:  UM-HUM.

23       MR. STACY:  AND MY CONCERN IS, BEING AROUND TOO MANY

24   PATENT LAWYERS AND BEING ONE MYSELF, YOU SERVE THE DISCOVERY

25   AND ASK FOR THE 30 DAY EXTENSION AND THEN GIVE HALF RESPONSES

14

1    AND THEN WE'RE PUSHED OUT WELL -- YOU KNOW, WELL INTO THE MAIN

2     PART OF THE CASE BEFORE WE EVER GET THINGS STARTED.

3         LOOKING AT THE SCHEDULE, IF WE -- BASED ON WHAT YOU WERE

4     SUGGESTING FOR A RULING, IF WE COULD GET DISCOVERY RESPONSES,

5     SAY, JUNE 1ST, THAT WOULD ALLEVIATE MR. CAMACHO'S TIMING ISSUE

6     BECAUSE THE HEARING IS MARCH 30TH.  THAT WOULD GIVE THEM 30

7     DAYS.  WE'LL GO AHEAD AND SERVE THEM, HE'S GOT PLENTY OF TIME

8     TO WORK THINGS OUT.

9         MAYBE WE GO AHEAD AND GET THE OBJECTIONS IN AND WORK OUT

10    THE OBJECTIONS AHEAD OF TIME.  THAT WAY WE CAN GET GOING ONCE

11    THE RULING IS DONE.

12         I JUST DON'T WANT TO GO THROUGH REALLY THE TROUBLE OF

13    HAVING DISCOVERY STAYED AND THEN HAVING ALL THE -- YOU KNOW,

14    THE TYPICAL LAWYER GAMES WITH OBJECTIONS AND GETTING ANSWERS

15    FILLED OUT LATER ON.  SO ONE OPTION COULD BE WE GO AHEAD AND

16    SERVE DISCOVERY, WE GET OBJECTIONS IN THE NORMAL COURSE, WORK

17    THROUGH THE OBJECTIONS, AND THEN SET JUNE 1ST FOR A FORMAL

18    PRODUCTION AND INTERROGATORY RESPONSE DEADLINE.

19              THE COURT:  THAT SOUNDS REASONABLE.

20              MR. CAMACHO:  I AGREE.

21              THE COURT:  ALL RIGHT.  THEN FINE.  IT SOUNDS LIKE

22     YOU'VE WORKED IT OUT BY WAY OF STIPULATION.  THANK YOU.

23         OKAY.  ALL RIGHT.  FILE YOUR STIPULATED PROTECTIVE ORDER

24    BY MARCH 31 OF 2017.  AND JUDGE VAN KEULEN IS OUR DISCOVERY

25    JUDGE IN THE CASE, SO IF YOU WOULD PLEASE FILE IT FOR HER

```
1    SIGNATURE.
2              MR. STACY:  AND ONE THING THAT COMES UP ON THE
3    PROTECTIVE ORDER.
4              THE COURT:  YES?
5              MR. STACY:  I'VE HAD EXPERIENCES HERE IN THE NORTHERN
6    DISTRICT WHERE JUDGES WANT THE NORTHERN DISTRICT FORM.  SINCE
7    WE'RE TRYING TO BALANCE THE CENTRAL DISTRICT ALSO, SO WE DON'T
8    HAVE TO DO DIFFERENT PRODUCTIONS AND HAVE DIFFERENT STANDARDS
9    ON THE SAME DOCUMENTS, HOW WOULD YOU LIKE US TO TRY TO
10   RECONCILE THE TWO?
11             THE COURT:  OH.  I DON'T THINK THERE'S -- AT LEAST
12   FROM MY PERSPECTIVE, THERE'S NO LOYALTY TO THE NORTHERN
13   DISTRICT ORDER.  I MEAN, THAT'S A MODEL ORDER.  THAT'S REALLY
14   JUST A DEFAULT ORDER UNTIL YOU CAN RESOLVE WHAT YOUR CUSTOMIZED
15   ORDER IS.  THAT'S JUST DEFAULT SO THAT DISCOVERY KEEPS GOING
16   AND NO ONE CAN USE THE LACK OF A PROTECTIVE ORDER AS AN EXCUSE
17   NOT TO PURSUE ANY, YOU KNOW, DISCOVERY RESPONSES AND WHATNOT.
18             MR. STACY:  OKAY, PERFECT.
19             THE COURT:  SO I HAVE NO OWNERSHIP INTO THE NORTHERN
20   DISTRICT'S MODEL ORDER.
21             MR. STACY:  OKAY.
22             THE COURT:  SO, I MEAN, WE BASICALLY PREFER, IF YOU
23   CAN, THAT YOU DO IT BY STIPULATION AND WORK OUT ANY
24   DIFFERENCES.
25             NOW, SOMETIMES THERE ARE PROBLEMS WITH, LIKE, PROSECUTION
```

