# EXHIBIT B

Bloomberg BNA

BNA's Patent, Trademark & Copyright Journal®

Reproduced with permission from BNA's Patent, Trademark & Copyright Journal, 93 PTCJ 2632, 12/23/16. Copyright © 2016 by The Bureau of National Affairs, Inc. (800-372-1033) http://www.bna.com

PATENTS

# Patent Owners' Options After Claims Are Cancelled in AIA Post-Grant Proceedings

 

BY THOMAS E. ANDERSON AND BO HAN

The America Invents Act (AIA) instituted sweeping changes in U.S. patent law, including creating new proceedings for third parties to challenge an issued patent before the Patent Trial and Appeal Board (PTAB). These new proceedings—inter partes review (IPR), post-grant review (PGR) and covered business method (CBM) review—became available on Sept. 16, 2012, and have been frequently and successfully used to invalidate patent claims.

Since these proceedings became available, 5,656 petitions to initiate post-grant proceedings have been filed, 91 percent of which have been IPR petitions, 8 percent have been CBM petitions and 1 percent have been PGR petitions. PTAB Statistics, U.S. Patent and Trademark Office (Sept. 30, 2016), 2. Of IPR petitions completed to date, 1,214 have reached a final written decision and *85 percent* of those decisions have cancelled all or some claims. *Id*. at 10. For CBM petitions completed to date, 143 have reached a final written decision and *98 percent* of those decisions have cancelled all or some claims. *Id*. at 11. There have only been 37 PGR petitions, for which 14 trials have been instituted. *Id*. at 8.

Although analyzing more recent data instead of cumulative data show different percentages, for petitions that reach a final written decision, a high percentage result in the cancellation of at least some of the claims. *See id*.

Given the availability and results to date of these AIA post-grant proceedings, patent owners should consider their options to preserve patent validity if all or some claims are cancelled. These options include:

- requesting a rehearing with the PTAB;
- appealing the post-grant decision to the U.S. Court of Appeals for the Federal Circuit;
- filing a reissue application;
- requesting supplemental examination / ex parte reexamination of amended claims; and/or
- prosecuting a continuation application, if available.

This article provides an overview of IPR, PGR and CBM proceedings, discusses the difficulty of amending claims in these proceedings, and helps patent owners weigh the risks and benefits of their options after claims are cancelled during the proceedings.

Thomas E. Anderson is a partner in the Washington D.C. office of WilmerHale, focusing on a broad range of IP related matters including patent portfolio development and monetization, domestic and foreign patent prosecution, post-grant patent proceedings, IP related transactions and offensive and defensive patent litigation matters involving a variety of technical disciplines.

Bo Han is a counsel in the Boston office of WilmerHale, helping clients obtain and protect their IP in biotechnology, pharmaceuticals and life sciences. She manages and develops patent portfolios, conducts IP due diligence and represents innovator companies in post-grant proceedings and patent litigations.

COPYRIGHT © 2016 BY THE BUREAU OF NATIONAL AFFAIRS, INC.   ISSN 0148-7965

## Overview of Post-Grant Proceedings

### 1. IPR

IPR is a trial proceeding introduced by the AIA that allows third parties to challenge the patentability of one or more claims at the PTAB under anticipation (35 U.S.C. § 102) and/or obviousness (35 U.S.C. § 103) based only on prior art consisting of patents or printed publications. 35 U.S.C. § 311. Almost any party except for the patentee can file an IPR petition. 35 U.S.C. § 315(a)(l)-(b).

IPRs became available on Sept. 16, 2012, and the proceeding applies to any issued patent. Because of the introduction of PGRs, which are discussed below, an IPR can be filed after the later of: 1) nine months after the patent issuance or 2) after any pending PGR proceeding has ended. After an IPR petition is filed, a panel of three Administrative Patent Judges (APJs) first determines whether there is "reasonable likelihood that the petitioner would prevail with respect to at least 1 claim challenged in the petition." 35 U.S.C. § 314(a).