16

```
1    BARS OR ATTORNEYS' EYES ONLY OR WHATEVER.  IF YOU HAVE ANY

2    DISPUTES LIKE THAT, THOSE WOULD BE RESOLVED BY

3    JUDGE VAN KEULEN.  OKAY?

4         ALL RIGHT.  SO GO AHEAD, PLEASE, AND FILE THAT, WHETHER

5    IT'S A STIPULATED PROTECTIVE ORDER OR WHETHER THERE ARE SOME

6    DISPUTES INVOLVED, BY MARCH 31.

7              MR. STACY:  OKAY.

8              THE COURT:  ALL RIGHT.  NOW, LET'S TALK ABOUT YOUR 70

9    HOURS OF DEPOSITION TIME PER PARTY.  I WASN'T SURE IF YOU'RE

10   TRYING TO LIMIT THE NUMBER OF DEPOSITIONS, WHETHER YOU WANT ANY

11   FURTHER CLARIFICATION; OR YOU JUST WANT TO SAY, LOOK, WE'RE

12   EACH ENTITLED TO 70 HOURS, WE CAN USE IT ANY WAY WE WANT.  OR

13   ARE YOU GOING TO HAVE A SEVEN HOUR LIMIT PER WITNESS, ASIDE

14   FROM EXPERTS?

15             MR. STACY:  I WOULD ASSUME THERE WAS A SEVEN HOUR

16   LIMIT PER WITNESS.

17        BUT THE GOAL WAS FOR SOME OF THE SMALLER DETAILS, YOU MAY

18   NEED FOUR ONE HOUR DEPOSITIONS, AND WE DIDN'T WANT TO BE

19   LIMITED TO TEN FOUR -- OR TEN ONE HOUR DEPOSITIONS AND THEY SAY

20   WE'RE DONE.

21             THE COURT:  SURE.

22        DO YOU AGREE WITH THAT?

23             MR. CAMACHO:  YEAH.  WE WERE PICKING OUR BATTLES.

24   THAT WAS SOMETHING THEY PROPOSED, SO IT SEEMED FINE AND WE WERE

25   AGREEING TO IT.
```

```
 1              THE COURT:  OKAY.  THAT'S FINE.  SO WE'RE GOING TO

 2    SAY EACH SIDE HAS A TOTAL OF 70 HOURS OF DEPOSITION TIME, BUT

 3    EACH WITNESS CAN ONLY BE DEPOSED FOR UP TO SEVEN HOURS.

 4              MR. MILLER:  YOUR HONOR, IS THAT ONE SEVEN HOUR DAY

 5    LIKE THE RULES SAY?

 6              THE COURT:  AS OPPOSED TO, WHAT, SPLITTING IT THREE

 7    DAYS -- THREE HOURS ONE DAY, FOUR HOURS ONE DAY?

 8         YOU KNOW, I NEED TO LOOK BACK.  I NEVER KNEW THAT THE RULE

 9    WAS LIMITED -- I THOUGHT IT WAS JUST A SEVEN HOUR CAP AND THE

10    PARTIES COULD WORK IT OUT.

11              MR. MILLER:  ACTUALLY, I HAVEN'T LOOKED AT IT FOR A

12    WHILE, BUT MY RECOLLECTION IS IT'S ONE SEVEN HOUR DAY.

13              THE COURT:  OH, I SEE.  NO, I -- I MEAN, DO YOU HAVE

14    A PREFERENCE?

15              MR. STACY:  I'VE NEVER ACTUALLY HAD THE ISSUE COME

16    UP.  I'VE NEVER HAD ANYBODY TRY TO SPLIT A DAY.  SO I WAS

17    ASSUMING THAT IT WAS ONE SEVEN HOUR DEPOSITION.

18              THE COURT:  OKAY.

19              MR. STACY:  AND NO ONE WAS GOING TO TRY TO DO THREE

20    ONE DAY, HOLD A WITNESS OVER AND DO FOUR THE NEXT, OR PLAY

21    THOSE KINDS OF GAMES.  SO IT SHOULD BE A PRESUMPTION OF ONE

22    SEVEN HOUR DAY.

23              MR. MILLER:  I AGREE.

24              THE COURT:  WELL, IT SOUNDS LIKE YOU'RE IN AGREEMENT

25    ON THAT.
```