If the IPR proceeding is instituted, then a final determination by the PTAB will be issued within one year, which can be extendable for good cause by six months. If the IPR proceeding reaches a final decision, then the petitioner is estopped from raising in a civil action in U.S. district court or at the U.S. International Trade Commission (ITC) any ground of invalidity it "raised or reasonably could have raised" in the IPR proceeding, and the patent owner is estopped from prosecuting any other patentably indistinct claims. 35 U.S.C. § 315(e); 37 CFR § 42.73.

### 2. CBM Review

CBM review is a trial proceeding conducted at the PTAB to review the patentability of one or more claims in a covered business method patent. Only a person who is accused of infringement of such a patent can file a petition for CBM review. Specifically, a petition for CBM review can be filed prior to litigation or after service of a complaint, but only if: 1) the claims are to a method or apparatus related to a "financial product or service," not to a technological invention (AIA § 18(d); 37 CFR § 42.301); 2) the petitioner is sued or charged with infringement (AIA § 18(a)(1)(B); 37 CFR § 42.302); and 3) if a first-to-file patent, the time for PGR has expired. CBM review is a transitional procedure that became available on Sept. 16, 2012, but will sunset on Sept. 16, 2020, after which the PTAB will not accept additional petitions for CBM review.

CBM review can be based on any ground of invalidity (35 U.S.C. §§ 101, 102, 103 and 112). The standard to initiate a CBM review is if it is "more likely than not" that at least one challenged claim is unpatentable. 35 U.S.C. § 324. If a CBM review proceeding reaches a final decision, then a petitioner is estopped from raising in litigation any ground of invalidity "raised" in the CBM review proceeding. The petitioner is also estopped from raising in subsequent PTO proceedings any ground that "reasonably could have been raised" in the CBM review proceeding. Meanwhile, the patent owner is estopped from prosecuting any claim that is patentably indistinct from an invalidated claim. AIA § 18(a)(1)(D); 37 CFR § 42.73.

### 3. PGR

PGR is a trial proceeding conducted at the PTAB to review the patentability of one or more claims at the PTAB under various grounds of invalidity (35 U.S.C. §§ 101, 102, 103, 112). 35 U.S.C. § 321(b). A person who is not the patent owner and who has not previously filed a civil action challenging patent validity can file a petition for PGR review on or prior to nine months of issuance of the patent.

PGRs became available on Sept. 16, 2012, and apply to patents issuing from applications subject to the first-inventor-to-file provisions of the AIA. A PGR proceeding may be instituted upon a showing that it is more likely than not that at least one challenged claim is unpatentable.

If the proceeding is instituted and not dismissed, a final determination by the PTAB will be issued within one year (extendable for good cause by six months). After a PGR has been instituted, the petitioner is precluded from re-litigating in a civil action any issue that it raised or reasonably could have raised in the PGR proceeding.

## Difficulty in Amending Claims in IPR, CBM and PGR Proceedings

The AIA provides that, during IPR, CBM or PGR proceedings, "the patent owner may file 1 motion to amend the patent." 35 U.S.C. § 316(d). However, to date, patent owners have had little success amending claims.

A motion to amend may request cancelling patent claims and/or propose a reasonable number of substitute claims that do not "enlarge the scope of the claims of the patent or introduce new subject matter." 37 C.F.R. § 42.121(a)(2). Requests to cancel claims are typically granted without substantive review. Requests to introduce substitute claims "are generally decided only when the panel of judges determines that the claims as originally issued are unpatentable, because nearly all such motions are contingent on a decision unfavorable to patentability on the original claims." PTAB Motion to Amend Study, PTO (April 30, 2016).

To address patent owners' concerns that it is too difficult to amend claims in post-grant proceedings, the PTAB conducted a Motion to Amend (MTA) study on post-grant proceedings. The MTA study reports that as of April 30, 2016, "the Board has decided the merits of a motion to amend to substitute claims in only a fraction (118 trials, or 8%) of the 1539 completed AIA trials." Id. at 3. Of these 118 motions to amend, a panel of judges granted or granted-in-part and denied-in-part a motion to amend in six of the 118 trials (5 percent) and "denied a motion to amend in 112 of the 118 trials (95 percent)." Id. at 4.