Ex. A - p. 042

1          OKAY.  SO EACH WITNESS FOR UP TO SEVEN HOURS PER DAY.

2          ALL RIGHT.  NOW, LET'S TALK ABOUT EXPERTS.  YOU HAVE A

3     DISAGREEMENT, BUT IT SEEMS LIKE IT COULD EASILY BE

4     CIRCUMVENTED.

5          SO THE DEFENDANT SAYS ONE DEPOSITION OF SEVEN HOURS A DAY

6     PER REPORT, AND THEN THE OTHER PARTY SAYS, NO, IT'S PER TOPIC,

7     AND THAT JUST SEEMS LIKE SOMEONE COULD PUT ONE ISSUE OR ONE

8     TOPIC IN ONE REPORT OR COULD PUT ALL THREE IN ONE REPORT.  SO

9     IT SEEMS LIKE THERE COULD BE GAMESMANSHIP HERE.

10          MR. STACY:  I THINK THE LANGUAGE THAT THEY PROPOSE IS

11     JUST FINE.  EVERYBODY IS IN AGREEMENT.  I THINK THAT IT'S -- IF

12     THERE'S NO GAMESMANSHIP IN TRYING TO JAM MULTIPLE THINGS THAT

13     AREN'T NORMALLY PUT TOGETHER INTO ONE REPORT --

14          THE COURT:  RIGHT.

15          MR. STACY:  -- THEN SEVEN PER REPORT IS FINE.

16     THERE'S NO REAL DISPUTE ON THAT.

17          THE COURT:  OKAY.  BUT ARE YOU GOING TO HAVE

18     INFRINGEMENT AND VALIDITY ISSUES IN THE SAME REPORT?  OR ARE

19     THERE GOING TO BE SEPARATE REPORTS?  BECAUSE I DON'T WANT THERE

20     TO BE FIGHTING LATER ON THAT IT'S PER REPORT AND THEN SOME

21     PEOPLE CHOSE TO DO BOTH IN ONE AND ANOTHER CHOSE TO DO ONE BY

22     TOPIC AND THEN YOU GET AN UNEQUAL NUMBER OF HOURS OF EXPERT

23     DEPOSITION TIME.

24          MR. STACY:  SO I THINK TIMING ALONE TAKES CARE OF

25     THAT ISSUE, DOESN'T IT?  I BELIEVE WHEN AN INVALIDITY REPORT IS

19

```
 1    DUE AND WHEN AN INFRINGEMENT REPORT IS DUE AND WHEN DAMAGES
 2    REPORTS ARE DUE -- THE ISSUE COMES UP WITH WILLFULNESS REPORTS,
 3    IF YOU'RE BRINGING SOMETHING LIKE THAT IN, THAT IT'S A LITTLE
 4    HARD TO PREDICT IN MY MIND.
 5             MR. CAMACHO:  SO THAT IS THE ISSUE.  I THINK YOUR
 6    HONOR HAS HIT ON IT.  TO US IT'S VERY CRISP IN ITS OBJECTIVE TO
 7    SAY HOWEVER MANY REPORTS THERE ARE, THERE WILL BE A DEPOSITION
 8    ON THAT.
 9        BUT WHAT WE DO -- WHAT OUR CONCERN WAS IS SOMEHOW THERE'S
10    A REPORT AND THEN THERE'S AN ARGUMENT, WELL, THERE'S FIVE
11    TOPICS IN THIS REPORT, SO WE'RE GOING TO SEAT YOUR PERSON FOR
12    FIVE DAYS.
13        SO DEFENDANTS, TELESIGN, PROPOSED ONE -- ONE DAY PER
14    REPORT.
15             MR. STACY:  AND, YOUR HONOR, I THINK THEIR LANGUAGE
16    IS JUST FINE.  IF SOMETHING POPS UP THAT'S UNUSUAL, WE CAN
17    ADDRESS IT WITH YOU AT THAT POINT IN TIME RATHER THAN TRY TO
18    WORK THROUGH ALL THE PERMUTATIONS.  I THINK WE'RE IN AGREEMENT
19    ON HOW IT SHOULD ACTUALLY WORK.
20             THE COURT:  SURE.  ARE YOU EVEN GOING TO HAVE THE
21    SAME EXPERT FOR BOTH INFRINGEMENT AND VALIDITY?
22             MR. STACY:  IT'S A LITTLE EARLY TO TELL FROM OUR
23    PERSPECTIVE.
24             THE COURT:  OKAY.
25             MR. CAMACHO:  I WOULD -- THAT CERTAINLY SEEMS TO BE
```

1    THE TYPICAL CASE.

2              THE COURT:  UM-HUM.

3              MR. CAMACHO:  SO I WOULD EXPECT THERE TO BE THE SAME

4    EXPERT FOR BOTH INFRINGEMENT AND INVALIDITY.  SOMETHING MIGHT

5    COME UP.  WE'VE HAD SOME EXTREME THINGS HAPPEN IN ONE CASE --

6    IN CASES BEFORE.  BUT GENERALLY I WOULD EXPECT THAT.

7              THE COURT:  SAME PERSON?

8              MR. CAMACHO:  YES.

9              THE COURT:  ALL RIGHT.  WELL, I'LL GO AHEAD AND ADOPT

10   THE DEFENDANT'S PROPOSAL OF ONE EXPERT REPORT -- I'M SORRY --

11   ONE EXPERT DEPOSITION, ONE DAY OF SEVEN HOURS PER EXPERT

12   REPORT.  OKAY?  AND HOPEFULLY THERE WON'T BE ANY DIFFICULTIES

13   WITH THAT.

14        AND YOUR REQUEST OF 50 REQUESTS FOR ADMISSION ON MATTERS

15   OTHER THAN AUTHENTICATION OF DOCUMENTS IS FINE.  OKAY?  SO I

16   THINK WE'RE SET ON THAT.

17        ALL RIGHT.  SO HERE'S THE SCHEDULE.  I ALWAYS FOLLOW THE

18   PATENT LOCAL RULES, AND IT LOOKS LIKE YOUR PROPOSAL DID, TOO,

19   SO THANK YOU.

20        THE DEADLINE TO SERVE INFRINGEMENT CONTENTIONS AND YOUR

21   ACCOMPANYING DOCUMENT PRODUCTION IS MARCH 15, 2017.

22        UNTIL I SPECIFY OTHERWISE, THESE ARE ALL 2017 DATES.

23        THE DEADLINE TO SERVE INVALIDITY CONTENTIONS AND

24   ACCOMPANYING DOCUMENT PRODUCTION IS MAY 1 OF 2017; DEADLINE TO

25   EXCHANGE TERMS FOR CONSTRUCTION IS MAY 15; DEADLINE TO EXCHANGE

Ex. A - p. 045

21

```
 1    PRELIMINARY CONSTRUCTIONS AND EXTRINSIC EVIDENCE IS JUNE 5;

 2    DEADLINE TO SERVE DAMAGES CONTENTIONS IS JUNE 20; DEADLINE TO

 3    FILE JOINT CLAIM CONSTRUCTION AND PRE-HEARING STATEMENT IS

 4    JUNE 30TH -- AND THESE ARE YOUR DATES, I'M JUST ADOPTING

 5    THEM -- DEADLINE TO SERVE RESPONSIVE DAMAGES CONTENTIONS,

 6    JULY 20TH; DEADLINE TO COMPLETE CLAIM CONSTRUCTION DISCOVERY,

 7    JULY 30TH.

 8         NOW, YOU DIDN'T PROPOSE A DATE TO AMEND PLEADINGS, ADD

 9    PARTIES.  I ALWAYS LIKE TO HAVE ONE.  WHAT DATE DO YOU WANT ME

10    TO SET?

11              MR. CAMACHO:  YOUR HONOR, TELESIGN DIDN'T THINK THAT

12    THERE NEEDED TO BE ANY DATE BEYOND WHAT THE FEDERAL RULES WOULD

13    SAY, SO JUST SUBJECT TO RULE 15.  THE DATES ARE WHAT THEY ARE.

14    WE DIDN'T SEE A NEED TO ADD AN ADDITIONAL DATE.

15              THE COURT:  TO ADD AN ADDITIONAL DATE?

16              MR. CAMACHO:  YEAH.

17              MR. STACY:  SO IF I COULD HAVE 30 SECONDS, YOUR

18    HONOR?  LET ME WORK BACK THROUGH THE REPORT.  IF YOU WANTED A

19    DATE, I CAN GIVE YOU AN IDEA OF ONE.

20              THE COURT:  YEAH.

21         (PAUSE IN PROCEEDINGS.)

22              MR. CAMACHO:  ONE OF THE ISSUES THERE --

23              THE COURT:  IT'S JUST THAT ANYONE COULD FILE A MOTION

24    FOR LEAVE TO AMEND PRETTY MUCH AT ANY POINT, AND IT'S NICE TO

25    HAVE ONE DATE THAT I CAN SAY, "YOU MISSED IT.  YOU'RE DONE."
```