The various reasons in the written decisions for denying motions to amend include that the claims are anticipated/obvious over the art of record (35 percent of the decisions), multiple statutory reasons (23 percent), lack of written description (8 percent), non-statutory subject matter (6 percent), claims that enlarged patent scope (5 percent), unreasonable number of substitute claims (3 percent) and indefiniteness (1 percent). Id. at 6. The remaining denials (19 percent) were based on procedural reasons, including a patent owner's failure to show that the substitute claims are patentable over the "prior art in general." Id. at 4.

Given the success of post-grant proceedings in invalidating claims and the difficulty of amending claims during these proceedings, patent owners must carefully consider their options after claims are invalidated to retain patent protection. Patent owners should also be aware of the developing case law related to claim amendments during post-grant proceedings. *In re: Aqua Products Inc.* is a pending en banc case before the Federal Circuit involving claim amendments during an IPR. No. 2015-1177 (Fed. Cir. Aug. 12, 2016). The pending en banc questions involve the burdens of persuasion and production for patent owners' motions to amend. Specifically, the court will decide the following questions:

a) When the patent owner moves to amend its claims under 35 U.S.C. § 316(d), may the PTO require the patent owner to bear the burden of persuasion, or a burden of production, regarding patentability of the amended claims as a condition of allowing them? Which burdens are permitted under 35 U.S.C. § 316(e)?

b) When the petitioner does not challenge the patentability of a proposed amended claim, or the Board thinks the challenge is inadequate, may the Board sua sponte raise patentability challenges to such a claim? If so, where would the burden of persuasion, or a burden of production, lie?

Answering these questions will allow the court to clarify the standards for motions to amend in an IPR and may affect how difficult it will be for patent owners to amend claims in IPR proceedings.

## Patent Owner Options After Claims Are Cancelled In AIA Post-Grant Proceedings

### 1. Rehearing Request

After a final decision by the PTAB in a post-grant proceeding, a patent owner may file a request for rehearing within 30 days of entry of the final written decision. 37 C.F.R. § 42.71(d). The request "must specifically identify all matters the party believes the Board misapprehended or overlooked, and the place where each matter was previously addressed in a motion, an opposition, or a reply." 37 C.F.R. § 42.71(d).

When rehearing a decision on petition, a panel will review the final written decision for an abuse of discretion. 37 CFR § 42.71(c). The PTAB has rarely granted requests for rehearing, especially for rehearing of final written decisions.

The patent owner should consider whether there was clear error before filing a rehearing request. A rehearing request could present the disadvantage that the PTAB will further bolster its rationales for its decision before the patent owner appeals to the Federal Circuit. On the other hand, one potential advantage is that since the PTAB will need to further explain its rationale, this explanation may provide the patent owner with additional arguments for its appeal brief.

### 2. Appeal to the Federal Circuit

A patent owner may appeal a final written decision to the Federal Circuit by filing a notice of appeal within 63 days after a final written decision or rehearing decision. 35 U.S.C. §§ 319, 329. On appeal, the court reviews the PTAB's legal conclusions de novo and factual findings under the substantial evidence standard of review. That the court reviews legal conclusions de novo can be an advantage to patent owners.

Nevertheless, a decision about whether to appeal to the Federal Circuit is typically a case-by-case assessment based on the costs and time involved with filing an appeal and on the specific merits of the case. As Judge Wallach of the Federal Circuit recently observed, appeals from IPR, PGR and CBM reviews have become a large component of the court's caseload. Wallach & Darrow, "Federal Circuit Review of USPTO Inter Partes Review Decisions, By the Numbers: How the AIA Has Impacted the Caseload of the Federal Circuit," 98 *J. Pat. & Trademark Off. Soc'y* 105, 113 (2016).