Ex. A - p. 046

```
1        IT'S JUST AN EXTRA REASON TO SORT OF GET THE PLEADINGS SETTLED

2    SOONER.

3            MR. CAMACHO:  AND I SUPPOSE OUR ISSUE THAT WE'VE RUN

4    INTO WITH OTHER CASES, NOT NECESSARILY --

5            THE COURT:  YEAH.

6            MR. CAMACHO:  -- WITH PLAINTIFF, IS THE MISREADING OF

7    THAT DATE AS THOUGH IT'S A FREE-FOR-ALL UP UNTIL THAT DAY.

8            THE COURT:  OH, IT'S NOT.

9            MR. CAMACHO:  NO, I KNOW, AND I HOPE SO.  SO I ASSUME

10   IT WOULD BE COUCHED AS THE LAST DAY TO MOVE TO AMEND PLEADINGS,

11   BUT NOT TO BE REGARDED AS PLEADINGS CAN JUST BE AMENDED UP

12   UNTIL THAT DATE.  THAT WAS OUR MAIN CONCERN.

13           THE COURT:  UM-HUM.

14           MR. CAMACHO:  SO WE DIDN'T REALLY SEE A NEED TO ADD A

15   DATE.

16           THE COURT:  I'M FINE -- I DON'T HAVE TO HAVE A DATE.

17   THAT'S FINE.

18       OKAY.  CLAIM CONSTRUCTION BRIEFING, AUGUST 13TH FOR

19   OPENING; AUGUST 27TH FOR RESPONSIVE; SEPTEMBER 5 FOR REPLY.

20       AND THIS IS ONLY ON TEN TERMS.  I'D ACTUALLY EVEN LIKE TO

21   DO FEWER.  CAN WE DO FEWER THAN TEN TERMS?

22           MR. CAMACHO:  SURE.

23           MR. STACY:  THAT'S PROBABLY BEST DECIDED AFTER WE GET

24   THROUGH THE BRIEFING PROCESS.  THE GOAL WOULD BE YES, BUT IT'S

25   HARD TO MAKE THAT COMMITMENT UP FRONT.
```

```
 1          THE COURT:  YOU MEAN YOU WANT TO BRIEF ALL OF CLAIM

 2     CONSTRUCTION AND THEN DECIDE, OH, WE'RE ONLY WANTING TO GO ON

 3     THESE SIX?

 4          MR. STACY:  WELL, AT LEAST IN THE MEET AND CONFER

 5     PROCESS.  THE LAST THING YOU WANT IS AN 02 MICRO ISSUE THAT

 6     POPS UP AT THE EVE OF TRIAL AND WE'RE DOING CLAIM CONSTRUCTION

 7     LAST MINUTE, WHICH IS ALL TOO COMMON ANYMORE.

 8          SO DROPPING TO SIX RIGHT NOW IS PROBABLY NOT, NOT THE BEST

 9     PROCESS.  IT MAY CREATE SOME TROUBLE LATER ON.

10          I'M FINE TO PUT IN A DATE WHERE THE PARTIES LOOK AT

11     NARROWING THE NUMBER OF TERMS AS PART OF THE INITIAL CLAIM

12     CONSTRUCTION MEET AND CONFER.

13          MR. CAMACHO:  YOU KNOW, ONE -- OH.

14          THE COURT:  WELL, YOU'RE LIMITED TO TEN.  THAT WOULD

15     BE THE MAX.

16          MR. STACY:  CORRECT.

17          THE COURT:  SO THE QUESTION IS, DO WE JUST GO LOWER

18     THAN TEN?

19          WHAT WERE YOU GOING TO SAY?

20          MR. CAMACHO:  I WAS GOING TO SAY, THIS ISSUE DIDN'T

21     NECESSARILY COME UP, BUT ONE OF THE THINGS THAT HAS HAPPENED IN

22     THE PAST WITH OTHER CASES IS IF THERE'S A HIGH NUMBER OF CLAIMS

23     ASSERTED, THEN THE NUMBER OF CLAIMS ASSERTED LENDS TO A HIGH

24     NUMBER OF TERMS ASSERTED, SO WE'VE GONE THROUGH EXERCISES WHERE

25     THE COURT HAS PREVIOUSLY RESTRICTED -- OR HAS FORCED THE
```