Patent owners should be aware that the Federal Circuit "has affirmed the large majority of appeals from Final Written Decisions of the PTAB following IPR." *Id.* at 113. Through April 24, 2016, the Federal Circuit issued 77 decisions based on appeals from Final Written Decisions associated with 110 IPR petitions. Of these decisions, *83 percent* were affirmed (60 percent were affirmed without an opinion, and 23 percent were affirmed with an opinion), 10 percent were affirmed-in-part and either reversed-in-part or vacated-in-part, and only 7 percent were reversed, vacated, and/or remanded. *Id.* at 114.

Also, a recent decision, *In re: Warsaw Orthopedic, Inc.*, underscores that the Federal Circuit will likely not be persuaded by arguments that contest the weight the PTAB afforded to the record evidence. No. 2015-1050, 12 (Fed. Cir. Aug. 9, 2016). Indeed, the court stated that the patent owner's "arguments contest the weight the PTAB afforded to the record evidence, but [the court] may not weigh facts already considered by the PTAB." *Id.* at 12. The court also stated that the PTAB "must articulate 'logical and rational' reasons for [its] decisions," and that it can "affirm the PTAB's finding 'if [the court can] reasonably discern that it followed a proper path, even if that path is less than perfectly clear.'" *Id.* at 13 (citations omitted).

Patent owners should consider whether an appeal can establish that the PTAB failed to articulate an adequate rationale behind its conclusions.

### 3. Reissue Application

Given the difficulty in amending claims in post-grant proceedings and the uncertain outcomes of filing a rehearing request and/or appeal to the Federal Circuit, patent owners should also consider filing a reissue application to pursue amended claims. A reissue application can be filed whenever "any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent. . . ." 35 U.S.C. § 251(a).

The PTAB has even suggested that patent owners, instead of pursuing amended claims in an IPR, file a reissue application or an ex parte reexamination to pursue claims of different scope. *See, e.g., Idle Free Sys., Inc. v. Bergstrom, Inc.*, IPR2012-00027, at 6 (P.T.A.B. Jun. 11, 2013) (Paper 26) ("If a patent owner desires a complete remodeling of its claim structure according to a different strategy, it may do so in another type of proceeding before the Office. For instance, a patent owner may file a request for *ex parte* reexamination, relying on the Board's conclusion of a petitioner's having shown rea-

sonable likelihood of success on certain alleged grounds of unpatentability as raising a substantial new question. In appropriate circumstance[s], it may also seek to file a reissue application."); *Innolux Corp. v. Semiconductor Energy Lab. Co., Ltd.*, IPR2013-00066, Paper 24 (Jul. 18, 2013) ("To the extent that [the patent owner] perceives the limit for motions to amend to be unfair [in an IPR], [the patent owner] is not without remedy. [Patent owner] may possibly pursue such additional claims by filing a request for *ex parte* reexamination or by filing a reissue application.").

A patent owner can file a reissue application with narrower claims than those cancelled in the post-grant proceeding. Indeed, a patent owner may wish to pursue narrower claims because of patent owner estoppel, which precludes a patent owner from taking actions that are inconsistent with the PTAB's decision, including obtaining a patent claim for substantially the same invention. *See* 37 C.F.R. § 42.73(d)(3). Prosecuting narrower claims can allow the patent owner to put forth different arguments over the prior art than in the post-grant proceeding.

If narrower claims are not commercially valuable, then a patent owner could consider, within two years of patent issuance, pursuing broader claims than those cancelled in the post-grant proceeding, though a reissue application cannot "recapture" subject matter surrendered during prosecution of the original application. An added advantage of filing a broadening reissue application is that a patent owner can file a continuing reissue application claiming priority to the first reissue application to add broadened claims even after two years from the grant of the original patent. *In re Staats*, 671 F.3d 1350, 101 U.S.P.Q.2d 1930 (Fed. Cir. 2012) (held that a patentee could file a continuing reissue application to add broadened claims after the statutory two-year time limit expired, even though the broadened claims in the continuing reissue application were unrelated to the broadened claims filed within two years of the original patent grant).