1    PLAINTIFF TO REDUCE THE NUMBER OF CLAIMS THAT CAN BE ASSERTED

2    BECAUSE THAT TENDS TO REDUCE THE NUMBER OF TERMS.

3              THE COURT:  UM-HUM.

4              MR. CAMACHO:  WE DIDN'T WANT TO GET -- WE DID NOT

5    WANT TO GET INTO ADVISORY ISSUE OR OPINION RIGHT NOW.  WE DON'T

6    KNOW HOW MANY CLAIMS THE PLAINTIFF'S ACTUALLY GOING TO ASSERT,

7    SO WE DIDN'T MAKE THIS A FEATURE OF OUR -- OF THE 26(F) REPORT.

8              THE COURT:  UM-HUM.

9              MR. CAMACHO:  BUT IF THE PLAINTIFF DOES ASSERT A HIGH

10   NUMBER OF CLAIMS, THEN THAT COULD BE AN ISSUE WITH LIMITING THE

11   NUMBER OF TERMS.  SO MAYBE THERE'S A WAY TO RESOLVE THOSE --

12   THOSE TWO GO HAND-IN-HAND.

13             THE COURT:  HOW MANY CLAIMS ARE YOU ASSERTING OUT OF

14   THE SEVEN PATENTS?

15             MR. STACY:  WELL, RIGHT NOW WE HAVEN'T SERVED OUR

16   CONTENTIONS, SO WE DON'T KNOW.  BUT THERE WILL BE -- THERE WILL

17   BE SEVERAL FROM EACH PATENT THAT WE'LL BE GOING FORWARD WITH.

18             THE COURT:  BECAUSE I DO REQUIRE CASE NARROWING.  I'M

19   WONDERING IF WE SHOULD HAVE A FURTHER CMC AFTER THE 101 SO WE

20   KNOW EVEN WHAT PATENTS ARE SURVIVING, BECAUSE THAT MAY ALSO

21   HELP NARROW THE CASE AND TO THEN DETERMINE THE LIMITS.

22             MR. STACY:  THEN --

23             THE COURT:  AND I'D ALSO LIKE TO GIVE YOU ALL AN

24   OPPORTUNITY TO FURTHER MEET AND CONFER ON COMING UP WITH A

25   PROPOSAL.  I DON'T -- I MEAN, I DON'T ALLOW MASSIVE CASES AND

```
 1    THEN ONLY DO NARROWING LATER.  IT'S A WASTE OF ALL OF YOUR

 2    RESOURCES AND TIME.

 3              MR. STACY:  AND --

 4              THE COURT:  SO I USUALLY HAVE A FUNNEL THAT NARROWS

 5    THE CASE AT DIFFERENT STAGES SO WE CAN ALL FOCUS OUR RESOURCES

 6    ON WHAT'S MOST IMPORTANT TO YOU.

 7              MR. STACY:  AND WE'RE -- I'VE TRIED ENOUGH OF THESE

 8    THAT YOU WANT TO GET THEM NARROWED DOWN AT A REASONABLE PACE.

 9              THE COURT:  UH-HUH.

10              MR. STACY:  BUT I START NOTICING THE TENSION BETWEEN

11    THE ASKED FOR THE LATER PRODUCTION AND THEN ASKING US TO NARROW

12    CLAIMS.

13         I MEAN, THE FAIR WAY TO NARROW CLAIMS IS AFTER WE LOOK AT

14    THE DAMAGES NUMBERS, AFTER WE LOOK AT THE INFRINGEMENT CASE AND

15    START PICKING OUR BEST CLAIMS WHERE, YOU KNOW, EVERY

16    DEFENDANT -- AND I'VE BEEN A DEFENDANT MANY TIMES ON THIS --

17    WANTS TO TRY TO FORCE THAT NARROWING A LITTLE EARLIER TO MAKE

18    PLAINTIFFS KIND OF TAKE SHOTS IN THE DARK.

19              THE SOONER WE HAVE TECHNICAL INFORMATION, THE SOONER WE

20    CAN NARROW CLAIMS.  THE MORE DELAY IN GETTING TECHNICAL

21    INFORMATION, THE LESS CHANCE WE HAVE TO QUICKLY AND

22    INTELLIGENTLY NARROW CLAIMS.

23              BUT I DEFINITELY WANT TO NARROW IT DOWN, TOO.

24              THE COURT:  WELL, I WOULD ASSUME, BASED ON YOUR

25    RULE 11 INVESTIGATION, YOU MUST HAVE SOME SENSE OF WHAT ARE
```

Ex. A - p. 050

26

```
 1        YOUR BEST CLAIMS.

 2             MR. STACY:  OH, ABSOLUTELY.

 3             THE COURT:  I WOULD BE SURPRISED THAT YOU DON'T HAVE

 4    ENOUGH TECHNICAL KNOWLEDGE ABOUT WHAT YOU'VE ACCUSED TO FIGURE

 5    OUT WHAT IS YOUR BEST CLAIM.

 6             MR. STACY:  THE KEY OFTEN BECOMES THE APPORTIONMENT

 7    DAMAGES CASES AROUND DEPENDENT CLAIMS.  SO WE ABSOLUTELY HAVE

 8    THE RULE 11 ON THE INDEPENDENT CLAIMS.  THE SCOPE OF THE

 9    INFRINGEMENT ON DEPENDENT CLAIMS YOU DON'T KNOW UNTIL YOU SEE A

10    LITTLE BIT.

11        BUT WE CAN NARROW PRETTY QUICKLY AFTER WE HAVE A FAIR

12    CHANCE TO LOOK AT SOME OF THE DOCUMENTS AND THE DAMAGES

13    NUMBERS.

14             THE COURT:  WELL, THAT'S WHY I DIDN'T WANT TO CALL

15     THIS CASE FIRST.

16        YOU KNOW, I -- SEVEN PATENTS IS JUST TOO MUCH.  WE ARE NOT

17    GOING TO TRIAL ON SEVEN PATENTS, SO THERE'S GOING TO HAVE TO BE

18    SOME NARROWING.

19             EVEN IF YOU TOLD ME BILLIONS AND BILLIONS WERE AT STAKE, I

20    WOULD NOT LET YOU GO TO TRIAL ON SEVEN PATENTS.  IT'S JUST TOO

21    MUCH.  OKAY?

22             MR. STACY:  WELL, THERE WOULD BE --

23             THE COURT:  SO -- WELL, THERE'S ONLY, AT MOST, TEN

24     TERMS THAT CAN BE CONSTRUED FOR CLAIM CONSTRUCTION --

25             MR. STACY:  RIGHT.
```

Ex. A - p. 051

27

```
 1              THE COURT:  -- PER OUR CIVIL LOCAL RULES, SO THAT'S

 2      AUTOMATICALLY GOING TO NARROW AT LEAST THE CLAIM CONSTRUCTION

 3      PORTION OF THE CASE.

 4          LET'S HAVE A FURTHER CMC.  AT THAT POINT YOU'LL HAVE THE

 5      101 RULING IN HAND AND YOU'LL BE A LITTLE BIT MORE FOCUSSED ON

 6      WHAT MAY BE THE, AT MOST, TEN TERMS FOR CLAIM CONSTRUCTION.

 7      AND SO I THINK FROM THAT POINT FORWARD, I WOULD LIKE YOU ALL TO

 8      MEET AND CONFER AND MAKE A PROPOSAL AS TO THE FUNNELING THAT

 9      WE'RE GOING TO DO IN THIS CASE.

10          AND THIS APPLIES EQUALLY TO PRIOR ART FOR INVALIDITY

11      CONTENTIONS.  THAT'S ALSO NOT AN UNLIMITED --

12              MR. STACY:  RIGHT.

13              MR. CAMACHO:  WE DON'T PLAN ON DOING THAT.

14              THE COURT:  OKAY.  WELL, FOR NOW WE'LL JUST SAY THE

15      CLAIM CONSTRUCTION BRIEFING IS LIMITED TO TEN TERMS.  IF YOU

16      CAN REDUCE IT FURTHER, I WOULD BE GRATEFUL.

17          AND WE'LL SET A FURTHER CMC BEFORE THAT DATE TO SEE IF IT

18      CAN BE NARROWED FURTHER THAN TEN.

19          THE TECHNOLOGY TUTORIAL --

20              MR. CAMACHO:  WE HAVE A QUESTION ON THAT.

21              THE COURT:  YES?

22              MR. CAMACHO:  WOULD YOU LIKE TO -- IT'S CURRENTLY --

23      I THINK WE LOOKED AT SOME PREVIOUS SCHEDULES AND WE SAW THAT IT

24      WAS CO-DATED, OR DATED FOR THE SAME DAY AS THE CLAIM

25      CONSTRUCTION.
```