However, a patent owner should consider whether the broader claims would be susceptible to similar challenges raised during the post-grant proceeding that invalidated the original patent. Patent owners may wish to file reissue applications and continuing reissue applications especially to capture subject matter that was not previously claimed in the original patent.

Patent owners should understand that reissue requires surrender of the original patent and that there are risks to filing a reissue application. First, filing a reissue application reopens prosecution of all claims, and the examiner may reject the claims on new grounds or grounds that were previously overcome during prosecution of the original application. Second, under the doctrine of intervening rights, if the reissued patent claim has substantive claim amendments compared to the original patent claim, then a patent owner may be entitled to damages only for the time period after issuance of the reissued patent claim. Third, a patent owner should understand that a third party, such as the petitioner in the post-grant proceedings, could file a third-party protest against the reissue application and submit prior art and arguments to the PTO. If the reissue patent is granted, then a third-party petitioner could also challenge the reissue patent by filing a PGR, IPR or CBM at the appropriate time.

Patent owners should also consider the average pendency of a reissue application compared to other options. From 2006 to 2010, the average reissue pendency was just under five years. Dennis Crouch, Reissue Patent Pendency (Jan. 23, 2011). However, this pendency has decreased and for reissued patents this year through April 2016, the average pendency was only 2.3 years. Crouch, Reissues (April 15, 2016). In comparison, the ex parte reexamination pendency has averaged 2.3 years in 2012 and 2013; 1.8 years in 2014; and 2 years in 2015. Reexaminations—FY 2015; https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_roll_up_EOY2014.pdf.

## 4. Supplemental Examination / Ex Parte Reexamination

Instead of filing a reissue application, a patent owner may file a request for supplemental examination. Under 35 U.S.C. § 257, "A patent owner may request supplemental examination of a patent in the Office to consider, reconsider, or correct information believed to be relevant to the patent." The request for supplemental examination must include a detailed explanation of the relevance and manner of applying each item of information.

The PTO director conducts the supplemental examination within three months after receiving a proper request to determine whether the information raises a substantial new question of patentability (SNQP). If a SNQP is determined, then the examiner begins ex parte reexamination of the patent, which is not limited to patents and printed publications. If claims were cancelled in a post-grant proceeding, then the patent owner likely can rely on the PTAB's conclusion during the post-grant proceeding of a petitioner having shown a reasonable likelihood of success on grounds of invalidity as raising a SNQP. Thus, a patent owner may wish to file an ex parte reexamination without first filing a supplemental reexamination request.

However, patent owners should be aware of potential benefits to filing a supplemental reexamination first. A court or the PTO cannot hold a patent unenforceable based on conduct regarding information considered by the PTO during a supplemental examination. 35 U.S.C. § 257(c)(1). This benefit is not available if, before the supplemental examination request, an allegation is pleaded in a civil action or notice is received by the patent owner under the Federal Food, Drug, and Cosmetic Act. 35 U.S.C. § 257(c)(2)(A). This benefit is also not available unless the supplemental examination and any resulting ex parte reexamination are completed before an action is brought in the ITC or a civil action is brought in district court. 35 U.S.C. § 257(c)(2)(B). Additionally, unlike during ex parte reexamination, the items of information that a patent owner can submit during supplemental examination extend beyond patents and printed publications, which presents another potential advantage over ex parte reexamination alone.

During both supplemental and ex parte reexamination, a patent owner can propose claim amendments to distinguish from prior art cited during the post-grant proceeding. Unlike with a reissue application, supplemental examination and ex parte reexamination have the advantage of not requiring admission that an error was made.

However, as with reissued patents, under the doctrine of intervening rights, if the reexamined patent

claim has substantive claim amendments compared to the original patent claim, then a patent owner may be entitled to damages only for the time period after issuance of the reexamined patent claim.