1      I DON'T THINK EITHER PARTY FELT STRONGLY ABOUT THIS.  IT'S

2   REALLY AT THE COURT'S PLEASURE.  DID YOU WANT TO RECEIVE THAT

3   ON THE SAME DAY, OR WOULD YOU LIKE TO RECEIVE THAT A COUPLE

4   WEEKS BEFORE, MAYBE IN THE FORM OF A POWERPOINT, SO YOU CAN BE

5   READY BY THE TIME THE CLAIM CONSTRUCTION ROLLS AROUND?

6      THE COURT:  WELL, LET'S GO AHEAD AND SCHEDULE IT ON

7   SEPARATE DATES, AND JUST TO TELL YOU HOW I DO THEM, I -- I LIKE

8   TO HAVE A PROPOSED DRAFT ORDER READY BEFORE THE TECHNOLOGY

9   TUTORIAL.  SO BY THE TIME OF THE TUTORIAL, I HAVE SOME REALLY

10   SPECIFIC QUESTIONS AND THAT'S WHAT I LIKE ANSWERED.

11      I DON'T LET YOU DO YOUR PRE, YOU KNOW, BEAUTIFULLY

12   ANIMATED PRESENTATIONS BECAUSE AT THAT POINT IT'S A VERY

13   FOCUSSED SET OF QUESTIONS I HAVE THAT I NEED TO MAKE FINAL

14   DECISIONS OR HELP IN EXPLAINING IN THE ORDER.

15      AND THERE HAVE BEEN TIMES WHERE I GOT THE INFORMATION I

16   NEEDED AT THE TUTORIAL AND WE JUST ISSUED A CLAIM CONSTRUCTION

17   ORDER THE NEXT DAY; OR THERE HAVE BEEN OTHER TIMES WHERE I GO

18   BACK AND TAKE A LOOK AT YOUR ANSWERS, AND WHEN YOU'VE REFERRED

19   BACK TO, YOU KNOW, THIS PART OF THE PROSECUTION HISTORY OR THIS

20   PRIOR ART, WHATEVER, THEN WE HAVE A FURTHER CLAIM CONSTRUCTION

21   HEARING AT WHICH TIME I'LL ASK MORE QUESTIONS.

22      OR THERE HAVE ALSO BEEN INSTANCES WHERE THE PARTIES HAVE

23   MET AND CONFERRED IN THE INTERIM WEEK AND THEY ACTUALLY AGREE

24   TO A CONSTRUCTION BASED ON -- THEY KIND OF SEE THE WRITING ON

25   THE WALL BASED ON WHERE THE QUESTIONS ARE HEADED AND REACH SOME

1    MUTUALLY ACCEPTABLE MIDDLE GROUND AND TAKE IT OFF THE TABLE.

2         SO, I MEAN, ANYTHING CAN HAPPEN.  I JUST DON'T KNOW AT

3    THIS POINT.  I DON'T KNOW ENOUGH ABOUT YOUR CASE TO SAY.

4         BUT WHY DON'T WE GO AHEAD AND SCHEDULE IT AT LEAST ONE

5    WEEK APART AND WE CAN DEAL WITH IT AT THE TIME.  EITHER I'LL

6    VACATE THE SECOND HEARING OR WE'LL GO FORWARD WITH IT AND

7    YOU'LL HAVE A REALLY GOOD SENSE BY THE SECOND HEARING AS TO

8    WHAT INFORMATION I NEED AND, YOU KNOW, WHERE I'M HEADED.

9         LET ME ASK MS. MASON, CAN YOU CHECK AT -- CHECK ON OUR

10   CALENDAR FOR -- HOW DOES SEPTEMBER 21 AND 28 LOOK?

11        (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

12   CLERK.)

13        MR. MILLER:  YOUR HONOR, I'M GOING TO BE OUT OF THE

14   COUNTRY THE 28TH.  IF WE COULD MAYBE DO THE 14TH AND THE 21ST

15   INSTEAD IF THAT WORKS?

16        THE COURT:  HMM, THAT DOESN'T GIVE US ENOUGH TIME

17   BECAUSE YOU'RE FILING THE REPLY -- THE REPLY IS BEING FILED ON

18   SEPTEMBER 5, SO THAT JUST GIVES ME BARELY A WEEK IF YOU WANT TO

19   HAVE IT ON THE 14TH.  THAT'S TOO SOON.

20        I ACTUALLY THINK LAW CLERK ORIENTATION IS ON THE 28TH.  I

21   DON'T KNOW IF THAT'S ON YOUR CALENDAR.

22        MR. CAMACHO:  YOUR HONOR, I APOLOGIZE.  I DIDN'T MEAN

23   TO INJECT AN ADDITIONAL LAYER OF CONFUSION.  WE'RE NOT OPPOSED

24   TO DOING IT THE SAME DAY.  IT'S JUST THERE HAVE BEEN TIMES

25   WHERE IT'S BEEN OUR EXPERIENCE THAT THE COURT HAS APPRECIATED

Ex. A - p. 054

30

1    HAVING SOMETHING BEFORE THE CLAIM CONSTRUCTION HEARING.

2        SO IF I'VE CREATED AN ISSUE, I DIDN'T MEAN TO.  WE'RE FINE

3    DOING IT ON THE SAME DAY.  I JUST DIDN'T KNOW -- I WASN'T QUITE

4    FAMILIAR WITH THE COURT'S FORMAT.

5            THE COURT:  I USUALLY SCHEDULE TWO.

6            MR. CAMACHO:  YEAH.

7            THE COURT:  AND THEN IF I DON'T NEED THE SECOND ONE,

8    I JUST VACATE IT.  I USUALLY HAVE AT LEAST ONE.

9            MR. CAMACHO:  YEAH.

10           MR. MILLER:  COULD WE MAYBE KEEP THE 21ST FOR THE