### 5. Continuation Application

Patent owners should consider prosecuting a continuation application that claims priority to the parent patent that has undergone a post-grant proceeding. Of course, this requires that a patent application claiming priority to the parent patent that has undergone the post-grant proceeding still be pending.

During prosecution of the continuation application, the patent owner can take into account arguments and prior art raised during the post-grant proceeding to pursue claims that are patentably distinct from the cancelled claims. Patent owners should weigh the cost and time it takes to pursue a continuation application against the relative likelihood of getting issued claims that are patentably distinct in view of the prior art and arguments raised during the post-grant proceeding.

### Conclusion

Patent owners should be aware of the various options for obtaining patent protection after claims are cancelled in an AIA post-grant proceeding. Patent owners may seek rehearing with the PTAB or appeal the adverse post-grant decision to the Federal Circuit. Patent owners should also consider pursuing amended claims in a reissue application, supplemental examination and/or ex parte reexamination. Finally, patent owners should consider maintaining a pending application to provide for the option of pursuing different claims in one or more continuation applications.

Choosing one or more of these options could allow patent owners to preserve patent rights despite having claims cancelled during an AIA post-grant proceeding.

| Option | Standard | Benefits | Risks |
|---|---|---|---|
| Request for Rehearing | -Request must specifically identify all matters the party believes the Board misapprehended or overlooked, and the place where each matter was previously addressed in a motion, an opposition, or a reply.<br>-A panel reviews the final written decision for an abuse of discretion. | -Even if the request is denied, the PTAB will need to further explain the rationale for its decision, which may provide additional arguments for an appeal brief. | -Winning a request for rehearing may be difficult.<br>-PTAB could further bolster the rationales for its decision before the patent owner appeals. |
| Appeal to the Federal Circuit | - PTAB's legal conclusions are reviewed de novo, and factual findings are reviewed under the substantial evidence standard of review. | - Standard of review on legal conclusions is not deferential to the PTAB. | - Costs and time involved with filing an appeal.<br>- Based on statistics, reversing the PTAB's decision may be difficult, but depends on the merits of the case. |
| Reissue Application | Whenever any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent. | - Ex parte proceeding involving the patent owner and PTO only.<br>- Full examination, including interviews, Request for Continued Examination (RCE) and appeals.<br>- Claim scope can be broadened if filed within two years of original patent issuance.<br>- Continuation or continuation-in-part (CIP) applications can be filed while reissue application is pending. | - All claims are examined and could be potentially invalidated.<br>- Potential invalidation on additional grounds.<br>- Consider the effect of patent owner estoppel.<br>- May trigger third-party intervening rights if the claims are amended.<br>- Potentially lengthier than ex parte reexamination, though the average pendency of reissue applications has decreased in recent years. |
| Supplemental Examination | Raising a SNQP; can be instituted based on 35 U.S.C. §§ 101, 102, 103 or 112. | - A court or the PTO cannot hold a patent unenforceable based on conduct regarding information considered by the PTO during the supplemental examination (with exceptions). | - May be lengthier than just ex parte reexamination because initial step of determining a SNQP is followed by reexamination.- Patents are not presumed valid.- May trigger third-party intervening rights if the claims are amended. |
| Ex Parte Reexamination | Raising a SNQP; can be instituted based on printed publications, patents and double patenting. | - Examination includes interviews and appeals (no RCEs).<br>- Potentially quicker resolution than supplemental examination.<br>- Potentially quicker resolution than reissue application, though the average pendency of reissue applications has decreased in recent years.<br>- Unlike in reissue, does not require admission that an error was made. | - Patents are not presumed valid.<br>- May trigger third-party intervening rights if the claims are amended. |
| Continuation | Must be filed during the pendency of | - Patent owners can take into account | - Cost and timing to pursue continua- |

| Application | a patent appli-cation that claims priority to the parent patent that has undergone a post-grant pro-ceeding. | arguments and prior art raised during the post-grant proceeding to pursue claims that are patentably distinct from the cancelled claims. | tion application. |
|---|---|---|---|