11   TUTORIAL AND GO INTO THE FIRST WEEK OF OCTOBER FOR THE CLAIM

12   CONSTRUCTION?

13           THE COURT:  WHAT DO WE HAVE SCHEDULED ON OCTOBER 5

14   AND OCTOBER 12?

15       (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

16   CLERK.)

17           THE COURT:  OKAY.  WHY DON'T WE KEEP THE 21ST AS A

18   DATE, THE 21ST OF SEPTEMBER, AND I HATE TO SET IT SO FAR OUT,

19   BUT I WOULD SET THE SECOND DATE -- THE 5TH LOOKS TOO HEAVY JUST

20   FOR US, AND THEN ONE OF THE DEFENSE COUNSEL IS NOT AVAILABLE ON

21   THE 28TH OF SEPTEMBER, SO WE COULD SET THE FOLLOW-UP DATE AS

22   OCTOBER 12TH.

23           MR. MILLER:  THANK YOU, YOUR HONOR.

24           THE COURT:  AND HOPEFULLY BY THEN WE'LL HAVE AN ORDER

25   FOR YOU ANYWAY.

```
 1              (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

 2      CLERK.)

 3              THE COURT:  OKAY.  WHAT IF -- I HATE TO SCHEDULE THIS

 4      SO FAR OUT.  WHAT IF I SCHEDULED IT FOR OCTOBER 12 AND

 5      OCTOBER 19?

 6          AND I'LL TRY TO WORK IN ADVANCE, AND IF WE HAVE ANY

 7      QUESTIONS FOR YOU, WE CAN JUST FILE THEM AND ASK YOU TO FILE

 8      WRITTEN RESPONSES.  THAT'S ANOTHER OPTION, TOO.  OKAY?

 9              THE CLERK:  YOUR HONOR, YOU'RE NOT AVAILABLE ON

10      OCTOBER 19TH.  THE 12TH YOU ARE AVAILABLE.

11              THE COURT:  OH, OKAY.

12              THE CLERK:  THE 26TH, WE HAVE THREE MOTIONS FOR

13      DISPOSITIVE -- DISPOSITIVE MOTIONS.

14              THE COURT:  UM-HUM.  OKAY.  LET'S JUST DO OCTOBER 5

15      AND 12 THEN.

16              MR. CAMACHO:  AND THEN IF IT WOULD BE OKAY, YOUR

17      HONOR, I'M KIND OF USED TO THOSE TECHNOLOGY TUTORIALS BEING

18      SOMEWHAT STERILE AND OBJECTIVE AND NOT ARGUMENTATIVE.

19              THE COURT:  UM-HUM.

20              MR. CAMACHO:  DOES THE COURT HAVE A PREFERRED FORMAT,

21      OR IS THERE SOMETHING IN PARTICULAR THAT YOU'LL BE LOOKING FOR

22      DURING THAT TUTORIAL?

23              THE COURT:  OH, IT'LL JUST BE VERY SPECIFIC

24      QUESTIONS.

25              MR. CAMACHO:  OKAY.
```

32

```
 1                    THE COURT:  YEAH.

 2                    MR. STACY:  AND DO YOU PROVIDE THOSE BEFOREHAND, OR

 3          HOW --

 4                    THE COURT:  GENERALLY NO.

 5                    MR. STACY:  OKAY.

 6                    THE COURT:  NO.  IT DEPENDS.  YOU KNOW, THE PROBLEM

 7          IS WE HAVE FOUR TO SIX MOTIONS THAT WE TRY TO RULE ON EVERY

 8          WEEK, AND SO IT'S -- YOU KNOW, WE TRY TO START A LITTLE BIT

 9          EARLIER ON A CLAIM CONSTRUCTION JUST BECAUSE IT'S MORE COMPLEX

10          AND MORE TIME CONSUMING.

11                BUT IF I CAN GET IT READY FAR ENOUGH IN ADVANCE TO ISSUE

12          QUESTIONS, WE WILL.

13                BUT BECAUSE WE HAVE -- YOU KNOW, WE'RE ISSUING FOUR TO SIX

14          SUBSTANTIVE ORDERS EVERY WEEK, EVERY WEEK, EVERY WEEK, JUST

15          RELENTLESSLY, SO TIMING-WISE IT GETS DIFFICULT TO PREPARE IT

16          FAR ENOUGH IN ADVANCE.

17                OKAY.  SO YOUR DEADLINE TO COMPLETE MEDIATION THEN, WE'LL

18          SET IT FOR NOVEMBER 20TH OF 2017; YOUR CLOSE OF FACT DISCOVERY

19          MAY 7TH, THAT'S FINE; OPENING EXPERT REPORTS JUNE 6TH IS FINE;

20          REBUTTAL EXPERT REPORTS JUNE 27 IS FINE; CLOSE OF EXPERT

21          DISCOVERY JULY 11TH IS FINE; YOUR LAST DAY TO FILE DISPOSITIVE

22          MOTIONS JULY 31, THAT'S FINE; THE HEARING WILL BE SEPTEMBER 13

23          AT 1:30; FINAL PRETRIAL CONFERENCE WILL BE NOVEMBER 8TH; AND

24          THE JURY TRIAL WILL BE NOVEMBER 26TH, WHICH I HOPE IS NOT

25          THANKSGIVING.
```

1        LET'S SEE.  THAT'LL BE THE MONDAY AFTER THANKSGIVING.

2        WHAT IS THE ESTIMATED LENGTH OF YOUR TRIAL?

3            MR. STACY:  IT DEPENDS ON HOW YOU RUN YOUR COURT

4    DAYS.  WE TRIED A VERY SIMILAR CASE WITH JUDGE DONATO LAST

5    YEAR.  IT WENT TEN COURT DAYS.  HE HAD ONE DARK DAY AND TWO

6    DAYS THAT ENDED AT 2:00 SO HE COULD HANDLE HIS MOTION CALENDAR.

7        IF WE RAN 8:30 TO 5:30, WE COULD BE DONE IN SEVEN DAYS.

8            THE COURT:  ALL RIGHT.  WHY DON'T I SCHEDULE IT THEN

9    FOR --

10            MR. CAMACHO:  WE WERE PREPARED TO DO IT IN FEWER.  WE

11    THINK WE COULD DO IT IN FIVE.

12            THE COURT:  SO THE ESTIMATES ARE FIVE AND TEN?  IS

13    THAT CORRECT?

14            MR. STACY:  AGAIN, HOW DO YOU RUN YOUR COURT DAYS?

15    IF WE HAD SEVEN FULL, HARD DAYS, I THINK WE COULD DO IT IN

16    SEVEN DAYS.  MY EXPERIENCE IS THAT'S USUALLY TEN COURT DAYS ON

17    A CALENDAR.

18            THE COURT:  OKAY.  WELL, I DO TRIAL MONDAY, TUESDAY,

19    FRIDAY.  I DON'T DO TRIAL WEDNESDAY AND THURSDAY BECAUSE I KEEP

20    MY CRIMINAL AND CIVIL CALENDARS GOING ON WEDNESDAYS AND

21    THURSDAYS BECAUSE TOO MANY OF THESE TRIALS SETTLE, SO I'M NOT

22    GOING TO MOVE MY CRIMINAL AND CIVIL CASES AROUND BASED ON

23    TRIALS THAT DON'T HAPPEN.

24        SO WE GO FROM 9:00 A.M. TO 4:30 P.M. EVERY DAY.  WE GET

25    FIVE HOURS AND 30 MINUTES OF TRANSCRIPT TIME EVERY DAY.

```
 1              MR. STACY:  WHAT WAS THAT NUMBER AGAIN?

 2              THE COURT:  FIVE HOURS AND 30 MINUTES EVERY DAY.

 3         SO I'M GOING TO SET THIS FOR SIX DAYS OF TRIAL.  AND SINCE

 4    WE ONLY DO MONDAY, TUESDAY, AND FRIDAY, WE'LL DO NOVEMBER 26,

 5    27, 30, DECEMBER 3, 4, 7, AND DECEMBER, I'LL JUST PUT 10 AND 11

 6    IN THERE.  OKAY?

 7         THE JURY CAN DELIBERATE ON WEDNESDAYS AND THURSDAYS

 8    BECAUSE I CAN KEEP A JURY GOING WHILE I'M DOING MY OTHER

 9    CALENDARS.  BUT --

10              MR. STACY:  MAY I ASK, JURY SELECTION, DO YOU DO IT

11     THAT FIRST DAY OR --

12              THE COURT:  FIRST DAY.

13              MR. STACY:  OKAY.

14              THE COURT:  I USUALLY GET IT DONE BEFORE LUNCH.

15         LUNCH IS 12:00 TO 1:00.

16              MR. STACY:  OKAY.

17              THE COURT:  OKAY.  ALL RIGHT.

18         IS THAT DATE ACCEPTABLE TO THE PLAINTIFF?

19              MR. STACY:  YES.

20              THE COURT:  IS THAT DATE -- ARE THESE DATES

21     ACCEPTABLE TO THE DEFENDANT?

22              MR. CAMACHO:  YES.

23              THE COURT:  OKAY.  THEN ANYTHING ELSE WE NEED TO

24     COVER TODAY?

25              MR. CAMACHO:  THE ESI ORDER, IS THAT AT THE SAME TIME
```

**Ex. A - p. 059**

```
 1        AS THE PROTECTIVE ORDER?

 2              THE COURT:  YES, AND WHY DON'T YOU ALSO PREPARE THAT

 3        FOR JUDGE VAN KEULEN?  OKAY?

 4              THE CLERK:  YOUR HONOR, WOULD YOU LIKE A FURTHER CMC

 5        DATE?

 6              THE COURT:  OH, GREAT.  THANK YOU FOR REMINDING ME,

 7        YES.

 8           WHEN WOULD YOU LIKE TO COME BACK?

 9              MR. STACY:  IT REALLY DEPENDS ON YOUR SCHEDULE.  IF

10        IT WAS SUPPOSED TO BE POST-101 DECISION --

11              THE COURT:  UM-HUM.  WELL, LET'S ASSUME, HOPEFULLY,

12        THAT YOU WOULD HAVE A DECISION ON THE 101 MOTION BY APRIL 28TH.

13        WHEN WOULD YOU LIKE TO COME IN?

14           AND ALSO IN TIME FOR DOING ANY CASE NARROWING.  YOU'RE

15        EXCHANGING TERMS FOR CONSTRUCTION ON THE 8TH AND THE 18TH.

16              MR. MILLER:  WE'RE LOOKING AT THURSDAYS, YOUR HONOR?

17              THE COURT:  NO.  SO MY CIVIL CMC'S ARE WEDNESDAYS AT

18        2:00, LIKE TODAY.

19              MR. MILLER:  I'M SORRY.

20              THE COURT:  I HAVE LAW AND MOTION IN CIVIL CASES ON

21        THURSDAYS AT 1:30.  SOMETIMES I PUT THE CMC WITH THE MOTION

22        HEARING ON THE THURSDAY AT 1:30, BUT YOU WON'T BE HAVING A

23        MOTION HEARD FOR QUITE SOME TIME AFTER THE 101 MOTION, SO --

24              MR. MILLER:  YOUR HONOR, I WOULD -- THE 3RD, 10TH,

25        EITHER OF THOSE WORKS, OF MAY.
```

36

```
1              THE COURT:  DO YOU HAVE A PREFERENCE?

2              MR. STACY:  EITHER WORKS FOR ME.

3              THE COURT:  OKAY.

4              MR. STACY:  SOONER IS BETTER, I WOULD THINK, TO START

5      THE FUNNELING PROCESS.

6              THE COURT:  SURE.  OKAY.

7          THEN LET ME ASK MS. MASON, HOW DO WE LOOK ON THE 3RD AND

8      THE 10TH?

9              THE CLERK:  THE 10TH IS BETTER.  I WOULD SAY NO TO

10     THE 3RD.

11             THE COURT:  OKAY.  SO LET'S DO MAY THE 10TH, PLEASE,

12     2017, AT 2:00 P.M.

13         OKAY.  WHAT ELSE?  ANYTHING ELSE?

14             MR. STACY:  NOTHING FROM THE PLAINTIFF, YOUR HONOR.

15             MR. CAMACHO:  NOTHING ELSE FROM THE DEFENDANT,

16     EITHER.

17             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

18             MR. STACY:  THANK YOU.

19             MR. MILLER:  THANK YOU, YOUR HONOR.

20         (THE PROCEEDINGS WERE CONCLUDED AT 2:58 P.M.)

21

22

23

24

25
```

**Ex. A - p. 061**

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  MARCH 12, 2017

19

20

21

22

23

24

25